08 CV 7192

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

LIBERTY MUTUAL INSURANCE COMPANY,)
LIBERTY MUTUAL FIRE INSURANCE
COMPANY, LIBERTY INSURANCE )
CORPORATION, LM INSURANCE )
COMPANY, EMPLOYERS INSURANCE )
COMPANY OF WAUSAU, WAUSAU )
BUSINESS INSURANCE COMPANY, )
WAUSAU GENERAL INSURANCE )
COMPANY, WAUSAU UNDERWRITERS )
INSURANCE COMPANY, PEERLESS )
INSURANCE COMPANY, PEERLESS )
INDEMNITY INSURANCE COMPANY, )
THE NETHERLANDS INSURANCE )
COMPANY, EXCELSIOR INSURANCE )
COMPANY, THE AMERICAN FIRE AND )
CASUALTY COMPANY, and THE OHIO )
CASUALTY INSURANCE COMPANY, )
)
     Plaintiffs, )
)
    v. )
)
ROBERT H. HURLBUT, DONALD T. )
DECARLO, C. SCOTT BOWEN, JOHN F. )
CARPENTER, DENIS M. HUGHES, )
CHARLES L. LOIODICE, WILLIAM A. )
O'LOUGHLIN, JR., KENNETH R. )
THEOBALDS and PATRICIA SMITH, )
in their official capacities as the )
Commissioners of the New York State )
Insurance Fund; and ZACHARY S. WEISS, )
DONNA FERRARA, MONA A. BARGNESI, )
RICHARD A. BELL, GERALDINE CHAPEY, )
CANDACE K. FINNEGAN, SCOTT C. )
FIRESTONE, AGATHA EDEL GROSKI, )
KARL A. HENRY, MARK D. HIGGINS, )
FRANCES M. LIBOUS, and ELLEN O. )
PAPROCKI, in their official capacities as )
members of the New York State    Workers' )
Compensation Board, )
)
    Defendants. )
_____ )



Civil Action No. _____

**COMPLAINT**

## PRELIMINARY STATEMENT

1.      Plaintiffs are affiliated insurance companies that write workers' compensation insurance in the State of New York. This action is a facial constitutional challenge under the Contract Clause, Takings Clause, Equal Protection Clause, and Due Process Clause of the United States Constitution to certain 2007 amendments to New York's Workers' Compensation Law ("WCL").

2.      Prior to the 2007 amendments, § 27 of the WCL required insurers to deposit into a statutorily-established Aggregate Trust Fund ("ATF") the net present value of benefits owed to injured workers or their survivors for death, permanent total disability, or permanent partial disability involving the loss of limbs or eyes. The purpose of this provision, enacted during the Great Depression, was to protect injured workers against the then-growing threat of insurer insolvency. Section 32 of the WCL authorized insurers to enter into settlements with claimants and, if the amount of the settlement was less than the applicable deposit with the ATF, to obtain a refund of the amount in excess.

3.      The 2007 amendments radically altered this regime in three respects that substantially impair the Plaintiffs' property, contractual, and procedural rights. First, the obligation to make lump sum deposits was expanded to include additional types of permanent partial disability benefits. This added requirement was imposed only on insurers, not on employers who self-insure or the New York State Insurance Fund ("NYSIF"), both of which are responsible for paying the same types of benefits. The new obligation violates the Equal Protection Clause of the Fourteenth Amendment because it does not serve any legitimate public purpose and because there is no rational basis for discriminating against insurers. The principal effect of the amendments is to confer a significant cost advantage on the NYSIF, the state-owned insurer that is the largest in the state and the principal competitor of Plaintiffs and other private

carriers. The amendments thus serve only the parochial competitive interests of the NYSIF, not any public purpose. Further, discriminating against insurers in favor of self-insured employers does not rationally advance any state interest in protecting claimants against insurer insolvency because they already are protected by three layers of solvency regulation, whereas claimants against employers are not protected by a similarly comprehensive scheme.

4.      Second, the new deposit obligation applies retroactively to claims arising under workers' compensation insurance policies issued prior to the 2007 amendments. Retroactive application violates the Contract Clause of Article I of the Constitution, the Takings Clause of the Fifth Amendment as made applicable to New York by the Fourteenth Amendment, and the substantive due process doctrine. Retroactive application has a substantial adverse economic impact on Plaintiffs' settled contractual expectations by exposing them to losses and costs not anticipated at the time of contracting and by abrogating their contractual authority to settle claims. Retroactive application of the amendments serves no legitimate public purpose because there is no emergency warranting the harsh measure of retroactivity. Nor does retroactive application of the 2007 amendments advance any legitimate state interest by reasonable means, inasmuch as claimants could be protected against insurer insolvency without the need to abrogate insurance contracts.

5.      Third, the 2007 amendments to Section 32 authorize the ATF to enter into settlements with claimants with respect to claims against insurers but without the insurer's consent. Insurers are not given an opportunity to be heard before the ATF or the Workers' Compensation Board (which must approve settlements), and cannot obtain judicial review of approved settlements. The 2007 amendments thus deny Plaintiffs procedural due process.

**THE PARTIES**

6.     Plaintiffs are all subsidiaries of Liberty Mutual Holding Company, Inc.

7.     Plaintiff Liberty Mutual Insurance Company is a Massachusetts corporation, with its principal place of business in Boston, Massachusetts. It is licensed to underwrite workers' compensation insurance in New York and has done so for many years.

8.     Plaintiff Liberty Mutual Fire Insurance Company is a Wisconsin corporation, with its principal place of business in Boston, Massachusetts. It is licensed to underwrite workers' compensation insurance in New York and has done so for many years.

9.     Plaintiff Liberty Insurance Corporation is an Illinois corporation, with its principal place of business in Boston, Massachusetts. It is licensed to underwrite workers' compensation insurance in New York and has done so for many years.

10.     Plaintiff LM Insurance Company is an Iowa corporation, with its principal place of business in Boston, Massachusetts. It is licensed to underwrite workers' compensation insurance in New York and has done so for many years.

11.     Plaintiff Employers Insurance Company of Wausau is a Wisconsin corporation, with its principal place of business in Wausau, Wisconsin. It is licensed to underwrite workers' compensation insurance in New York and has done so for many years.

12.     Plaintiff Wausau Business Insurance Company is a Wisconsin corporation, with its principal place of business in Wausau, Wisconsin. It is licensed to underwrite workers' compensation insurance in New York and has done so for many years.

13.     Plaintiff Wausau General Insurance Company is a Wisconsin corporation, with its principal place of business in Wausau, Wisconsin. It is licensed to underwrite workers' compensation insurance in New York and has done so for many years.

14.    Plaintiff Wausau Underwriters Insurance Company is a Wisconsin corporation, with its principal place of business in Wausau, Wisconsin. It is licensed to underwrite workers' compensation insurance in New York and has done so for many years.

15.    Plaintiff Peerless Insurance Company is a New Hampshire corporation, with its principal place of business in Keene, New Hampshire. It is licensed to underwrite workers' compensation insurance in New York and has done so for many years.

16.    Plaintiff Peerless Indemnity Insurance Company is an Illinois corporation, with its principal place of business in Keene, New Hampshire. It is licensed to underwrite workers' compensation insurance in New York and has done so for many years.

17.    Plaintiff The Netherlands Insurance Company is a New Hampshire corporation, with its principal place of business in Keene, New Hampshire. It is licensed to underwrite workers' compensation insurance in New York and has done so for many years.

18.    Plaintiff Excelsior Insurance Company is a New Hampshire corporation, with its principal place of business in Keene, New Hampshire. It is licensed to underwrite workers' compensation insurance in New York and has done so for many years.

19.    Plaintiff The American Fire and Casualty Company, is an Ohio corporation, with its principal place of business in Columbus, Ohio. It is licensed to underwrite workers' compensation insurance in New York and has done so for many years.

20.    Plaintiff The Ohio Casualty Insurance Company is an Ohio corporation, with its principal place of business in Columbus, Ohio. It is licensed to underwrite workers' compensation insurance in New York and has done so for many years.

21.    The ATF is a statutorily-created state fund administered by the NYSIF, a workers' compensation insurer that is an agency of the State and a competitor of plaintiffs.

WCL § 27 (6). The Commissioners of the NYSIF are defendants Robert H. Hurlbut, Donald T. DeCarlo, C. Scott Bowen, John F. Carpenter, Denis M. Hughes, Charles L. Loiodice, William A. O'Loughlin, Jr., Kenneth R. Theobalds, and Patricia Smith. Each commissioner is sued in his or her official capacity.

22.    The Workers' Compensation Board ("WCB") is a state agency that adjudicates claims under the WCL and is responsible for approving or disapproving proposed settlements of claims. The members of the WCB are defendants Zachary S. Weiss, Donna Ferrara, Mona A. Bargnesi, Richard A. Bell, Geraldine Chapey, Candace K. Finnegan, Scott C. Firestone, Agatha Edel Groski, Karl A. Henry, Mark D. Higgins, Frances M. Libous, and Ellen O. Paprocki. Each member is sued in his or her official capacity.

## JURISDICTION AND VENUE

23.    This action arises under the Contract Clause of Article I, § 10, cl. 1, and the Fifth and Fourteenth Amendments to the United States Constitution. This court accordingly has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and the power to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

24.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## WORKERS' COMPENSATION INSURANCE

25.    Workers' compensation insurance policies are contracts between the insurer and the insured employer. In return for the employer's payment of premium and other contractual obligations, the insurer contractually assumes the employer's risk of liability for paying the benefits to injured workers required by the WCL.

26.    The premium is calculated to cover the losses and expenses that the insurer anticipates it will incur during the future time period when the policy is in effect. Because

- 6 -

insurance ratemaking is prospective in nature, unanticipated losses and expenses cannot be recouped by adjustments to rates in subsequent years.

27.    The insurance contract also gives the insurer the authority to investigate, administer and settle claims. The contractual power to settle claims is especially important to the insurer in order to mitigate losses.

28.    The insurer invests premiums received under the contract during the time period between receipt and payment of claims. These premiums are placed in a segregated reserve. The returns on invested reserves are an important source of earnings for insurers.

## THE AGGREGATE TRUST FUND

29.    As originally enacted in 1914, the WCL included a provision authorizing the predecessor of the WCB, in its discretion, to require insurers and employers to deposit into the ATF the present value of death, total permanent disability, and permanent partial disability benefits that would otherwise be paid out for a period of two or more years. WCL § 27(2). The purpose of this provision was to secure the payment of long-term benefits in the event that the insurer or employer went bankrupt. At the time, there was no other statutory or regulatory mechanism assuring payment of benefits in the event of insolvency.

30.    During the Great Depression, many stock and mutual insurers in New York became insolvent and there was a growing risk that others would also become bankrupt. In reaction, the legislature amended Section 27 to make lump-sum deposits mandatory for death, permanent total disability, and permanent partial disability benefits involving the loss of limbs or eyes, if those benefits were payable by a stock or mutual insurer.

31.    In 1935, the legislature created an alternative means of guaranteeing the payment of benefits to injured workers and their survivors in the event of an insurer's insolvency. The

legislature established a Stock Workers' Compensation Security Fund and a Mutual Workers' Compensation Security Fund. The purpose of each fund "is to assure to persons and funds entitled thereto the compensation and benefits provided by this chapter for employments insured in insolvent carriers . . . ." WCL § 107. If a workers' compensation insurer became insolvent, claims against that insurer were paid by the stock or mutual security fund, depending on whether the insurer was a stock or mutual company. Each fund was financed by assessments on insurers calculated as a percentage of net written premiums in New York. *Id.* § 108. In the event of a shortfall, the funds can levy additional assessments. In 1990, the stock and mutual funds were consolidated (hereinafter the "Security Fund"). *Id.* § 106.

32.    Section 32 of the WCL authorized insurers and self-insured employers to enter into settlement agreements with claimants, called "waiver agreements," with respect to claims requiring a deposit into the ATF. WCL § 32. Such agreements were subject to the approval of the WCB, which reviewed the proposed agreement to ensure it was not "unfair, unconscionable, or improper as a matter of law." *Id.* § 32(b).

33.    Insurers had the opportunity to be heard by the WCB on the issue of whether the agreement should be approved. If an agreement was disapproved, the insurer had the right to judicial review. *Id.* § 32(c). An approved agreement was not subject to judicial review but there was no prejudice to the settling insurer since it had voluntarily entered into the agreement and sought its approval. If the amount of the settlement was less than the lump-sum deposit previously paid to the ATF, the insurer was entitled to a refund. *Id.* § 27(4).

## THE 2007 AMENDMENTS

34.    The Worker's Compensation Reform Act of 2007 amended § 27 to significantly expand the category of claims for which mandatory lump sum deposits are required. The deposit

- 8 -

requirement was extended to cover a significant additional category of permanent partial disability benefits, not merely partial disability involving the loss of a limb or eye, as under the former law. Assembly Bill 6163, 2007 N.Y. Laws 6 ("2007 Amendments"), § 46, *amending* WCL § 27(2). The additional category of benefits are for so-called "classified" or "non-schedule" types of permanent partial disability as described in WCL § 15(3)(w). "Classified" or "non-schedule" permanent partial disabilities tend to be more serious injuries than "schedule" disabilities and thus require payment of higher compensation.

35.    The expanded deposit requirement was imposed only on private insurers. 2007 Amendments § 46. The new requirement was not imposed on the NYSIF or self-insured employers.

36.    The effective date of the 2007 Amendments is March 13, 2007, and the new lump sum deposit requirement applies to any award of compensation made on or after July 1, 2007. 2007 Amendments § 82. The expanded requirement is thus retroactive as well as prospective. It applies to claims arising out of policies of insurance issued prior to the date of enactment of the 2007 Amendments.

37.    The 2007 law also amended § 32 to take away the insurer's authority to settle claims as to which the insurer had made a lump sum deposit into the ATF and instead to give that authority to the ATF. 2007 Amendments § 73, *amending* § 32(a). This change applies to all categories of claims, not just classified permanent partial disability claims. In the event the ATF settles for less than the full claim, the insurer no longer gets a refund of the excess. *Id.* § 57-b, *adding* WCL § 27(8).

38.    The amended law explicitly denies insurers an opportunity to be heard on settlement approval. Section 32(e) provides that "no consultation or approval of any . . .

- 9 -

insurance carrier . . . shall be required before the [ATF] may enter into any waiver agreement, or before the Board may approve such waiver agreement." 2007 Amendments § 74, *adding* WCL § 32(e). If the Board does approve an agreement, § 32(c) precludes the insurer from obtaining judicial review of that decision.

39.     Subsequent to the 2007 Amendments, the Governor sponsored legislation that would have repealed those changes. *See* Senate Bill 8718 (June 24, 2008). During the pendency of these efforts to repeal the 2007 Amendments, the WCB refrained from deciding appeals by insurers on classified PPD claims that might have triggered the new deposit requirements and settlement procedures. Accordingly, Plaintiffs have not yet made any deposits to the ATF required by the 2007 Amendments and deferred filing this action in the hope the repeal bill would pass.

40.     However, the legislature recently adjourned without enacting the repeal legislation. On information and belief, the WCB will soon begin deciding the classified PPD appeals, at which point Plaintiffs must comply with the new deposit and other requirements

### ECONOMIC IMPACT OF THE 2007 AMENDMENTS

41.     The 2007 amendments to §§ 27 and 32 will have a substantial adverse competitive and economic impact on Plaintiffs in multiple respects.

42.     The lump sum deposit requirement will force Plaintiffs to pay out more for claims than they would have absent that requirement. Historically, workers' compensation insurers settle claims for significantly less than the reserves set aside to pay the claim. Because only the ATF now has the authority to settle claims once a deposit has been made, the deposit requirement will deprive insurers of the opportunity to settle for less than the amount of the

deposit. The 2007 Amendments also took away their right to a refund if the ATF settles for less than the deposit.

43.    Plaintiffs also will be injured by having to pay a fee to the ATF for administration of the new category of claims covered by the 2007 Amendments. That fee exceeds the costs that Plaintiffs would have incurred in handling the claims themselves.

44.    Plaintiffs additionally will lose substantial investment income. The discount rate set by the ATF to calculate the net present value of deposits is less than the investment return that Plaintiffs could have earned on their claims reserves absent the deposit requirement.

45.    Plaintiffs also will incur other additional costs that they would not have borne absent the 2007 Amendments. These include: (a) increased loss adjustment expenses due to the need to coordinate with the ATF on handling of covered claims; (b) increased litigation costs resulting from a reduction in settlements; and (c) increased medical claims costs because the ATF's exclusive authority to settle indemnity claims will make it more difficult for Plaintiffs to settle medical claims.

46.    The NYSIF is Plaintiffs' principal competitor in New York. Self-insurance also competes with insurance from Liberty Mutual because an employer can elect to self-insure rather than to purchase insurance.

47.    The market for workers' compensation insurance is extremely price-sensitive. Small changes in price can cause an employer to switch coverage to the NYSIF or to self-insure rather than purchasing coverage from a private insurer.

48.    The additional losses and costs incurred by reason of the 2007 Amendments, as described above, will increase the cost of Liberty Mutual's insurance. Many employers may

therefore decide to self-insure or to purchase insurance from the NYSIF, neither of which is subject to the new requirements.

49.    Many employers who have, or might, purchase so-called "large deductible policies" may also decide to self-insure or purchase insurance from the NYSIF rather than Plaintiffs. Large deductible policies set the employers' deductible at a relatively high level so that, in most cases, the employer is responsible for all or most of an award. Large deductible policies are attractive to employers because the rates are significantly lower than for conventional policies but the employer is still protected against significant losses.

50.    However, for claims exceeding or covering all or a substantial part of the large deductible, insurers will be required to make a lump sum deposit out of the employer's funds set aside in an escrow account to cover claims. Employers thus will be forced to make a substantial up front payment to replenish the loss fund account rather than much smaller periodic payments as benefits are paid out over a period of years as they would be absent the deposit requirement. This will create a powerful incentive for employers to self-insure or to purchase insurance from the NYSIF, which would not require them to make a large payment in the event of a significant loss.

51.    Retroactive application of the 2007 Amendments will inflict injury in addition to the costs and competitive disadvantages described above. Prior to the 2007 amendments, the WCL required benefits to be paid during continuance of the disability, which, for permanent disabilities, was the entire remaining life of the claimant. WCL § 15(3)(w). Another of the 2007 Amendments imposed a 225-525 week cap on the time period for calculating benefits, thus lessening the insurers' liability. 2007 Amendments § 4, *amending* WCL § 15(3)(w). However, the cap does not apply retroactively even though the new deposit requirement does. As a result,

Plaintiffs retroactively will be required to deposit substantially more with respect to policies issued prior to enactment than they are required to deposit for policies issued after enactment.

52.    The effects of the 2007 Amendments described above will result in the loss of customers and harm to customer goodwill.

53.    Liberty Mutual's reputation for good claims handling service is a major reason why employers purchase coverage from it rather than from the NYSIF or self-insuring. This is especially true of large deductible policyholders who retain most risk and thus purchase insurance policies from Liberty Mutual primarily for its claims handling. Thus, Liberty Mutual's inability to administer classified permanent partial disability claims will result in the further loss of customers and further injury to customer goodwill.

54.    The 2007 Amendments contain nothing to mitigate or moderate the substantial adverse impact of the new requirements. The ATF and the WCB are given no discretion to ameliorate the burdens of the deposit requirement, for example, by exempting insurers, such as Plaintiffs, with high financial and claims ratings. There is no grace period before the new requirements apply, no phasing in of those requirements, and no limit on the time period of retroactivity. The cap on the time period for calculating permanent partial disability benefits was not made retroactive to coincide with retroactive application of the deposit requirement.

55.    Plaintiffs will have no adequate remedy at law for the loss of customers and customer goodwill caused by the 2007 Amendments.

## COUNT I

### (Equal Protection)

56.     Plaintiffs incorporate the allegations of paragraphs 1 through 55 herein.

57.     The 2007 Amendments to WCL § 27 unconstitutionally discriminate against insurers in violation of the Equal Protection Clause of the Fourteenth Amendment of the Constitution.

58.     Imposing the new deposit requirement on insurers does not serve any legitimate public purpose. The principal effect of the 2007 Amendments is to confer a significant competitive advantage on the NYSIF. Unlike private carriers, the NYSIF is not subject to the expanded deposit requirements and did not lose its authority to settle claims. The 2007 Amendments thus serve only the parochial commercial interests of a state-owned insurer, not any public purpose.

59.     There is no rational basis for imposing the new deposit requirement on insurers but not on self-insured employers. If the purported purpose of the 2007 Amendments was to protect claimants from insurer insolvency, there is already a three-tiered system of such protection. The Superintendent of Insurance regulates insurer insolvency; the Superintendent also must assure that rates are adequate to cover projected claims; and the Security Fund pays claims against insolvent insurers. Claimants against self-insured employers are not protected by such a comprehensive scheme. Accordingly, it is completely irrational to impose a new and unnecessary requirement on insurers but not to improve the far weaker protections for claimants against self-insured employers.

60.     If the purported purpose of the 2007 Amendments is to create an incentive for insurers to settle, then the 2007 Amendments do not rationally advance that goal. The legislature

did not make a finding, and there is no set of facts, demonstrating that insurers are less inclined to settle than self-insured employers. Further, the expanded deposit requirement actually creates a disincentive to settle because the insurer is not required to make a deposit while it disputes the claim.

61.    In any event, another amendment to § 32 requires insurers to make settlement offers within two years after a claim is filed with the WCB or six months after a deposit is made. The amendment stripping the insurer's authority to settle undercuts that requirement and is thus a completely irrational means of encouraging insurer settlements.

62.    The discrimination against Plaintiffs will result in substantial competitive and economic injury as described above.

### COUNT II

### (Contract Clause)

63.    Plaintiffs incorporate the allegations of paragraphs 1 through 55 herein.

64.    Retroactive application of the amendments to §§ 27 and 32 to insurance contracts written before the date of enactment of the 2007 Amendments impairs those contracts in violation of the Contract Clause of Article I of the Constitution.

65.    Amended §§ 27 and 32 impair a contractual relationship. They impair the insurer's contractual entitlement to a premium that was calculated to cover anticipated losses and expenses. The amendments will result in unanticipated losses by abrogating the insurer's contractual authority to settle claims and minimize losses. They will inflict unanticipated claims handling expenses because the ATF charges more for handling claims than Plaintiffs would otherwise incur. They reduce anticipated investment earnings because the discount rate used by

the ATF to determine the net present value of deposits is less than the return that Plaintiffs otherwise could earn.

66.     This impairment of contract is substantial. The unanticipated losses and expenses resulting from retroactive application of the 2007 Amendments will upset Plaintiffs' settled contractual expectations concerning their future liabilities and gains. The economic harm caused by retroactive application will be substantial in monetary terms. There is no limit on the time period of retroactivity, which will reach back for more than a decade due to the frequently long period of time between issuance of the policy and submission of a claim. Nothing in the 2007 Amendments makes any effort to mitigate or moderate this substantial impairment of contract.

67.     When Plaintiffs entered into their pre-enactment insurance contacts, they could not reasonably have foreseen that the deposit requirement would be expanded and applied retroactively without limitation on the time period. Nor could they have foreseen that their rights to settle claims and to refunds in excess of settled claims would be eliminated retroactively.

68.     Retroactive application of the new deposit requirement and the ATF's settlement authority does not serve any legitimate public purpose relating to an emergency justifying retroactivity. At the time of enactment, there was no existing or prospective threat to insurer or ATF solvency warranting the extreme measure of unlimited retroactive application of the expanded deposit requirement and abrogation of the insurer's right to refunds. Nor was there any emergency, such as a catastrophic failure in the WCB system for adjudicating claims, warranting retroactive application of the ATF's new settlement authority.

69.     In any event, the State had less restrictive means of protecting claimants against insurer insolvency that would have avoided retroactive impairment of contracts. The State

could, for example, have imposed the expanded deposit requirement only on insurers that the Superintendent of Insurance determined were in financial difficulty.

70.    Nor was retroactive application of the ATF's settlement authority reasonable and necessary for purposes of promoting any state interest in encouraging insurer settlements. That amendment actually created an incentive to litigate so that there would be no award of compensation requiring the insurer to make a large lump sum deposit to the ATF. The State could also have encouraged settlements by less drastic means, such as by enhancing the mediation provisions of the WCL.

## COUNT III

### (Takings Clause)

71.    Plaintiffs incorporate the allegations of paragraphs 1 through 55 herein.

72.    Retroactive application of the expanded deposit requirement in amended Section 27 constitutes a taking of private property without just compensation in violation of the Takings Clause of the Fifth Amendment of the Constitution as made applicable to New York by the Fourteenth Amendment.

73.    Plaintiffs have a constitutionally-protected property interest in their insurance contracts and in the premiums paid to them under such contracts, which are held in a reserve fund dedicated to their contractual obligations.

74.    The retroactive liability imposed by amended Section 27 is substantial. The unanticipated losses and expenses resulting from retroactive application of the 2007 Amendments will upset Plaintiffs' settled, investment-backed expectations concerning their future liabilities and gains. The economic harm caused by retroactive application will be substantial in monetary terms. There is no limit on the time period of retroactivity, which will

- 17 -

reach back for more than a decade due to the frequently long period of time between issuance of the policy and submission of a claim. Nothing in the 2007 Amendments makes any effort to mitigate or moderate this substantial impairment of contract.

75. When Plaintiffs made investments for their pre-enactment insurance underwriting, they could not reasonably have foreseen that the deposit requirement would be expanded and applied retroactively without limitation on the time period. Nor could they reasonably have foreseen that their rights to settle claims and to refunds in excess of settled amounts would be eliminated retroactively.

76. Retroactive application of the new deposit requirement and the ATF's settlement authority does not serve any legitimate public purpose relating to an emergency justifying retroactivity. At the time of enactment, there was no existing or prospective threat to insurer solvency warranting the extreme measure of unlimited retroactive application of the expanded deposit requirement and abrogation of the insurer's right to refunds. Nor was there any emergency, such as a catastrophic failure in the WCB system for adjudicating claims, warranting retroactive application of the ATF's new settlement authority.

77. In any event, the State had less restrictive means of protecting claimants against insurer insolvency that would have avoided retroactive application of the new deposit requirement. The State could, for example, have imposed the expanded deposit requirement only on insurers that the Superintendent of Insurance determined were in financial difficulty.

78. Nor was retroactive application of the ATF's settlement authority reasonable and necessary for purposes of promoting any state interest in encouraging insurer settlements. That amendment actually created an incentive to litigate so that there would be no award of compensation requiring the insurer to make a large lump sum deposit to the ATF. The State

could also have encouraged settlements by less drastic means, such as by enhancing the mediation provisions of the WCL.

79.    Plaintiffs' takings claim is ripe for adjudication. There is no procedure in New York for obtaining compensation for a regulatory taking of the type at issue here. In any event, resort to any such procedure would have been futile.

### COUNT IV

### (Substantive Due Process)

80.    Plaintiffs incorporate the allegations of paragraphs 1 through 55 herein.

81.    Retroactive application of the expanded deposit requirement in amended Section 27 constitutes a denial of substantive due process in violation of the Due Process Clause of the Fourteenth Amendment of the Constitution.

82.    Plaintiffs have a constitutionally-protected property interest in their insurance contracts and in the premiums paid to them under such contracts, which are held in a reserve fund dedicated to their contractual obligations.

83.    The retroactive liability imposed by amended Section 27 is substantial. The unanticipated losses and expenses resulting from retroactive application of the 2007 Amendments will upset Plaintiffs' settled investment-backed expectations concerning their future liabilities and gains. The economic harm caused by retroactive application will be substantial in monetary terms. There is no limit on the time period of retroactivity, which will reach back for more than a decade due to the frequently long period of time between issuance of the policy and submission of a claim. Nothing in the 2007 amendments makes any effort to mitigate or moderate this substantial impairment of contract.

84.     When Plaintiffs made investments for their pre-enactment insurance underwriting, they could not reasonably have foreseen that the deposit requirement would be expanded and applied retroactively without limitation on the time period.  Nor could they reasonably have foreseen that their rights to settle claims and to refunds in excess of settled amounts would be eliminated retroactively.

85.     Retroactive application of the new deposit requirement and the ATF's settlement authority does not serve any legitimate public purpose relating to an emergency justifying retroactivity.  At the time of enactment, there was no existing or prospective threat to insurer solvency warranting the extreme measure of unlimited retroactive application of the expanded deposit requirement and abrogation of the insurer's right to refunds.  Nor was there any emergency, such as a catastrophic failure in the WCB system for adjudicating claims, warranting retroactive application of the ATF's new settlement authority.

86.     In any event, the State had less restrictive means of protecting claimants against insurer insolvency that would have avoided retroactive application of the new deposit requirement.  The State could, for example, have imposed the expanded deposit requirement only on insurers that the Superintendent of Insurance determined were in financial difficulty.

87.     Nor was retroactive application of the ATF's settlement authority reasonable and necessary for purposes of promoting any state interest in encouraging insurer settlements.  That amendment actually created an incentive to litigate so that there would be no award of compensation requiring the insurer to make a large lump sum deposit to the ATF.  The State could also have encouraged settlements by less drastic means, such as by enhancing the mediation provisions of the WCL.

- 20 -

88.     Plaintiffs' substantive due process claim is ripe for adjudication. There is no procedure in New York for obtaining compensation for a regulatory taking of the type at issue here. In any event, resort to any such procedure would have been futile.

## COUNT V

### (Procedural Due Process)

89.     Plaintiffs incorporate the allegations of paragraphs 1 through 48 herein.

90.     The 2007 Amendments to § 32 deprive Plaintiffs of procedural due process in violation of the Due Process Clause of the Fourteenth Amendment of the Constitution.

91.     Plaintiffs have a constitutionally-protected property interest in their insurance contracts and in the premiums paid to them under such contracts, which are held in a reserve fund dedicated to their contractual obligations.

92.     Amended § 32 does not afford insurers an opportunity to be heard with respect to ATF settlements of claims against them. Section 32 explicitly prohibits the ATF and the Board from consulting with or obtaining the approval of an insurer with respect to a proposed settlement.

93.     Amended § 32 does not afford insurers a right to judicial review of the WCB's approval of a settlement. If the Board approves a settlement, the insurer is statutorily prohibited from obtaining judicial review of that decision. WCL § 32.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1.     That the Court declare that application of the 2007 Amendments to WCL §§ 27 and 32 to insurers but not to self-insured employers and the NYSIF violates the Equal Protection Clause;

- 21 -

2.    That the Court declare that retroactive application of the 2007 Amendments to WCL §§ 27 and 32 expanding the lump sum deposit requirement, depriving insurers of settlement authority, prohibiting refunds violates the Contract Clause, the Takings Clause, and the Due Process Clause;

3.    That the Court declare that the 2007 Amendments to WCL § 32 that deprive insurers of a right to be heard concerning proposed settlements violate the Due Process Clause;

4.    That the Court permanently enjoin defendants and all persons or entities in active concert or participation with them, including their successors, from enforcing the 2007 Amendments to WCL § 27 and from imposing penalties or other sanctions on Plaintiffs for not complying with such provisions;

5.    That the Court permanently enjoin defendants and all persons or entities in active concert or participation with them, including their successors, from enforcing the 2007 Amendments to WCL § 32 and from imposing penalties or other sanctions on Plaintiffs for not complying with such provisions; and

6.    For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      August 12, 2008

Respectfully submitted,
STEPTOE & JOHNSON LLP

By: _____
    Michael C. Miller
    Evan Glassman
    750 Seventh Avenue
    New York, N.Y. 10019
    (212) 506-3900

    Mark F. Horning
    (*pro hac vice* application pending)
    Jeffrey M. Theodore
    (*pro hac vice* application pending)
    1330 Connecticut Avenue, NW
    Washington, D.C. 20036
    (202) 429-3000

    *Attorneys for Plaintiffs*