**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **LIBERTY MUTUAL INSURANCE COMPANY,** *et al.,* | ) ) ) | |
| **Plaintiffs,** | ) ) | **Civil Action No.** 08 CV 7192 (DC) (DFE) |
| **v.** | ) ) | **DECLARATION OF** |
| **ROBERT H. HURLBUT,** *et al.,* | ) ) | **EVAN GLASSMAN IN SUPPORT OF** |
| **Defendants.** | ) ) | **ORDER TO SHOW CAUSE** |

I, Evan Glassman, hereby declare as follows:

      1.      I am a member of the firm of Steptoe & Johnson LLP and one of the attorneys for Plaintiffs in the above-captioned action.  I am providing this Declaration pursuant to Local Rule 6.1(d) in support of Plaintiffs' application for an order to show cause.  I am authorized by Plaintiffs to make this Declaration, and do so from personal knowledge of the facts described herein.

      2.      Plaintiffs are insurers that write workers' compensation insurance in New York State and are all subsidiaries of Liberty Mutual Holding Company, Inc.

      3.      Plaintiffs seek preliminary and permanent injunctive relief barring the enforcement of certain amendments to New York's Workers' Compensation Law that violate the Contract Clause and the Takings, Due Process and Equal Protection Clauses of Amendments V and XIV to the United States Constitution.

      4.      While Defendants have not yet enforced the amendments against Plaintiffs, Plaintiffs have reason to believe to such enforcement is imminent.

      5.      Attached hereto are true and correct copies of the following exhibits, which are submitted with Plaintiffs Memorandum in Support of Its Motion for an Order to Show Cause:

Exhibit 1:    2007 N.Y. Laws 6

Exhibit 2:    WCL § 27

Exhibit 3:    WCL § 32.

6.      Plaintiffs have provided defendants by electronic mail with copies of the Summons, Complaint, Rule 7.1 Statement, *Pro Hac Vice* Applications of Mark F. Horning and Jeffrey M. Theodore, Order to Show Cause with annexed Declarations of Evan Glassman, David Dwortz, James Hall and Nancy R. Moore and Memorandum in Support of Motion for Preliminary Injunction.

7.      It is respectfully submitted that, upon the statement of facts in the complaint and the annexed declarations, it is probable that Plaintiffs will succeed on the merits of this action.

8.      No other application has been made to this court, or to any other court, for the relief requested herein.

9.      No other provisional remedy has been secured or sought in this action against these Defendants.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.  Executed on August *12*, 2008.

_____
Evan Glassman

# EXHIBIT 1

LEXSEE 2007 NY ALS 6

NEW YORK ADVANCE LEGISLATIVE SERVICE



STATENET STATE NET

Copyright © 2007 by Information for Public Affairs, Inc.

NEW YORK 230TH ANNUAL LEGISLATIVE SESSION
2007-2008 Regular Sessions

CHAPTER 6

ASSEMBLY BILL 6163

*2007 N.Y. ALS 6; 2007 N.Y. LAWS 6; 2007 N.Y. A.N. 6163*

BILL TRACKING SUMMARY FOR THIS DOCUMENT

**SYNOPSIS:** AN ACT to amend the workers' compensation law, the labor law, the insurance law, the tax law, the volunteer ambulance workers' benefit law, the volunteer firefighters' benefit law, and the public officers law, in relation to increasing benefits, setting maximum benefit weeks for receiving payments on certain claims, providing enhanced return to work services and expedited medical services for claimants, increasing penalties and enforcement against fraud, implementing cost-savings, providing for premium discounts, authorizing the closing of the special disability fund to new claims; and to amend the public authorities law, in relation to the issuance by the dormitory authority of revenue bonds secured by debt service assessments in connection therewith

**NOTICE: [A>** UPPERCASE TEXT WITHIN THESE SYMBOLS IS ADDED **<A]**
**[D>** Text within these symbols is deleted **<D]**

-------------------------------------------------------------------------------
To view the next section, type .np* TRANSMIT.
To view a specific section, transmit p* and the section number. e.g. p*1
-------------------------------------------------------------------------------

THE PEOPLE OF THE STATE OF NEW YORK, REPRESENTED IN SENATE AND AS-SEMBLY, DO ENACT AS FOLLOWS:

[*1] Section 1. Section 2 of the workers' compensation law is amended by adding eight new subdivisions 16, 17, 18, 19, 20, 21, 22 and 23 to read as follows:

[A> 16. "NEW YORK STATE AVERAGE WEEKLY WAGE" SHALL MEAN THE AVER-AGE WEEKLY WAGE OF THE STATE OF NEW YORK FOR THE PREVIOUS CALENDAR

YEAR AS REPORTED BY THE COMMISSIONER OF LABOR TO THE SUPERINTENDENT OF INSURANCE ON MARCH THIRTY-FIRST. <A]

[A> 17. A "SUBSTANTIALLY OWNED AFFILIATED ENTITY" OF ANY PERSON MEANS THE PARENT COMPANY OF THE PERSON, ANY SUBSIDIARY OF THE PERSON, OR ANY ENTITY IN WHICH THE PARENT OF THE PERSON OWNS MORE THAN FIFTY PERCENT OF THE VOTING STOCK, OR AN ENTITY IN WHICH ONE OR MORE OF THE TOP FIVE SHAREHOLDERS OF THE PERSON INDIVIDUALLY OR COLLECTIVELY ALSO OWNS A CONTROLLING SHARE OF THE VOTING STOCK, OR AN ENTITY WHICH EX-HIBITS ANY OTHER INDICIA OF CONTROL OVER THE PERSON OR OVER WHICH THE PERSON EXHIBITS CONTROL, REGARDLESS OF WHETHER OR NOT THE CONTROL-LING PARTY OR PARTIES HAVE ANY IDENTIFIABLE OR DOCUMENTED OWNERSHIP INTEREST. SUCH INDICIA SHALL INCLUDE: POWER OR RESPONSIBILITY OVER EM-PLOYMENT DECISIONS; ACCESS TO AND/OR USE OF THE RELEVANT ENTITY'S AS-SETS OR EQUIPMENT; POWER OR RESPONSIBILITY OVER CONTRACTS OF THE PER-SON; RESPONSIBILITY FOR MAINTENANCE OR SUBMISSION OF CERTIFIED PAYROLL RECORDS; AND INFLUENCE OVER THE BUSINESS DECISIONS OF THE RELEVANT EN-TITY. <A]

[A> 18. THE "SPECIAL FUNDS CONSERVATION COMMITTEE" MEANS THE ENTITY ORGANIZED FOR THE PURPOSE OF CONSERVING ASSETS OF THE SPECIAL FUNDS CREATED UNDER SUBDIVISION EIGHT OF SECTION FIFTEEN AND SECTION TWENTY-FIVE-A OF THIS CHAPTER. <A]

[A> 19. A "CLAIM FOR REIMBURSEMENT" FROM THE SPECIAL DISABILITY FUND MEANS AN APPLICATION TO THE BOARD UNDER PARAGRAPH (F) OF SUBDIVISION EIGHT OF SECTION FIFTEEN OF THIS CHAPTER FOR A DETERMINATION THAT THE SPECIAL DISABILITY FUND IS LIABLE IN THE FIRST INSTANCE FOR ANY REIM-BURSEMENT TO THE INSURANCE CARRIER, SELF-INSURED EMPLOYER OR STATE INSURANCE FUND. <A]

[A> 20. A "REQUEST FOR REIMBURSEMENT" FROM THE SPECIAL DISABILITY FUND MEANS AN APPLICATION TO THE SPECIAL DISABILITY FUND FOR REIM-BURSEMENT FOR SPECIFIC COSTS, SUBSEQUENT TO A DETERMINATION BY THE BOARD THAT THE SPECIAL DISABILITY FUND IS LIABLE TO PROVIDE REIMBURSE-MENT ON THE CLAIM. <A]

[A> 21. THE "WORKERS' COMPENSATION RATING BOARD" OR THE "NEW YORK WORKERS' COMPENSATION RATING BOARD" SHALL MEAN THE COMPENSATION IN-SURANCE RATING BOARD UNTIL FEBRUARY FIRST, TWO THOUSAND EIGHT, AND THEREAFTER SUCH ENTITY AS IS DESIGNATED BY LAW. <A]

[A> 22. "COST OF COMPENSATION" MEANS THE AMOUNT THAT AN EMPLOYER MUST PAY TO SECURE COMPENSATION AS CALCULATED IN ACCORDANCE WITH REGULATION OF THE BOARD OR, IN THE ABSENCE OF SUCH REGULATION, BASED ON AVERAGE MARKET RATES FOR A COMPARABLE EMPLOYER. <A]

[A> 23. "SPECIAL DISABILITY FUND ADVISORY COMMITTEE" SHALL MEAN AN ADVISORY COMMITTEE TO THE WORKERS' COMPENSATION BOARD, ACTING BY A MAJORITY THEREOF, SOLELY WITH RESPECT TO THE SPECIAL FUND ENTITLED THE

SPECIAL DISABILITY FUND, COMPOSED OF THE DIRECTOR OF THE BUDGET, THE
COMMISSIONER OF LABOR, THE COMMISSIONER OF TAXATION AND FINANCE, THE
CHAIR OF THE WORKERS' COMPENSATION BOARD, AND THE SUPERINTENDENT OF
INSURANCE. <A]

[*2] Section 2. Paragraph (a) of subdivision 6 of section 15 of the workers' compensation law,
as amended by chapter 924 of the laws of 1990, is amended to read as follows:

(a) Compensation for permanent or temporary total disability due to an accident or disablement
resulting from an occupational disease that occurs, (1) on or after January first, nineteen hundred
seventy-eight, shall not exceed one hundred twenty-five dollars per week, that occurs (2) on or after
July first, nineteen hundred seventy-eight, shall not exceed one hundred eighty dollars per week,
that occurs (3) on or after January first, nineteen hundred seventy-nine, shall not exceed two hun-
dred fifteen dollars per week, that occurs (4) on or after July first, nineteen hundred eighty-three,
shall not exceed two hundred fifty-five dollars per week, that occurs (5) on or after July first, nine-
teen hundred eighty-four, shall not exceed two hundred seventy-five dollars per week, that occurs
(6) on or after July first, nineteen hundred eighty-five, shall not exceed three hundred dollars per
week, that occurs (7) on or after July first, nineteen hundred ninety, shall not exceed three hundred
forty dollars per week; and in the case of temporary total disability shall not be less than thirty dol-
lars per week and in the case of permanent total disability shall not be less than twenty dollars per
week except that if the employee's wages at the time of injury are less than thirty or twenty dollars
per week respectively, he or she shall receive his or her full weekly wages. Compensation for per-
manent or temporary partial disability due to an accident or disablement resulting from an occupa-
tional disease that occurs (1) on or after January first, nineteen hundred seventy-eight, shall not ex-
ceed one hundred five dollars per week, that occurs (2) on or after July first, nineteen hundred
eighty-three, shall not exceed one hundred twenty-five dollars per week, that occurs (3) on or after
July first, nineteen hundred eighty-four, shall not exceed one hundred thirty-five dollars per week,
that occurs (4) on or after July first, nineteen hundred eighty-five, shall not exceed one hundred fifty
dollars per week, that occurs (5) on or after July first, nineteen hundred ninety, shall not exceed two
hundred eighty dollars per week; nor be less than twenty dollars per week; except that if the em-
ployee's wages at the time of injury are less than twenty dollars per week, he or she shall receive his
or her full weekly wages. In no event shall compensation when combined with decreased earnings
or earning capacity exceed the amount of wages which the employee was receiving at the time the
injury occurred. Compensation for permanent or temporary partial disability, or for permanent or
temporary total disability due to an accident or disablement resulting from an occupational disease
that occurs (1) on or after July first, nineteen hundred ninety-one and prior to July first, nineteen
hundred ninety-two, shall not exceed three hundred fifty dollars per week; (2) on or after July first,
nineteen hundred ninety-two, shall not exceed four hundred dollars per week; nor be less than forty
dollars per week except that if the employee's wages at the time of injury are less than forty dollars
per week, the employee shall receive his or her full wages. [A> COMPENSATION FOR PERMA-
NENT OR TEMPORARY PARTIAL DISABILITY, OR FOR PERMANENT OR TEMPORARY
TOTAL DISABILITY DUE TO AN ACCIDENT OR DISABLEMENT RESULTING FROM AN
OCCUPATIONAL DISEASE THAT OCCURS (1) ON OR AFTER JULY FIRST, TWO THOU-
SAND SEVEN SHALL NOT EXCEED FIVE HUNDRED DOLLARS PER WEEK, (2) ON OR
AFTER JULY FIRST, TWO THOUSAND EIGHT SHALL NOT EXCEED FIVE HUNDRED
FIFTY DOLLARS PER WEEK, (3) ON OR AFTER JULY FIRST, TWO THOUSAND NINE
SHALL NOT EXCEED SIX HUNDRED DOLLARS PER WEEK, AND (4) ON OR AFTER

JULY FIRST, TWO THOUSAND TEN, AND ON OR AFTER JULY FIRST OF EACH SUC-
CEEDING YEAR, SHALL NOT EXCEED TWO-THIRDS OF THE NEW YORK STATE AV-
ERAGE WEEKLY WAGE FOR THE YEAR IN WHICH IT IS REPORTED. COMPENSATION
FOR PERMANENT OR TEMPORARY PARTIAL DISABILITY, OR FOR PERMANENT OR
TEMPORARY TOTAL DISABILITY DUE TO AN ACCIDENT OR DISABLEMENT RESULT-
ING FROM AN OCCUPATIONAL DISEASE THAT OCCURS ON OR AFTER JULY FIRST,
TWO THOUSAND SEVEN SHALL NOT BE LESS THAN ONE HUNDRED DOLLARS PER
WEEK EXCEPT THAT IF THE EMPLOYEE'S WAGES AT THE TIME OF INJURY ARE LESS
THAN ONE HUNDRED DOLLARS PER WEEK, THE EMPLOYEE SHALL RECEIVE HIS OR
HER FULL WAGES. <A] In no event shall compensation when combined with decreased earnings
or earning capacity exceed the amount of wages the employee was receiving at the time the injury
occurred.

   [*3]  Section 3. Subdivision 5 of section 16 of the workers' compensation law, as amended by
chapter 924 of the laws of 1990, is amended to read as follows:

   5. Any [A> EXCESS OF WAGES OVER: (1) SEVEN HUNDRED FIFTY DOLLARS SHALL
NOT BE TAKEN INTO ACCOUNT IN COMPUTING COMPENSATION UNDER THIS SEC-
TION IN CASES WHERE THE DEATH OCCURS ON OR AFTER JULY FIRST, TWO THOU-
SAND SEVEN, (2) EIGHT HUNDRED TWENTY-FIVE DOLLARS SHALL NOT BE TAKEN
INTO ACCOUNT IN COMPUTING COMPENSATION UNDER THIS SECTION IN CASES
WHERE THE DEATH OCCURS ON OR AFTER JULY FIRST, TWO THOUSAND EIGHT, (3)
NINE HUNDRED DOLLARS SHALL NOT BE TAKEN INTO ACCOUNT IN COMPUTING
COMPENSATION UNDER THIS SECTION IN CASES WHERE THE DEATH OCCURS ON
OR AFTER JULY FIRST, TWO THOUSAND NINE, AND (4) WHERE THE DEATH OCCURS
ON OR AFTER JULY FIRST, TWO THOUSAND TEN, OR WHEN THE DEATH OCCURS ON
OR AFTER JULY FIRST OF EACH SUCCEEDING YEAR, AN AMOUNT EQUAL TO THE
NEW YORK STATE AVERAGE WEEKLY WAGE FOR THE YEAR IN WHICH IT IS RE-
PORTED SHALL NOT BE TAKEN INTO ACCOUNT IN COMPUTING COMPENSATION
UNDER THIS SECTION. ANY <A] excess of wages over five hundred ten dollars and five cents
per week shall not be taken into account in computing compensation under this section in cases
where the death occurs on or after July first, nineteen hundred ninety, nor shall any excess of wages
over five hundred twenty-five dollars per week be taken into account in computing compensation
pursuant to this section in cases where death occurs on or after July first, nineteen hundred ninety-
one, nor shall any excess of wages over six hundred dollars per week be taken into account in com-
puting compensation pursuant to this section in cases where death occurs on or after July first, nine-
teen hundred ninety-two; nor shall any excess of wages over three hundred eighty-two dollars and
fifty cents per week be taken into account in computing compensation under this section in cases
where the death occurs on or after July first, nineteen hundred eighty-three, nor shall any excess of
wages over four hundred twelve dollars and fifty cents per week be taken into account in computing
compensation under this section in cases where the death occurs on or after July first, nineteen hun-
dred eighty-four, nor shall any excess of wages over four hundred fifty dollars per week be taken
into account in computing compensation under this section in cases where the death occurs on or
after July first, nineteen hundred eighty-five; nor shall any excess of wages over one hundred
eighty-seven dollars and fifty cents per week on or after January first, nineteen hundred seventy-
eight or over two hundred seventy dollars per week on or after July first, nineteen hundred seventy-
eight or over three hundred twenty-two dollars and fifty cents per week on or after January first,

nineteen hundred seventy-nine, and prior to July first, nineteen hundred eighty-three, be taken into account in computing compensation under this section nor shall any excess of wages over six hundred and seventeen dollars and fifty cents a month be taken into account in computing compensation under this section in cases where the death occurred on or after July first, nineteen hundred seventy-four, and prior to January first, nineteen hundred seventy-eight, nor shall any excess of wages over five hundred and twenty dollars a month be taken into account in computing compensation in cases where death occurred on or after July first, nineteen hundred seventy and prior to July first, nineteen hundred seventy-four, nor shall any excess of wages over four hundred and fifty-five dollars a month be taken into account in computing compensation in cases where death occurred on or after July first, nineteen hundred sixty-eight and prior to July first, nineteen hundred seventy, nor shall any excess of wages over three hundred and ninety dollars a month be taken into account in computing compensation in cases where death occurred on or after July first, nineteen hundred sixty-five and prior to July first, nineteen hundred sixty-eight, nor shall any excess of wages over three hundred and fifty-seven dollars and fifty cents a month be taken into account in computing compensation in cases where death occurred on or after July first, nineteen hundred sixty-two and prior to July first, nineteen hundred sixty-five, nor shall any excess of wages over three hundred and twenty-five dollars a month be taken into account in computing compensation in cases where death occurred on or after July first, nineteen hundred sixty and prior to July first, nineteen hundred sixty-two, nor shall any excess of wages over two hundred and ninety-two dollars and fifty cents a month be taken into account in computing compensation where death occurred on or after July first, nineteen hundred fifty-eight and prior to July first, nineteen hundred sixty, nor shall any excess of wages over two hundred and sixty dollars a month be taken into account in computing compensation where death occurred on or after July first, nineteen hundred fifty-four and prior to July first, nineteen hundred fifty-eight, nor shall any excess of wages over two hundred and twenty-seven dollars and fifty cents a month be taken into account in computing compensation where death occurred on or after July first, nineteen hundred forty-eight and prior to July first, nineteen hundred fifty-four, nor shall any excess of wages over one hundred and eighty-two dollars a month be taken into account in computing compensation where the death occurred on or after June first, nineteen hundred forty-six and prior to July first, nineteen hundred forty-eight. When death occurred on or after July first, nineteen hundred forty-eight and prior to January first, nineteen hundred seventy-eight, computing compensation to the widow or widower and children of a deceased employee in no event shall wages be deemed to be less than one hundred and thirty dollars a month. All questions of dependency shall be determined as of the time of the accident. When death occurred on or after January first, nineteen hundred seventy-eight, in no event shall wages be deemed to be less than forty-five dollars a week in computing compensation to the widow or widower and/or children of the deceased employee.

[*4]  Section 4. Paragraph w of subdivision 3 of section 15 of the workers' compensation law, as relettered by chapter 286 of the laws of 1970, is amended to read as follows:

w. Other cases. In all other cases **[D>** in this class **<D]** of **[A>** PERMANENT PARTIAL **<A]** disability, the compensation shall be sixty-six and two-thirds **[D>** per centum **<D] [A>** PERCENT **<A]** of the difference between **[D>** his **<D] [A>** THE INJURED EMPLOYEE' S **<A]** average weekly wages and his **[A>** OR HER **<A]** wage-earning capacity thereafter in the same employment or otherwise **[D>** , **<D]** . **[A>** COMPENSATION UNDER THIS PARAGRAPH SHALL BE **<A]** payable during the continuance of such **[A>** PERMANENT **<A]** partial disability, but subject to reconsideration of the degree of such impairment by the board on its own motion or upon applica-

tion of any party in interest **[A>** HOWEVER, ALL COMPENSATION PAYABLE UNDER THIS PARAGRAPH SHALL NOT EXCEED (I) FIVE HUNDRED TWENTY-FIVE WEEKS IN CASES IN WHICH THE LOSS OF WAGE-EARNING CAPACITY IS GREATER THAN NINETY-FIVE PERCENT; (II) FIVE HUNDRED WEEKS IN CASES IN WHICH THE LOSS OF WAGE-EARNING CAPACITY IS GREATER THAN NINETY PERCENT BUT NOT MORE THAN NINETY-FIVE PERCENT; (III) FOUR HUNDRED SEVENTY-FIVE WEEKS IN CASES IN WHICH THE LOSS OF WAGE-EARNING CAPACITY IS GREATER THAN EIGHTY-FIVE PERCENT BUT NOT MORE THAN NINETY PERCENT; (IV) FOUR HUNDRED FIFTY WEEKS IN CASES IN WHICH THE LOSS OF WAGE-EARNING CAPACITY IS GREATER THAN EIGHTY PERCENT BUT NOT MORE THAN EIGHTY-FIVE PERCENT; (V) FOUR HUNDRED TWENTY-FIVE WEEKS IN CASES IN WHICH THE LOSS OF WAGE-EARNING CAPACITY IS GREATER THAN SEVENTY-FIVE PERCENT BUT NOT MORE THAN EIGHTY PERCENT; (VI) FOUR HUNDRED WEEKS IN CASES IN WHICH THE LOSS OF WAGE-EARNING CAPACITY IS GREATER THAN SEVENTY PERCENT BUT NOT MORE THAN SEVENTY-FIVE PERCENT; (VII) THREE HUNDRED SEVENTY-FIVE WEEKS IN CASES IN WHICH THE LOSS OF WAGE-EARNING CAPACITY IS GREATER THAN SIXTY PERCENT BUT NOT MORE THAN SEVENTY PERCENT; (VIII) THREE HUNDRED FIFTY WEEKS IN CASES IN WHICH THE LOSS OF WAGE-EARNING CAPACITY IS GREATER THAN FIFTY PERCENT BUT NOT MORE THAN SIXTY PERCENT; (IX) THREE HUNDRED WEEKS IN CASES IN WHICH THE LOSS OF WAGE-EARNING CAPACITY IS GREATER THAN FORTY PERCENT BUT NOT MORE THAN FIFTY PERCENT; (X) TWO HUNDRED SEVENTY-FIVE WEEKS IN CASES IN WHICH THE LOSS OF WAGE-EARNING CAPACITY IS GREATER THAN THIRTY PERCENT BUT NOT MORE THAN FORTY PERCENT; (XI) TWO HUNDRED FIFTY WEEKS IN CASES IN WHICH THE LOSS OF WAGE-EARNING CAPACITY IS GREATER THAN FIFTEEN PERCENT BUT NOT MORE THAN THIRTY PERCENT; AND (XII) TWO HUNDRED TWENTY-FIVE WEEKS IN CASES IN WHICH THE LOSS OF WAGE-EARNING CAPACITY IS FIFTEEN PERCENT OR LESS. FOR THOSE CLAIMANTS CLASSIFIED AS PERMANENTLY PARTIALLY DISABLED WHO NO LONGER RECEIVE INDEMNITY PAYMENTS BECAUSE THEY HAVE SURPASSED THEIR NUMBER OF MAXIMUM BENEFIT WEEKS, THE FOLLOWING PROVISIONS WILL APPLY: **<A]**

**[A>** (1) THERE WILL BE A PRESUMPTION THAT MEDICAL SERVICES SHALL CONTINUE NOTWITHSTANDING THE COMPLETION OF THE TIME PERIOD FOR COMPENSATION SET FORTH IN THIS SECTION AND THE BURDEN OF GOING FORWARD AND THE BURDEN OF PROOF WILL LIE WITH THE CARRIER, SELF-INSURED EMPLOYER OR STATE INSURANCE FUND IN ANY APPLICATION BEFORE THE BOARD TO DISCONTINUE OR SUSPEND SUCH SERVICES. MEDICAL SERVICES WILL CONTINUE DURING THE PENDENCY OF ANY SUCH APPLICATION AND ANY APPEALS THERETO. **<A]**

**[A>** (2) THE BOARD IS DIRECTED TO PROMULGATE REGULATIONS THAT ESTABLISH AN INDEPENDENT REVIEW AND APPEAL BY AN OUTSIDE AGENT OR ENTITY OF THE BOARD'S CHOOSING OF ANY ADMINISTRATIVE LAW JUDGE'S DETERMINATION TO DISCONTINUE OR SUSPEND MEDICAL SERVICES BEFORE A FINAL DETERMINATION OF THE BOARD. **<A]**

**[*5]** Section 5. The workers' compensation law is amended by adding a new section 35 to read as follows:

[A> SECTION 35. SAFETY NET. 1. RETURN TO WORK. (A) THE COMMISSIONER OF LABOR WILL ISSUE A REPORT TO THE GOVERNOR, THE SPEAKER OF THE ASSEMBLY, THE MAJORITY LEADER OF THE SENATE, AND THE CHAIRS OF THE LABOR, WAYS AND MEANS AND FINANCE COMMITTEES OF THE ASSEMBLY AND SENATE ON OR BEFORE DECEMBER FIRST, TWO THOUSAND SEVEN, MAKING RECOMMENDATIONS AS TO HOW TO ASSURE THAT WORKERS CATEGORIZED BY THE BOARD AS PERMANENTLY PARTIALLY DISABLED RETURN TO GAINFUL EMPLOYMENT TO THE GREATEST EXTENT PRACTICABLE. SUCH COMMISSIONER WILL CONSIDER ADMINISTRATIVE AND LEGISLATIVE REMEDIES, AND SHALL INCLUDE ESTIMATES OF COST IN THE REPORT. THE REPORT SHALL EXAMINE BEST PRACTICES AND THE LAWS OF OTHER JURISDICTIONS, AS WELL AS ANY RELEVANT PROGRAMS AUTHORIZED BY NEW YORK LAW. THE REPORT SHALL ADDITIONALLY EXAMINE RETURN TO WORK PRACTICES AS IMPLEMENTED BY CARRIERS, THE STATE INSURANCE FUND, EMPLOYERS, AND THE BOARD. IT SHALL ALSO EXAMINE THE RELATIONSHIP OF VOCATIONAL REHABILITATION TO ULTIMATE RETURN TO WORK. <A]

[A> (B) THE COMMISSIONER OF LABOR WILL BE ASSISTED BY AN ADVISORY COUNCIL CONSTITUTED OF SIX PERSONS APPOINTED BY THE GOVERNOR AS FOLLOWS: <A]

[A> (I) A REPRESENTATIVE OF ORGANIZED LABOR APPOINTED UPON RECOMMENDATION OF THE NEW YORK STATE AMERICAN FEDERATION OF LABOR-CONGRESS OF INDUSTRIAL ORGANIZATIONS; <A]

[A> (II) A REPRESENTATIVE OF THE BUSINESS COMMUNITY APPOINTED UPON RECOMMENDATION OF THE BUSINESS COUNCIL OF NEW YORK STATE, INCORPORATED; <A]

[A> (III) ONE PERSON UPON RECOMMENDATION OF THE MAJORITY LEADER OF THE SENATE; <A]

[A> (IV) ONE PERSON UPON RECOMMENDATION OF THE SPEAKER OF THE ASSEMBLY; AND <A]

[A> (V) TWO OTHER PERSONS IN THE GOVERNOR'S DISCRETION. <A]

[A> 2. TOTAL INDUSTRIAL DISABILITY. NO PROVISION OF THIS ARTICLE SHALL IN ANY WAY BE READ TO DEROGATE OR IMPAIR CURRENT OR FUTURE CLAIMANTS' EXISTING RIGHTS TO APPLY AT ANY TIME TO OBTAIN THE STATUS OF TOTAL INDUSTRIAL DISABILITY UNDER CURRENT CASE LAW. <A]

[A> 3. EXTREME HARDSHIP REDETERMINATION. IN CASES WHERE THE LOSS OF WAGEEARNING CAPACITY IS GREATER THAN EIGHTY PERCENT, A CLAIMANT MAY REQUEST, WITHIN THE YEAR PRIOR TO THE SCHEDULED EXHAUSTION OF INDEMNITY BENEFITS UNDER PARAGRAPH W OF SUBDIVISION THREE OF SECTION FIFTEEN OF THIS ARTICLE, THAT THE BOARD RECLASSIFY THE CLAIMANT TO PERMANENT TOTAL DISABILITY OR TOTAL INDUSTRIAL DISABILITY DUE TO FACTORS REFLECTING EXTREME HARDSHIP. <A]

[A> 4. ANNUAL SAFETY NET REPORTING. THE COMMISSIONER OF LABOR, IN CONJUNCTION WITH THE BOARD AND THE SUPERINTENDENT OF INSURANCE,

SHALL TRACK ALL CLAIMANTS WHO HAVE BEEN AWARDED PERMANENT PARTIAL DISABILITY STATUS AND REPORT ANNUALLY ON DECEMBER FIRST, BEGINNING IN TWO THOUSAND EIGHT, TO THE GOVERNOR, THE SPEAKER OF THE ASSEMBLY, THE MAJORITY LEADER OF THE SENATE, AND THE CHAIRS OF THE LABOR, WAYS AND MEANS AND FINANCE COMMITTEES OF THE ASSEMBLY AND SENATE: <A]

[A> (I) THE NUMBER OF SAID CLAIMANTS WHO HAVE: <A]

[A> (1) RETURNED TO GAINFUL EMPLOYMENT; <A]

[A> (2) BEEN RECATEGORIZED AS BEING TOTALLY INDUSTRIALLY DISABLED; <A]

[A> (3) REMAIN SUBJECT TO DURATION LIMITATIONS SET FORTH IN PARAGRAPH W OF SUBDIVISION THREE OF SECTION FIFTEEN OF THIS ARTICLE; AND <A]

[A> (4) NOT RETURNED TO WORK, AND WHOSE INDEMNITY PAYMENTS HAVE EXPIRED. <A]

[A> (II) THE ADDITIONAL STEPS THE COMMISSIONER CONTEMPLATES ARE NEC-ESSARY TO MINIMIZE THE NUMBER OF WORKERS WHO HAVE NEITHER RETURNED TO WORK NOR BEEN RECATEGORIZED FROM PERMANENT PARTIAL DISABILITY. <A]

[*6] Section 6. Subdivision 2 of section 50 of the workers' compensation law, as amended by chapter 605 of the laws of 1946, is amended to read as follows:

2. By insuring and keeping insured the payment of such compensation with any stock corpora-tion, mutual corporation or reciprocal insurer authorized to transact the business of [D> workmen's <D] [A> WORKERS' <A] compensation insurance in this state [A> THROUGH A POLICY IS-SUED UNDER THE LAW OF THIS STATE <A] .

[*7] Section 7. Section 52 of the workers' compensation law, as amended by chapter 419 of the laws of 1961, subdivisions 1 and 5 as amended by chapter 924 of the laws of 1990, subdivision 2 as amended by chapter 460 of the laws of 1991 and subdivision 3 as amended by chapter 845 of the laws of 1965, is amended to read as follows:

Section 52. Effect of failure to secure compensation. 1. (a) Failure to secure the payment of compensation [A> FOR FIVE OR LESS EMPLOYEES WITHIN A TWELVE MONTH PERIOD <A] shall constitute a misdemeanor, [A> AND IS <A] punishable by a fine of not less than [D> five hundred <D] [A> ONE THOUSAND <A] nor more than [D> two <D] [A> FIVE <A] thousand [D> five hundred <D] dollars [D> or imprisonment for not more than one year, or both <D] . [A> FAILURE TO SECURE THE PAYMENT OF COMPENSATION FOR MORE THAN FIVE EM-PLOYEES WITHIN A TWELVE MONTH PERIOD SHALL CONSTITUTE A CLASS E FEL-ONY, AND IS PUNISHABLE BY A FINE OF NOT LESS THAN FIVE THOUSAND DOLLARS NOR MORE THAN FIFTY THOUSAND DOLLARS IN ADDITION TO ANY OTHER PENAL-TIES OTHERWISE PROVIDED BY LAW. IT SHALL BE AN AFFIRMATIVE DEFENSE TO ANY CRIMINAL PROSECUTION UNDER THIS SECTION THAT THE EMPLOYER TOOK REASONABLE STEPS TO SECURE COMPENSATION. <A]

(b) Where any person has previously been convicted of a failure to secure the payment of com-pensation within the preceding five years, upon conviction for a [D> second <D] [A> SUBSE-

QUENT <A] violation such person shall be [A> GUILTY OF A CLASS D FELONY, AND <A] fined not less than [D> one <D] [A> TEN <A] thousand nor more than [D> five <D] [A> FIFTY <A] thousand dollars in addition to any other penalties including fines otherwise provided by law [D> , and upon conviction for a third or subsequent violation such person may be fined up to seven thousand five hundred dollars in addition to any other penalties including fines otherwise provided by law <D] .

(c) Where the employer is a corporation, the president, secretary and treasurer thereof shall be liable for failure to secure the payment of compensation under this section. [A> IT SHALL BE AN AFFIRMATIVE DEFENSE TO ANY ACTION AGAINST ANY OFFICER OF A CORPORA-TION UNDER THIS SECTION THAT THE OFFICER TOOK REASONABLE STEPS TO EN-SURE THAT THE CORPORATION SECURED COMPENSATION, THAT PROPER INTER-NAL PROCEDURES WERE IN EFFECT TO DO SO, AND THAT PROPER INTERNAL CON-TROLS EXISTED TO MONITOR COMPLIANCE WITH SAID PROCEDURES. <A]

[A> (D) IF AT ANY TIME AN EMPLOYER INTENTIONALLY AND MATERIALLY UN-DERSTATES OR CONCEALS PAYROLL, OR INTENTIONALLY AND MATERIALLY MIS-REPRESENTS OR CONCEALS EMPLOYEE DUTIES SO AS TO AVOID PROPER CLASSIFI-CATION FOR CALCULATION OF PREMIUM PAID TO SECURE COMPENSATION, OR IN-TENTIONALLY AND MATERIALLY MISREPRESENTS OR CONCEALS INFORMATION PERTINENT TO THE CALCULATION OF PREMIUM PAID TO SECURE COMPENSATION, SUCH EMPLOYER SHALL BE DEEMED TO HAVE FAILED TO SECURE COMPENSATION AND SHALL BE SUBJECT TO THE SANCTIONS APPLICABLE TO THIS SECTION. <A]

[A> (E) A STOP-WORK ORDER ISSUED BECAUSE AN EMPLOYER IS DEEMED TO HAVE FAILED TO SECURE COMPENSATION UNDER SECTION ONE HUNDRED FORTY-ONE-A OF THIS CHAPTER SHALL HAVE NO EFFECT UPON AN EMPLOYER'S OR CAR-RIER'S DUTY TO PROVIDE BENEFITS UNDER THIS CHAPTER OR UPON ANY OF THE EMPLOYER'S OR CARRIER'S RIGHTS AND DEFENSES. <A]

2. All fines imposed under this chapter, except as herein otherwise provided, shall be paid di-rectly and immediately by the officer collecting the same to the chairman, and shall be paid by him into the uninsured employers' fund created under section twenty-six-a of this chapter, provided, however, that all such fines collected by justices of towns and villages shall be paid to the state comptroller in accordance with the provisions of section twenty-seven of the town law and section 4-410 of the village law respectively.

3. In any prosecution hereunder the failure of the employer to file with the chairman, within ten days after demand, a statement subscribed by the employer and affirmed by him as true under the penalties of perjury showing specifically (a) the name of the stock company, mutual corporation or reciprocal insurer in which such employer is insured and the number and the date of issuance and term of such policy of insurance, or (b) that the said employer is insured with the state fund in which case he shall give the number of such policy of insurance, the date of issuance and term thereof, or (c) that the said employer has been authorized to do business as a self-insurer pursuant to section fifty of [D> the workmen's compensation law <D] [A> THIS ARTICLE, <A] giving the date of said authorization, or (d) a legal reason, if any, why said employer is not required to secure compensation, shall constitute prima facie evidence that the employer has failed to secure compen-sation as herein required. The statement to be filed herein shall be subscribed by the employer or if the employer is a corporation by one of the officers herein named in which he shall state that he has

2007 N.Y. ALS 6, *; 2007 N.Y. LAWS 6;
2007 N.Y. A.N. 6163

read such statement subscribed by him and knows the contents thereof and that same is true of his own knowledge.

4. If, however, there has been an accident and the board shall have made an award against the employer as a non-insured employer, the making of such award, except in a case where the employer had secured compensation insurance which was in effect at the time of the accident but the carrier later became insolvent, shall constitute prima facie evidence of an employment by the employer of an employee in an occupation in which the said employer was required to carry compensation and of the failure of the employer to secure the payment of **[D>** workmen's **<D] [A>** WORKERS' **<A]** compensation on the date of the accident involved in said award. A certified copy of such award shall be received as competent evidence of the making thereof in any criminal prosecution hereunder.

5. The chair, upon finding that an employer has failed for a period of not less than ten consecutive days to make the provision for payment of compensation required by section fifty of this **[D>** chapter **<D] [A>** ARTICLE, **<A]** may impose upon such employer, in addition to all other penalties, fines or assessments provided for in this chapter, a penalty of **[D>** two hundred fifty **<D] [A>** ONE THOUSAND **<A]** dollars for each ten day period of non-compliance or a sum not in excess of two **[D>** percent of **<D] [A>** TIMES THE COST OF COMPENSATION FOR **<A]** its payroll for the period of such failure, which sum shall be paid into the uninsured employers' fund created under section twenty-six-a of this chapter. **[A>** WHEN AN EMPLOYER FAILS TO PROVIDE BUSINESS RECORDS SUFFICIENT TO ENABLE THE CHAIR TO DETERMINE THE EMPLOYER'S PAYROLL FOR THE PERIOD REQUESTED FOR THE CALCULATION OF THE PENALTY PROVIDED IN THIS SECTION, THE IMPUTED WEEKLY PAYROLL FOR EACH EMPLOYEE, CORPORATE OFFICER, SOLE PROPRIETOR, OR PARTNER SHALL BE THE NEW YORK STATE AVERAGE WEEKLY WAGE, MULTIPLIED BY 1.5. **<A]** Where the employer is a corporation, the president, secretary and treasurer thereof shall be liable for the penalty. If the employer shall within thirty days after notice of the imposition of a penalty by the chair pursuant to this subdivision make an application in affidavit form for a redetermination review of such penalty the chairman shall make a decision in writing on the issues raised on such application.

**[*8]** Section 8. Section 131 of the workers' compensation law, as amended by chapter 135 of the laws of 1998, is amended to read as follows:

Section 131. Payroll records. (1) Every employer subject to the provisions of this chapter shall keep a true and accurate record of the number of his **[A>** OR HER **<A]** employees **[A>** , THE CLASSIFICATION OF EMPLOYEES, INFORMATION REGARDING EMPLOYEE ACCIDENTS **<A]** and the wages paid by him **[A>** OR HER **<A]** for a period of four years after each entry therein, which records shall be open to inspection at any time, and as often as may be necessary to verify the same by investigators of the board, by the authorized auditors, accountants or inspectors of the carrier with whom the employer is insured, or by the authorized auditors, accountants or inspectors of any workers' compensation insurance rating board or bureau operating under the authority of the insurance law and of which board or bureau such carrier is a member **[A>** OR THE GROUP TRUST OF WHICH THE EMPLOYER IS A MEMBER **<A]** . Any and all records required by law to be kept by such employer upon which the employer makes or files a return concerning wages paid to employees shall form part of the records described in this section and shall be open to inspection in the same manner as provided in this section. Any employer who shall fail to keep such records, who shall willfully fail to furnish such record as required in this section or who

shall falsify any such records, shall be guilty of a misdemeanor **[A>** AND SUBJECT TO A FINE OF NOT LESS THAN FIVE NOR MORE THAN TEN THOUSAND DOLLARS IN ADDITION TO ANY OTHER PENALTIES OTHERWISE PROVIDED BY LAW, EXCEPT THAT ANY SUCH EMPLOYER THAT HAS PREVIOUSLY BEEN SUBJECT TO CRIMINAL PENALTIES UNDER THIS SECTION WITHIN THE PRIOR TEN YEARS SHALL BE GUILTY OF A CLASS E FELONY, AND SUBJECT TO A FINE OF NOT LESS THAN TEN NOR MORE THAN TWENTY-FIVE THOUSAND DOLLARS IN ADDITION TO ANY PENALTIES OTH-ERWISE PROVIDED BY LAW **<A]** .

(2) Employers subject to **[D>** subdivision **<D] [A>** SUBSECTION **<A]** (e) of section two thousand three hundred four of the insurance law and subdivision two of section eighty-nine of this chapter shall keep a true and accurate record of hours worked for all construction classification employees. The willful failure to keep such record, or the knowing falsification of any such record, may be prosecuted as insurance fraud in accordance with the provisions of section 176.05 of the penal law.

**[A>** (3) THE CHAIR, UPON FINDING THAT AN EMPLOYER HAS FAILED TO KEEP TRUE AND ACCURATE RECORDS AS REQUIRED BY THIS SECTION, MAY IMPOSE UPON SUCH EMPLOYER, IN ADDITION TO ALL OTHER PENALTIES, FINES OR AS-SESSMENTS PROVIDED FOR IN THIS CHAPTER, ONE THOUSAND DOLLARS FOR EACH TEN DAY PERIOD OF NON-COMPLIANCE OR A SUM NOT IN EXCESS OF TWO TIMES THE COST OF COMPENSATION FOR ITS PAYROLL FOR THE PERIOD OF SUCH VIOLA-TION, WHICH SUM SHALL BE PAID INTO THE UNINSURED EMPLOYERS' FUND CRE-ATED UNDER SECTION TWENTY-SIX-A OF THIS CHAPTER. WHEN AN EMPLOYER FAILS TO PROVIDE BUSINESS RECORDS SUFFICIENT TO ENABLE THE CHAIR TO DE-TERMINE THE EMPLOYER'S PAYROLL FOR THE PERIOD REQUESTED FOR THE CAL-CULATION OF THE PENALTY PROVIDED IN THIS SECTION, THE IMPUTED WEEKLY PAYROLL FOR EACH EMPLOYEE, CORPORATE OFFICER, SOLE PROPRIETOR, OR PARTNER SHALL BE THE NEW YORK STATE AVERAGE WEEKLY WAGE, MULTIPLIED BY 1.5. WHERE THE EMPLOYER IS A CORPORATION, THE CORPORATION AND ANY OF THE FOLLOWING SHALL BE LIABLE FOR THE PENALTY PROVIDED IN THIS SUB-DIVISION: THE PRESIDENT, SECRETARY AND TREASURER. IF THE EMPLOYER SHALL WITHIN THIRTY DAYS AFTER NOTICE OF THE IMPOSITION OF A PENALTY BY THE CHAIR PURSUANT TO THIS SUBDIVISION MAKE AN APPLICATION IN AFFIDAVIT FORM FOR A REDETERMINATION REVIEW OF SUCH PENALTY, THE CHAIR SHALL MAKE A DECISION IN WRITING ON THE ISSUES RAISED ON SUCH APPLICATION. **<A]**

**[*9]** Section 9. Subdivision 4 of section 114 of the workers' compensation law, as amended by chapter 635 of the laws of 1996, is amended and a new subdivision 5 is added to read as follows:

4. Consistent with the provisions of the criminal procedure law, in any prosecution alleging a violation of subdivision one, two or three of this section, **[A>** OR SECTIONS FIFTY-TWO AND ONE HUNDRED THIRTY-ONE OF THIS CHAPTER, **<A]** in which the act or acts alleged may also constitute a violation of the penal or other law, the prosecuting official may charge a person pursuant to the provisions of this section and in the same accusatory instrument with a violation of such other law.

**[A>** 5. A PERSON (A) WHO IS CONVICTED OF A SECOND OR SUBSEQUENT OF-FENSE UNDER THIS SECTION WITHIN TEN YEARS OF THE PRIOR CONVICTION, OR (B)

WHO VIOLATES ANY PROVISION OF THIS SECTION CONCERNING TWO OR MORE CLAIMANTS, SHALL BE GUILTY OF A CLASS D FELONY. <A]

[*10] Section 10. Section 114-a of the workers' compensation law is amended by adding a new subdivision 3 to read as follows:

[A> 3. IF THE BOARD OR ANY COURT HAVING JURISDICTION OVER PROCEED-INGS IN RESPECT OF ANY CLAIM FOR COMPENSATION DETERMINES THAT THE PROCEEDINGS IN RESPECT OF SUCH CLAIM, INCLUDING ANY APPEALS, HAVE BEEN INSTITUTED OR CONTINUED WITHOUT REASONABLE GROUND: <A]

[A> (I) THE COST OF SUCH PROCEEDINGS SHALL BE ASSESSED AGAINST THE PARTY WHO HAS SO INSTITUTED OR CONTINUED THE PROCEEDINGS, WHICH SHALL BE PAYABLE TO THE BOARD FOR ADMINISTRATIVE EXPENSES PURSUANT TO SEC-TION ONE HUNDRED FIFTY-ONE OF THIS CHAPTER; <A]

[A> (II) REASONABLE ATTORNEYS' FEES SHALL BE ASSESSED AGAINST AN AT-TORNEY OR LICENSED REPRESENTATIVE WHO HAS INSTITUTED OR CONTINUED PROCEEDINGS WITHOUT REASONABLE GROUNDS, WHICH ASSESSMENT SHALL BE PAYABLE TO THE BOARD FOR ADMINISTRATIVE EXPENSES PURSUANT TO SECTION ONE HUNDRED FIFTY-ONE OF THIS CHAPTER. FEES AWARDED UNDER THIS PROVI-SION MAY NOT BE RECOUPED FROM THE PARTY; AND <A]

[A> (III) SUCH ASSESSMENTS SHALL BE IN ADDITION TO ANY OTHER PENALTY PERMITTED UNDER THIS CHAPTER. <A]

[*11] Section 11. Section 141 of the workers' compensation law, as amended by chapter 398 of the laws of 1997, is amended to read as follows:

Section 141. General powers and duties of the [D> chairman <D] [A> CHAIR <A] . The [D> chairman <D] [A> CHAIR <A] shall be the administrative head of the workers' compensation board and shall exercise the powers and perform the duties in relation to the administration of this chapter heretofore vested in the commissioner of labor by chapter fifty of the laws of nineteen hundred twenty-one, and acts amendatory thereof, and by this chapter excepting article six thereof, and ex-cept in so far as such powers and duties are vested by this chapter in the workers' compensation board. The [D> chairman <D] [A> CHAIR <A] shall preside at all meetings of the board and shall appoint all committees and panels of the board; shall designate the times and places for the hearing of claims under this chapter and shall perform all administrative functions of the board as in this chapter set forth. The [D> chairman <D] [A> CHAIR, <A] in the name of the board, shall enforce all the provisions of this chapter, and may make administrative regulations and orders providing for the receipt, indexing and examining of all notices, claims and reports, for the giving of notice of hearings and of decisions, for certifying of records, for the fixing of the times and places for the hearing of claims, and for providing for the conduct of hearings and establishing of calendar prac-tice to the extent not inconsistent with the rules of the board. The [D> chairman <D] [A> CHAIR <A] shall issue and may revoke certificates of authorization of physicians, chiropractors and podia-trists as provided in sections thirteen-a, thirteen-k and thirteen- l of this chapter, and licenses for medical bureaus and x-ray and other laboratories under the provisions of section thirteen-c of this chapter, [A> ISSUE STOP WORK ORDERS AS PROVIDED IN SECTION ONE HUNDRED FORTY-ONE-A OF THIS ARTICLE, <A] and shall have and exercise all powers not otherwise provided for herein in relation to the administration of this chapter heretofore expressly conferred

upon the commissioner of labor by any of the provisions of this chapter, or of the labor law. The [D> chairman <D] [A> CHAIR, <A] on behalf of the workers' compensation board, shall enter into the agreement provided for in section one hundred seventy-one-h of the tax law, and shall take such other actions as may be necessary to carry out the agreement provided for in such section for matching beneficiary records of workers' compensation with information provided by employers to the state directory of new hires for the purposes of verifying eligibility for such benefits and for administering workers' compensation.

  [*12] Section 12. The workers' compensation law is amended by adding a new section 141-a to read as follows:

[A> SECTION 141-A. CIVIL ENFORCEMENT. 1. TO INVESTIGATE VIOLATIONS OF SECTIONS FIFTY-TWO AND ONE HUNDRED THIRTY-ONE OF THIS CHAPTER, THE CHAIR OR HIS OR HER DESIGNEES SHALL HAVE THE POWER TO: <A]

[A> (A) ENTER AND INSPECT ANY PLACE OF BUSINESS AT ANY REASONABLE TIME FOR THE PURPOSE OF INVESTIGATING EMPLOYER COMPLIANCE. <A]

[A> (B) EXAMINE AND COPY BUSINESS RECORDS. <A]

[A> (C) ADMINISTER OATHS AND AFFIRMATIONS. <A]

[A> (D) ISSUE AND SERVE SUBPOENAS FOR ATTENDANCE OF WITNESSES OR PRODUCTION OF BUSINESS RECORDS, BOOKS, PAPERS, CORRESPONDENCE, MEMO-RANDA, AND OTHER RECORDS. SUCH SUBPOENAS MAY BE SERVED WITHOUT THE STATE ON ANY DEFENDANT OVER WHOM A NEW YORK COURT WOULD HAVE PER-SONAL JURISDICTION UNDER THE CIVIL PRACTICE LAW AND RULES AS TO THE SUBJECT MATTER UNDER INVESTIGATION, PROVIDED THE INFORMATION OR TES-TIMONY SOUGHT BEARS A REASONABLE RELATIONSHIP TO THE SUBJECT MATTER UNDER INVESTIGATION. <A]

[A> 2. THE CHAIR SHALL SPECIFY BY RULE THE BUSINESS RECORDS THAT EM-PLOYERS MUST MAINTAIN AND PRODUCE TO COMPLY WITH THIS SECTION. <A]

[A> 3. IF A PERSON HAS REFUSED TO OBEY A SUBPOENA, THE CHAIR MAY COM-MENCE AN ACTION IN SUPREME COURT OF ANY COUNTY WHERE VENUE IS PROPER FOR AN ORDER REQUIRING COMPLIANCE WITH THE SUBPOENA. COSTS, INCLUDING REASONABLE ATTORNEY'S FEES, INCURRED BY THE CHAIR TO OBTAIN AND EN-FORCE AN ORDER GRANTING, IN WHOLE OR IN PART, A PETITION TO ENFORCE A SUBPOENA SHALL BE TAXED AGAINST THE SUBPOENAED PARTY. <A]

[A> 4. (A) WHENEVER THE CHAIR DETERMINES THAT AN EMPLOYER WHO IS RE-QUIRED TO SECURE COMPENSATION IN ACCORDANCE WITH THIS CHAPTER HAS FAILED TO SECURE SUCH COMPENSATION, OR WHERE AN EMPLOYER HAS FAILED TO PAY PENALTIES ASSESSED AGAINST IT PURSUANT TO THIS CHAPTER, SUCH FAILURE SHALL BE DEEMED AN IMMEDIATE SERIOUS DANGER TO PUBLIC HEALTH, SAFETY, OR WELFARE SUFFICIENT TO JUSTIFY SERVICE BY THE CHAIR OF A STOP-WORK ORDER ON THE EMPLOYER, REQUIRING THE CESSATION OF ALL BUSINESS OPERATIONS EFFECTIVE IMMEDIATELY, EXCEPT WHERE THE EMPLOYER'S FAILURE CONCERNS ONLY DOMESTIC OR CHILD CARE WORKERS IN HIS OR HER OWN HOUSEHOLD. THE CHAIR MAY ISSUE SUCH ORDER, WHICH SHALL TAKE EFFECT AS

TO A PARTICULAR EMPLOYER WORKSITE WHEN SERVED AT THAT WORKSITE, OR
AS TO ALL EMPLOYER WORKSITES IN THE STATE FOR WHICH THE EMPLOYER IS
NOT IN COMPLIANCE WHEN SERVED ON THE EMPLOYER. A STOP-WORK ORDER
MAY BE SERVED WITH REGARD TO AN EMPLOYER'S WORKSITE BY POSTING A
COPY OF THE STOP-WORK ORDER IN A CONSPICUOUS LOCATION AT THE WORK-
SITE. THE ORDER SHALL REMAIN IN EFFECT UNTIL THE CHAIR DIRECTS THAT THE
STOP-WORK ORDER BE REMOVED, UPON A DETERMINATION THAT THE EMPLOYER
HAS COME INTO COMPLIANCE WITH THE COVERAGE REQUIREMENTS OF THIS
CHAPTER AND HAS PAID ANY PENALTY ASSESSED UNDER THIS CHAPTER. IF THE
EMPLOYER SHALL WITHIN THIRTY DAYS AFTER NOTICE OF THE STOPWORK ORDER
MAKE AN APPLICATION IN AFFIDAVIT FORM FOR A REDETERMINATION REVIEW OF
SUCH ORDER THE CHAIR SHALL MAKE A DECISION IN WRITING ON THE ISSUES
RAISED IN SUCH APPLICATION. THE CHAIR MAY DIRECT A CONDITIONAL RELEASE
FROM A STOP-WORK ORDER UPON A FINDING THAT THE EMPLOYER HAS COMPLIED
WITH COVERAGE REQUIREMENTS OF THIS CHAPTER AND HAS AGREED TO REMIT
PERIODIC PAYMENTS OF THE PENALTY PURSUANT TO A PAYMENT AGREEMENT
SCHEDULE WITH THE CHAIR. IF AN AGREEMENT OR ORDER OF CONDITIONAL RE-
LEASE IS ISSUED, FAILURE BY THE EMPLOYER TO MEET ANY TERM OR CONDITION
OF SUCH PAYMENT AGREEMENT SHALL RESULT IN THE IMMEDIATE REINSTATE-
MENT OF THE STOP-WORK ORDER AND THE ENTIRE UNPAID BALANCE OF THE
PENALTY SHALL BECOME IMMEDIATELY DUE. THE CHAIR MAY REQUIRE AN EM-
PLOYER WHO IS FOUND TO HAVE FAILED TO COMPLY WITH THE COVERAGE RE-
QUIREMENTS OF THIS CHAPTER TO FILE WITH THE BOARD, AS A CONDITION OF
RELEASE FROM A STOP-WORK ORDER, PERIODIC REPORTS FOR A PROBATIONARY
PERIOD THAT SHALL NOT EXCEED TWO YEARS, AND THAT DEMONSTRATE THE
EMPLOYER'S CONTINUED COMPLIANCE WITH THIS CHAPTER. THE BOARD SHALL
BY RULE SPECIFY THE REPORTS REQUIRED AND THE TIME FOR FILING UNDER THIS
SUBDIVISION. <A]

[A> (B) A STOP-WORK ORDER ISSUED AGAINST AN EMPLOYER UNDER THIS SEC-
TION SHALL BE IN EFFECT AGAINST ANY NON-COMPLIANT SUBSTANTIALLY-
OWNED AFFILIATED ENTITY. <A]

[A> 5. THE CHAIR MAY FILE A COMPLAINT IN THE SUPREME COURT OF ANY
COUNTY WHERE VENUE IS PROPER: (A) TO ENJOIN ANY EMPLOYER FROM VIOLAT-
ING A STOP-WORK ORDER; OR (B) TO ENJOIN ANY OTHER PRACTICE PROHIBITED
BY SECTION FIFTY-TWO OR ONE HUNDRED THIRTY-ONE OF THIS CHAPTER. IN ANY
ACTION BROUGHT BY THE CHAIR PURSUANT TO THIS SECTION IN WHICH IT PRE-
VAILS, THE COURT MAY AWARD COSTS, INCLUDING THE REASONABLE COSTS OF
INVESTIGATION AND REASONABLE ATTORNEYS' FEES. <A]

[A> 6. ANY JUDGMENT OBTAINED BY THE CHAIR AND ANY PENALTY DUE UN-
DER THIS SECTION SHALL, UNTIL COLLECTED, CONSTITUTE A LIEN UPON THE EN-
TIRE INTEREST OF THE EMPLOYER, LEGAL OR EQUITABLE, IN ANY PROPERTY,
REAL OR PERSONAL, TANGIBLE OR INTANGIBLE; HOWEVER, SUCH LIEN IS SUBOR-
DINATE TO CLAIMS FOR UNPAID WAGES AND ANY PRIOR RECORDED LIENS, AND A
LIEN CREATED BY THIS SECTION IS NOT VALID AGAINST ANY PERSON WHO, SUB-
SEQUENT TO SUCH LIEN AND IN GOOD FAITH AND FOR VALUE, PURCHASES REAL

OR PERSONAL PROPERTY FROM SUCH EMPLOYER OR BECOMES THE MORTGAGEE ON REAL OR PERSONAL PROPERTY OF SUCH EMPLOYER, OR AGAINST A SUBSE-QUENT ATTACHING CREDITOR, UNLESS, WITH RESPECT TO REAL ESTATE OF THE EMPLOYER, A NOTICE OF THE LIEN IS RECORDED IN THE PUBLIC RECORDS OF THE COUNTY WHERE THE REAL ESTATE IS LOCATED, AND WITH RESPECT TO PERSONAL PROPERTY OF THE EMPLOYER, THE NOTICE IS RECORDED WITH THE SECRETARY OF STATE. <A]

[A> 7. IN ANY COURT PROCEEDINGS UNDER THIS SECTION, THE CHAIR SHALL BE REPRESENTED BY THE ATTORNEY GENERAL. <A]

[*13] Section 13. The workers' compensation law is amended by adding a new section 141-b to read as follows:

[A> SECTION 141-B. SUSPENSION AND DEBARMENT. ANY PERSON SUBJECT TO A FINAL ASSESSMENT OF CIVIL FINES OR PENALTIES OR A STOP-WORK ORDER, OR THAT HAS BEEN CONVICTED OF A MISDEMEANOR FOR A VIOLATION OF SECTIONS TWENTY-SIX, FIFTY-TWO OR ONE HUNDRED THIRTY-ONE OF THIS CHAPTER, AND ANY SUBSTANTIALLY- OWNED AFFILIATED ENTITY OF SUCH PERSON, SHALL BE INELIGIBLE TO SUBMIT A BID ON OR BE AWARDED ANY PUBLIC WORK CONTRACT OR SUBCONTRACT WITH THE STATE, ANY MUNICIPAL CORPORATION OR PUBLIC BODY FOR A PERIOD OF ONE YEAR FROM THE FINAL DETERMINATION OR CONVIC-TION. ANY PERSON CONVICTED OF A FELONY UNDER THIS ARTICLE, OR A MISDE-MEANOR UNDER SECTIONS ONE HUNDRED TWENTY-FIVE AND ONE HUNDRED TWENTY-FIVE-A OF THIS CHAPTER SHALL BE INELIGIBLE TO SUBMIT A BID ON OR BE AWARDED ANY PUBLIC WORK CONTRACT OR SUBCONTRACT WITH THE STATE, ANY MUNICIPAL CORPORATION OR PUBLIC BODY FOR A PERIOD OF FIVE YEARS FROM SUCH CONVICTION. <A]

[*14] Section 14. The workers' compensation law is amended by adding a new section 141-c to read as follows:

[A> SECTION 141-C. COORDINATION OF FORMS. THE BOARD, THE COMMIS-SIONER OF LABOR, THE COMMISSIONER OF TAXATION AND FINANCE, THE COM-MISSIONER OF MOTOR VEHICLES, AND THE SUPERINTENDENT OF INSURANCE SHALL CONSULT ON AN ONGOING BASIS TO COORDINATE THE AMENDMENT OF FORMS USED TO GATHER DATA HELPFUL IN IDENTIFYING FRAUD, SO AS TO PRO-MOTE EFFECTIVE USE AND SHARING OF SUCH INFORMATION FOR IDENTIFYING FRAUD IN THE AREA OF WORKERS' COMPENSATION. THROUGH SUCH CONSULTA-TIONS AND OTHER MEANS, THESE AGENCIES SHALL STUDY THE IMPLEMENTATION OF APPROPRIATE PRACTICABLE TECHNOLOGY TO VERIFY THE AUTHENTICITY OF FORMS, INCLUDING CERTIFICATES OF COVERAGE. <A]

[*15] Section 15. The workers' compensation law is amended by adding a new section 114-c to read as follows:

[A> SECTION 114-C. MULTIPLE OFFENSES. ANY PROVISION OF THIS CHAPTER WHICH IMPOSES ADDITIONAL PENALTIES FOR A SECOND OR SUBSEQUENT OF-FENSE SHALL APPLY WHENEVER THE PRIOR OFFENSE WAS COMMITTED BY A SUB-

2007 N.Y. ALS 6, *; 2007 N.Y. LAWS 6;
2007 N.Y. A.N. 6163

STANTIALLY OWNED AFFILIATED ENTITY OF THE PARTY SUBJECT TO PENALTY. <A]

[*16] Section 16. Subdivision 5 of section 136 of the workers' compensation law, as added by chapter 635 of the laws of 1996, is amended to read as follows:

5. Disclosure of information. The inspector general shall not publicly disclose information which is:

(a) a part of an ongoing investigation or prosecution; or

(b) specifically prohibited from disclosure by any other provision of law.

[A> THE DISCLOSURE OF INFORMATION IN ORDER TO COORDINATE INVESTIGA-TIONS WITH THE INSURANCE FRAUDS BUREAU OF THE DEPARTMENT OF INSUR-ANCE, INCLUDING THE UNIT FOR WORKERS' COMPENSATION INSURANCE FRAUDS INVESTIGATIONS WITHIN SUCH INSURANCE FRAUDS BUREAU, AND ANY FRAUDS INVESTIGATIONS UNIT OF THE STATE INSURANCE FUND, TO PROVIDE THE REPORT REQUIRED BY PARAGRAPH (C) OF SUBDIVISION THREE OF THIS SECTION OR TO AP-PRISE THE CHAIR OF ONGOING INVESTIGATIONS SHALL NOT BE CONSIDERED PUB-LIC DISCLOSURE FOR PURPOSES OF THIS SECTION. <A]

[*17] Section 17. Section 406 of the insurance law, as amended by chapter 635 of the laws of 1996, is amended to read as follows:

Section 406. Immunity. In the absence of fraud or bad faith, no person shall be subject to civil liability, and no civil cause of action of any nature shall arise against such person (i) for any infor-mation relating to suspected fraudulent insurance transactions furnished to law enforcement offi-cials, their agents and employees; and (ii) for any information relating to suspected fraudulent in-surance transactions furnished to other persons subject to the provisions of this chapter; and (iii) for any such information furnished in reports to the insurance frauds bureau, its agents or employees or [D> the workers' compensation fraud inspector general <D] [A> ANY STATE AGENCY INVES-TIGATING FRAUD OR MISCONDUCT RELATING TO WORKERS' COMPENSATION IN-SURANCE, <A] its agents or employees. Nor shall the superintendent or any employee of the in-surance frauds bureau, in the absence of fraud or bad faith, be subject to civil liability and no civil cause of action of any nature shall arise against them by virtue of the publication of any report or bulletin related to the official activities of the insurance frauds bureau. Nothing herein is intended to abrogate or modify in any way any common law privilege of immunity heretofore enjoyed by any person.

[*18] Section 18. Paragraph 3 of subsection (e) of section 697 of the tax law, as amended by chapter 748 of the laws of 2005, is amended to read as follows:

(3) Nothing herein shall be construed to prohibit the department, its officers or employees from furnishing information to the office of temporary and disability assistance relating to the payment of the credit for certain household and dependent care services necessary for gainful employment un-der subsection (c) of section six hundred six of this article and the earned income credit under sub-section (d) of section six hundred six of this article, or pursuant to a local law enacted by a city hav-ing a population of one million or more pursuant to subsection (f) of section thirteen hundred ten of this chapter, only to the extent necessary to calculate qualified state expenditures under paragraph seven of subdivision (a) of section four hundred nine of the federal social security act or to docu-

2007 N.Y. ALS 6, *; 2007 N.Y. LAWS 6;
2007 N.Y. A.N. 6163

ment the proper expenditure of federal temporary assistance for needy families funds under section four hundred three of such act. The office of temporary and disability assistance may redisclose such information to the United States department of health and human services only to the extent necessary to calculate such qualified state expenditures or to document the proper expenditure of such federal temporary assistance for needy families funds. Nothing herein shall be construed to prohibit the delivery by the commissioner to a commissioner of jurors, appointed pursuant to section five hundred four of the judiciary law, or, in counties within cities having a population of one million or more, to the county clerk of such county, of a mailing list of individuals to whom income tax forms are mailed by the commissioner for the sole purpose of compiling a list of prospective jurors as provided in article sixteen of the judiciary law. Provided, however, such delivery shall only be made pursuant to an order of the chief administrator of the courts, appointed pursuant to section two hundred ten of the judiciary law. No such order may be issued unless such chief administrator is satisfied that such mailing list is needed to compile a proper list of prospective jurors for the county for which such order is sought and that, in view of the responsibilities imposed by the various laws of the state on the department, it is reasonable to require the commissioner to furnish such list. Such order shall provide that such list shall be used for the sole purpose of compiling a list of prospective jurors and that such commissioner of jurors, or such county clerk, shall take all necessary steps to insure that the list is kept confidential and that there is no unauthorized use or disclosure of such list. Furthermore, nothing herein shall be construed to prohibit the delivery to a taxpayer or his or her duly authorized representative of a certified copy of any return or report filed in connection with his or her tax or to prohibit the publication of statistics so classified as to prevent the identification of particular reports or returns and the items thereof, or the inspection by the attorney general or other legal representatives of the state of the report or return of any taxpayer or of any employer filed under section one hundred seventy-one-h of this chapter, where such taxpayer or employer shall bring action to set aside or review the tax based thereon, or against whom an action or proceeding under this chapter or under this chapter and article eighteen of the labor law has been recommended by the commissioner, the commissioner of labor with respect to unemployment insurance matters, or the attorney general or has been instituted, or the inspection of the reports or returns required under this article by the comptroller or duly designated officer or employee of the state department of audit and control, for purposes of the audit of a refund of any tax paid by a taxpayer under this article, or the furnishing to the state department of labor of unemployment insurance information obtained or derived from quarterly combined withholding, wage reporting and unemployment insurance returns required to be filed by employers pursuant to paragraph four of subsection (a) of section six hundred seventy-four of this article, for purposes of administration of such department's [D> employment security programs, evaluation of employment and training programs for which such department has administrative, reporting, monitoring or evaluating responsibilities <D] [A> UNEMPLOYMENT INSURANCE PROGRAM, EMPLOYMENT SERVICES PROGRAM, FEDERAL AND STATE EMPLOYMENT AND TRAINING PROGRAMS, EMPLOYMENT STATISTICS AND LABOR MARKET INFORMATION PROGRAMS, WORKER PROTECTION PROGRAMS, FEDERAL PROGRAMS FOR WHICH THE DEPARTMENT HAS ADMINISTRATIVE RESPONSIBILITY OR FOR OTHER PURPOSES DEEMED APPROPRIATE BY THE COMMISSIONER OF LABOR CONSISTENT WITH THE PROVISIONS OF THE LABOR LAW, <A] and redisclosure of such information [D> when necessary to enable such department to comply with <D] [A> IN ACCORDANCE WITH <A] the provisions of [D> section <D] [A> SECTIONS <A] five hundred [A> THIRTY-SIX AND FIVE HUNDRED <A] thirty-seven of the labor law or any other applicable law, or the furnishing to the state office of temporary

and disability assistance of information obtained or derived from New York state personal income tax returns as described in paragraph (b) of subdivision two of section one hundred seventy-one-g of this chapter for the purpose of reviewing support orders enforced pursuant to title six-A of article three of the social services law to aid in the determination of whether such orders should be adjusted, or the furnishing of information obtained from the reports required to be submitted by employers regarding newly hired or re-hired employees pursuant to section one hundred seventy-one-h of this chapter to the state office of temporary and disability assistance, the state department of health, the state department of labor and the workers' compensation board for purposes of administration of the child support enforcement program, verification of individuals' eligibility for one or more of the programs specified in subsection (b) of section eleven hundred thirty-seven of the federal social security act and for other public assistance programs authorized by state law, and administration of the state's employment security and workers' compensation programs, and to the national directory of new hires established pursuant to section four hundred fifty-three-A of the federal social security act for the purposes specified in such section, or the furnishing to the state office of temporary and disability assistance of the amount of an overpayment of income tax and interest thereon certified to the comptroller to be credited against past-due support pursuant to section one hundred seventy-one-c of this chapter and of the name and social security number of the taxpayer who made such overpayment, or the disclosing to the commissioner of finance of the city of New York, pursuant to section one hundred seventy-one-l of this chapter, of the amount of an overpayment and interest thereon certified to the comptroller to be credited against a city of New York tax warrant judgment debt and of the name and social security number of the taxpayer who made such overpayment, or the furnishing to the New York state higher education services corporation of the amount of an overpayment of income tax and interest thereon certified to the comptroller to be credited against the amount of a default in repayment of a guaranteed student loan pursuant to section one hundred seventy-one-d of this chapter and of the name and social security number of the taxpayer who made such overpayment, or the furnishing to the state department of health of the information required by subdivision two-a of section two thousand five hundred eleven of the public health law, or the furnishing to the state university of New York or the city university of New York respectively or the attorney general on behalf of such state or city university the amount of an overpayment of income tax and interest thereon certified to the comptroller to be credited against the amount of a default in repayment of a state university loan pursuant to section one hundred seventy-one-e of this chapter and of the name and social security number of the taxpayer who made such overpayment, or the disclosing to a state agency, pursuant to section one hundred seventy-one-f of this chapter, of the amount of an overpayment and interest thereon certified to the comptroller to be credited against a past-due legally enforceable debt owed to such agency and of the name and social security number of the taxpayer who made such overpayment, or the furnishing of employee and employer information obtained through the wage reporting system, pursuant to section one hundred seventy-one-a of this chapter, as added by chapter five hundred forty-five of the laws of nineteen hundred seventy-eight, to the state office of temporary and disability assistance for the purpose of verifying eligibility for and entitlement to amounts of benefits under the social services law or similar law of another jurisdiction, locating absent parents or other persons legally responsible for the support of applicants for or recipients of public assistance and care under the social services law and persons legally responsible for the support of a recipient of services under section one hundred eleven-g of the social services law and, in appropriate cases, establishing support obligations pursuant to the social services law and the family court act or similar provision of law of another jurisdiction for the purpose of evaluating the effect on earnings of participation in employment, training or

other programs designed to promote self-sufficiency authorized pursuant to the social services law by current recipients of public assistance and care and by former applicants and recipients of public assistance and care, (except that with regard to former recipients, information which relates to a particular former recipient shall be provided with client identifying data deleted), and to the state department of labor, or other individuals designated by the commissioner of labor, for the purpose of the administration of such department's [D> employment security programs, public assistance work programs <D] [A> UNEMPLOYMENT INSURANCE PROGRAM, EMPLOYMENT SERVICES PROGRAM, FEDERAL AND STATE EMPLOYMENT AND TRAINING PROGRAMS, EMPLOYMENT STATISTICS AND LABOR MARKET INFORMATION PROGRAMS, WORKER PROTECTION PROGRAMS, FEDERAL PROGRAMS FOR WHICH THE DEPARTMENT HAS ADMINISTRATIVE RESPONSIBILITY <A] or for other purposes deemed appropriate by the commissioner of labor consistent with the provisions of the labor law [D> , as well as for the evaluation of the effect on earnings of participation in training programs with respect to which the department of labor has reporting, monitoring, administration, or evaluation responsibilities <D] , [A> AND REDISCLOSURE OF SUCH INFORMATION IN ACCORDANCE WITH THE PROVISIONS OF SECTIONS FIVE HUNDRED THIRTY-SIX AND FIVE HUNDRED THIRTY-SEVEN OF THE LABOR LAW, <A] or the furnishing of information, which is obtained from the wage reporting system operated pursuant to section one hundred seventy-one-a of this chapter, as added by chapter five hundred forty-five of the laws of nineteen hundred seventy-eight, to the state office of temporary and disability assistance so that it may furnish such information to public agencies of other jurisdictions with which the state office of temporary and disability assistance has an agreement pursuant to paragraph (h) or (i) of subdivision three of section twenty of the social services law, and to the state office of temporary and disability assistance for the purpose of fulfilling obligations and responsibilities otherwise incumbent upon the state department of labor, under section one hundred twenty-four of the federal family support act of nineteen hundred eighty-eight, by giving the federal parent locator service, maintained by the federal department of health and human services, prompt access to such information as required by such act, or to the state department of health to establish eligibility under the child health insurance plan pursuant to subdivision two-a of section two thousand five hundred eleven of the public health law and to verify eligibility for the program for elderly pharmaceutical insurance coverage under title three of article two of the elder law, or to the office of vocational and educational services for individuals with disabilities of the education department, the commission for the blind and visually handicapped and any other state vocational rehabilitation agency, for purposes of obtaining reimbursement from the federal social security administration for expenditures made by such office, commission or agency on behalf of disabled individuals who have achieved economic self-sufficiency or to the higher education services corporation for the purpose of assisting the corporation in default prevention and default collection of federal guaranteed student loans through the federal family education loan program as codified in chapter twenty-eight of title twenty of the United States code; provided, however, that such information shall be limited to the names, social security numbers, home and/or business addresses, and employer names of defaulted or delinquent student loan borrowers.

Provided, however, that with respect to employee information the office of temporary and disability assistance shall only be furnished with the names, social security account numbers and gross wages of those employees who are (A) applicants for or recipients of benefits under the social services law, or similar provision of law of another jurisdiction (pursuant to an agreement under subdivision three of section twenty of the social services law) or, (B) absent parents or other persons legally responsible for the support of applicants for or recipients of public assistance and care under

the social services law or similar provision of law of another jurisdiction (pursuant to an agreement under subdivision three of section twenty of the social services law), or (C) persons legally responsible for the support of a recipient of services under section one hundred eleven-g of the social services law or similar provision of law of another jurisdiction (pursuant to an agreement under subdivision three of section twenty of the social services law), or (D) employees about whom wage reporting system information is being furnished to public agencies of other jurisdictions, with which the state office of temporary and disability assistance has an agreement pursuant to paragraph (h) or (i) of subdivision three of section twenty of the social services law, or (E) employees about whom wage reporting system information is being furnished to the federal parent locator service, maintained by the federal department of health and human services, for the purpose of enabling the state office of temporary and disability assistance to fulfill obligations and responsibilities otherwise incumbent upon the state department of labor, under section one hundred twenty-four of the federal family support act of nineteen hundred eighty-eight, and, only if, the office of temporary and disability assistance certifies to the commissioner that such persons are such applicants, recipients, absent parents or persons legally responsible for support or persons about whom information has been requested by a public agency of another jurisdiction or by the federal parent locator service and further certifies that in the case of information requested under agreements with other jurisdictions entered into pursuant to subdivision three of section twenty of the social services law, that such request is in compliance with any applicable federal law. Provided, further, that where the office of temporary and disability assistance requests employee information for the purpose of evaluating the effects on earnings of participation in employment, training or other programs designed to promote self-sufficiency authorized pursuant to the social services law, the office of temporary and disability assistance shall only be furnished with the quarterly gross wages (excluding any reference to the name, social security number or any other information which could be used to identify any employee or the name or identification number of any employer) paid to employees who are former applicants for or recipients of public assistance and care and who are so certified to the commissioner by the commissioner of the office of temporary and disability assistance. Provided, further, that with respect to employee information, the department of health shall only be furnished with the information required pursuant to subdivision two-a of section two thousand five hundred eleven of the public health law with respect to those children whose eligibility under the child health insurance plan is to be determined pursuant to such subdivision two-a and with respect to those members of any such child's household whose income affects such child's eligibility and who are so certified to the commissioner or by the department of health. Provided, further, that wage reporting information shall be furnished to the office of vocational and educational services for individuals with disabilities of the education department, the commission for the blind and visually handicapped and any other state vocational rehabilitation agency only if such office, commission or agency, as applicable, certifies to the commissioner that such information is necessary to obtain reimbursement from the federal social security administration for expenditures made on behalf of disabled individuals who have achieved self-sufficiency. Reports and returns shall be preserved for three years and thereafter until the commissioner orders them to be destroyed.

[*19] Section 19. Paragraph 1 of subsection (l) of section 697 of the tax law, as amended by chapter 214 of the laws of 1998, is amended to read as follows:

(1) Notwithstanding any provision of law to the contrary, the state department of labor shall furnish to the department information required from employers pursuant to article eighteen of the labor law, and the department shall furnish to the state department of labor, or other individuals desig-

2007 N.Y. ALS 6, *; 2007 N.Y. LAWS 6;
2007 N.Y. A.N. 6163

nated by the commissioner of labor who are engaged in purposes deemed appropriate by the commissioner of labor consistent with the provisions of the labor law, [D> the name, social security number and wages of individuals, and the name and federal employer identification number of employers contained within <D] withholding tax information [D> required from employers <D] [A> OBTAINED OR DERIVED <A] pursuant to part V of this article, or pursuant to equivalent provisions enacted under the authority of article thirty, thirty-A or thirty-B of this chapter [D> or article two-E of the general city law <D] , [A> AND TAXPAYER IDENTIFICATION INFORMATION ACQUIRED UNDER ANY OF THE PROVISIONS OF THIS CHAPTER, <A] for tax administration and employment security [D> and public assistance work <D] program purposes.

[*20] Section 20. Subdivision 1 of section 537 of the labor law, as amended by chapter 346 of the laws of 1948, is amended to read as follows:

1. Use of information. Information acquired from employers or employees pursuant to this article shall be for the exclusive use and information of the commissioner in the discharge of his [A> OR HER <A] duties [D> hereunder <D] [A> UNDER THIS CHAPTER <A] and shall not be open to the public nor be used in any court in any action or proceeding pending therein unless the commissioner is a party to such action or proceeding, [A> OR SUCH ACTION OR PROCEEDING INVOLVES INFORMATION PROVIDED PURSUANT TO PARAGRAPH G OF SUBDIVISION THREE OF THIS SECTION, <A] notwithstanding any other provisions of law. Such information insofar as it is material to the making and determination of a claim for benefits [A> OR TO ADJUDICATING A CLAIM FOR BENEFITS <A] shall be available to the parties affected and, in the commissioner' s discretion, may be made available to the parties affected in connection with effecting placement.

[*21] Section 21. Subdivision 2 of section 537 of the labor law, as amended by chapter 346 of the laws of 1948, is amended to read as follows:

2. [D> Penalties. <D] [A> VIOLATIONS OF THE CONFIDENTIALITY PROVISIONS OF THIS SECTION. <A] Any [D> officer or employee of the state <D] [A> PERSON, <A] who, without authority of the commissioner or as otherwise required by law, shall disclose [D> such <D] information [A> IN VIOLATION OF THE CONFIDENTIALITY PROVISIONS OF THIS SECTION, UPON CONVICTION, <A] shall be guilty of a misdemeanor.

[*22] Section 22. The opening paragraph and paragraph a of subdivision 3 of section 537 of the labor law, as amended by chapter 442 of the laws of 1994, are amended to read as follows:

The commissioner may, however, disclose the information described in [D> subdivision <D] [A> SUBDIVISIONS <A] one [A> AND FOUR <A] of this section under the following circumstances:

a. Federal [D> agencies <D] [A> LAW <A] . The commissioner shall report fully and completely to the appropriate agency of the United States on the effect and administration of this article in the manner prescribed by such agency, and further he or she shall make [A> INFORMATION <A] available, upon request, to any [A> FEDERAL, STATE OR LOCAL <A] agency [D> of the United States charged with the administration of public works or other assistance through public employment, the name, address, ordinary occupation, and employment status of each recipient of unemployment insurance benefits, and a statement of such recipient's right to further benefit under this article. The commissioner may also make the state's records relating to the administration of this article available to the federal railroad retirement board and may furnish, at the expense of such

board, such copies thereof as the federal railroad retirement board deems necessary for its purposes <D] [A> ENTITLED TO SUCH INFORMATION UNDER THE SOCIAL SECURITY ACT OR ANY OTHER FEDERAL LAW IN THE MANNER PRESCRIBED BY SUCH FEDERAL LAW OR ITS IMPLEMENTING REGULATIONS <A] .

[*23] Section 23. Subdivision 3 of section 537 of the labor law is amended by adding a new paragraph g to read as follows:

[A> G. FEDERAL, STATE AND LOCAL AGENCIES. (I) UPON REQUEST TO THE COMMISSIONER, SUCH INFORMATION MAY BE DISCLOSED TO CERTAIN FEDERAL, STATE AND LOCAL AGENCIES. THE COMMISSIONER MAY REQUIRE WRITTEN AGREEMENTS WITH REQUESTING AGENCIES IN A FORM DETERMINED BY THE COMMISSIONER AND CONSISTENT WITH 20 CFR 603 AND OTHER FEDERAL REGULA-TIONS. THE INFORMATION THAT MAY BE DISCLOSED PURSUANT TO THIS PARA-GRAPH SHALL BE DISCLOSED ONLY AFTER THE REQUESTING AGENCY HAS DEM-ONSTRATED, TO THE COMMISSIONER'S SATISFACTION, THAT THE INFORMATION SHALL BE KEPT CONFIDENTIAL, EXCEPT FOR THOSE PURPOSES FOR WHICH IT WAS PROVIDED TO THE REQUESTING AGENCY, AND THAT THE REQUESTING AGENCY HAS SECURITY SAFEGUARDS IN PLACE TO PREVENT THE UNAUTHORIZED DISCLO-SURE OF SUCH INFORMATION. <A]

[A> (II) THE INFORMATION DISCLOSED PURSUANT TO THIS PARAGRAPH MAY BE DISCLOSED TO THE FOLLOWING AGENCIES TO BE USED EXCLUSIVELY FOR THE FOLLOWING LEGITIMATE GOVERNMENTAL PURPOSES: <A]

[A> (1) ANY FEDERAL, STATE OR LOCAL AGENCY IN THE INVESTIGATION OF FRAUD OR MISUSE OF PUBLIC FUNDS; <A]

[A> (2) ANY STATE OR UNITED STATES TERRITORIAL WORKFORCE AGENCY, LO-CAL WORKFORCE INVESTMENT BOARD AND ITS AGENTS, AND ONE-STOP OPERAT-ING PARTNER RECEIVING FUNDS UNDER THE WORKFORCE INVESTMENT ACT OF 1998 FOR PROGRAM PERFORMANCE PURPOSES AND OTHER LEGITIMATE PRO-GRAMMATIC PURPOSES AUTHORIZED BY THE COMMISSIONER; <A]

[A> (3) THE UNITED STATES DEPARTMENT OF LABOR OR ITS AGENTS, AS RE-QUIRED BY LAW, OR IN CONNECTION WITH THE REQUIREMENTS IMPOSED AS A RE-SULT OF RECEIVING FEDERAL ADMINISTRATIVE FUNDING; <A]

[A> (4) STATE AND LOCAL ECONOMIC DEVELOPMENT AGENCIES, WHERE SUCH INFORMATION IS NECESSARY TO CARRY OUT THE STATUTORY FUNCTIONS OF SUCH AGENCIES, SHALL RECEIVE THE EMPLOYER'S NAME, ADDRESS AND INDUS-TRY CODE RECEIVED FROM THE REGISTRATION OF EMPLOYERS; AND <A]

[A> (5) THE WORKERS' COMPENSATION BOARD, THE STATE INSURANCE FUND AND THE STATE INSURANCE DEPARTMENT, FOR PURPOSES OF DETERMINING COM-PLIANCE WITH THE COVERAGE OF WORKERS' COMPENSATION AND DISABILITY IN-SURANCE. <A]

[*24] Section 24. Subdivision 4 of section 537 of the labor law, as amended by chapter 724 of the laws of 2006, is amended to read as follows:

4. Wage reporting information obtained by the department from the state department of taxation and finance pursuant to subdivision four of section one hundred seventy-one-a of the tax law, **[A> AS ADDED BY CHAPTER FIVE HUNDRED FORTY-FIVE OF THE LAWS OF NINETEEN HUNDRED SEVENTY-EIGHT, AND INFORMATION OBTAINED OR DERIVED FROM QUARTERLY COMBINED WITHHOLDING, WAGE REPORTING AND UNEMPLOYMENT INSURANCE RETURNS REQUIRED TO BE FILED BY EMPLOYERS PURSUANT TO PARAGRAPH FOUR OF SUBSECTION (A) OF SECTION SIX HUNDRED SEVENTY-FOUR OF THE TAX LAW <A]** shall be considered confidential and **[A> SHALL BE USED FOR THE ADMINISTRATION OF THE UNEMPLOYMENT INSURANCE PROGRAM, EMPLOYMENT SERVICES PROGRAM, FEDERAL AND STATE EMPLOYMENT AND TRAINING PRO-GRAMS, EMPLOYMENT STATISTICS AND LABOR MARKET INFORMATION PRO-GRAMS, EMPLOYER SERVICES PROGRAM, WORKER PROTECTION PROGRAMS, FED-ERAL PROGRAMS FOR WHICH THE DEPARTMENT HAS ADMINISTRATIVE RESPONSI-BILITY OR FOR OTHER PURPOSES DEEMED APPROPRIATE BY THE COMMISSIONER UNDER THIS CHAPTER. SUCH INFORMATION <A]** shall not be disclosed to persons or agencies other than those considered entitled to such information under the social security act or other federal law, or as provided in subdivision three of this section or when such disclosure is necessary for the proper administration of the department's **[D>** employment security programs as well as for the evaluation of the effect on earnings of participation in training programs with respect to which the department has reporting, monitoring or evaluating responsibilities. No such evaluations shall be made with regard to data concerning individuals whose application to or participation in such programs, whichever occurred later, was completed more than ten years from the time of evaluation. When used for the purpose of evaluating, monitoring or reporting on such programs, access to such information obtained from the department of taxation and finance shall be limited to that which concerns individuals who applied to or participated in such programs **<D] [A> UNEMPLOYMENT INSURANCE PROGRAM, EMPLOYMENT SERVICES PROGRAM, EMPLOYMENT AND TRAINING PROGRAMS, WORKER PROTECTION PROGRAMS, FEDERAL PROGRAMS FOR WHICH THE DEPARTMENT HAS ADMINISTRATIVE RESPONSIBILITY OR FOR OTHER PURPOSES DEEMED APPROPRIATE BY THE COMMISSIONER UNDER THIS CHAPTER <A]**. Any reports concerning employment **[D>** security **<D]** and training programs submitted to a state or federal agency shall also be submitted to the governor, the temporary president of the senate, the speaker of the assembly and the chairs of the labor committees in the senate and the assembly.

**[*25]** Section 25. Subdivision (a) of section 13 of the workers' compensation law, as amended by chapter 451 of the laws of 1996 and the closing paragraph as separately amended by chapter 635 of the laws of 1996, is amended to read as follows:

(a) The employer shall promptly provide for an injured employee such medical, **[A> DENTAL, <A]** surgical, optometric or other attendance or treatment, nurse and hospital service, medicine, optometric services, crutches, eye-glasses, false teeth, artificial eyes, orthotics, **[A> PROSTHETIC DEVICES, <A]** functional assistive and adaptive devices and apparatus for such period as the nature of the injury or the process of recovery may require. The employer shall be liable for the payment of the expenses of medical, **[A> DENTAL, <A]** surgical, optometric or other attendance or treatment, nurse and hospital service, medicine, optometric services, crutches, eye-glasses, false teeth, artificial eyes, orthotics, **[A> PROSTHETIC DEVICES, <A]** functional assistive and adaptive devices and apparatus, as well as artificial members of the body or other devices or appliances nec-

2007 N.Y. ALS 6, *; 2007 N.Y. LAWS 6;
2007 N.Y. A.N. 6163

essary in the first instance to replace, support or relieve a portion or part of the body resulting from and necessitated by the injury of an employee, for such period as the nature of the injury or the process of recovery may require, and the employer shall also be liable for replacements or repairs of such artificial members of the body or such other devices, eye-glasses, false teeth, artificial eyes, orthotics, [A> PROSTHETIC DEVICES, <A] functional assistive and adaptive devices or appliances necessitated by ordinary wear or loss or damage to a [D> prothesis <D] [A> PROSTHESIS, WITH OR <A] without bodily injury to the employee. Damage to or loss of a prosthetic device shall be deemed an injury except that no disability benefits shall be payable with respect to such injury under section fifteen of this article. Such a replacement or repair of artificial members of the body or such other devices, eye-glasses, false teeth, artificial eyes, orthotics [A> , PROSTHETIC DEVICES, <A] functional assistive and adaptive devices or appliances or the providing of medical treatment and care as defined herein shall not constitute the payment of compensation under section twenty-five-a of this [D> chapter <D] [A> ARTICLE <A] . All fees and other charges for such treatment and services shall be limited to such charges as prevail in the same community for similar treatment of injured persons of a like standard of living.

The chair shall prepare and establish a schedule for the state, or schedules limited to defined localities, of charges and fees for such medical treatment and care, [D> to be determined <D] [A> AND INCLUDING ALL MEDICAL, DENTAL, SURGICAL, OPTOMETRIC OR OTHER ATTENDANCE OR TREATMENT, NURSE AND HOSPITAL SERVICE, MEDICINE, OPTOMETRIC SERVICES, CRUTCHES, EYE-GLASSES, FALSE TEETH, ARTIFICIAL EYES, ORTHOTICS, PROSTHETIC DEVICES, FUNCTIONAL ASSISTIVE AND ADAPTIVE DEVICES AND APPARATUS <A] in accordance with and to be subject to change pursuant to rules promulgated by the chair. Before preparing such schedule for the state or schedules for limited localities the chair shall request the president of the medical society of the state of New York and the president of the New York state osteopathic medical society to submit to him or her a report on the amount of remuneration deemed by such society to be fair and adequate for the types of medical care to be rendered under this chapter, but consideration shall be given to the view of other interested parties. In the case of physical therapy fees schedules the chair shall request the president of a recognized professional association representing physical therapists in the state of New York to submit to him or her a report on the amount of remuneration deemed by such association to be fair and reasonable for the type of physical therapy services rendered under this chapter, but consideration shall be given to the views of other interested parties. The chair shall also prepare and establish a schedule for the state, or schedules limited to defined localities, of charges and fees for outpatient hospital services not covered under the medical fee schedule previously referred to in this subdivision, to be determined in accordance with and to be subject to change pursuant to rules promulgated by the chair. Before preparing such schedule for the state or schedules for limited localities the chair shall request the president of the hospital association of New York state to submit to him or her a report on the amount of remuneration deemed by such association to be fair and adequate for the types of hospital outpatient care to be rendered under this chapter, but consideration shall be given to the views of other interested parties. In the case of occupational therapy fees schedules the chair shall request the president of a recognized professional association representing occupational therapists in the state of New York to submit to him or her a report on the amount of remuneration deemed by such association to be fair and reasonable for the type of occupational therapy services rendered under this chapter, but consideration shall be given to the views of other interested parties. The amounts payable by the employer for such treatment and services shall be the fees and charges established by such schedule. Nothing in this schedule, however, shall prevent voluntary payment

of amounts higher or lower than the fees and charges fixed therein, but no physician rendering medical treatment or care, and no physical or occupational therapist rendering their respective physical or occupational therapy services may receive payment in any higher amount unless such increased amount has been authorized by the employer, or by decision as provided in section thirteen-g of this article. Nothing in this section shall be construed as preventing the employment of a duly authorized physician on a salary basis by an authorized compensation medical bureau or laboratory.

[*26] Section 26. Section 13 of the workers' compensation law is amended by adding a new subdivision (i) to read as follows:

[A> (I) (1) WHEN A CLAIMANT OR PHARMACY SUBMITS A CLAIM TO THE EMPLOYER OR ITS CARRIER FOR PAYMENT OF PRESCRIBED MEDICINE OR FOR REIMBURSEMENT OF THE COST OF PRESCRIBED MEDICINE WHICH THE EMPLOYER IS REQUIRED TO PROVIDE UNDER THIS SECTION, THE EMPLOYER OR CARRIER SHALL PAY THE AMOUNT PRESCRIBED BY THE FEE SCHEDULE ADOPTED UNDER SECTION THIRTEEN-O OF THIS ARTICLE, OR IF THE PRESCRIBED MEDICINE IS NOT INCLUDED ON THE CURRENT FEE SCHEDULE, THE USUAL AND CUSTOMARY CHARGES FOR SUCH PRESCRIBED MEDICINE, WITHIN FORTY-FIVE DAYS OF RECEIPT OF THE CLAIM, UNLESS THE LIABILITY OF THE EMPLOYER OR CARRIER ON THE CLAIM FOR WHICH THE CLAIMANT SEEKS PAYMENT OR REIMBURSEMENT OF PAYMENT FOR THE PRESCRIBED MEDICINE IS NOT ESTABLISHED, OR THE PRESCRIBED MEDICINE IS NOT FOR A CAUSALLY RELATED CONDITION. <A]

[A> (2) WHERE THE LIABILITY OF THE EMPLOYER OR CARRIER ON THE CLAIM FOR WHICH THE CLAIMANT SEEKS PAYMENT OR REIMBURSEMENT OF PAYMENT FOR THE PRESCRIBED MEDICINE OR REIMBURSEMENT FOR PAYMENT OF PRESCRIBED MEDICINE IS NOT ESTABLISHED, OR IS NOT FOR A CAUSALLY RELATED CONDITION, THE EMPLOYER OR CARRIER SHALL PAY ANY UNDISPUTED PORTION OF THE CLAIM IN ACCORDANCE WITH THIS SECTION AND NOTIFY THE CLAIMANT OR PHARMACY, AS APPROPRIATE, IN WRITING WITHIN FORTY-FIVE DAYS OF RECEIPT OF THE CLAIM: <A]

[A> (I) THAT THE CLAIM IS NOT BEING PAID AND EXPLAINING THE REASONS FOR NONPAYMENT; OR <A]

[A> (II) TO REQUEST ALL ADDITIONAL INFORMATION REASONABLY NEEDED TO DETERMINE THE EMPLOYER'S OR CARRIER'S LIABILITY FOR THE CLAIM. UPON RECEIPT OF THE INFORMATION REQUESTED IN THIS SUBPARAGRAPH, THE EMPLOYER OR CARRIER SHALL COMPLY WITH PARAGRAPH ONE OF THIS SUBDIVISION. <A]

[A> (3) EACH CLAIM FOR PAYMENT OF PRESCRIBED MEDICINE OR REIMBURSEMENT FOR PAYMENT OF PRESCRIBED MEDICINE THAT IS PROCESSED IN VIOLATION OF THIS SECTION SHALL CONSTITUTE A SEPARATE VIOLATION. IN ADDITION TO THE OTHER PENALTIES PROVIDED IN THIS CHAPTER, ANY EMPLOYER OR CARRIER THAT FAILS TO REIMBURSE THE CLAIMANT OR PAY THE PHARMACY, AS APPROPRIATE AND AS REQUIRED IN THIS SECTION SHALL BE OBLIGATED TO PAY TO THE CLAIMANT OR PHARMACY THE AMOUNT PRESCRIBED ON THE FEE SCHEDULE ADOPTED UNDER SECTION THIRTEEN-O OF THIS ARTICLE, OR IF THE PRESCRIBED

MEDICINE IS NOT INCLUDED ON THE CURRENT FEE SCHEDULE, THE USUAL AND CUSTOMARY CHARGES FOR THE PRESCRIBED MEDICINE PLUS SIMPLE INTEREST AT THE RATE SET FORTH IN SECTION FIVE THOUSAND FOUR OF THE CIVIL PRACTICE LAW AND RULES. <A]

[A> (4) NOTHING IN THIS SUBDIVISION SHALL PROHIBIT EMPLOYERS OR CARRI-ERS FROM AGREEING TO OR ARRANGING FOR DIRECT BILLING BY THE PHARMACY TO THE EMPLOYER OR CARRIER FOR THE COST OF PRESCRIBED MEDICINE, IN OR-DER FOR CLAIMANTS TO MORE PROMPTLY RECEIVE PRESCRIBED MEDICINE FOR WHICH EMPLOYERS AND CARRIERS ARE LIABLE UNDER THIS SECTION. <A]

[A> (5) NOTWITHSTANDING ANY OTHER PROVISION OF THIS CHAPTER, IF AN EMPLOYER OR CARRIER HAS CONTRACTED WITH A PHARMACY TO PROVIDE PRE-SCRIBED MEDICINE TO CLAIMANTS, THEN SUCH EMPLOYER OR CARRIER MAY RE-QUIRE CLAIMANTS TO OBTAIN ALL PRESCRIBED MEDICINES FROM THE PHARMACY WITH WHICH IT HAS CONTRACTED, EXCEPT IF A MEDICAL EMERGENCY OCCURS AND IT WOULD NOT BE REASONABLY POSSIBLE TO OBTAIN IMMEDIATELY RE-QUIRED PRESCRIBED MEDICINE FROM THE PHARMACY WITH WHICH THE EM-PLOYER OR CARRIER HAS A CONTRACT. AN EMPLOYER OR CARRIER THAT RE-QUIRES CLAIMANTS TO OBTAIN PRESCRIBED MEDICINES FROM A PHARMACY WITH WHICH IT HAS A CONTRACT MUST NOTIFY CLAIMANTS OF THE PHARMACY OR PHARMACIES WITH WHICH IT HAS A CONTRACT, THE LOCATIONS AND ADDRESSES OF THE PHARMACY OR PHARMACIES, IF APPLICABLE, HOW TO INITIALLY FILL AND REFILL PRESCRIPTIONS THROUGH THE MAIL, INTERNET, TELEPHONE OR OTHER MEANS, AND ANY OTHER REQUIRED INFORMATION THAT MUST BE SUPPLIED TO THE PHARMACY OR PHARMACIES. IF THE PHARMACY OR PHARMACIES WITH WHICH THE EMPLOYER OR CARRIER CONTRACTS DOES NOT OFFER MAIL ORDER SERVICE AND DOES NOT HAVE A PHYSICAL LOCATION WITHIN A REASONABLE DISTANCE FROM THE CLAIMANT, AS DEFINED BY REGULATION OF THE BOARD, THE CLAIMANT MAY OBTAIN PRESCRIBED MEDICINES AT THE PHARMACY OR PHARMACIES OF HIS OR HER CHOICE AND THE EMPLOYER OR CARRIER WILL BE LIABLE FOR SUCH CHARGES IN ACCORDANCE WITH THE FEE SCHEDULE PRE-SCRIBED IN SECTION THIRTEEN- O OF THIS CHAPTER. <A]

[*27] Section 27. The workers' compensation law is amended by adding a new section 13-o to read as follows:

[A> SECTION 13-O. PHARMACEUTICAL FEE SCHEDULE. THE CHAIR SHALL ADOPT A PHARMACEUTICAL FEE SCHEDULE WHICH SHALL ESTABLISH MAXIMUM AL-LOWABLE FEES FOR PRESCRIPTION MEDICINES PROVIDED PURSUANT TO THIS CHAPTER. THE SCHEDULE SHALL INCLUDE A SINGLE DISPENSING FEE. NOTHING IN THE FEE SCHEDULE SHALL PRECLUDE MAIL ORDER SUPPLY OF SCHEDULED MEDI-CINES, PROVIDED THAT THE FEES FOR SUCH MAIL ORDERED MEDICINES DO NOT EXCEED THE COSTS PROVIDED BY SUCH FEE SCHEDULE. ANY PHARMACY PROVID-ING PRESCRIPTION MEDICINES SHALL PROVIDE THE GENERIC DRUG EQUIVALENT, IF A GENERIC EQUIVALENT IS AVAILABLE, UNLESS THE PRESCRIBING PHYSICIAN SPECIFICALLY PROVIDES OTHERWISE BY PRESCRIPTION. THE FEE SCHEDULE MAY BE MODIFIED ON EACH SUCCEEDING APRIL FIRST, PROVIDED, HOWEVER, THAT

USUAL AND CUSTOMARY FEES MAY BE CHARGED FOR DRUGS THAT ARE NOT IN-
CLUDED IN A THEN-CURRENT FEE SCHEDULE, BUT ARE APPROVED FOR USE BY THE
CHAIR. <A]

[*28]  Section 28. Subdivision 5 of section 13-a of the workers' compensation law, as added by
chapter 21 of the laws of 1991, is amended to read as follows:

(5) No claim for specialist consultations, surgical operations, physiotherapeutic or occupational
therapy procedures, x-ray examinations or special diagnostic laboratory tests costing more than [D>
five hundred <D] [A> ONE THOUSAND <A] dollars shall be valid and enforceable, as against
such employer, unless such special services shall have been authorized by the employer or by the
board, or unless such authorization has been unreasonably withheld, or withheld for a period of
more than thirty calendar days from receipt of a request for authorization, or unless such special
services are required in an emergency, provided, however, that the basis for a denial of such au-
thorization by the employer must be based on a conflicting second opinion rendered by a physician
authorized by the [D> workers' compensation <D] board. [A> THE BOARD, WITH THE AP-
PROVAL OF THE SUPERINTENDENT OF INSURANCE, SHALL ISSUE AND MAINTAIN A
LIST OF PRE-AUTHORIZED PROCEDURES UNDER THIS SECTION. <A]

[*29]  Section 29. Section 13-a of the workers' compensation law is amended by adding a new
subdivision 7 to read as follows:

[A> (7)(A) NOTWITHSTANDING ANY OTHER PROVISION OF THIS CHAPTER TO THE
CONTRARY, ANY INSURANCE CARRIER AUTHORIZED TO TRANSACT THE BUSINESS
OF WORKERS' COMPENSATION INSURANCE IN THIS STATE, SELF-INSURER OR THE
STATE INSURANCE FUND MAY CONTRACT WITH A NETWORK OR NETWORKS, LE-
GALLY AND PROPERLY ORGANIZED, TO PERFORM DIAGNOSTIC TESTS, X-RAY EX-
AMINATIONS, MAGNETIC RESONANCE IMAGING, OR OTHER RADIOLOGICAL EX-
AMINATIONS OR TESTS OF CLAIMANTS AND MAY REQUIRE CLAIMANT TO OBTAIN
OR UNDERGO SUCH DIAGNOSTIC TEST, X-RAY EXAMINATIONS, MAGNETIC RESO-
NANCE IMAGING OR OTHER RADIOLOGICAL EXAMINATIONS OR TESTS WITH A
PROVIDER OR AT A FACILITY THAT IS AFFILIATED WITH THE NETWORK OR NET-
WORKS WITH WHICH THE CARRIER CONTRACTS, EXCEPT IF A MEDICAL EMER-
GENCY OCCURS REQUIRING AN IMMEDIATE DIAGNOSTIC TEST, X-RAY EXAMINA-
TION, MAGNETIC RESONANCE IMAGING OR OTHER RADIOLOGICAL EXAMINATION
OR TEST OR IF THE NETWORK WITH WHICH THE INSURANCE CARRIER, SELF-
INSURER OR THE STATE INSURANCE FUND CONTRACTS DOES NOT HAVE A PRO-
VIDER OR FACILITY ABLE TO PERFORM THE EXAMINATION OR TEST WITHIN A
REASONABLE DISTANCE FROM THE CLAIMANT'S RESIDENCE OR PLACE OF EM-
PLOYMENT, AS DEFINED BY REGULATION OF THE BOARD. <A]

[A> (B) ANY INSURANCE CARRIER, SELF-INSURER OR THE STATE INSURANCE
FUND WHICH REQUIRES CLAIMANTS TO OBTAIN OR UNDERGO DIAGNOSTIC TESTS,
X-RAY EXAMINATIONS, MAGNETIC RESONANCE IMAGING OR OTHER RADIOLOGI-
CAL EXAMINATIONS OR TESTS WITH A PROVIDER OR AT A FACILITY AFFILIATED
WITH A NETWORK OR NETWORKS WITH WHICH IT CONTRACTS, MUST NOTIFY THE
CLAIMANT OF THE NAME AND CONTACT INFORMATION FOR THE NETWORK OR
NETWORKS AT THE SAME TIME THE WRITTEN STATEMENT OF THE CLAIMANT'S
RIGHTS AS REQUIRED BY SUBDIVISION TWO OF SECTION ONE HUNDRED TEN OF

THIS CHAPTER OR IMMEDIATELY AFTER IMPOSING SUCH REQUIREMENT IF THE
TIME PERIOD WITHIN WHICH THE WRITTEN STATEMENT OF THE CLAIMANT'S
RIGHTS AS REQUIRED BY SUBDIVISION TWO OF SECTION ONE HUNDRED TEN OF
THIS CHAPTER HAS EXPIRED. <A]

[A> (C) AT THE TIME A REQUEST FOR AUTHORIZATION FOR SPECIAL DIAGNOS-
TIC TESTS, X-RAY EXAMINATIONS, MAGNETIC RESONANCE IMAGING OR OTHER
RADIOLOGICAL EXAMINATIONS OR TESTS COSTING MORE THAN ONE THOUSAND
DOLLARS AS REQUIRED BY SUBDIVISION FIVE OF THIS SECTION IS APPROVED, THE
INSURANCE CARRIER, SELF-INSURER OR STATE INSURANCE FUND, OR IF SO DELE-
GATED THE NETWORK WITH WHICH THE INSURANCE CARRIER, SELF-INSURER OR
STATE INSURANCE FUND HAS CONTRACTED, SHALL NOTIFY THE PHYSICIAN RE-
QUESTING AUTHORIZATION OF THE REQUIREMENT THAT THE CLAIMANT OBTAIN
OR UNDERGO THE SPECIAL DIAGNOSTIC TEST, X-RAY EXAMINATION, MAGNETIC
RESONANCE IMAGING OR OTHER RADIOLOGICAL EXAMINATION OR TEST WITH A
PROVIDER OR AT A FACILITY AFFILIATED WITH THE NETWORK OR NETWORKS
WITH WHICH IT HAS CONTRACTED, THE CONTACT INFORMATION FOR THE NET-
WORK AND A LIST OF THE PROVIDERS AND FACILITIES WITHIN THE CLAIMANT'S
GEOGRAPHIC LOCATION, AS DEFINED BY REGULATION OF THE BOARD. THE
CLAIMANT, IN CONSULTATION WITH THE PROVIDER WHO REQUESTED THE SPE-
CIAL DIAGNOSTIC TEST, X-RAY EXAMINATION, MAGNETIC RESONANCE IMAGING
OR OTHER RADIOLOGICAL TEST OR EXAM, WILL DETERMINE THE PROVIDER OR
FACILITY FROM WITHIN THE NETWORK WHICH WILL PERFORM SUCH DIAGNOSTIC
TEST, X-RAY EXAMINATION, MAGNETIC RESONANCE IMAGING OR OTHER RADIO-
LOGICAL EXAMINATION OR TEST. <A]

[A> (D) THE RESULTS OF THE SPECIAL DIAGNOSTIC TEST, X-RAY EXAMINATION,
MAGNETIC RESONANCE IMAGING OR OTHER RADIOLOGICAL TEST OR EXAM MUST
BE SENT TO THE PHYSICIAN WHO REQUESTED THE TEST OR EXAM IMMEDIATELY
UPON COMPLETION OF THE REPORT DETAILING THE RESULTS. <A]

[*30] Section 30. Subdivisions 1, 2 and 3 of section 21-a of the workers' compensation law, as
added by chapter 635 of the laws of 1996, are amended to read as follows:

1. Notwithstanding any other provision of this chapter to the contrary, in any instance in which
an employer is unsure of the extent of its liability for a claim for compensation by an injured em-
ployee pursuant to this chapter, such employer may initiate compensation payments and [A>
PAYMENTS FOR PRESCRIBED MEDICINE AND <A] continue such payments for one year,
without prejudice and without admitting liability, in accordance with a notice of temporary payment
of compensation, on a form prescribed by the board.

2. The notice of temporary payment of compensation authorized by subdivision one of this sec-
tion shall be delivered to the injured employee and the board. Such notice shall notify the injured
employee that the temporary payment of compensation [A> AND PRESCRIBED MEDICINE <A]
shall not be deemed to be an admission of liability by the employer for the injury or injuries to the
employee. The board, upon receipt of a notice of temporary payment of compensation, shall send a
notice to the injured employee stating that:

2007 N.Y. ALS 6, *; 2007 N.Y. LAWS 6;
2007 N.Y. A.N. 6163

(a) the board has received a notice of temporary payment of compensation relating to such injured employee;

(b) the payment of temporary compensation [A> AND PRESCRIBED MEDICINE <A] and the injured employee's acceptance of such temporary compensation [A> AND PRESCRIBED MEDICINE <A] shall not be an admission of liability by the employer, nor prejudice the claim of the injured employee;

(c) the payment of temporary compensation [A> AND PRESCRIBED MEDICINE <A] shall terminate on the elapse of: one year, or the employer's contesting of the injured employee's claim for compensation [A> AND PRESCRIBED MEDICINE, <A] or the board determination of the injured [D> employees' <D] [A> EMPLOYEE' S <A] claim, whichever is first; and

(d) the injured employee may be required to enter into an agreement with the employer to ensure the continuation of payments of temporary compensation [A> AND PRESCRIBED MEDICINE <A] .

3. An employer may cease making temporary payments of compensation [A> AND PRESCRIBED MEDICINE <A] if such employer delivers within five days after the last payment, to the injured employee and the board, a notice of termination of temporary payments of compensation on a form prescribed by the board. Such notice shall inform the injured employee that the employer is ceasing temporary payment of compensation [A> AND PRESCRIBED MEDICINE <A] . Upon the cessation of temporary payments of compensation [A> AND PRESCRIBED MEDICINE, <A] all parties to any action pursuant to this chapter shall retain all rights, defenses and obligations they would otherwise have pursuant to this chapter without regard for the temporary payment of compensation [A> AND PRESCRIBED MEDICINE <A] .

[*31] Section 31. Section 54-b of the workers' compensation law, as amended by chapter 113 of the laws of 1946, is amended to read as follows:

54-b. Enforcement on failure to pay award or judgment. [D> In the event of the failure of a carrier or self-insurer to pay an award after the expiration of thirty days from the entry thereof, from which award or decision in connection therewith no appeal has been taken as provided by law, the chairman may enforce the payment of said award against the carrier or self-insurer by the entry of judgment in accordance with the provisions hereof and section twenty-six. Where, however, the carrier or self-insurer has taken an appeal and the award or decision in connection therewith has been finally affirmed, as provided by law, and no rehearing has been ordered by the board herein, if such award and accrued costs and interest are not paid within thirty days after the entry of a final order by the court of last resort, the chairman may enforce, in like manner, payment against such carrier or self-insurer of all sums of money due thereon. <D] [A> IN CASE OF DEFAULT BY A CARRIER OR SELF-INSURED EMPLOYER IN THE PAYMENT OF ANY COMPENSATION DUE UNDER AN AWARD FOR THE PERIOD OF THIRTY DAYS AFTER PAYMENT IS DUE AND PAYABLE, OR IN THE CASE OF FAILURE BY A CARRIER OR SELF-INSURED EMPLOYER TO MAKE FULL PAYMENT OF AN AWARD FOR MEDICAL CARE ISSUED BY THE BOARD OR THE CHAIR PURSUANT TO SECTION THIRTEEN-G OF THIS CHAPTER, THE CHAIR IN ANY SUCH CASE OR ON THE CHAIR'S CONSENT ANY PARTY TO AN AWARD MAY FILE WITH THE COUNTY CLERK FOR THE COUNTY IN WHICH THE INJURY OCCURRED OR THE COUNTY IN WHICH THE CARRIER OR SELF-INSURED EMPLOYER HAS HIS OR HER PRINCIPAL PLACE OF BUSINESS, (1) A CERTIFIED COPY OF

2007 N.Y. ALS 6, *; 2007 N.Y. LAWS 6;
2007 N.Y. A.N. 6163

THE DECISION OF THE BOARD AWARDING COMPENSATION OR ENDING, DIMINISH-
ING OR INCREASING COMPENSATION PREVIOUSLY AWARDED, FROM WHICH NO
APPEAL HAS BEEN TAKEN WITHIN THE TIME ALLOWED THEREFOR, OR IF AN AP-
PEAL HAS BEEN TAKEN BY A CARRIER OR SELF-INSURED EMPLOYER WHO HAS NOT
COMPLIED WITH THE PROVISIONS OF SECTION FIFTY OF THIS ARTICLE, WHERE HE
OR SHE FAILS TO DEPOSIT WITH THE CHAIR THE AMOUNT OF THE AWARD AS SE-
CURITY FOR ITS PAYMENT WITHIN TEN DAYS AFTER THE SAME IS DUE AND PAY-
ABLE, OR (2) A CERTIFIED COPY OF THE AWARD FOR MEDICAL CARE ISSUED PUR-
SUANT TO SECTION THIRTEEN-G OF THIS CHAPTER, AND THEREUPON JUDGMENT
MUST BE ENTERED IN THE SUPREME COURT BY THE CLERK OF SUCH COUNTY IN
CONFORMITY THEREWITH IMMEDIATELY UPON SUCH FILING. IF THE PAYMENT IN
DEFAULT BE AN INSTALLMENT, THE BOARD MAY DECLARE THE ENTIRE AWARD
DUE AND JUDGMENT MAY BE ENTERED IN ACCORDANCE WITH THE PROVISIONS OF
THIS SECTION. SUCH JUDGMENT SHALL BE ENTERED IN THE SAME MANNER, HAVE
THE SAME EFFECT AND BE SUBJECT TO THE SAME PROCEEDINGS AS THOUGH REN-
DERED IN A SUIT DULY HEARD AND DETERMINED BY THE SUPREME COURT, EX-
CEPT THAT NO APPEAL MAY BE TAKEN THEREFROM. THE COURT SHALL VACATE
OR MODIFY SUCH JUDGMENT TO CONFORM TO ANY LATER AWARD OR DECISION
OF THE BOARD UPON PRESENTATION OF A CERTIFIED COPY OF SUCH AWARD OR
DECISION. THE AWARD MAY BE SO COMPROMISED BY THE BOARD AS IN THE DIS-
CRETION OF THE BOARD MAY BEST SERVE THE INTEREST OF THE PERSONS ENTI-
TLED TO RECEIVE THE COMPENSATION OR BENEFITS. WHERE AN AWARD HAS
BEEN MADE AGAINST A CARRIER OR SELF-INSURED EMPLOYER IN ACCORDANCE
WITH THE PROVISIONS OF SUBDIVISION NINE OF SECTION FIFTEEN, OR OF SECTION
TWENTY-FIVE-A OF THIS CHAPTER, SUCH AN AWARD MAY BE SIMILARLY COM-
PROMISED BY THE BOARD, UPON NOTICE TO A REPRESENTATIVE OF THE FUND TO
WHICH THE AWARD IS PAYABLE, BUT IF THERE BE NO REPRESENTATIVE OF ANY
SUCH FUND, NOTICE SHALL BE GIVEN TO SUCH REPRESENTATIVE AS MAY BE DES-
IGNATED BY THE CHAIR OF THE BOARD; AND NOTWITHSTANDING ANY OTHER
PROVISION OF LAW, SUCH COMPROMISE SHALL BE EFFECTIVE WITHOUT THE NE-
CESSITY OF ANY APPROVAL BY THE STATE COMPTROLLER. NEITHER THE CHAIR
NOR ANY PARTY IN INTEREST SHALL BE REQUIRED TO PAY ANY FEE TO ANY PUB-
LIC OFFICER FOR FILING OR RECORDING ANY PAPER OR INSTRUMENT OR FOR ISSU-
ING A TRANSCRIPT OF ANY JUDGMENT EXECUTED IN PURSUANCE OF THIS SEC-
TION. THE CARRIER OR SELF-INSURED EMPLOYER SHALL BE LIABLE FOR ALL
COSTS AND ATTORNEYS FEES NECESSARY TO ENFORCE THE AWARD. FOR THE
PURPOSES OF THIS SECTION, THE TERM "CARRIER" SHALL INCLUDE THE STATE IN-
SURANCE FUND AND ANY STOCK CORPORATION, MUTUAL CORPORATION OR RE-
CIPROCAL INSURER AUTHORIZED TO TRANSACT THE BUSINESS OF WORKERS'
COMPENSATION INSURANCE IN THIS STATE. <A]

[*32] Section 32. Subdivision 1 of section 354 of the workers' compensation law, as added by
chapter 635 of the laws of 1996, is amended to read as follows:

1. Each preferred provider organization shall provide at least [D> five <D] [A> TWO <A] pro-
viders in every medical specialty from which the employee may choose and at least [D> three <D]
[A> TWO <A] hospitals from which the employee may choose in the event that hospitalization is

necessary. The **[D>** chair **<D] [A>** COMMISSIONER OF HEALTH **<A]** may waive such numeri-
cal requirements upon a finding that the geographical area in which the preferred provider organiza-
tion is located cannot meet the requirements.

   **[*33]** Section 33. Section 134 of the workers' compensation law, as added by chapter 635 of
the laws of 1996, is amended to read as follows:

   Section 134. Workplace safety and loss prevention program; certification of safety and loss
management specialists. 1. The commissioner of labor, in consultation with the superintendent of
insurance **[D>** , **<D] [A>** AND **<A]** the chair of the **[D>** workers' compensation **<D]** board **[D>** ,
and the president of the compensation insurance rating board, **<D]** shall develop a compulsory
workplace safety and loss prevention program for all employers whose most recent annual payroll is
in excess of eight hundred thousand dollars and whose most recent experience rating exceeds the
level of 1.2. The commissioner of labor **[D>** , shall request that the safety panel established by this
section provide recommendations for the establishment, creation and implementation of the safety
incentive program provided for in subdivision six of this section and **<D]** shall promulgate rules and
regulations for the implementation of **[D>** this program **<D] [A>** SAFETY, DRUG AND ALCO-
HOL PREVENTION, AND RETURN TO WORK INCENTIVE PROGRAMS **<A]** .

   2. The **[D>** compensation insurance rating board or such other rating organization licensed by
the state for the purpose of providing loss and rate information **<D] [A>** COMMISSIONER OF
LABOR **<A]** shall provide written notification to employers whose most recent annual payroll is in
excess of eight hundred thousand dollars and whose most recent experience rating exceeds the level
of 1.2 that they are required to undergo a workplace safety and loss prevention consultation and
written evaluation. Copies of the written notification shall be provided to the department of labor
and the employer's insurer. The employer must arrange for the consultation and evaluation within
thirty days after receiving the notification and must within ten days thereafter notify its insurer and
the department of labor in writing of the means by which the evaluation is to be accomplished. The
employer must provide its insurer and the department of labor with a copy of the evaluation within
thirty days after receiving it from the safety and loss consultant. Any remedial action recommended
in the evaluation must be implemented by the employer within a reasonable period of time, but not
to exceed six months after the employer receives the evaluation. The insurer, within sixty days after
the expiration of such six month period, shall conduct an inspection to ascertain whether the rec-
ommended remedial action has been implemented, and the insurer shall within forty-five days
thereafter provide to the employer and the department of labor a copy of its inspection report.

   3. If the employer does not arrange for a consultation and evaluation or fails to implement rec-
ommended remedial action within the times prescribed, the insurer shall surcharge the employer's
manual rate premium by .05 for the next ensuing policy period, and so long as noncompliance con-
tinues there shall be an additional .05 surcharge for each year thereafter of non-compliance. An em-
ployer may challenge an insurer' s determination that the employer has not taken the recommended
remedial action by appeal to the department of labor on notice to the insurer. The department of la-
bor shall thereafter conduct an independent inspection and its determination of compliance or non-
compliance shall be final. However, such appeal may not be entertained if the employer has not
paid its billed premium including any surcharge thereof.

   4. Employers required to participate in the workplace safety and loss prevention program estab-
lished by this section shall be permitted to utilize the services of either the department of labor, or a
private safety and loss consultant which has been certified by the department of labor and has paid

the appropriate certification fee prescribed by rules and regulations promulgated under this section. Private safety and loss consultants may charge employers a fee for their services, and where employers elect to have the services provided by the department of labor, they shall pay for such services in accordance with fee schedules established by the department of labor's rules and regulations.

5. Fees charged by the department of labor to employers for workplace safety and loss prevention consultations and evaluations and fees charged to private safety and loss consultants for certification shall be paid to the commissioner of taxation and finance and the comptroller and deposited in the department of labor accounts designated for such purposes. The fees deposited in those designated accounts shall be used to cover administrative expenses of this program.

6. Safety [A> , DRUG AND ALCOHOL PREVENTION, AND RETURN TO WORK <A] incentive [D> program <D] [A> PROGRAMS <A] . Employers insured through the state insurance fund (except those who are current policyholders in a recognized safety group) or any other insurer that issues policies of workers' compensation insurance, shall be eligible for a credit in workers' compensation insurance premiums if they:

a. pay annual workers' compensation insurance premiums of at least five thousand dollars; and b. maintain an experience rating of under 1.30 for the year preceding and the years in which the credit has been applied for provided that no insured required to implement a safety program pursuant to subdivision one [A> OF THIS SECTION <A] shall be eligible for a premium credit under this subdivision; and c. implement [A> ANY OF THE FOLLOWING: <A]

[A> (1) <A] a safety incentive plan, that has been recommended by a safety and loss management specialist after such specialist has been certified by the [D> safety panel established pursuant to this section. The credit, which shall be five percent of the workers' compensation insurance premium, shall be provided to the employer at the end of the policy year. The credit shall be available for two consecutive years, provided that the safety incentive plan shall have been implemented for a minimum of six months during the first year for which the credit is sought, and that such plan shall have been implemented for a full twelve months during the second year for which the credit is sought. <D] [A> COMMISSIONER OF LABOR, OR IF SUCH PLAN OTHERWISE CONFORMS TO REGULATIONS PROMULGATED BY THE COMMISSIONER OF LABOR; <A]

[A> (2) A DRUG AND ALCOHOL PREVENTION PROGRAM THAT CONFORMS TO REGULATIONS ISSUED BY THE COMMISSIONER OF LABOR, IN CONSULTATION WITH THE OFFICE OF ALCOHOLISM AND SUBSTANCE ABUSE SERVICES; AND <A]

[A> (3) A RETURN TO WORK PROGRAM THAT CONFORMS TO REGULATIONS ISSUED BY THE COMMISSIONER OF LABOR. THE CREDIT FOR EACH SUCH PROGRAM SHALL BE ESTABLISHED BY REGULATIONS ISSUED BY THE SUPERINTENDENT OF INSURANCE. SUCH REGULATIONS SHALL INCLUDE PROVISIONS FOR RECERTIFICATION ON AN ANNUAL BASIS. <A]

7. A self-insured employer shall be eligible for a reduction in the security deposit provided for in subdivision three of section fifty of this article if such employer has implemented [A> ANY OF THE FOLLOWING: A. <A] a safety incentive plan that has been recommended by a safety and loss management specialist after such specialist has been certified by the [D> safety panel established pursuant to this section. The amount of the reduction in the required security deposit shall be no greater than five percent or such lesser amount as determined by the chair of the board to be neces-

2007 N.Y. ALS 6, *; 2007 N.Y. LAWS 6;
2007 N.Y. A.N. 6163

sary to assure that the deposit remains sufficient to secure the employer's liability to pay the compensation provided in this chapter. The reduction shall be provided to the employer at the end of the policy year. The reduction shall be available for two consecutive years, provided that the safety incentive plan shall have been implemented for a minimum of six months during the first year for which the reduction is sought, and that such plan shall have been implemented for a full twelve months during the second year for which the reduction is sought. <D] [A> COMMISSIONER OF LABOR OR IF SUCH PLAN OTHERWISE CONFORMS TO REGULATIONS PROMULGATED BY THE COMMISSIONER OF LABOR; <A]

[A> B. A DRUG AND ALCOHOL PREVENTION PROGRAM THAT CONFORMS TO REGULATIONS ISSUED BY THE COMMISSIONER OF LABOR, IN CONSULTATION WITH THE OFFICE OF ALCOHOLISM AND SUBSTANCE ABUSE SERVICES; AND <A]

[A> C. A RETURN TO WORK PROGRAM THAT CONFORMS TO REGULATIONS ISSUED BY THE COMMISSIONER OF LABOR. <A]

[A> THE CREDIT FOR EACH PROGRAM SHALL BE NO GREATER THAN ESTABLISHED BY REGULATIONS ISSUED BY THE SUPERINTENDENT OF INSURANCE OR SUCH LESSER AMOUNT AS DETERMINED BY THE CHAIR OF THE BOARD TO BE NECESSARY TO ASSURE THAT THE DEPOSIT REMAINS SUFFICIENT TO SECURE THE EMPLOYER'S LIABILITY TO PAY THE COMPENSATION PROVIDED IN THIS CHAPTER. THE CHAIR, IN CONSULTATION WITH THE SUPERINTENDENT OF INSURANCE, SHALL ADOPT REGULATIONS WHICH PROVIDE FOR RECERTIFICATION ON AN ANNUAL BASIS. <A]

8. [D> There is hereby established a safety panel which shall have the responsibility to <D] [A> THE COMMISSIONER OF LABOR SHALL: <A] (i) receive and review applications from applicants for certification as safety and loss management specialists; and (ii) certify persons as safety and loss management specialists; and (iii) revoke certification of safety and loss management specialists for just cause.

[D> a. The safety panel shall consist of three voting members. One member shall be the president of the compensation insurance rating board. The two remaining members shall be appointed by the governor as follows: a representative of the business community appointed upon the recommendation of the business council of New York state, incorporated; a representative of organized labor appointed upon the recommendation of the New York state American federation of labor-congress of industrial organizations. Members appointed by the governor shall serve for terms of three years from the date of their appointment. Such members shall serve until their successors are appointed by the governor. The commissioner of labor, the chair of the board and the superintendent of insurance, or their designees, shall serve as ex officio non-voting members of the safety panel. <D]

[D> b. The safety panel shall meet at least quarterly. The president of the compensation insurance rating board shall serve as chairperson. Members shall serve without compensation, except that they shall be allowed their actual and necessary expenses incurred in the performance of their duties pursuant to this section. <D]

9. The [D> board <D] [A> COMMISSIONER OF LABOR <A] shall monitor all safety incentive plans implemented by employers. As part of this responsibility, the board shall insure that employee representatives are involved in the development of such plans through meetings and discussions with the respective certified safety and loss management specialist.

10. **[D>** After consultation with the safety panel established pursuant to this section, the **<D]** **[A>** THE **<A]** commissioner of labor, in consultation with the superintendent of insurance, shall promulgate rules and regulations for the certification of safety and loss management specialists. Such rules and regulations shall include provisions that outline the minimum qualifications for safety and loss management specialists, procedures for certification, causes for revocation or suspension of certification and appropriate administrative and judicial review procedures, violations and penalties for misuse of certification by certified safety and loss management specialists, and fees for certificate and certificate renewal.

**[\*34]** Section 34. Section 23 of the workers' compensation law, as amended by chapter 635 of the laws of 1996, is amended to read as follows:

Section 23. Appeals. An award or decision of the board shall be final and conclusive upon all questions within its jurisdiction, as against the state fund or between the parties, unless reversed or modified on appeal therefrom as hereinafter provided. Any party may within thirty days after notice of the filing of an award or decision of a referee, file with the board an application in writing for a modification or rescission or review of such award or decision, as provided in this chapter. The board shall render its decision upon such application in writing and shall include in such decision a statement of the facts which formed the basis of its action on the issues raised before it on such application. Within thirty days after notice of the decision of the board upon such application has been served upon the parties, or within thirty days after notice of an administrative redetermination review decision by the chair pursuant to subdivision five of section fifty-two, **[A>** SECTION ONE HUNDRED THIRTY-ONE OR SECTION ONE HUNDRED FORTY-ONE-A **<A]** of this chapter has been served upon any party in interest, an appeal may be taken therefrom to the appellate division of the supreme court, third department, by any party in interest, including an employer insured in the state fund; provided, however, that if the decision or determination was that of a panel of the board and there was a dissent from such decision or determination other than a dissent the sole basis of which is to refer the case to an impartial specialist, any party in interest may within thirty days after notice of the filing of the board panel's decision with the secretary of the board, make application in writing for review thereof by the full board, and the full board shall review and affirm, modify or rescind such decision or determination in the same manner as herein above provided for an award or decision of a referee. Failure to apply for **[D>** such **<D]** review by the full board shall not bar any party in interest from taking an appeal directly to the court as above provided. The board may also, in its discretion certify to such appellate division of the supreme court, questions of law involved in its decision. Such appeals and the question so certified shall be heard in a summary manner and shall have precedence over all other civil cases in such court. The board shall be deemed a party to every such appeal from its decision upon such application, and the chair shall be deemed a party to every such appeal from an administrative redetermination review decision pursuant to subdivision five of section fifty-two of this chapter. The attorney general shall represent the board and the chair thereon. An appeal may also be taken to the court of appeals in the same manner and subject to the same limitations not inconsistent herewith as is now provided in the civil practice law and rules. It shall not be necessary to file exceptions to the rulings of the board. An appeal to the appellate division of the supreme court, third department, or to the court of appeals, shall not operate as a stay of the payment of compensation required by the terms of the award or of the payment of the **[D>** doctors' bills **<D]** **[A>** COST OF SUCH MEDICAL, DENTAL, SURGICAL, OPTOMETRIC OR OTHER ATTENDANCE, TREATMENT, DEVICES, APPARATUS OR OTHER NECESSARY ITEMS THE EMPLOYER IS REQUIRED TO PROVIDE PURSUANT TO SEC-

2007 N.Y. ALS 6, *; 2007 N.Y. LAWS 6;
2007 N.Y. A.N. 6163

TION THIRTEEN OF THIS ARTICLE WHICH ARE <A] found to be fair and reasonable. Where such award is modified or rescinded upon appeal, the appellant shall be entitled to reimbursement in a sum equal to the compensation in dispute paid to the respondent in addition to a sum equal to the [D> amount of the doctors' bills <D] [A> COST OF SUCH MEDICAL, DENTAL, SURGICAL, OPTOMETRIC OR OTHER ATTENDANCE, TREATMENT, DEVICES, APPARATUS OR OTHER NECESSARY ITEMS THE EMPLOYER IS REQUIRED TO PROVIDE PURSUANT TO SECTION THIRTEEN OF THIS ARTICLE <A] paid by the appellant pending adjudication of the appeal. Such reimbursement shall be paid from administration expenses as provided in section one hundred fifty-one of this chapter upon audit and warrant of the comptroller upon vouchers approved by the chair. Where such award is subject to the provisions of section twenty-seven of this article, the appellant shall pay directly to the claimant all compensation as it becomes due during the pendency of the appeal, and upon affirmance shall be entitled to credit for such payments. Neither the chair, the board, the commissioners of the state insurance fund nor the claimant shall be required to file a bond upon an appeal to the court [A> OF <A] appeals. Upon final determination of such an appeal, the board or chair, as the case may be, shall enter an order in accordance therewith. Whenever a notice of appeal is served or an application made to the board by the employer or insurance carrier for a modification or rescission or review of an award or decision, and the board shall find that such notice of appeal was served or such application was made for the purpose of delay or upon frivolous grounds, the board shall impose a penalty in the amount of [D> two hundred fifty <D] [A> FIVE HUNDRED <A] dollars upon the employer or insurance carrier, which penalty shall be added to the compensation and paid to the claimant. The penalties provided herein shall be collected in like manner as compensation. A party against whom an award of compensation shall be made may appeal from a part of such award. In such a case the payment of such part of the award as is not appealed from shall not prejudice any rights of such party on appeal, nor be taken as an admission against such party. Any appeal by an employer from an administrative redetermination review decision pursuant to subdivision five of section fifty-two of this chapter shall in no way serve to relieve the employer from the obligation to timely pay compensation and benefits otherwise payable in accordance with the provisions of this chapter.

Nothing herein contained shall be construed to inhibit the continuing jurisdiction of the board as provided in section one hundred twenty-three of this chapter.

[*35] Section 35. Paragraph (b) of subdivision 2 of section 26-a of the workers' compensation law, as amended by chapter 316 of the laws of 1991, is amended to read as follows:

(b) For the purpose of establishing and maintaining this fund, the board, upon rendering a decision with respect to any claim for compensation under this chapter that the employer liable therefor has failed to secure the payment of compensation with respect thereto in accordance with section fifty of this chapter, shall impose an assessment in the sum of [D> two hundred fifty dollars <D] [A> ONE THOUSAND DOLLARS FOR EACH TEN DAY PERIOD OF NON-COMPLIANCE OR A SUM NOT IN EXCESS OF TWO TIMES THE AMOUNT OF THE COST OF COMPENSATION FOR ITS PAYROLL FOR THE PERIOD OF SUCH FAILURE <A] against the employer and direct its payment into the fund in connection with each such claim wherein injury shall have occurred on or after the first of May, nineteen hundred fifty-nine, or in death cases where death as the result of injury shall have occurred on or after said date. [D> The board shall also impose an additional assessment of fifteen per centum of the award or awards made in each such claim, such additional assessment shall not be less than one thousand five hundred dollars and shall not exceed

2007 N.Y. ALS 6, *; 2007 N.Y. LAWS 6;
2007 N.Y. A.N. 6163

five thousand dollars in any one claim, and shall direct that such additional assessment also be paid into the fund. **<D]**

**[\*36]** Section 36. Section 13-n of the workers' compensation law is amended by adding a new subdivision 3 to read as follows:

**[A>** 3. THE CHAIR, UPON FINDING THAT AN ENTITY THAT DERIVES INCOME FROM INDEPENDENT MEDICAL EXAMINATIONS HAS MATERIALLY ALTERED AN INDEPENDENT MEDICAL EXAMINATION REPORT, OR CAUSED SUCH A REPORT TO BE MATERIALLY ALTERED, MAY REVOKE THE REGISTRATION OF SUCH ENTITY, IMPOSE A PENALTY NOT EXCEEDING TEN THOUSAND DOLLARS AND REFER THE MATTER TO THE ATTORNEY GENERAL FOR PROSECUTION. **<A]**

**[\*37]** Section 37. Section 10 of the workers' compensation law is amended by adding a new subdivision 4 to read as follows:

**[A>** 4. ANY PERSON INCARCERATED UPON CONVICTION OF A FELONY SHALL BE DEEMED INELIGIBLE FOR ALL BENEFITS PROVIDED UNDER THIS CHAPTER. ALL THOSE WHOSE BENEFITS HAVE CEASED BY OPERATION OF THIS SECTION, MAY APPLY TO THE BOARD FOR BENEFITS UPON THEIR RELEASE FROM CUSTODY PURSUANT TO REGULATION OF THE BOARD. **<A]**

**[\*38]** Section 38. Paragraphs (a) and (b) of subdivision 2 of section 13-d of the workers' compensation law, as amended by chapter 473 of the laws of 2000, are amended to read as follows:

(a) has been guilty of professional or other misconduct or incompetency in connection with **[A>** RENDERING **<A]** medical services **[D>** rendered **<D]** under **[D>** this chapter **<D] [A>** THE LAW; **<A]** or

(b) has exceeded the limits of his or her professional competence in rendering medical care or in conducting independent medical examinations under **[D>** this chapter **<D] [A>** THE LAW, **<A]** or has made materially false statements regarding his or her qualifications in his or her application for the recommendation of the medical society or board as provided in section thirteen-b of this article; or

**[\*39]** Section 39. Section 13-d of the workers' compensation law is amended by adding a new subdivision 5 to read as follows:

**[A>** 5. WHENEVER THE DEPARTMENT OF HEALTH SHALL CONDUCT AN INVESTIGATION WITH RESPECT TO CHARGES OF PROFESSIONAL OR OTHER MISCONDUCT BY A PHYSICIAN WHICH RESULTS IN A REPORT, DETERMINATION OR CONSENT ORDER THAT INCLUDES A FINDING OF PROFESSIONAL OR OTHER MISCONDUCT OR INCOMPETENCY BY SUCH PHYSICIAN, THE CHAIR SHALL HAVE FULL POWER AND AUTHORITY TO TEMPORARILY SUSPEND, REVOKE OR OTHERWISE LIMIT THE AUTHORIZATION UNDER THIS CHAPTER OF ANY PHYSICIAN UPON SUCH FINDING BY THE DEPARTMENT OF HEALTH THAT THE PHYSICIAN HAS BEEN GUILTY OF PROFESSIONAL OR OTHER MISCONDUCT. THE RECOMMENDATIONS OF THE DEPARTMENT OF HEALTH SHALL BE ADVISORY TO THE CHAIR ONLY AND SHALL NOT BE BINDING OR CONCLUSIVE UPON THE CHAIR. **<A]**

**[\*40]** Section 40. Paragraph (a) of subdivision 2-a of section 25 of the workers' compensation law, as amended by chapter 635 of the laws of 1996, is amended to read as follows:

2007 N.Y. ALS 6, *; 2007 N.Y. LAWS 6;
2007 N.Y. A.N. 6163

(a) In any controverted case, upon receipt of the notice of controversy, the board shall schedule a pre-hearing conference before a referee or conciliator as soon as practicable but not to exceed [D> sixty <D] [A> FORTY-FIVE <A] days after receipt of notice of controversy [A> AND A MEDICAL REPORT REFERENCING AN INJURY <A] . The board shall give notice of the prehearing conference to all parties. A party may appear at such conference pro se, or by an attorney or licensed representative or other representative authorized by the board to appear on behalf of such party.

[*41]  Section 41. Paragraph (d) of subdivision 3 of section 25 of the workers' compensation law, as amended by chapter 635 of the laws of 1996, is amended to read as follows:

(d) If, in any case, the issues have not been resolved within [D> two years <D] [A> ONE YEAR <A] after such issues have been raised before the board, or if multiple claims arise from the same accident or occurrence, or if all parties agree to an expedited hearing, [A> OR IF A NOTICE OF CONTROVERSY IS FILED, <A] or if the chair otherwise deems it necessary, the chair may order that the case be transferred to a special part for expedited hearings. Proceedings in such part shall be conducted in an expedited manner.

Cases in such special part shall be scheduled in such a manner so that, where appropriate, any and all outstanding issues may be addressed at one hearing. An adjourned case shall be rescheduled as soon as practicable, but no later than thirty days following such adjournment.

If a request for an adjournment is made by a carrier or employer which is not an emergency and is deemed to be frivolous by the chair, a penalty of one thousand dollars shall be imposed by the chair. If such employer or carrier is represented by an attorney or licensed representative who is not an employee of the carrier or employer, the attorney or licensed representative shall be responsible for the payment of such penalty. If a request for an adjournment is made by a claimant who is represented by an attorney or a licensed representative which is not an emergency and is deemed to be frivolous by the chair, a penalty of five hundred dollars shall be imposed by the chair on the attorney or licensed representative. Such penalty shall be paid by the attorney or licensed representative and shall not come out of the claimant's award. No penalty shall be imposed on an unrepresented claimant who requests an adjournment.

[*42]  Section 42. Subdivisions 1 and 2 of section 54 of the workers' compensation law, subdivision 1 as amended by chapter 605 of the laws of 1946, are amended to read as follows:

1. Right of recourse to the insurance carrier. Every policy of insurance covering the liability of the employer for compensation [A> SHALL BE <A] issued by [D> a <D] [A> ONE OR MORE <A] stock [D> company <D] [A> COMPANIES, <A] [D> by a <D] mutual [D> corporation <D] [A> CORPORATIONS <A] or [D> by a <D] reciprocal [D> insurer <D] [A> INSURERS <A] authorized to transact [D> workmen's <D] [A> WORKERS' <A] compensation insurance in this state. [A> IN THE CASE OF A POLICY WITH MULTIPLE INSURERS, SUCH INSURERS SHALL SHARE ONE HUNDRED PERCENT OF THE LIABILITIES BY SUBSCRIPTION, AND ONE OF THE INSURERS SHALL SERVE AS THE LEAD INSURER FOR NOTICE AND CANCELLATION PURPOSES. SUCH A POLICY <A] shall contain a provision setting forth the right of the [D> chairman <D] [A> CHAIR <A] to enforce in the name of the people of the state of New York for the benefit of the person entitled to the compensation insured by the policy either by filing a separate application or by making the insurance carrier a party to the original application, the liability of the insurance carrier in whole or in part for the payment of such compensation; provided,

however, that payment in whole or in part of such compensation by either the employer or the insurance carrier shall to the extent thereof be a bar to the recovery against the other of the amount so paid.

2. Knowledge and jurisdiction of the employer extended to cover the insurance carrier. Every such policy shall contain a provision that, as between the employee and the insurance carrier, the notice to or knowledge of the occurrence of the injury on the part of the employer shall be deemed notice or knowledge, as the case may be, on the part of the insurance carrier, [A> OR IF MORE THAN ONE INSURER, THE LEAD CARRIER; <A] that jurisdiction of the employer shall, for the purpose of this chapter, be jurisdiction of the [A> LEAD <A] insurance carrier and that [D> the <D] [A> SUCH <A] insurance carrier shall in all things be bound by and subject to the orders, findings, decisions or awards rendered against the employer for the payment of compensation under the provisions of this chapter.

[*43] Section 43. Section 77 of the workers' compensation law, as amended by chapter 635 of the laws of 1996, is amended to read as follows:

Section 77. Administration. The state insurance fund shall be administered by the commissioners of the state insurance fund, of whom there shall be [D> eight <D] [A> TEN <A] . The commissioner of labor shall, in addition, be a commissioner of such fund by virtue of his or her office. The commissioners shall elect annually from the appointive members a chair and a vicechair who shall act as chair in the absence of the chair. The commissioner of labor may designate a deputy commissioner to act in his or her place and stead as a commissioner of such fund. The commissioners shall be appointed by the governor, by and with the advice and consent of the senate. [A> ONE COMMISSIONER SHALL BE APPOINTED BY THE GOVERNOR UPON RECOMMENDATION BY THE NEW YORK STATE AMERICAN FEDERATION OF LABOR-CONGRESS OF INDUSTRIAL ORGANIZATIONS, AND ONE COMMISSIONER SHALL BE APPOINTED BY THE GOVERNOR UPON RECOMMENDATION OF THE BUSINESS COUNCIL OF THE STATE OF NEW YORK. <A] They shall be policyholders insured in the state insurance fund. The commissioners shall be appointed for terms of three years each. They shall serve until their successors are appointed and have qualified. Vacancies shall be filled for the unexpired terms. Each commissioner shall before entering upon his or her duties, take and subscribe the constitutional oath of office which shall be filed in the office of the secretary of state.

[*44] Section 44. Subdivision 1 of section 87 of the workers' compensation law, as amended by chapter 473 of the laws of 2000, is amended to read as follows:

1. Any of the surplus or reserve funds belonging to the state insurance fund, by order of the commissioners, approved by the superintendent of insurance, may be invested in the types of securities described in subdivisions one, two, three, four, five, six, eleven, twelve, twelve-a, thirteen, fourteen, fifteen, nineteen, twenty, twenty-one, twenty-one-a, twenty-four, twenty-four-a, twenty-four-b, twenty-four-c and twenty-five of section two hundred thirty-five of the banking law or, up to fifty percent of such surplus or reserve funds, in the types of securities or investments described in paragraphs two, three, eight and ten of subsection (a) of section one thousand four hundred four of the insurance law [A> EXCEPT THAT UP TO TEN PERCENT OF THE SURPLUS AND RESERVE FUNDS BELONGING TO THE STATE INSURANCE FUND THAT MAY BE INVESTED IN THE SECURITIES OF ANY SOLVENT AMERICAN INSTITUTION OR OF AN INVESTMENT COMPANY AS DESCRIBED IN SUCH PARAGRAPHS MAY BE INVESTED IRRESPECTIVE OF THE RATING OF SUCH INSTITUTION'S OBLIGATIONS OR OTHER SIMI-

2007 N.Y. ALS 6, *; 2007 N.Y. LAWS 6;
2007 N.Y. A.N. 6163

LAR QUALITATIVE STANDARDS DESCRIBED IN PARAGRAPHS TWO, THREE, EIGHT
AND TEN OF SUCH SUBSECTION, BUT SHALL NOT INCLUDE ANY DERIVATIVE IN-
STRUMENT OR DERIVATIVE TRANSACTION OR ANY INVESTMENT FOUND BY THE
SUPERINTENDENT OF INSURANCE TO BE AGAINST PUBLIC POLICY <A] . Any of the
surplus or reserve funds belonging to the state insurance fund, upon like approval of the superinten-
dent of insurance, may be loaned on the pledge of any such securities. The commissioners, upon
like approval of the superintendent of insurance, may also sell any of such securities or investments.

[*45] Section 45. Section 351 of the workers' compensation law, as added by chapter 635 of
the laws of 1996, is amended to read as follows:

Section 351. Preferred provider organizations; contracts. [D> Any <D] [A> THE STATE IN-
SURANCE FUND, ANY <A] stock corporation, mutual corporation or reciprocal insurer author-
ized to transact the business of workers' compensation insurance in this state or self-insurer may
contract with a preferred provider organization to deliver all medical services mandated by this
chapter, provided such contract takes effect on or after January first, nineteen hundred ninety-seven
and the insurer or the employer has no financial interest in the preferred provider organization.
Where there is a duty to collectively bargain, an employer shall collectively bargain the use and im-
plementation of a preferred provider organization with the authorized collective bargaining agent of
its employees.

[*46] Section 46. Subdivision 2 of section 27 of the workers' compensation law, as amended
by chapter 68 of the laws of 1976, is amended to read as follows:

2. If an award under this chapter requires payment of death benefits or other compensation by an
insurance carrier or employer in periodical payments, the board may, in its discretion, at any time,
any provision of this chapter to the contrary notwithstanding, compute and permit or require to be
paid into the aggregate trust fund an amount equal to the present value of all unpaid death benefits
or other compensation in cases in which awards are made for total permanent or permanent partial
disability for a period of one hundred and four weeks or more, for which liability exists, together
with such additional sum as the board may deem necessary for a proportionate payment of expenses
of administering the fund so created, including the cost of the actuarial computation by or on behalf
of the board of the present value of the award, and for the purposes of this section such cases shall
be known as discretionary type cases. If any such award made on or after July first, nineteen hun-
dred thirty-five, requires payment for total permanent disability resulting from the loss of both
hands, or both arms, or both feet, or both legs, or both eyes, or of any two thereof, or for permanent
partial disability resulting from loss of an arm, leg, hand, foot or eye, or of death benefits by an in-
surance carrier which is a stock corporation or mutual association [A> , OR IF ANY SUCH
AWARD MADE ON OR AFTER JULY FIRST, TWO THOUSAND SEVEN REQUIRES PAY-
MENT FOR PERMANENT PARTIAL DISABILITY UNDER PARAGRAPH W OF SUBDIVI-
SION THREE OF SECTION FIFTEEN OF THIS ARTICLE BY AN INSURANCE CARRIER
WHICH IS A STOCK CORPORATION OR MUTUAL ASSOCIATION, <A] which for the pur-
poses of this section shall be known as mandatory type cases, the board shall immediately compute
the present value thereof and require payment of such amount into the aggregate trust fund, together
with such additional sum as the board may deem necessary for a proportionate payment of expenses
of administering such trust fund including the cost of the actuarial computation by or on behalf of
the board of the present value of the award provided, however, that where an employer or his insur-
ance carrier is found to be entitled to reimbursement from the special disability fund of subdivision

eight of section fifteen, the computation of the present value of the award and the requirement for payment of such amount into the said trust fund shall not be mandatory and such cases shall be deemed to be discretionary type cases; further provided that where an employee entitled to compensation under this chapter be injured or killed by the negligence or wrong of another not in the same employ, the computation of the present value and the requirement for payment of such amount into the said trust fund shall be held in abeyance until (1) six months have elapsed from the award of compensation, or in any event not more than one year after the date of the accident, if the injured employee, or in case of death, his personal representatives, spouse, parents, dependents or next of kin, or anyone otherwise entitled to recover damages at common law or otherwise, on account of such injury or death, have failed to commence such action, (2) the termination of any such action brought by the injured employee, or in case of death, his personal representatives, spouse, parents, dependents or next of kin, or anyone otherwise entitled to recover damages, at common law or otherwise, on account of such injury or death, under the provisions of section twenty-nine of this [D> chapter <D] [A> ARTICLE <A] .

[*47] Section 47. Subsection (a) of section 107 of the insurance law is amended by adding a new paragraph 54 to read as follows:

[A> (54) THE "WORKERS' COMPENSATION RATING BOARD" OR THE "NEW YORK WORKERS' COMPENSATION RATING BOARD" SHALL MEAN THE COMPENSATION INSURANCE RATING BOARD UNTIL FEBRUARY FIRST, TWO THOUSAND EIGHT, AND THEREAFTER SUCH ENTITY AS IS DESIGNATED BY LAW. <A]

[*48] Section 48. Section 3 of the volunteer ambulance workers' benefit law is amended by adding a new subdivision 15 to read as follows:

[A> 15. THE "WORKERS' COMPENSATION RATING BOARD" OR THE "NEW YORK WORKERS' COMPENSATION RATING BOARD" SHALL MEAN THE COMPENSATION INSURANCE RATING BOARD UNTIL FEBRUARY FIRST, TWO THOUSAND EIGHT, AND THEREAFTER SUCH ENTITY AS IS DESIGNATED BY LAW. <A]

[*49] Section 49. Section 3 of the volunteer firefighters' benefit law is amended by adding a new subdivision 17 to read as follows:

[A> 17. THE "WORKERS' COMPENSATION RATING BOARD" OR THE "NEW YORK WORKERS' COMPENSATION RATING BOARD" SHALL MEAN THE COMPENSATION INSURANCE RATING BOARD UNTIL FEBRUARY FIRST, TWO THOUSAND EIGHT, AND THEREAFTER SUCH ENTITY AS IS DESIGNATED BY LAW. <A]

[*50] Section 50. Subdivision 3 of section 25-a of the workers' compensation law, as amended by chapter 331 of the laws of 1978, the third undesignated paragraph as amended by chapter 729 of the laws of 1993 and the closing paragraph as added by chapter 540 of the laws of 1984, is amended to read as follows:

3. Any awards so made shall be payable out of the special fund heretofore created for such purpose, which fund is hereby continued and shall be known as the fund for reopened cases. The employer, or, if insured, his insurance carrier shall pay into such fund, or, in the case of awards made on or after July first, nineteen hundred sixty-nine, either into such fund or the uninsured employers' fund under section twenty-six-a of this [D> chapter <D] [A> ARTICLE <A] in accordance with the provisions thereof, for every case of injury causing death for which there are no persons entitled to

compensation the sum of three hundred dollars where such injury occurred prior to July first, nineteen hundred forty and the sum of one thousand dollars where such injury shall occur on or after said date and prior to April first, nineteen hundred forty-five, and the sum of fifteen hundred dollars where such injury shall occur on or after April first, nineteen hundred forty-five and prior to September first, nineteen hundred seventy-eight and the sum of three thousand dollars where such injury shall occur on or after September first, nineteen hundred seventy-eight, and in each case of death resulting from injury sustained on or after July first, nineteen hundred forty and prior to September first, nineteen hundred seventy-eight, where there are persons entitled to compensation but the total amount of such compensation is less than two thousand dollars exclusive of funeral benefits, the employer, or, if insured, his insurance carrier, shall pay into such fund, or, in the case of awards made on or after July first, nineteen hundred sixty-nine and prior to September first, nineteen hundred seventy-eight, either into such fund or the uninsured employers' fund under section twenty-six-a of this **[D>** chapter **<D] [A>** ARTICLE **<A]** in accordance with the provisions thereof, the difference between the sum of two thousand dollars and the compensation, exclusive of funeral benefits, and in each case of death resulting from injury sustained on or after September first, nineteen hundred seventy-eight, the employer, or if insured, his insurance carrier shall pay into such fund or the uninsured employers' fund under section twenty-six-a of this **[D>** chapter **<D] [A>** AR-TICLE **<A]** in accordance with the provisions thereof, the difference between the sum of five thousand dollars and the compensation, exclusive of funeral benefits actually paid to or for the dependents of the deceased employee together with any expense charge required by section twenty-seven of this **[D>** chapter **<D] [A>** ARTICLE; **<A]** provided, however, that where death shall occur subsequent to the periods limited by subdivision one of this section no payment into such special fund nor to the special fund provided by subdivision nine of section fifteen nor to the uninsured employers' fund provided by section twenty-six-a of this **[D>** chapter **<D] [A>** ARTICLE **<A]** shall be required. In addition to the assessments made against all insurance carriers for the expenses of administering **[D>** the workmen's compensation law **<D] [A>** THIS CHAPTER **<A]** provided for under the provisions of section one hundred **[D>** and **<D]** fifty-one of this chapter, and the payments above provided, the employer, or, if insured, his insurance carrier, shall pay the sum of five dollars into said fund for each case in which an award is made pursuant to the provisions of paragraphs a to s inclusive of subdivision three of section fifteen of this chapter, by reason of injury sustained between July first, nineteen hundred forty and June thirtieth, nineteen hundred forty-two, both dates inclusive, and the sum of ten dollars for each such case by reason of injury sustained between July first, nineteen hundred forty-two and June thirtieth, nineteen hundred fifty, both dates inclusive, which payment shall be in addition to any payment of compensation to the injured employee as provided in this chapter.

There shall be maintained in the special fund at all times assets at least equal in value to the sum of (1) the value of awards charged against such fund, (2) the value of all claims that have been reopened by the board as a charge against such fund but as to which awards have not yet been made, (3) effective January first, nineteen hundred seventy-one, the total supplemental benefits paid from such fund as reimbursement pursuant to subdivision nine of this section during the calendar year immediately preceding, and (4) a reserve equal to ten per cent of the sum of items (1) and (2) **[A>** OF THIS PARAGRAPH **<A]** . For the purpose of accumulating funds for the payment of supplemental benefits pursuant to subdivision nine of this section, the chairman shall impose against all carriers an assessment in the sum of five million dollars to be collected in the respective proportions established in the fiscal year commencing April first, nineteen hundred sixty-eight, under the provisions of section one hundred fifty-one of this chapter for each carrier. Annually, as soon as practi-

cable after January first in each year, the chairman shall ascertain the condition of the fund and whenever the assets shall fall below the prescribed minimum as herein provided the chairman shall assess and collect from all insurance carriers, in the respective proportions established in the prior fiscal year under the provisions of section one hundred fifty-one of this chapter for each carrier, an amount sufficient to restore the fund to the prescribed minimum. The chairman before making an assessment as **[D>** herein **<D]** provided **[A>** IN THIS SECTION **<A]** shall give thirty days' notice to the representative of the fund, designated pursuant to subdivision five of this section, that an itemized statement of the condition of the fund is open for his inspection. The superintendent of insurance may examine into the condition of the fund at any time on his own initiative or on request of the chairman or representative of the fund.

Such assessment and the payments made into said fund shall not constitute an element of loss for the purpose of establishing rates for workers' compensation insurance as provided in the insurance law but shall for the purpose of recoupment be treated as separate costs by carriers. Carriers shall assess such costs on their policyholders in accordance with rules set forth by the New York **[A>** WORKERS' **<A]** compensation **[D>** insurance **<D]** rating board, as approved by the superintendent of insurance.

The provisions of this subdivision shall not apply with respect to policies containing coverage pursuant to **[D>** subdivision four-a of **<D]** section **[D>** one hundred sixty-seven **<D]** **[A>** THIRTY-FOUR HUNDRED TWENTY **<A]** of the insurance law relating to every policy providing comprehensive personal liability insurance on a one, two, three or four family owner-occupied dwelling.

 **[*51]** Section 51. Paragraph (f) of subdivision 3-e of section 50 of the workers' compensation law, as added by chapter 729 of the laws of 1993, is amended to read as follows:

(f) The New York **[A>** WORKERS' **<A]** compensation **[D>** insurance **<D]** rating board shall file for appropriate premium discounts subject to the approval of the superintendent of insurance.

 **[*52]** Section 52. Section 88 of the workers' compensation law, as amended by chapter 309 of the laws of 1996, is amended to read as follows:

Section 88. Administration expenses. The entire expense of administering the state insurance fund shall be paid out of such fund. The portion of such expenses applicable and chargeable to the disability benefits fund and the medical and hospital malpractice fund shall be determined on an equitable basis with due allowance for the division of overhead expenses. Not later than the first day of November there shall be submitted to the director of the budget for his approval an estimated budget of expenditures for the succeeding calendar year having due regard to the business interests and contract obligations of the fund. There may not be expended for the state insurance fund for purposes of administration more than the amounts specified in such budget for each item of expenditure, except as authorized by the director of the budget. In no case shall the amount of expenditures so authorized for an entire year for **[D>** workmen's **<D]** **[A>** WORKERS' **<A]** compensation insurance exceed twenty-five per centum of the earned premiums for such insurance for that year. In no case shall the amount of expenditures authorized for the disability benefits fund for an entire year exceed twenty-five per centum of the premiums earned by that fund. In no case shall the amount of expenditures authorized for the medical and hospital malpractice fund for an entire year exceed twenty-five per centum of the premiums earned by that fund. If there be officers or employees of the department whose duties relate partly to the general work of the department and partly to the work of the state insurance fund, and in case there is other expense which is incurred jointly on

behalf of the general work of the department and the state insurance fund, an equitable apportionment of the expense shall be made and the part thereof which is applicable to the state insurance fund shall be chargeable thereto. The expenses of the department of audit and control incurred in connection with the pre-audit of expenditures of the state insurance fund, as required by section one hundred eleven of the state finance law, shall be a charge against and be paid out of the moneys of the state insurance fund and there shall be included in the annual estimate submitted pursuant to this section an amount sufficient to pay such expenses for the period covered by such estimate. Notwithstanding section four of the state finance law, the state comptroller is authorized to process or approve payments related to business taxes, various workers' compensation board assessments and assessments related to the [A> WORKERS' <A] compensation [D> insurance <D] rating board directly from the fund's accounts without explicit appropriation authority. The commissioner of labor shall include in his annual report to the legislature a statement of the commissioners showing the expense of administering the state fund for the preceding year. All appointments to positions in the state insurance fund shall be made subject to civil service requirements.

[*53]  Section 53. Subdivision 3 of section 89 of the workers' compensation law, as added by chapter 135 of the laws of 1998, is amended to read as follows:

3. The base rates applicable to construction classifications as defined in this subdivision shall be adjusted by the New York [A> WORKERS' <A] compensation [D> insurance <D] rating board beginning October first, nineteen hundred ninety-nine, to reflect the payroll limitations required by this subdivision as they separately affect such rates for work actually performed within each of the following geographic territories:

(a) Territory 1 comprising the counties of the Bronx, Kings, New York, Queens, and Richmond;

(b) Territory 2 comprising the counties of Dutchess, Nassau, Orange, Putnam, Rockland, Suffolk and Westchester; and

(c) Territory 3 comprising all other counties within the state.

[*54]  Section 54. Intentionally omitted.

[*55]  Section 55. Subdivisions 1 and 2 of section 135 of the workers' compensation law, as added by chapter 635 of the laws of 1996, are amended to read as follows:

1. An employer insured by a licensed insurer or the state insurance fund for workers' compensation insurance may apply for a credit against the premiums for such coverage provided such employer is not currently receiving any statutory safety incentive or sanction authorized under this chapter for amounts invested by such employer in the creation of a safer work environment which meets the requirements of this section. The credit may be applied for a renewable period not to exceed three years. For any one year, the credit shall equal, if actuarially appropriate, an amount up to five percent of the total amount invested as calculated under the provisions of this section but shall not exceed fifteen percent of such employer's annual earned premium for that year in accordance with [A> WORKERS' <A] compensation [D> insurance <D] rating board manual rates. An employer applying for such credit must provide evidence required by rules or regulations promulgated by the superintendent of insurance that the investment would result in a safer work environment, with such evidence to include a written opinion by a certified safety professional, a certified industrial hygienist or a licensed professional engineer describing the items included in the investment and an analysis of how they will substantially enhance the safety of the work environment.

2007 N.Y. ALS 6, *; 2007 N.Y. LAWS 6;
2007 N.Y. A.N. 6163

2. It shall be the sole responsibility of the superintendent of insurance, with the assistance of a committee, to determine whether an employer who has made an application is eligible for a premium credit and the extent of any such credit, and to otherwise assist in the administration of the premium credit program, including the promulgation of insurance department rules and regulations for the implementation of the program.

In addition to the superintendent of insurance, the committee shall consist of:

(a) a representative from the department of labor;

(b) a representative from the department of economic development;

(c) a representative from the state insurance fund;

(d) an individual with an actuarial background and experience in the field of workers' compensation;

(e) an individual with a background in safety engineering appointed by the governor upon recommendation by the New York State American Federation of Labor-Congress of Industrial Organizations;

(f) an individual with a background in safety engineering appointed by the governor upon recommendation of the Business Council of the State of New York;

(g) an individual with a background in safety engineering appointed by the governor upon recommendation of the insurance industry; and

(h) an additional member of the committee with respect to any given application for a premium credit shall be the current insurer of the applicant.

All departments, divisions, boards, offices, and public corporations of the state, and the [A> WORKERS' <A] compensation [D> insurance <D] rating board, shall provide such data, information or other assistance as the committee may require to fulfill its purposes.

The committee shall serve at the pleasure of the governor and shall receive no compensation except for reasonable and necessary expenses incurred in the course of performing the official duties of the committee. Such expenses shall be paid from application fees paid in accordance with rules and regulations promulgated by the superintendent of insurance.

[*56] Section 56. Paragraphs (b) and (c) of subdivision 2 of section 151 of the workers' compensation law, as amended by chapter 510 of the laws of 2000, are amended to read as follows:

(b) An itemized statement of the expenses so ascertained shall be open to public inspection in the office of the board for thirty days after notice to the state insurance fund, all insurance carriers and all selfinsurers [A> INCLUDING GROUP SELF-INSURERS <A] affected thereby, before the board shall make an assessment for such expenses. The chair shall assess upon and collect a proportion of such expenses as hereinafter provided from each insurance carrier, the state insurance fund and each self-insurer [A> INCLUDING GROUP SELF-INSURERS. <A] The assessment for such expenses shall be allocated to (i) self-insurers [A> EXCEPT GROUP SELF-INSURERS <A] and the state insurance fund based upon the proportion that the total compensation payments made by all self-insurers [A> EXCEPT GROUP SELF-INSURERS <A] and the state insurance fund in such year bore to the total compensation payments made by all self-insurers [A> EXCEPT GROUP SELF-INSURERS, <A] the state insurance fund [D> and <D] , all insurance carriers [A> AND

GROUP SELF-INSURERS <A] and (ii) insurance carriers based upon the proportion that the total compensation payments made by all insurance carriers in such year bore to the total compensation payments by all self-insurers, the state insurance fund and all insurance carriers during the fiscal year which ended within said preceding calendar year [A> , AND (III) GROUP SELF-INSURERS BASED UPON THE PROPORTION THAT THE TOTAL COMPENSATION PAYMENTS MADE BY ALL GROUP SELF-INSURERS BORE TO THE TOTAL COMPENSATION PAY-MENTS MADE BY ALL SELF-INSURERS, THE STATE INSURANCE FUND AND ALL IN-SURANCE CARRIERS DURING THE FISCAL YEAR WHICH ENDED WITHIN SAID PRE-CEDING CALENDAR YEAR <A] . The portion of the assessment for such expenses allocated to self-insurers [A> EXCEPT GROUP SELF-INSURERS <A] and the state insurance fund that shall be collected from each self-insurer [A> EXCEPT GROUP SELF-INSURERS <A] and the state in-surance fund shall be a sum equal to the proportion of the amount which the total compensation payments of each such self-insurer [A> EXCEPT A GROUP SELF-INSURER <A] or the state in-surance fund in such year bore to the total compensation payments made by all self-insurers [A> EXCEPT GROUP SELF-INSURERS <A] and the state insurance fund. The portion of the assess-ment for such expenses allocated to insurance carriers that shall be collected from each such insur-ance carrier shall be a sum equal to that proportion of the amount which the total premiums written by each such insurance carrier in such year bore to the total written premiums reported by all insur-ance carriers. [A> THE PORTION OF SUCH SUM ALLOCATED TO GROUP SELF-INSURERS THAT SHALL BE COLLECTED FROM EACH GROUP SELF-INSURER SHALL BE A SUM EQUAL TO THAT PROPORTION OF THE AMOUNT WHICH THE PURE PREMIUM CAL-CULATION FOR EACH SUCH GROUP SELF-INSURER BORE TO THE TOTAL PURE PRE-MIUM CALCULATION FOR ALL GROUP SELF-INSURERS FOR THE CALENDAR YEAR WHICH ENDED WITHIN THE PRECEDING STATE FISCAL YEAR. <A] The amounts so se-cured shall be used for the payment of the expenses of administering this chapter.

For purposes of this paragraph, "direct premiums written" means gross premiums, including pol-icy and membership fees, less return premiums and premiums on policies not taken. [A> FOR PURPOSES OF THIS PARAGRAPH "PURE PREMIUM CALCULATION" MEANS THE NEW YORK STATE ANNUAL PAYROLL AS OF DECEMBER THIRTY-FIRST OF THE PRECED-ING YEAR BY CLASS CODE FOR EACH EMPLOYER MEMBER OF A GROUP SELF-INSURER MULTIPLIED BY THE APPLICABLE RATE FOR EACH CLASS CODE AS DE-TERMINED BY THE WORKERS' COMPENSATION RATING BOARD IN EFFECT ON DE-CEMBER THIRTY-FIRST OF THE PRECEDING YEAR. <A] The amounts so secured shall be used for the payment of the expenses of administering this chapter.

For the purposes of this paragraph, the term "insurance carrier" shall include only stock corpora-tions, mutual corporations and reciprocal insurers authorized to transact the business of workers' compensation insurance in this state and the term "self-insurer" shall include any employer or group of employers permitted to pay compensation directly under the provisions of subdivision three, three-a or four of section fifty of this chapter.

(c) Assessments for the special disability fund, the fund for reopened cases and for the opera-tions of the board shall not constitute elements of loss but shall for collection purposes be treated as separate costs by carriers. [A> ALL GROUP SELF-INSURERS SHALL COLLECT SUCH AS-SESSMENTS FROM THEIR EMPLOYER MEMBERS IN A FAIR AND EQUITABLE MAN-NER. <A] All insurance carriers, including the state insurance fund, shall collect such assessments from their policyholders through a surcharge based on premium in accordance with rules set forth

by the New York **[A>** WORKERS' **<A]** compensation **[D>** insurance **<D]** rating board, as approved by the superintendent of insurance. Such surcharge shall be considered as part of premium for purposes prescribed by law including, but not limited to, computing premium tax, reporting to the superintendent of insurance pursuant to section ninety-nine of this chapter and section three hundred seven of the insurance law, determining the limitation of expenditures for the administration of the state insurance fund pursuant to section eighty-eight of this chapter and the cancellation by an insurance carrier, including the state insurance fund, of a policy for non-payment of premium.

[*57] Section 57. Section 308 of the insurance law is amended by adding a new subsection (g) to read as follows:

**[A>** (G) THE SUPERINTENDENT SHALL REPORT TO THE GOVERNOR, THE SPEAKER OF THE ASSEMBLY, AND THE MAJORITY LEADER OF THE SENATE ON OR BEFORE SEPTEMBER FIRST, TWO THOUSAND SEVEN ON THE COMPENSATION INSURANCE RATING BOARD ON MATTERS RELATED TO THE COMPENSATION INSURANCE RATING BOARD. SUCH REPORT SHALL ADDRESS, AMONG SUCH MATTERS THE SUPERINTENDENT MAY DEEM RELEVANT TO THE COMPENSATION INSURANCE RATING BOARD INCLUDING: (1) THE MANNER IN WHICH THE COMPENSATION INSURANCE RATING BOARD HAS PERFORMED THOSE TASKS DELEGATED TO IT BY STATUTE OR REGULATION; (2) WHETHER ANY OF THOSE TASKS WOULD MORE APPROPRIATELY BE PERFORMED BY ANY OTHER ENTITY, INCLUDING ANY GOVERNMENT AGENCY; AND (3) THE RATE-MAKING PROCESS FOR WORKERS' COMPENSATION INSURANCE. **<A]**

[*57xa]

57-a. Subdivision 4 of section 27 of the workers' compensation law, as amended by chapter 425 of the laws of 1985, is amended to read as follows:

4. In the event of a review or appeal of any such award the value of which has not been paid into the aggregate trust fund, if the amount of award is modified or changed, the employer or insurance carrier shall pay directly to the claimant compensation due to the date as of which the present value of future benefits is payable into such fund, and to the said fund the present value of future benefits, but if the original award is affirmed, the employer or insurance carrier shall pay to such fund the present value of the award computed as of the effective date of the original award and simple interest on such amount at **[D>** three per centum per annum **<D] [A>** THE INDUSTRY STANDARD RATE, AS DETERMINED BY THE SUPERINTENDENT OF INSURANCE BY REGULATION, **<A]** computed from the date of the original award to the date that payment is made into such fund, plus simple interest at the rate provided in section five thousand four of the civil practice law and rules, on past due payments of compensation to the date of the affirmance of such award, which past due payment and interest shall be made directly to the claimant. The foregoing provision shall apply in the event of such review or appeal regardless of whether the widow or widower or other parties in interest have died or the widow or widower remarried subsequent to the date as of which the present value of the original award was computed. If any award, the present value of which has been paid into the aggregate trust fund, is subsequently modified or changed by the board for any reason other than because of subsequent death or remarriage, the amount equal to the present value of the unpaid death benefits or other compensation at the effective date of such modification or change shall be computed on the basis both of the original award and of the modified or changed award. If such amount is greater on the basis of the original award, the difference shall be paid by said trust

fund to the employer or insurance carrier minus the cost, if any, of the actuarial computation made by or on behalf of the board. If such amount is greater on the basis of the modified or changed award, the difference shall be paid to said trust fund by such employer or insurance carrier in addition to the cost, if any, of the actuarial computation made by or on behalf of the board. In the case of an accident, occurring on or subsequent to July first, nineteen hundred thirty-nine, where the present value of an award for permanent total or permanent partial disability other than award for a definite number of weeks has been paid into the aggregate trust fund, if an award is made for death resulting from the injury causing the said disability, the employer or insurance carrier which paid the present value of said disability award into such fund shall be entitled to the difference between the amount paid into such fund and the sum disbursed from such fund to the injured employee prior to his or her death, plus simple interest on such difference at [D> three per centum per annum <D] [A> THE INDUSTRY STANDARD RATE. <A] In the case of an accident occurring on or subsequent to July first, nineteen hundred thirty-nine, where the present value of an award for permanent partial disability for a definite number of weeks has been paid into the aggregate trust fund, if the injured employee dies prior to the end of such definite number of weeks, the employer or insurance carrier which made the said payment into such fund shall be entitled to the present value of the unexpended disability benefits not payable to beneficiaries computed on the basis of annuities certain with interest at the [A> INDUSTRY STANDARD <A] rate [D> of three per centum per annum <D] , minus however the cost, if any, of the actuarial computation made by or on behalf of the board. [A> IN THE CASE OF A CLAIM FOR THE DEATH OF AN EMPLOYEE RESULTING FROM AN ACCIDENT OCCURRING ON OR SUBSEQUENT TO JANUARY FIRST, TWO THOUSAND ONE, THE PRESENT VALUE OF AN AWARD PAID INTO THE AGGREGATE TRUST FUND SHALL BE CALCULATED BASED ON THE ASSUMPTION THAT ANY CHILD WHILE UNDER THE AGE OF TWENTY-THREE YEARS WILL BE ENROLLED AND ATTENDING AS A FULL TIME STUDENT IN AN ACCREDITED EDUCATIONAL INSTITUTION AND WOULD THEREBY BE ENTITLED TO BENEFITS FOR ALL PERIODS WHILE UNDER THE AGE OF TWENTY-THREE YEARS. AFTER ALL SUCH CHILDREN REACH THE AGE OF TWENTY-THREE, THE AGGREGATE TRUST FUND SHALL REFUND TO THE CARRIER WHICH PAID SUCH PRESENT VALUE INTO SUCH FUND THE PORTION OF SUCH PRESENT VALUE REPRESENTING BENEFITS FOR WHICH SUCH CHILDREN WERE NOT ACTUALLY ENTITLED BECAUSE THEY WERE NOT ENROLLED AND ATTENDING AS A FULL TIME STUDENT IN AN ACCREDITED EDUCATIONAL INSTITUTION PLUS SIMPLE INTEREST ON SUCH DIFFERENCE AT THE INDUSTRY STANDARD RATE. <A]

[*57xb]

57-b. Section 27 of the workers' compensation law is amended by adding a new subdivision 8 to read as follows:

[A> 8. IN THE CASE OF A CLAIM CONCERNING WHICH THE AGGREGATE TRUST FUND ENTERS A WAIVER AGREEMENT PURSUANT TO SECTION THIRTY-TWO OF THIS ARTICLE, THE INSURANCE CARRIER, AS DEFINED IN SUBDIVISION TWELVE OF SECTION TWO OF THIS CHAPTER, WHICH PAID THE PRESENT VALUE OF THE AWARD FOR SUCH CLAIM, SHALL NOT BE ENTITLED TO A REFUND OF ANY PORTION OF THE PRESENT VALUE OF SUCH AWARD. <A]

[*58]  Section 58. Paragraph 2 of subsection (e) of section 2304 of the insurance law, as added by chapter 135 of the laws of 1998 and as renumbered by chapter 86 of the laws of 2005, is amended to read as follows:

(2) The base rates applicable to employments classified under sections two hundred twenty, two hundred forty and two hundred forty-one of the labor law, provided such employments are classified under each of said sections, shall be adjusted by the New York [A> WORKERS' <A] compensation [D> insurance <D] rating board beginning October first, nineteen hundred ninety-nine to reflect the payroll limitations required by this section as they separately affect such rates for work actually performed within each of the following geographic territories:

(A) Territory 1 comprising the counties of the Bronx, Kings, New York, Queens, and Richmond;

(B) Territory 2 comprising the counties of Dutchess, Nassau, Orange, Putnam, Rockland, Suffolk and Westchester; and

(C) Territory 3 comprising all other counties within the state.

[*59]  Section 59. Subsection (h) of section 2305 of the insurance law, as added by chapter 729 of the laws of 1993, is amended to read as follows:

(h) The New York [A> WORKERS' <A] compensation [D> insurance <D] rating board shall incorporate an appropriate rate level decrease to reflect the reduction of the thirteen percent surcharge on in-patient hospital charges incurred for care provided on or after January first, nineteen hundred ninety-four, for injury arising out of and in the course of employment, or occupational disease.

[*60]  Section 60. Subsection (d) of section 2339 of the insurance law, as added by chapter 838 of the laws of 1985, is amended to read as follows:

(d) Notwithstanding any other provision of law, the state insurance fund shall not charge an insured or receive from an insured any rate in excess of the rate promulgated by the [D> worker's <D] [A> WORKERS' <A] compensation [D> insurance <D] rating board which does not constitute a fair and reasonable differential charge, giving due regard to the nature and hazards of his business or operations, his prior loss experience, his prior and presently existing safety practices, his prior premium payment history, the number of persons he employs in such business or operations and the specific type of work they perform, his prior and current compliance with obligations imposed upon him by the workers' compensation law and other laws which require premium or other payments by him on the basis of earnings and other remuneration earned by persons engaged in the furtherance of his enterprise or enterprises, the promptness and completeness of such reports as he has filed on accidents and claims, and such other factors as may be relevant to the appraisal of the insured or proposed insured as a risk in whole.

A premium rate for [D> worker's <D] [A> WORKERS' <A] compensation and employer's liability insurance charged to an employer by the state insurance fund which is in excess of the rate promulgated by the [D> worker's <D] [A> WORKERS' <A] compensation [D> insurance <D] rating board may be challenged by the employer by an appeal to the superintendent of insurance after an exhaustion by the employer of all internal review procedures of the state insurance fund as established by rules adopted by the commissioners of the state insurance fund and filed with the secretary of state; provided that a writing setting forth the grounds upon which such appeal is based is served

and filed with the superintendent of insurance and with the secretary to the board of commissioners of the state insurance fund within thirty days after a final determination by the state insurance fund. Appeals to the superintendent of insurance shall be determined upon papers and documents which were before the state insurance fund in connection with the internal review procedures, the writing setting forth the grounds of the employer's appeal and any answer thereto served by the state insurance fund upon the employer and filed with the superintendent within thirty days after the service of the employer's notice.

[*61]  Section 61. Subdivision 6 of section 60 of the volunteer ambulance workers' benefit law, as added by chapter 729 of the laws of 1993, is amended to read as follows:

6. Assessments for the fund for reopened cases and for the operations of the workers' compensation board shall not constitute elements of loss but shall for recoupment purposes be treated as separate costs by carriers. Carriers shall assess such costs on their policyholders in accordance with rules set forth by the New York **[A>** WORKERS' **<A]** compensation **[D>** insurance **<D]** rating board, as approved by the superintendent of insurance.

[*62]  Section 62. Subdivision 6 of section 60 of the volunteer firefighters' benefit law, as added by chapter 729 of the laws of 1993, is amended to read as follows:

6. Assessments for the fund for reopened cases and for the operations of the workers' compensation board shall not constitute elements of loss but shall for recoupment purposes be treated as separate costs by carriers. Carriers shall assess such costs on their policyholders in accordance with rules set forth by the New York **[A>** WORKERS' **<A]** compensation **[D>** insurance **<D]** rating board, as approved by the superintendent of insurance.

[*63]  Section 63. Subdivision 1 of section 143 of the workers' compensation law, as added by chapter 273 of the laws of 1989, is amended to read as follows:

1. The board is authorized and empowered to use **[D>** optical disc technology **<D] [A>** ELECTRONIC MEANS IN ACCORDANCE WITH SECTION THREE HUNDRED FIVE OF THE STATE TECHNOLOGY LAW **<A]** to record and maintain public records, papers, documents or matters required by law to be recorded. Such records shall be capable of being copied, photographed, or microphotographed by a process which accurately reproduces the original thereof in all details.

[*64]  Section 64. Subdivision 3 of section 50 of the workers' compensation law, as amended by chapter 468 of the laws of 1988, is amended to read as follows:

3. By furnishing satisfactory proof to the **[D>** chairman **<D] [A>** CHAIR **<A]** of his financial ability to pay such compensation for himself, in which case the **[D>** chairman **<D] [A>** CHAIR **<A]** shall require the deposit with the **[D>** chairman **<D] [A>** CHAIR **<A]** of such securities as the **[D>** chairman **<D] [A>** CHAIR **<A]** may deem necessary of the kind prescribed in subdivisions one, two, three, four and five, and **[D>** paragraph a **<D] [A>** SUBPARAGRAPH (A) OF PARAGRAPH THREE **<A]** of subdivision seven of section two hundred thirty-five of the banking law, or the deposit of cash, or the filing of irrevocable letters of credit issued by a qualified banking institution as defined by rules promulgated by the **[D>** chairman **<D] [A>** CHAIR **<A]** or the filing of a bond of a surety company authorized to transact business in this state, in an amount to be determined by the **[D>** chairman **<D] [A>** CHAIR, **<A]** or the posting and filing as aforesaid of a combination of such securities, cash, irrevocable letters of credit and surety bond in an amount to be determined by the

[D> chairman <D] [A> CHAIR, <A] to secure his liability to pay the compensation provided in this chapter. Any such surety bond must be approved as to form by the [D> chairman <D] [A> CHAIR <A] . If an employer posts and files a combination of securities, cash, irrevocable letters of credit and surety bond as aforesaid, and if it becomes necessary to use the same to pay the compensation provided in this chapter, the [D> chairman <D] [A> CHAIR <A] shall first use such securities or cash or irrevocable letters of credit and, when the full amount thereof has been exhausted, he shall then require the surety to pay forthwith to the [D> chairman <D] [A> CHAIR <A] all or any part of the penal sum of the bond for that purpose. The [D> chairman <D] [A> CHAIR <A] may also require an agreement on the part of the employer to pay any awards commuted under section twenty-seven of this chapter, into the special fund of the state fund, as a condition of his being allowed to remain uninsured pursuant to this section. The [D> chairman <D] [A> CHAIR <A] shall have the authority to deny the application of an employer to pay such compensation for himself or to revoke his consent furnished, under this section at any time, for good cause shown. The employer qualifying under this subdivision shall be known as a self-insurer.

If for any reason the status of an employer under this subdivision is terminated, the securities or the surety bond, or the securities, cash, or irrevocable letters of credit and surety bond, on deposit referred to herein shall remain in the custody of the [D> chairman <D] [A> CHAIR <A] for a period of at least twenty-six months. At the expiration of such time or such further time period as the [D> chairman <D] [A> CHAIR <A] may deem proper and warranted under the circumstances, and so designates, the [D> chairman <D] [A> CHAIR <A] may accept in lieu thereof, and for the additional purpose of securing such further and future contingent liability as may arise from prior injuries to workers and be incurred by reason of any change in condition of such workers warranting the board making subsequent awards for payment of additional compensation, a policy of insurance furnished by the employer, his heirs or assigns or others carrying on or liquidating such business. Such policy shall be in a form approved by the superintendent of insurance and issued by the state fund or any insurance company licensed to issue this class of insurance in this state. It shall only be issued for a single complete premium payment in advance by the employer. It shall be given in an amount to be determined by the [D> chairman <D] [A> CHAIR <A] and when issued shall be non-cancellable for any cause during the continuance of the liability secured and so covered.

[A> THE BOARD WILL REPORT TO THE GOVERNOR AND THE LEGISLATURE ON OR BEFORE DECEMBER FIRST, TWO THOUSAND SEVEN, AS TO THE ADVISABILITY AND FEASIBILITY OF (1) IMPLEMENTING A STATEWIDE SELF-INSURED EMPLOYER BOND PROGRAM, AND (2) AN IMPROVED INDIVIDUAL EMPLOYER BOND PROGRAM. <A]

[*65]  Section 65. Paragraph c of subdivision 5 of section 50 of the workers' compensation law, as amended by chapter 468 of the laws of 1988, is amended to read as follows:

c. The [D> chairman <D] [A> CHAIR <A] and the department of audit and control as soon as practicable after May first, nineteen hundred sixty, and annually thereafter, as soon as practicable after April first in each succeeding year, shall ascertain the total amount of expenses, including in addition to the direct costs of personal services, the cost of maintenance and operation, the cost of retirement contributions made and workers' compensation premiums paid by the State for or on account of personnel, rentals for space occupied in state owned or state leased buildings, and all [D> other <D] direct or indirect costs incurred by the board during the preceding fiscal year in carrying out the provisions of subdivision three of this section. Such expenses shall be assessed against all

self-insurers including for this purpose employers who have ceased to exercise the privilege of self-insurance [D> but whose securities, irrevocable letters of credit or cash are retained on deposit or, in the case of an employer who has filed a surety bond, for whom securities would have been required to be kept on deposit in accordance with the rules and regulations of the chairman, had no surety bond been filed <D] . The basis of apportionment of the assessment against each selfinsurer shall [D> be that proportion of such expenses that (1) the total of the securities, irrevocable letters of credit, or cash of such self-insurer on deposit with the chairman at the close of the preceding fiscal year, or (2) in the case of an employer who is exercising the privilege of self-insurance and who has filed a surety bond, the penal sum of said bond at the close of the preceding fiscal year, or (3) in the case of an employer who had filed a surety bond, but who had ceased to exercise the privilege of self-insurance prior to the close of the preceding fiscal year, the amount of securities the employer would have been required by the chairman to have on deposit at the close of said year had no bond been filed, bears to the total of (1), (2) and (3) above for all selfinsurers <D] [A> BE A SUM EQUAL TO THAT PROPORTION OF THE AMOUNT WHICH THE PURE PREMIUM CAL-CULATION FOR EACH SELF-INSURER BORE TO THE TOTAL PURE PREMIUM CALCU-LATION FOR ALL SELF-INSURERS FOR THE CALENDAR YEAR WHICH ENDED WITHIN THE PRECEDING STATE FISCAL YEAR. FOR PURPOSES OF THIS SECTION "PURE PRE-MIUM CALCULATION" MEANS THE NEW YORK STATE ANNUAL PAYROLL AS OF DE-CEMBER THIRTY-FIRST OF THE PRECEDING YEAR BY CLASS CODE FOR EACH INDI-VIDUALLY SELF-INSURED EMPLOYER OR EMPLOYER MEMBER OF A GROUP SELF-INSURER MULTIPLIED BY THE APPLICABLE RATE FOR EACH CLASS CODE AS DE-TERMINED BY THE WORKERS' COMPENSATION RATING BOARD IN EFFECT ON DE-CEMBER THIRTY-FIRST OF THE PRECEDING YEAR <A] . All such assessments when col-lected shall [A> BE DEPOSITED INTO A FUND WHICH SHALL <A] be used to reimburse the [D> state treasury for <D] appropriations theretofore made by the state for the payment [D> in the first instance <D] of the expenses of administering this chapter.

[*66] Section 66. The closing paragraph of subdivision 7 of section 27 of the workers' com-pensation law, as amended by chapter 62 of the laws of 1989, is amended to read as follows:

Such additional payments shall be required until the surplus of the fund equals or exceeds one per centum of the total outstanding loss reserves as shown by three successive annual reports of the fund to the superintendent of insurance and such additional payment shall be required as a payment upon each award based on an accident occurring prior to July first next succeeding the third such annual report, but not as a payment upon any award based on an accident occurring on or after said July first; provided, however, that if and when the surplus of the fund as shown by any annual re-port thereafter shall be less than one per centum of the total outstanding loss reserves, then the addi-tional payments as provided in paragraphs (a), (b), (c) and (d) of this subdivision shall be resumed and shall be payable upon any award based on an accident occurring on or after July first next suc-ceeding the close of the year for which such annual report is made. Thereafter, the suspension or resumption of additional payments as required by this subdivision shall be governed by the forego-ing provisions. Such loss reserves shall be computed based upon the tables specified in subdivision five of [A> THIS <A] section [D> twenty-seven of this law <D] and interest at [D> six per centum per annum <D] [A> A STANDARD TO BE DETERMINED BY THE SUPERINTENDENT OF INSURANCE BY REGULATION <A] .

[*67] Section 67. Section 2313 of the insurance law is amended by adding a new subsection (s) to read as follows:

[A> (S) NOTWITHSTANDING ANY OTHER PROVISION OF THIS ARTICLE, NO RATE SERVICE ORGANIZATION MAY FILE RATES, RATING PLANS OR OTHER STATISTICAL INFORMATION FOR WORKERS' COMPENSATION INSURANCE AFTER FEBRUARY FIRST, TWO THOUSAND EIGHT. NOTWITHSTANDING SUBSECTION (J) OF THIS SEC-TION, ANY SUCH RATE SERVICE ORGANIZATION SHALL NONETHELESS BE RE-QUIRED TO BE LICENSED PURSUANT TO THIS SECTION. <A]

[*68] Section 68. Paragraph 2 of subsection (a) of section 2316 of the insurance law is amended to read as follows:

(2) No insurer or rate service organization shall agree with any other insurer or rate service or-ganization to charge or adhere to any rate, although insurers and rate service organizations, [A> OTHER THAN RATE SERVICE ORGANIZATIONS WITH RESPECT TO WORKERS' COM-PENSATION INSURANCE, <A] may continue to exchange statistical information.

[*69] Section 69. Section 125 of the workers' compensation law, as added by chapter 308 of the laws of 1991, is amended to read as follows:

Section 125. Job discrimination prohibited based on prior receipt of benefits. 1. It shall be unlawful for any employer to inquire into, or to consider for the purpose of assessing fitness or ca-pability for employment, whether a job applicant has filed for or received benefits under this chap-ter, or to discriminate against a job applicant with regard to employment on the basis of that claim-ant having filed for or received benefits under this chapter [A> , OR BECAUSE THE CLAIMANT IS AN INJURED VETERAN <A] . An individual aggrieved under this subdivision may initiate proceedings in a court of competent jurisdiction seeking damages, including reasonable attorney fees, for violation of this subdivision.

2. An employer who violates the provisions of subdivision one of this section shall be guilty of a misdemeanor, and upon conviction shall be punished, except as in this chapter or in the penal law otherwise provided, by a fine of not more than one thousand dollars [A> , AND SUBJECT TO THE DEBARMENT PROVISIONS OF SECTION ONE HUNDRED FORTY-ONE-B OF THIS CHAPTER <A] .

[*70] Section 70. The workers' compensation law is amended by adding a new section 125-a to read as follows:

[A> SECTION 125-A. DISCRIMINATING AGAINST AN INJURED VETERAN. 1. AN IN-SURANCE CARRIER IS GUILTY OF UNLAWFULLY DISCRIMINATING AGAINST AN IN-JURED VETERAN WHEN WITH RESPECT TO WORKERS' COMPENSATION INSURANCE, THE INSURER KNOWINGLY AND INTENTIONALLY (A) DISCRIMINATES AGAINST AN INJURED VETERAN BECAUSE OF THE VETERAN'S INJURY OR STATUS AS A VET-ERAN, OR (B) DISCOURAGES OR CAUSES AN EMPLOYER OR OTHER ENTITY TO UNLAWFULLY DISCRIMINATE AGAINST AN INJURED VETERAN IN HIRING OR DIS-CHARGING DECISIONS BECAUSE OF THE VETERAN'S INJURY OR STATUS AS A VET-ERAN. <A]

[A> 2. FOR THE PURPOSE OF THIS SECTION (A) "INJURED VETERAN" SHALL MEAN AN INDIVIDUAL WHO SUFFERED AN INJURY AS A RESULT OF HIS OR HER SERVICE IN THE ARMED FORCES; AND (B) "INSURANCE CARRIER" SHALL BE DEFINED AS IN SUBDIVISION TWELVE OF SECTION TWO OF THIS CHAPTER. <A]

[A> 3. DISCRIMINATING AGAINST AN INJURED VETERAN IS A CLASS A MISDE-MEANOR. <A]

[A> 4. ANY PERSON CONVICTED UNDER THIS SECTION SHALL BE SUBJECT TO THE DEBARMENT PROVISIONS OF SECTION ONE HUNDRED FORTY-ONE-B OF THIS CHAPTER. <A]

[*71] Section 71. Subdivision 5 of section 27 of the workers' compensation law, as amended by chapter 415 of the laws of 1983, is amended to read as follows:

5. All computations made by the board shall be upon the basis of the survivorship annuitants table of mortality, the remarriage tables of the Dutch Royal Insurance Institution and interest at three and one-half per centum per annum on claims based on accidents occurring up to and including June thirtieth, nineteen hundred thirty-nine, at three per centum per annum on claims based on accidents occurring from July first, nineteen hundred thirty-nine up to and including August thirty-first, nineteen hundred eighty-three, [D> and <D] at six per centum per annum on claims based on accidents occurring [A> FROM SEPTEMBER FIRST, NINETEEN HUNDRED EIGHTY-THREE UP TO AND INCLUDING DECEMBER THIRTY-FIRST, TWO THOUSAND AND AT THE IN-DUSTRY STANDARD RATE ON CLAIMS BASED ON ACCIDENTS OCCURRING <A] thereafter, except (a) that computations of present values of death benefits required to be paid into the aggregate trust fund by an insurance carrier which is a stock corporation or a mutual association shall be based, in the case of a dependent parent, grandparent, blind or physically disabled child or spouse, upon said table of mortality disregarding possible change in or termination of dependency, with interest at three and one-half per centum per annum on claims based on accidents occurring up to and including June thirtieth, nineteen hundred thirty-nine, at three per centum per annum on claims based on accidents occurring from July first, nineteen hundred thirty-nine up to and including August thirty-first, nineteen hundred eighty-three, [D> and <D] at six per centum per annum on claims based on accidents occurring [A> FROM SEPTEMBER FIRST, NINETEEN HUNDRED EIGHTY-THREE UP TO AND INCLUDING DECEMBER THIRTY-FIRST, TWO THOUSAND AND AT THE INDUSTRY STANDARD RATE ON CLAIMS BASED ON ACCIDENTS OC-CURRING <A] thereafter and (b) that computations of present values of permanent partial disability benefits awarded for a definite number of weeks shall be on the basis of annuities certain with interest at three and one-half per centum per annum on claims based on accidents occurring up to and including June thirtieth, nineteen hundred thirty-nine, at three per centum per annum on claims based on accidents occurring from July first, nineteen hundred thirty-nine up to and including August thirty-first, nineteen hundred eighty-three [D> and <D] , at six per centum per annum on claims based on accidents occurring [A> FROM SEPTEMBER FIRST, NINETEEN HUNDRED EIGHTY-THREE UP TO AND INCLUDING DECEMBER THIRTY-FIRST, TWO THOUSAND AND AT THE INDUSTRY STANDARD RATE ON CLAIMS BASED ON ACCIDENTS OC-CURRING <A] thereafter.

[*72] Section 72. Subdivision 1 of section 13-j of the workers' compensation law, as amended by chapter 113 of the laws of 1946, is amended to read as follows:

(1) An insurance carrier shall not participate in the treatment of injured [D> workmen <D] [A> WORKERS, <A] except [A> AS PROVIDED IN PARAGRAPH FIVE OF SUBDIVISION (I) OF SECTION THIRTEEN OF THIS ARTICLE AND SUBDIVISION SEVEN OF SECTION THIR-TEEN-A OF THIS ARTICLE AND EXCEPT, <A] that it may employ medical inspectors to examine compensation cases periodically, while under treatment, and report upon the adequacy of medi-

cal care, and other matters relative to the medical conduct of the case, a copy of which report shall be filed directly with the **[D>** chairman **<D] [A>** CHAIR **<A]** within ten days, and that it may maintain rehabilitation bureaus operated by qualified physicians if authorized by the **[D>** chairman **<D] [A>** CHAIR **<A]** in accordance with section thirteen-c of this **[D>** chapter **<D] [A>** ARTICLE **<A]**

.

[*73] Section 73. Subdivision (a) of section 32 of the workers' compensation law, as added by chapter 635 of the laws of 1996, is amended to read as follows:

(a) Whenever a claim has been filed, the claimant or the deceased claimant's dependents and the employer **[D>** or his **<D]** , **[A>** ITS **<A]** carrier, **[A>** THE SPECIAL DISABILITY FUND AS SET FORTH IN SUBDIVISION (E) OF THIS SECTION, OR THE AGGREGATE TRUST FUND, IF THE BOARD HAS DIRECTED THAT THE PRESENT VALUE OF ANY UNPAID COMPENSATION BE PAID INTO SUCH FUND PURSUANT TO SECTION TWENTY-SEVEN OF THIS ARTICLE, **<A]** may enter into an agreement settling upon and determining the compensation and other benefits due to the claimant or **[D>** their **<D] [A>** HIS OR HER **<A]** dependents. The agreement shall not bind the parties to it, unless it is approved by the board. Such agreements, when so approved, notwithstanding any other provisions, shall be final and conclusive upon the claimant, the **[D>** claimants **<D] [A>** CLAIMANT'S **<A]** dependents, the employer **[D>** and the **<D]** , **[A>** ITS **<A]** insurance carrier **[A>** , THE AGGREGATE TRUST FUND AND THE SPECIAL DISABILITY FUND. EVERY INSURANCE CARRIER AS DEFINED IN SUBDIVISION TWELVE OF SECTION TWO OF THIS CHAPTER SHALL OFFER EACH CLAIMANT THE OPPORTUNITY TO ENTER INTO AN AGREEMENT SETTLING UPON AND DETERMINING THE COMPENSATION AND OTHER BENEFITS DUE, IN THE CASE OF DISABILITY, WITHIN TWO YEARS AFTER THE DATE THE CLAIM WAS INDEXED BY THE BOARD OR SIX MONTHS AFTER THE CLAIMANT IS CLASSIFIED WITH A PERMANENT DISABILITY, WHICHEVER IS LATER, AND IN THE CASE OF DEATH, WITHIN SIX MONTHS AFTER ENTITLEMENT TO BENEFITS IS ESTABLISHED FOR ALL BENEFICIARIES. THE OFFER MADE BY THE INSURANCE CARRIER SHALL CLEARLY STATE WHAT PORTION OF THE OFFER IS (I) FOR COMPENSATION AS DEFINED IN SUBDIVISION SIX OF SECTION TWO OF THIS CHAPTER, IF ANY; (II) FOR MEDICAL BENEFITS, INCLUDING PRESCRIPTION MEDICINE, IF ANY; AND (III) FOR THE FEE OF THE ATTORNEY OR LICENSED REPRESENTATIVE, IF ANY. IF A CLAIMANT IS REPRESENTED BY AN ATTORNEY OR LICENSED REPRESENTATIVE, THE INSURANCE CARRIER SHALL PRESENT SUCH OFFER TO SUCH LEGAL REPRESENTATIVE. IF A CLAIMANT IS NOT REPRESENTED BY AN ATTORNEY OR A LICENSED REPRESENTATIVE, THE INSURANCE CARRIER SHALL, IN ADDITION TO THE OFFER TO ENTER INTO A SETTLEMENT AGREEMENT, PROVIDE THE CLAIMANT WITH A STATEMENT OF HIS OR HER RIGHTS, OBLIGATIONS AND POTENTIAL LIABILITY IF THE OFFER IS ACCEPTED **<A]** .

[*74] Section 74. Section 32 of the workers' compensation law is amended by adding five new subdivisions (e), (f), (g), (h) and (i) to read as follows:

**[A>** (E) THE CHAIR SHALL ESTABLISH AN OFFICE UNDER HIS OR HER SUPERVISION TO BE KNOWN AS THE "WAIVER AGREEMENT MANAGEMENT OFFICE," TO NEGOTIATE AND SEEK BOARD APPROVAL FOR WAIVER AGREEMENTS ON BEHALF OF THE SPECIAL DISABILITY FUND. THE OFFICE SHALL OPERATE IN ACCORDANCE WITH GUIDELINES OR DIRECTIVES THAT THE CHAIR MAY ISSUE, AS APPROVED BY

THE SPECIAL DISABILITY FUND ADVISORY COMMITTEE, OR IN THE ABSENCE OF SUCH GUIDELINES OR DIRECTIVES, USING SUCH DISCOUNTING FACTORS AS THE OFFICE DETERMINES ARE IN THE FINANCIAL INTEREST OF THE SPECIAL DISABIL-ITY FUND. THE WAIVER AGREEMENT MANAGEMENT OFFICE ON BEHALF OF THE SPECIAL DISABILITY FUND MAY ENTER INTO A WAIVER AGREEMENT WITH A CLAIMANT ONLY WHEN THE SPECIAL DISABILITY FUND HAS BEEN FOUND LIABLE BY THE BOARD TO REIMBURSE THE CLAIMANT'S EMPLOYER, INSURANCE CARRIER OR THE STATE INSURANCE FUND. NOTWITHSTANDING ANY OTHER PROVISIONS OF LAW, NO CONSULTATION OR APPROVAL OF ANY EMPLOYER, INSURANCE CARRIER, SELF-INSURER, THE STATE INSURANCE FUND, OR THE SPECIAL FUNDS CONSERVA-TION COMMITTEE SHALL BE REQUIRED BEFORE SUCH OFFICE MAY ENTER INTO ANY WAIVER AGREEMENT, OR BEFORE THE BOARD MAY APPROVE SUCH WAIVER AGREEMENT. THE CHAIR MAY, IN HIS OR HER DISCRETION, AND AS APPROVED BY THE SPECIAL DISABILITY FUND ADVISORY COMMITTEE, TERMINATE THE OPERA-TION OF THE WAIVER AGREEMENT MANAGEMENT OFFICE, IF HE OR SHE BELIEVES IT NO LONGER SERVES THE INTEREST OF THE SPECIAL DISABILITY FUND. <A]

[A> (F) A CLAIMANT'S EXECUTED WAIVER AGREEMENT WITH THE WAIVER AGREEMENT MANAGEMENT OFFICE SHALL BE FINAL AND CONCLUSIVE UPON THE CLAIMANT, THE CLAIMANT'S DEPENDENTS, AND ANY EMPLOYER, SELF-INSURER, INSURANCE CARRIER, THE STATE INSURANCE FUND AND THE SPECIAL DISABILITY FUND AS TO ALL CLAIMS BY THE CLAIMANT, AND AS TO ANY CLAIM OR REQUEST FOR REIMBURSEMENT FROM THE SPECIAL DISABILITY FUND FOR PAYMENTS NOT YET MADE. THE WAIVER AGREEMENT MANAGEMENT OFFICE SHALL GIVE WRIT-TEN NOTICE TO ANY EMPLOYER, INSURANCE CARRIER OR THE STATE INSURANCE FUND ENTITLED TO RECEIVE REIMBURSEMENT FROM THE SPECIAL DISABILITY FUND IN REGARD TO ANY CLAIMANT, OF ANY WAIVER AGREEMENT SIGNED BY THE OFFICE WITH SUCH CLAIMANT WITHIN FOURTEEN DAYS OF SUBMITTING THE WAIVER AGREEMENT TO THE BOARD FOR APPROVAL. <A]

[A> (G) NOTHING IN THIS SECTION SHALL PROHIBIT ANY INSURANCE CARRIER, EMPLOYER, THE STATE INSURANCE FUND, OR THE WAIVER AGREEMENT MAN-AGEMENT OFFICE ON BEHALF OF THE SPECIAL DISABILITY FUND FROM JOINTLY ENTERING INTO A WAIVER AGREEMENT WITH A CLAIMANT, BY WHICH THE JOINT SIGNATORIES MAY APPORTION RESPONSIBILITY FOR MAKING ANY PAYMENTS RE-QUIRED UNDER THE AGREEMENT. THE AGREEMENT SHALL SET FORTH THE OBLI-GATIONS OF THE SIGNATORIES TO MAKE SUCH PAYMENTS, AND SHALL IDENTIFY, AS TO EACH OBLIGATION THEREUNDER: (1) THE SIGNATORY THAT HAS THE LEGAL OBLIGATION TO CARRY OUT THAT PROVISION, OR (2) THAT ALL SIGNATORIES ARE JOINTLY AND SEVERALLY LIABLE UNDER THE PROVISION. <A]

[A> (H) NEITHER THE ESTABLISHMENT OF THE WAIVER AGREEMENT MANAGE-MENT OFFICE, NOR ANY ACTION TAKEN BY THAT OFFICE, SHALL SERVE AS GROUNDS FOR THE BOARD'S DISAPPROVAL OF ANY WAIVER AGREEMENT TO WHICH THE OFFICE IS NOT A PARTY, OR OTHERWISE PERMIT ANY PARTY TO WITH-DRAW FROM SUCH A WAIVER AGREEMENT. <A]

[A> (I) (1) THE WAIVER AGREEMENT MANAGEMENT OFFICE MAY CONTRACT WITH ANY THIRD PARTY TO MANAGE, ADMINISTER, OR SETTLE CLAIMS ON ITS BEHALF, SO LONG AS (A) SUCH CONTRACT IS APPROVED BY THE SPECIAL DISABIL-ITY FUND ADVISORY COMMITTEE AND (B) SUCH THIRD PARTY SHALL AGREE TO BE SUBJECT TO ANY GUIDELINES OR DIRECTIVES AS THE CHAIR MAY ISSUE. <A]

[A> (2) THE CHAIR, WITH APPROVAL OF THE SPECIAL DISABILITY FUND ADVI-SORY COMMITTEE AND ON SUCH TERMS AS THE COMMITTEE DEEMS APPROPRI-ATE, SHALL HAVE DISCRETION TO PROCURE ONE OR MORE PRIVATE ENTITIES TO ASSUME THE LIABILITY FOR AND MANAGEMENT, ADMINISTRATION OR SETTLE-MENT OF ALL OR A PORTION OF THE CLAIMS IN THE SPECIAL DISABILITY FUND. ANY SUCH PROCUREMENT SHALL BE CONDUCTED IN ACCORDANCE WITH STATE FINANCE LAW, EXCEPT AS OTHERWISE SET FORTH BELOW. THE CHAIR SHALL NOT AWARD ANY CONTRACT THAT HAS NOT BEEN APPROVED BY THE SPECIAL DIS-ABILITY FUND ADVISORY COMMITTEE. NOTWITHSTANDING THE FOREGOING, THE CHAIR OF THE WORKERS' COMPENSATION BOARD MAY, IF APPROVED BY THE SPE-CIAL DISABILITY FUND ADVISORY COMMITTEE, AND ON SUCH TERMS AS THE COMMITTEE DEEMS APPROPRIATE: <A]

[A> (A) WAIVE ANY INFORMALITY IN A BID, AND EITHER REJECT ALL BIDS AND AGAIN ADVERTISE FOR BIDS, OR INTERVIEW AT LEAST TWO RESPONSIBLE QUALI-FIED BIDDERS AND NEGOTIATE AND ENTER INTO A CONTRACT WITH ONE OR MORE OF SUCH BIDDERS; OR <A]

[A> (B) GROUP CLAIMS TO BE ASSIGNED, IN WHOLE OR IN PART, BASED ON THE INSURANCE CARRIER, SELF-INSURED EMPLOYER OR STATE INSURANCE FUND THAT IS RECEIVING OR WILL RECEIVE REIMBURSEMENT ON THOSE CLAIMS FROM THE SECOND DISABILITY FUND. SUCH GROUPING SHALL BE PERMISSIBLE NOT-WITHSTANDING THAT ANY INSURANCE CARRIER MAY HAVE GREATER ACCESS TO INFORMATION, OR MAY BE ABLE TO PROVIDE BETTER TERMS, IN REGARD TO CLAIMS SO GROUPED. <A]

[A> (3) ANY SUCH CONTRACT SHALL EXPRESSLY PROVIDE THAT THE SPECIAL DISABILITY FUND IS NO LONGER LIABLE FOR THE CLAIMS COVERED BY THE CON-TRACT, AND REQUIRE SECURITY OF EITHER CASH, AN INDEMNITY POLICY, OR SUCH SECURITY AS IS OTHERWISE SUFFICIENT TO COVER ANY LOSSES INCURRED AS A RESULT OF THE FAILURE OR DEFAULT OF THE ENTITY OR ENTITIES AWARDED ANY SUCH CONTRACT, INCLUDING AS A RESULT OF THE INSOLVENCY OF ANY SUCH ENTITY. THE CHAIR MAY WAIVE ALL OR PART OF SUCH SECURITY, AND MAY IMPOSE OTHER REASONABLE METHODS OF INSURING PAYMENT, UPON APPROVAL OF THE SPECIAL DISABILITY FUND ADVISORY COMMITTEE. <A]

[A> (4) NOTWITHSTANDING ANY OTHER PROVISION OF THIS ARTICLE, THE WAIVER AGREEMENT MANAGEMENT OFFICE MAY REQUEST IN WRITING ANY IN-FORMATION RELEVANT TO ITS ENTRY INTO OR MANAGEMENT OF WAIVER AGREEMENTS FROM (A) ANY INSURANCE CARRIER, EMPLOYER, OR THE STATE IN-SURANCE FUND, IF THAT ENTITY HAS SUBMITTED A CLAIM FOR REIMBURSEMENT FROM THE SPECIAL DISABILITY FUND AS TO THE CLAIMANT TO WHOM THE IN-FORMATION RELATES; OR (B) THE SPECIAL FUNDS CONSERVATION COMMITTEE.

THE PARTY TO WHOM THE REQUEST IS MADE SHALL PROVIDE THE REQUESTED IN-
FORMATION WITHIN FOURTEEN DAYS OF THE REQUEST, UNLESS BEFORE THAT
DATE IT FILES AN OBJECTION WITH THE BOARD TO ANY INFORMATION WHICH IS
SUBJECT TO A RECOGNIZED PRIVILEGE OR WHOSE PRODUCTION IS OTHERWISE
BARRED BY LAW. THE OBJECTING PARTY SHALL PROVIDE THE REQUESTED IN-
FORMATION WITHIN FIVE BUSINESS DAYS OF THE BOARD'S REJECTION OF ITS OB-
JECTION. <A]

[A> (5) NO CARRIER, SELF-INSURED EMPLOYER OR THE STATE INSURANCE FUND
SHALL ASSUME THE LIABILITY FOR, OR MANAGEMENT, ADMINISTRATION OR SET-
TLEMENT OF ANY CLAIMS UNDER THIS SECTION ON WHICH IT HOLDS RESERVES,
BEYOND SUCH RESERVES AS ARE PERMITTED BY REGULATION OF THE SUPERIN-
TENDENT OF INSURANCE FOR PURPOSES OF THIS PROVISION. NO CARRIER MAY
ASSUME LIABILITY FOR ANY CLAIMS IN THE SPECIAL DISABILITY FUND UNDER
THIS PARAGRAPH UNLESS THE CARRIER MAINTAINS, ON A STAND ALONE BASIS,
SEPARATE FROM ITS PARENT OR ANY AFFILIATED ENTITIES, AN INTERACTIVE FI-
NANCIAL STRENGTH RATING FROM A NATIONALLY RECOGNIZED STATISTICAL
RATING ORGANIZATION THAT IS CONSIDERED SECURE OR DEEMED ACCEPTABLE
BY THE SPECIAL DISABILITY FUND ADVISORY COMMITTEE. <A]

[A> (6) THE DIRECTOR OF THE BUDGET SHALL NOTIFY IN WRITING THE CHAIRS
OF THE SENATE FINANCE COMMITTEE AND THE ASSEMBLY WAYS AND MEANS
COMMITTEE OF ANY PLANS TO TRANSFER ALL OR A PORTION OF THE PORTFOLIO
OF CLAIMS DETERMINED TO BE ELIGIBLE FOR REIMBURSEMENT FROM THE SPE-
CIAL DISABILITY FUND OR TO CONTRACT WITH ANY PARTY TO TAKE RESPONSI-
BILITY IN WHOLE OR IN PART FOR THE ADMINISTRATION OF A MATERIAL PORTION
OF THE CLAIMS, INCLUDING THE PROCUREMENT PROCESS TO BE USED TO SELECT
PARTIES INVOLVED IN SUCH TRANSFER OR CONTRACT, NOT LESS THAN FORTY-
FIVE DAYS PRIOR TO THE COMMENCEMENT OF SUCH PROCESS. AT ANY TIME BOR-
ROWING IS ANTICIPATED TO SETTLE CLAIMS, THE CHIEF EXECUTIVE OFFICER OF
THE DORMITORY AUTHORITY OF THE STATE OF NEW YORK AND THE DIRECTOR OF
THE BUDGET SHALL PROVIDE A REPORT TO THE CHAIRS OF THE SENATE FINANCE
COMMITTEE AND THE ASSEMBLY WAYS AND MEANS COMMITTEE ON A PLANNED
BOND SALE OF THE AUTHORITY AND SUCH REPORT SHALL INCLUDE, BUT NOT BE
LIMITED TO: (A) THE MAXIMUM AMOUNT OF BONDS EXPECTED TO BE SOLD BY THE
AUTHORITY IN CONNECTION WITH A SALE AGREEMENT; (B) THE EXPECTED MAXI-
MUM INTEREST RATE AND MATURITY DATE OF SUCH BONDS; (C) THE EXPECTED
AMOUNT OF THE BONDS THAT WILL BE FIXED AND/OR VARIABLE INTEREST RATE;
(D) THE ESTIMATED COSTS OF ISSUANCE; (E) THE ESTIMATED LEVEL OR LEVELS OF
RESERVE FUND OR FUNDS, IF ANY; (F) THE ESTIMATED COST OF BOND ISSUANCE, IF
ANY; (G) THE ANTICIPATED USE OR USES OF THE PROCEEDS; (H) THE MAXIMUM
EXPECTED NET PROCEEDS THAT WILL BE PAID TO THE STATE AS A RESULT OF THE
ISSUANCE OF SUCH BONDS; AND (I) THE PROCESS TO BE USED TO SELECT PARTIES
TO THE TRANSACTION. ANY SUCH EXPECTATIONS AND ESTIMATES IN THE REPORT
SHALL NOT BE DEEMED A SUBSTANTIVE LIMITATION ON THE AUTHORITY OF THE
DORMITORY AUTHORITY OF THE STATE OF NEW YORK. <A]

[*75]  Section 75. Paragraphs (ee) and (f) of subdivision 8 of section 15 of the workers' compensation law, as amended by chapter 635 of the laws of 1996, are amended to read as follows:

(ee) If an employee of an employer who has secured the payment of compensation as required under the provisions of section fifty of this chapter is disabled from silicosis or other dust disease, or in the event of death, death was due to silicosis or other dust disease, and if such an employee has been subject to an injurious exposure in an employment defined under paragraph twenty-nine of subdivision two of section three of this chapter, the provisions of this subdivision shall apply except as hereinafter stated; and it shall not be required that the employee had, either at the time of hiring or during the employment, any previous physical condition or disability which may result in such disability or death. In all such cases the employer or his insurance carrier shall in the first instance pay all awards of compensation and all medical expense provided by this chapter; and in the event of death, the employer or his insurance carrier shall also in the first instance pay the funeral expenses and the death benefits prescribed by this chapter; but such employer or his insurance carrier shall [A> SUBJECT TO THE LIMITATIONS OF SUBPARAGRAPHS TWO AND THREE OF PARAGRAPH (H) OF THIS SUBDIVISION <A] be reimbursed from the special disability fund created by this subdivision for all compensation and medical benefits subsequent to those payable for the first one hundred four weeks of disability for claims where the date of accident or date of disablement occurred prior to August first, nineteen hundred ninety-four, and two hundred sixty weeks of disability for claims where the date of accident or date of disablement occurred on or after August first, nineteen hundred ninety-four, and, in the event of death, the employer or his insurance carrier shall be reimbursed from the special disability fund created by this subdivision for all death benefits payable in excess of one hundred four weeks for claims where the date of accident or date of disablement occurred prior to August first, nineteen hundred ninety-four, and two hundred sixty weeks for claims where the date of accident or date of disablement occurred on or after August first, nineteen hundred ninety-four; provided, however, that when total disability or death occurred after July first, nineteen hundred forty-seven, and prior to July first, nineteen hundred seventy-four, the employer or his insurance carrier shall be reimbursed from the special disability fund created by this subdivision for all compensation and medical benefits including funeral expenses and death benefits subsequent to those payable for the first two hundred sixty weeks of disability and death benefits combined; and further provided, however, that in the event of death due to silicosis or other dust disease on or after July first, nineteen hundred forty-seven, of such an employee who shall have been totally disabled from silicosis or other dust disease prior to such date, the employer or his insurance carrier shall be reimbursed from the special disability fund created by this subdivision for death benefits subsequent to those payable for the first one hundred four weeks.

The compensation of an employee who has heretofore been found to be totally and permanently disabled from silicosis or other dust disease and whose disablement occurred prior to July first, nineteen hundred forty-seven, shall be continued or resumed, as the case may be, after June first, nineteen hundred fifty-one, and payments shall be made during continuance of such disability at his/her regular weekly rate, notwithstanding the fact that such compensation is in excess of the maximum provided for his/her case under former article four-a of this chapter; but such compensation in excess of the maximum so provided shall be paid from the special fund created by this subdivision.

(f) Any award under this subdivision shall be made against the employer or his or her insurance carrier, but if such employer or insurance carrier be entitled to reimbursement as provided in this subdivision, notice or claim of the right to such reimbursement shall be filed with the board in writ-

2007 N.Y. ALS 6, *; 2007 N.Y. LAWS 6;
2007 N.Y. A.N. 6163

ing prior to the final determination that the resulting disability is permanent, but in no case more than one hundred four weeks after the date of disability or death or fifty-two weeks after the date that a claim for compensation is filed with the chair, whichever is later, or in the event of the re-opening of a case theretofore closed, no later than the determination of permanency upon such re-opening. [A> IN NO EVENT SHALL SUCH A NOTICE OF CLAIM BE FILED BEYOND THE DATES SET FORTH IN SUBPARAGRAPH TWO OF PARAGRAPH (H) OF THIS SUBDIVI-SION. <A]

The employer or his or her insurance carrier shall in the first instance make the payments of compensation and medical expenses provided by this subdivision. Whenever for any reason pay-ments are not made by the employer or his or her insurance carrier at any time after the payments have been made for the first one hundred four weeks for claims where the date of accident or date of disablement occurred prior to August first, nineteen hundred ninety-four, and two hundred sixty weeks for claims where the date of accident or date of disablement occurred on or after August first, nineteen hundred ninety-four, the payments of subsequent compensation and medical expenses shall be made out of the special disability fund by the commissioner of taxation and finance upon vouch-ers approved by the chair of the workers' compensation board. In case any payments prior to the ex-piration of the first one hundred four weeks for claims where the date of accident or date of dis-ablement occurred prior to August first, nineteen hundred ninety-four, and two hundred sixty weeks for claims where the date of accident or date of disablement occurred on or after August first, nine-teen hundred ninety-four are not made by the employer or his or her insurance carrier by reason of the insolvency of such carrier, the payments until the expiration of one hundred four weeks for claims where the date of accident or date of disablement occurred prior to August first, nineteen hundred ninety-four, and two hundred sixty weeks for claims where the date of accident or date of disablement occurred on or after August first, nineteen hundred ninety-four shall be made out of the stock workers' compensation security fund created by the provisions of section one hundred seven of this chapter if the insolvent carrier be a stock company, or out of the mutual workers' compensa-tion security fund created under the provisions of section one hundred nine-d of this chapter if the carrier be a mutual company. If any such payments are not made by an employer permitted to se-cure the payment of compensation pursuant to the provisions of subdivision three of section fifty of this chapter, the payments shall be made out of the proceeds of the sale of any securities deposited by the employer with the chair, upon vouchers approved by the chair, until such payments have been made for one hundred four weeks for claims where the date of accident or date of disablement occurred prior to August first, nineteen hundred ninety-four, and two hundred sixty weeks for claims where the date of accident or date of disablement occurred on or after August first, nineteen hundred ninety-four, from the date of disability, after which date they shall be made out of the spe-cial disability fund in the manner above provided.

In all cases in which awards have been made and charged against the special fund or injuries have occurred which would require payments to be made in accordance with the provisions of for-mer subdivision eight of this section as it existed immediately prior to the time this subdivision, as hereby added, takes effect, the compensation so awarded or that shall be awarded in such cases shall continue to be paid out of the special disability fund by the commissioner of taxation and finance upon vouchers approved by the chair of the workers' compensation board, as though this subdivi-sion had not been enacted.

[*76] Section 76. Paragraph (h) of subdivision 8 of section 15 of the workers' compensation law, as amended by chapter 510 of the laws of 2000, is amended to read as follows:

2007 N.Y. ALS 6, *; 2007 N.Y. LAWS 6;
2007 N.Y. A.N. 6163

(h) Special disability fund. **[A> (1) <A]** The fund heretofore maintained and provided for by and pursuant to former subdivision eight of this section, is hereby continued and shall retain the liabilities heretofore charged or chargeable thereto under the provisions of such former subdivision eight of this section as it existed immediately prior to the time this subdivision, as hereby added, takes effect, and the liabilities chargeable thereto under the provisions of former subdivision eight-a of this section as added by chapter seven hundred forty-nine of the laws of nineteen hundred forty-four and repealed at the same time this subdivision, as **[D>** hereby **<D] [A>** HERETOFORE **<A]** added, takes effect, and payments therefrom on account of such liabilities shall continue to be made as provided herein. The said fund shall be known as the special disability fund and shall be available only for the purposes stated in this subdivision, and the assets thereof shall not at any time be appropriated or diverted to any other use or purpose.

**[A>** (2) (A) NO CARRIER OR EMPLOYER, OR THE STATE INSURANCE FUND, MAY FILE A CLAIM FOR REIMBURSEMENT FROM THE SPECIAL DISABILITY FUND, FOR AN INJURY OR ILLNESS WITH A DATE OF ACCIDENT OR DATE OF DISABLEMENT ON OR AFTER JULY FIRST, TWO THOUSAND SEVEN. NO CARRIER OR EMPLOYER, OR THE STATE INSURANCE FUND, MAY FILE A CLAIM FOR REIMBURSEMENT FROM THE SPECIAL DISABILITY FUND AFTER JULY FIRST, TWO THOUSAND TEN, AND NO WRITTEN SUBMISSIONS OR EVIDENCE IN SUPPORT OF SUCH A CLAIM MAY BE SUBMITTED AFTER THAT DATE. **<A]**

**[A>** (B) ALL REQUESTS FOR REIMBURSEMENT FROM THE SPECIAL DISABILITY FUND WITH A DATE OF INJURY OR DATE OF DISABLEMENT PRIOR TO JULY FIRST, TWO THOUSAND SEVEN AS TO WHICH THE BOARD HAS DETERMINED THAT THE SPECIAL DISABILITY FUND IS LIABLE MUST BE SUBMITTED TO THE SPECIAL DISABILITY FUND BY THE LATER OF (I) ONE YEAR AFTER THE EXPENSE HAS BEEN PAID, OR (II) ONE YEAR FROM THE EFFECTIVE DATE OF THIS PARAGRAPH. **<A]**

**[A>** (C) ALL CLAIMS FOR REIMBURSEMENT FROM THE SPECIAL DISABILITY FUND MUST BE ACCOMPANIED BY A FILING FEE OF TWO HUNDRED FIFTY DOLLARS, TO BE DEPOSITED IN THE SPECIAL DISABILITY FUND. UPON ANY FINAL RULING THAT A CLAIM IS ELIGIBLE FOR REIMBURSEMENT FROM THE FUND, THE FUND WILL RETURN TWO HUNDRED DOLLARS OF THIS FEE TO THE CLAIMANT. **<A]**

**[A>** (3) **<A]** The chair of the board shall, as soon as practicable after April first, nineteen hundred forty-five, assess upon and collect from each insurance carrier, including the state insurance fund and any county, city, town, village or other political subdivision failing to secure compensation pursuant to subdivision one or two of section fifty of this chapter, a sum equal to one per centum of the total compensation paid by such carrier in the year ending March thirty-first next preceding the date of such assessment.

**[A>** (4) **<A]** As soon as practicable after May first in the year nineteen hundred fifty-eight, and annually thereafter as soon as practicable after January first in each succeeding year, the chair of the board shall assess upon and collect from all self-insurers **[A>** , EXCEPT GROUP SELF-INSURERS, **<A]** the state insurance fund, **[D>** and **<D]** all insurance carriers **[A>** AND GROUP SELF-INSURERS, (A) **<A]** a sum equal to one hundred fifty per centum of the total disbursements made from the special disability fund during the preceding calendar year ( **[A>** NOT INCLUDING ANY DISBURSEMENTS MADE ON ACCOUNT OF ANTICIPATED LIABILITIES OR WAIVER AGREEMENTS FUNDED BY BOND PROCEEDS AND RELATED EARNINGS),

<A] less the amount of the net assets in such fund as of December thirty-first of said preceding cal-endar year, [A> AND (B) A SUM SUFFICIENT TO COVER DEBT SERVICE, AND ASSOCI-ATED COSTS (THE "DEBT SERVICE ASSESSMENT") TO BE PAID DURING THE CALEN-DAR YEAR BY THE DORMITORY AUTHORITY, AS CALCULATED IN ACCORDANCE WITH SUBPARAGRAPH FIVE OF THIS PARAGRAPH <A] . Such [D> sum <D] [A> AS-SESSMENTS <A] shall be allocated to (i) self-insurers [A> EXCEPT GROUP SELF-INSURERS <A] and the state insurance fund based upon the proportion that the total compensation payments made by all self-insurers [A> EXCEPT GROUP SELF-INSURERS <A] and the state insurance fund bore to the total compensation payments made by all self-insurers [A> EXCEPT GROUP SELF-INSURERS, <A] the state insurance fund [D> and <D] , all insurance carriers [A> AND GROUP SELF-INSURERS <A] [D> and <D] , (ii) insurance carriers based upon the proportion that the total compensation payments made by all insurance carriers bore to the total compensation payments by all self-insurers [A> EXCEPT GROUP SELF-INSURERS, <A] the state insurance fund and all insurance carriers [A> AND GROUP SELF-INSURERS <A] during the fiscal year which ended within said preceding calendar year, [A> AND (III) GROUP SELF-INSURERS BASED UPON THE PROPORTION THAT THE TOTAL COMPENSATION PAYMENTS MADE BY ALL GROUP SELF-INSURERS BORE TO THE TOTAL COMPENSATION PAY-MENTS MADE BY ALL SELF-INSURERS, THE STATE INSURANCE FUND AND ALL IN-SURANCE CARRIERS DURING THE FISCAL YEAR WHICH ENDED WITHIN SAID PRE-CEDING CALENDAR YEAR. INSURANCE CARRIERS AND SELF-INSURERS SHALL BE LIABLE FOR ALL SUCH ASSESSMENTS REGARDLESS OF THE DATE ON WHICH THEY CAME INTO EXISTENCE, OR WHETHER THEY HAVE MADE ANY CLAIM FOR REIM-BURSEMENT FROM THE SPECIAL DISABILITY FUND. <A] The portion of such sum allo-cated to self-insurers [A> EXCEPT GROUP SELF-INSURERS <A] and the state insurance fund that shall be collected from each self-insurer [A> EXCEPT A GROUP SELF-INSURER <A] and the state insurance fund shall be a sum equal to the proportion of the amount which the total com-pensation payments of each such self-insurer [A> EXCEPT A GROUP SELF-INSURER <A] or the state insurance fund bore to the total compensation payments made by all self-insurers [A> EX-CEPT GROUP SELF-INSURERS <A] and the state insurance fund during the fiscal year which ended within said preceding calendar year. The portion of such sum allocated to insurance carriers that shall be collected from each insurance carrier shall be a sum equal to that proportion of the amount which the total premiums written by each such insurance carrier bore to the total written premiums reported by all insurance carriers during the fiscal year which ended within said preced-ing calendar year. [A> THE PORTION OF SUCH SUM ALLOCATED TO GROUP SELF-INSURERS THAT SHALL BE COLLECTED FROM EACH GROUP SELF-INSURER SHALL BE A SUM EQUAL TO THAT PROPORTION OF THE AMOUNT WHICH THE PURE PRE-MIUM CALCULATION FOR EACH SUCH GROUP SELF-INSURER BORE TO THE TOTAL PURE PREMIUM CALCULATION FOR ALL GROUP SELF-INSURERS FOR THE CALEN-DAR YEAR WHICH ENDED WITHIN THE PRECEDING STATE FISCAL YEAR. THE PAY-MENTS FROM THE DEBT SERVICE ASSESSMENT, UNLESS OTHERWISE SET FORTH IN THE FINANCING AGREEMENT, ARE HEREBY PLEDGED THEREFOR AND SHALL BE DEEMED THE FIRST MONIES RECEIVED ON ACCOUNT OF ASSESSMENTS IN EACH YEAR. <A] For the purposes of this paragraph, "direct premiums written" means gross premiums, including policy and membership fees, less return premiums and premiums on [D> polices <D] [A> POLICIES <A] not taken. [A> FOR PURPOSES OF THIS PARAGRAPH "PURE PREMIUM CALCULATION" MEANS THE NEW YORK STATE ANNUAL PAYROLL AS OF DECEM-

2007 N.Y. ALS 6, *; 2007 N.Y. LAWS 6;
2007 N.Y. A.N. 6163

BER THIRTY-FIRST OF THE PRECEDING YEAR BY CLASS CODE FOR EACH EM-
PLOYER MEMBER OF A GROUP SELF-INSURER MULTIPLIED BY THE APPLICABLE
RATE FOR EACH CLASS CODE AS DETERMINED BY THE WORKERS' COMPENSATION
RATING BOARD IN EFFECT ON DECEMBER THIRTY-FIRST OF THE PRECEDING YEAR.
<A> An employer who has ceased to be a self-insurer [A> OR A GROUP THAT CEASES TO BE
LICENSED AS A GROUP SELF-INSURER <A] shall continue to be liable for any assessments
into said fund on account of any compensation payments made by him or her on his or her account
during such fiscal year, and the security fund, created under the provisions of section one hundred
seven of this chapter, shall, in the event of the insolvency of any insurance company, be liable for
any assessments that would have been made against such company except for its insolvency. No
assessment shall be payable from the aggregate trust fund, created under the provisions of section
twenty-seven of this article, but such fund shall continue to be liable for all compensation that shall
be payable under any award or order of the board, the commuted value of which has been paid into
such fund. Such assessments when collected shall be deposited with the commissioner of taxation
and finance for the benefit of such fund. [D> Such <D] [A> UNLESS OTHERWISE PROVIDED,
SUCH <A] assessments, shall not constitute an element of loss for the purpose of establishing rates
for [D> workers' <D] compensation insurance but shall for the purpose of collection be treated as
separate costs by carriers. All insurance carriers and the state insurance fund, shall collect such as-
sessments, from their policyholders through a surcharge based on [D> premium <D] [A> PREMI-
UMS <A] in accordance with rules set forth by the New York [A> WORKERS' <A] compensation
[D> insurance <D] rating board, as approved by the superintendent of insurance. Such surcharge
shall be considered as part of premium for purposes prescribed by law including, but not limited to,
computing premium tax, reporting to the superintendent of insurance pursuant to section ninety-nine
of this chapter and section three hundred seven of the insurance law, determining the limitation of
expenditures for the administration of the state insurance fund pursuant to section eighty-eight of
this chapter and the cancellation by an insurance carrier, including the state insurance fund, of a pol-
icy for non-payment of premium. The provisions of this paragraph shall not apply with respect to
policies containing coverage pursuant to subsection (j) of section three thousand four hundred
twenty of the insurance law relating to every policy providing comprehensive personal liability in-
surance on a one, two, three or four family owner-occupied dwelling. The state insurance fund shall,
[D> on or before April first, nineteen hundred ninety-four, <D] notify its insureds that such assess-
ments, shall be, for the purpose of recoupment, treated as separate costs, [A> RESPECTIVELY <A]
for the purpose of premiums billed on [D> and <D] [A> OR <A] after October first, nineteen hun-
dred ninety-four.

 For the purposes of this paragraph, except as otherwise provided [D> , <D] [A> : <A] the term
"insurance carrier" shall include only stock corporations, mutual corporations and reciprocal insur-
ers authorized to transact the business of workers' compensation insurance in this state [D> and <D]
[A> ; <A] the term "self-insurer" shall include any employer or group of employers permitted to
pay compensation directly under the provisions of subdivision three, three-a or four of section fifty
of this chapter;

 [A> (5) (A) THE CHAIR AND THE COMMISSIONER OF TAXATION AND FINANCE
ARE AUTHORIZED AND DIRECTED TO ENTER INTO A FINANCING AGREEMENT WITH
THE DORMITORY AUTHORITY, TO BE KNOWN AS THE "SPECIAL DISABILITY FUND
FINANCING AGREEMENT." SUCH AGREEMENT SHALL SET FORTH THE PROCESS FOR
CALCULATING THE ANNUAL DEBT SERVICE OF THE BONDS ISSUED BY THE DORMI-

TORY AUTHORITY AND ANY OTHER ASSOCIATED COSTS. FOR PURPOSES OF THIS SECTION, "ASSOCIATED COSTS" MAY INCLUDE A COVERAGE FACTOR, RESERVE FUND REQUIREMENTS, ALL COSTS OF ANY NATURE INCURRED BY THE DORMI-TORY AUTHORITY IN CONNECTION WITH THE SPECIAL DISABILITY FUND FINANC-ING AGREEMENT OR PURSUANT THERETO, THE OPERATING COSTS OF THE WAIVER AGREEMENT MANAGEMENT OFFICE, THE COSTS OF ANY INDEPENDENT AUDITS UNDERTAKEN UNDER THIS SECTION, AND ANY OTHER COSTS FOR THE IMPLEMEN-TATION OF THIS SUBPARAGRAPH AND THE ISSUANCE OF BONDS BY THE DORMI-TORY AUTHORITY, INCLUDING INTEREST RATE EXCHANGE PAYMENTS, REBATE PAYMENTS, LIQUIDITY FEES, CREDIT PROVIDER FEES, FIDUCIARY FEES, REMAR-KETING, DEALER, AUCTION AGENT AND RELATED FEES AND OTHER SIMILAR BOND-RELATED EXPENSES, UNLESS OTHERWISE FUNDED. BY JANUARY FIRST OF EACH YEAR, THE DORMITORY AUTHORITY SHALL PROVIDE TO THE CHAIR THE CALCULATION OF THE AMOUNT EXPECTED TO BE PAID BY THE DORMITORY AU-THORITY IN DEBT SERVICE AND ASSOCIATED COSTS FOR PURPOSES OF CALCULAT-ING THE DEBT SERVICE ASSESSMENT AS SET FORTH IN SUBPARAGRAPH FOUR OF THIS PARAGRAPH. ALL MONIES RECEIVED ON ACCOUNT OF ANY ASSESSMENT UN-DER SUBPARAGRAPH FOUR OF THIS PARAGRAPH AND THIS SUBPARAGRAPH SHALL BE APPLIED IN ACCORDANCE WITH THIS SUBPARAGRAPH AND IN ACCORDANCE WITH THE FINANCING AGREEMENT UNTIL THE FINANCIAL OBLIGATIONS OF THE DORMITORY AUTHORITY IN RESPECT TO ITS CONTRACT WITH ITS BONDHOLDERS ARE MET AND ALL ASSOCIATED COSTS PAYABLE TO THE DORMITORY AUTHORITY HAVE BEEN PAID, NOTWITHSTANDING ANY OTHER PROVISION OF LAW RESPECT-ING SECURED TRANSACTIONS. THIS PROVISION MAY BE INCLUDED BY THE DOR-MITORY AUTHORITY IN ANY CONTRACT OF THE DORMITORY AUTHORITY WITH ITS BONDHOLDERS. <A]

[A> THE SPECIAL DISABILITY FUND FINANCING AGREEMENT MAY RESTRICT DISBURSEMENTS, INVESTMENTS, OR REBATES, AND MAY PRESCRIBE A SYSTEM OF ACCOUNTS APPLICABLE TO THE SPECIAL DISABILITY FUND, INCLUDING CUSTODY OF AN ACCOUNT WITH A TRUST INDENTURE TRUSTEE THAT MAY BE PRESCRIBED BY THE DORMITORY AUTHORITY AS PART OF ITS CONTRACT WITH THE BOND-HOLDERS. FOR PURPOSES OF THIS PARAGRAPH, THE TERM "BONDS" SHALL IN-CLUDE NOTES ISSUED IN ANTICIPATION OF THE ISSUANCE OF BONDS, OR NOTES ISSUED PURSUANT TO A COMMERCIAL PAPER PROGRAM. <A]

[A> (B) THE CHAIR MAY CONDUCT PERIODIC AUDITS OF ANY SELF-INSURER, IN-SURANCE CARRIER AND THE STATE INSURANCE FUND CONCERNING ANY INFOR-MATION OR PAYMENT REQUIRED UNDER THIS PARAGRAPH, INCLUDING ANY IN-FORMATION RELEVANT TO THE PAYMENT OR CALCULATION OF ANY ASSESS-MENTS. THE SELF-INSURER, INSURANCE CARRIER AND THE STATE INSURANCE FUND SHALL PROVIDE ALL NECESSARY DOCUMENTS AND INFORMATION IN RELA-TION TO AN AUDIT IN A MANNER PRESCRIBED BY THE CHAIR. UPON THE DETER-MINATION OF THE CHAIR THAT A SELF-INSURER, INSURANCE CARRIER OR THE STATE INSURANCE FUND HAS UNDERPAID AN ASSESSMENT AS A RESULT OF ITS INACCURATE REPORTING, THE SELF-INSURER, INSURANCE CARRIER OR THE STATE INSURANCE FUND UPON NOTICE FROM THE CHAIR, SHALL PAY THE FULL AMOUNT

OF THE UNDERPAID ASSESSMENT, ALONG WITH INTEREST AT THE RATE OF NINE
PER CENT PER ANNUM ON THE UNPAID ASSESSMENT DUE NOT LATER THAN
THIRTY DAYS AFTER SUCH NOTICE. <A]

[A> (6) <A] The commissioner of taxation and finance is hereby authorized to receive and
credit to such special disability fund any sum or sums that may at any time be contributed to the
state by the United States of America under any act of congress, or otherwise, to which the state
may be or become entitled by reason of any payments made out of such fund.

[A> (7) <A] The commissioner of taxation and finance shall be the custodian of said fund and,
[A> UNLESS OTHERWISE PROVIDED FOR IN THE SPECIAL DISABILITY FUND FINANC-
ING AGREEMENT, <A] shall invest any surplus or reserve moneys thereof in securities which
constitute legal investments for savings banks under the laws of this state and in interest bearing
certificates of deposit of a bank or trust company located and authorized to do business in this state
or of a national bank located in this state secured by a pledge of direct obligations of the United
States or of the state of New York in an amount equal to the amount of such certificates of deposit,
and may sell any of the securities or certificates of deposit in which such fund is invested if neces-
sary for the proper administration or in the best interest of such fund. Disbursements from such fund
as provided by this subdivision shall be made by the commissioner of taxation and finance upon
vouchers signed by the chair of the board [A> UNLESS THE FINANCING AGREEMENT PRO-
VIDES FOR SOME OTHER MEANS OF AUTHORIZING SUCH DISBURSEMENTS THAT IS
NO LESS PROTECTIVE OF THE FUND <A] .

The commissioner of taxation and finance, as custodian of such fund, annually as soon as prac-
ticable after January first, shall furnish to the chair of the [A> WORKERS' COMPENSATION <A]
board a statement of the fund, setting forth the balance of moneys in the said fund as of the begin-
ning of the calendar year, the income of the fund, the summary of payments out of the fund on ac-
count of reimbursements and other charges ordered to be paid by the board, and all other charges
against the fund, and setting forth the balance of the fund remaining to its credit on December
thirty-first. Such statement shall be open to public inspection in the office of the secretary of the
board. [A> THE CHAIR, NOT LESS THAN NINETY DAYS AFTER THE ISSUANCE OF THE
DORMITORY AUTHORITY'S ANNUAL AUDIT, SHALL FURNISH TO THE TEMPORARY
PRESIDENT OF THE SENATE AND THE SPEAKER OF THE ASSEMBLY THE FOLLOWING
REPORTS ON THE SPECIAL DISABILITY FUND: A REVENUE AND OPERATING EX-
PENSE STATEMENT; A FINANCING PLAN; A REPORT CONCERNING THE ASSETS AND
LIABILITIES; THE NUMBER OF WAIVER AGREEMENTS ENTERED INTO BY THE
WAIVER AGREEMENT MANAGEMENT OFFICE; THE NUMBER OF CLAIMANTS RE-
MAINING IN THE FUND; THE ESTIMATED CURRENT UNFUNDED LIABILITY OF THE
FUND WITH RESPECT TO SUCH CLAIMS; AND A DEBT ISSUANCE REPORT INCLUDING
BUT NOT LIMITED TO (I) PLEDGED ASSESSMENT REVENUE AND SECURITIZATION
COVERAGE, (II) DEBT SERVICE MATURITIES, (III) INTEREST RATE EXCHANGE OR
SIMILAR AGREEMENTS, AND (IV) FINANCING AND ISSUANCE COSTS. <A]

[A> THE COMMISSIONER OF TAXATION AND FINANCE MAY ESTABLISH WITHIN
THE SPECIAL DISABILITY FUND SUCH ACCOUNTS AND SUB-ACCOUNTS AS HE OR
SHE DEEMS USEFUL FOR THE OPERATION OF THE FUND, OR AS NECESSARY TO
SEGREGATE MONEYS WITHIN THE FUND, SUBJECT TO THE PROVISIONS OF THE FI-
NANCING AGREEMENT. THE WAIVER AGREEMENT MANAGEMENT OFFICE, AS DE-

FINED IN SECTION THIRTY-TWO OF THIS ARTICLE, SHALL MAKE APPLICATION TO THE CHAIR ON A QUARTERLY BASIS FOR ANY ADMINISTRATIVE COSTS INCURRED BY THE OFFICE. <A]

[*77] Section 77. Subdivision 6 of section 14 of the workers' compensation law, as added by chapter 416 of the laws of 1985, is amended to read as follows:

6. If the injured employee is concurrently engaged in more than one employment at the time of injury, the employee's average weekly wages shall be calculated upon the basis of wages earned from all concurrent employments covered under this chapter. The employer in whose employment the employee was injured shall be liable for the benefits that would have been payable if the employee had had no other employment. Any additional benefits resulting from the increase in average weekly wages due to the employee's concurrent employments shall be payable in the first instance by the employer in whose employment the employee was injured and shall be reimbursed by the special disability fund created under subdivision eight of section fifteen of this article [A> , BUT ONLY IF SUCH CLAIM IS PRESENTED IN ACCORDANCE WITH SUBPARAGRAPH TWO OF PARAGRAPH (H) OF SUBDIVISION EIGHT OF SECTION FIFTEEN OF THIS ARTICLE <A] . The employer in whose employment the employee was injured shall be liable for all medical costs.

[*78] Section 78. The public authorities law is amended by adding a new section 1680-l to read as follows:

[A> SECTION 1680-L. THE SPECIAL DISABILITY FUND FINANCING. 1. AS USED IN THIS SECTION THE FOLLOWING TERMS SHALL HAVE THE FOLLOWING MEANINGS: <A]

[A> (A) "ANCILLARY BOND FACILITY" MEANS ANY INTEREST RATE EXCHANGE OR SIMILAR AGREEMENT OR ANY BOND INSURANCE POLICY, LETTER OF CREDIT OR OTHER CREDIT ENHANCEMENT FACILITY, LIQUIDITY FACILITY, GUARANTEED INVESTMENT OR REINVESTMENT AGREEMENT, OR OTHER SIMILAR AGREEMENT, ARRANGEMENT OR CONTRACT. <A]

[A> (B) "BENEFITED PARTY" MEANS ANY PERSON, FIRM OR CORPORATION THAT ENTERS INTO AN ANCILLARY BOND FACILITY WITH THE AUTHORITY ACCORDING TO THE PROVISIONS OF THIS SECTION. <A]

[A> (C) "BONDS" MEANS ANY BONDS, NOTES, CERTIFICATES OF PARTICIPATION AND OTHER EVIDENCE OF INDEBTEDNESS ISSUED BY THE AUTHORITY PURSUANT TO SUBDIVISION FIVE OF THIS SECTION. <A]

[A> (D) "BOND OWNERS OR OWNERS OF BONDS" MEANS ANY REGISTERED OWNERS OF BONDS. <A]

[A> (E) "CHAIR" MEANS THE CHAIR OF THE WORKERS' COMPENSATION BOARD. <A]

[A> (F) "CODE" MEANS THE UNITED STATES INTERNAL REVENUE CODE OF 1986, AS AMENDED. <A]

[A> (G) "COSTS OF ISSUANCE" MEANS ANY ITEM OF EXPENSE DIRECTLY OR INDIRECTLY PAYABLE OR REIMBURSABLE BY THE AUTHORITY AND RELATED TO

THE AUTHORIZATION, SALE, OR ISSUANCE OF BONDS, INCLUDING, BUT NOT LIM-
ITED TO, UNDERWRITING FEES AND FEES AND EXPENSES OF PROFESSIONAL CON-
SULTANTS AND FIDUCIARIES. <A]

[A> (H) "DEBT SERVICE" MEANS ACTUAL DEBT SERVICE, COMPRISED OF PRINCI-
PAL, INTEREST AND ASSOCIATED COSTS, AS DEFINED IN SUBPARAGRAPH FIVE OF
PARAGRAPH (H) OF SUBDIVISION EIGHT OF SECTION FIFTEEN OF THE WORKERS'
COMPENSATION LAW. <A]

[A> (I) "DIRECTOR OF THE BUDGET" OR "DIRECTOR" MEANS THE DIRECTOR OF
THE BUDGET OF THE STATE OF NEW YORK. <A]

[A> (J) "FINANCING AGREEMENT" MEANS ANY AGREEMENT AUTHORIZED PUR-
SUANT TO SUBDIVISION FOUR OF THIS SECTION BETWEEN THE CHAIR AND THE
COMMISSIONER OF TAXATION AND FINANCE, AND THE AUTHORITY. <A]

[A> (K) "FINANCING COSTS" MEANS ALL COSTS OF ISSUANCE, CAPITALIZED IN-
TEREST, CAPITALIZED OPERATING EXPENSES OF THE AUTHORITY AND, PURSUANT
TO THE FINANCING AGREEMENT, THE INITIAL CAPITALIZED OPERATING EXPENSES
OF THE WAIVER AGREEMENT MANAGEMENT OFFICE AND DEBT SERVICE RE-
SERVES, FEES, COST OF ANY ANCILLARY BOND FACILITY, AND ANY OTHER FEES,
DISCOUNTS, EXPENSES AND COSTS RELATED TO ISSUING, SECURING AND MARKET-
ING THE BONDS INCLUDING, WITHOUT LIMITATION, ANY NET ORIGINAL ISSUE
DISCOUNT. <A]

[A> (L) "INVESTMENT SECURITIES" MEANS: (I) GENERAL OBLIGATIONS OF, OR
OBLIGATIONS GUARANTEED BY, ANY STATE OF THE UNITED STATES OF AMERICA
OR POLITICAL SUBDIVISION THEREOF, OR THE DISTRICT OF COLUMBIA OR ANY
AGENCY OR INSTRUMENTALITY OF ANY OF THEM, RECEIVING ONE OF THE THREE
HIGHEST LONG-TERM UNSECURED DEBT RATING CATEGORIES AVAILABLE FOR
SUCH SECURITIES OF AT LEAST ONE INDEPENDENT RATING AGENCY, OR (II) CER-
TIFICATES OF DEPOSIT, SAVINGS ACCOUNTS, TIME DEPOSITS OR OTHER OBLIGA-
TIONS OR ACCOUNTS OF BANKS OR TRUST COMPANIES IN THE STATE, SECURED, IF
THE AUTHORITY SHALL SO REQUIRE, IN SUCH MANNER AS THE AUTHORITY MAY
SO DETERMINE, OR (III) OBLIGATIONS IN WHICH THE COMPTROLLER IS AUTHOR-
IZED TO INVEST PURSUANT TO EITHER SECTION NINETY-EIGHT OR NINETY-EIGHT-
A OF THE STATE FINANCE LAW, OR (IV) INVESTMENTS WHICH THE COMMISSIONER
OF TAXATION AND FINANCE IS PERMITTED TO MAKE WITH SURPLUS OR RESERVE
MONEYS OF THE SPECIAL DISABILITY FUND UNDER SUBPARAGRAPH SEVEN OF
PARAGRAPH (H) OF SUBDIVISION EIGHT OF SECTION FIFTEEN OF THE WORKERS'
COMPENSATION LAW. <A]

[A> (M) "INTEREST RATE EXCHANGE OR SIMILAR AGREEMENT" MEANS A WRIT-
TEN CONTRACT ENTERED INTO IN CONNECTION WITH THE ISSUANCE OF BONDS OR
WITH SUCH BONDS OUTSTANDING WITH A COUNTERPARTY TO PROVIDE FOR AN
EXCHANGE OR SWAP OF PAYMENTS BASED UPON FIXED AND/OR VARIABLE IN-
TEREST RATES, AND SHALL BE FOR EXCHANGES IN CURRENCY OF THE UNITED
STATES OF AMERICA ONLY. <A]

[A> (N) "NET PROCEEDS" MEANS THE AMOUNT OF PROCEEDS REMAINING FOL-LOWING EACH SALE OF BONDS WHICH ARE NOT REQUIRED BY THE AUTHORITY FOR PURPOSES OF THIS SECTION TO PAY OR PROVIDE FOR DEBT SERVICE OR FI-NANCING COSTS, AS PROVIDED IN THE FINANCING AGREEMENT. <A]

[A> (O) "OPERATING EXPENSES" MEANS THE REASONABLE OR NECESSARY OP-ERATING EXPENSES OF THE AUTHORITY FOR PURPOSES OF THIS SECTION, INCLUD-ING, WITHOUT LIMITATION, THE COSTS OF: RETENTION OF AUDITORS, PREPARA-TION OF ACCOUNTING AND OTHER REPORTS, MAINTENANCE OF THE RATINGS ON THE BONDS, ANY OPERATING EXPENSE RESERVE FUND, INSURANCE PREMIUMS, ANCILLARY BOND FACILITIES, REBATE PAYMENTS, ANNUAL MEETINGS OR OTHER REQUIRED ACTIVITIES OF THE AUTHORITY, AND PROFESSIONAL CONSULTANTS AND FIDUCIARIES. <A]

[A> (P) "OUTSTANDING", WHEN USED WITH RESPECT TO BONDS, SHALL EX-CLUDE BONDS THAT SHALL HAVE BEEN PAID IN FULL AT MATURITY, OR SHALL HAVE OTHERWISE BEEN REFUNDED, REDEEMED, DEFEASED OR DISCHARGED, OR THAT MAY BE DEEMED NOT OUTSTANDING PURSUANT TO AGREEMENTS WITH THE HOLDERS THEREOF. <A]

[A> (Q) "PLEDGED ASSESSMENTS REVENUES", "PLEDGED REVENUES" OR "PLEDGED ASSESSMENTS" MEANS RECEIPTS OF SPECIAL DISABILITY FUND AS-SESSMENTS IMPOSED PURSUANT TO SUBPARAGRAPH FOUR OF PARAGRAPH (H) OF SUBDIVISION EIGHT OF SECTION FIFTEEN OF THE WORKERS' COMPENSATION LAW AND PLEDGED FOR THE PAYMENT OF DEBT SERVICE ON THE BONDS OR AMOUNTS DUE PURSUANT TO AN ANCILLARY BOND FACILITY, INCLUDING THE RIGHT TO RE-CEIVE SAME. <A]

[A> (R) "STATE" MEANS THE STATE OF NEW YORK. <A]

[A> (S) "SPECIAL DISABILITY FUND FINANCING AGREEMENT" MEANS AN AGREEMENT AUTHORIZED AND CREATED PURSUANT TO SUBPARAGRAPH FIVE OF PARAGRAPH (H) OF SUBDIVISION EIGHT OF SECTION FIFTEEN OF THE WORKERS' COMPENSATION LAW, AS SAME BY ITS TERMS AND BOND PROCEEDINGS, MAY BE AMENDED. <A]

[A> (T) "WAIVER AGREEMENT" MEANS WAIVER AGREEMENTS ENTERED INTO PURSUANT TO SECTION THIRTY-TWO OF THE WORKERS' COMPENSATION LAW. <A]

[A> (U) "WAIVER AGREEMENT MANAGEMENT OFFICE" SHALL MEAN THE OFFICE DESCRIBED IN PARAGRAPH (E) OF SECTION THIRTY-TWO OF THE WORKERS' COM-PENSATION LAW. <A]

[A> 2. THE AUTHORITY IS HEREBY AUTHORIZED TO FINANCE THE SPECIAL DIS-ABILITY FUND ESTABLISHED BY PARAGRAPH (H) OF SUBDIVISION EIGHT OF SEC-TION FIFTEEN OF THE WORKERS' COMPENSATION LAW AND TO ENTER INTO ONE OR MORE SPECIAL DISABILITY FUND FINANCING AGREEMENTS DESCRIBED IN SUCH SUBDIVISION. ALL OF THE PROVISIONS OF THE AUTHORITY RELATING TO BONDS AND NOTES WHICH ARE NOT INCONSISTENT WITH THE PROVISIONS OF THIS SECTION SHALL APPLY TO OBLIGATIONS AUTHORIZED BY THIS SECTION, INCLUD-

ING BUT NOT LIMITED TO THE POWER TO ESTABLISH ADEQUATE RESERVES THEREFOR AND TO ISSUE RENEWAL NOTES OR REFUNDING BONDS THEREOF. THE PROVISIONS OF THIS SECTION SHALL APPLY SOLELY TO OBLIGATIONS AUTHOR-IZED BY THIS SECTION AND SHALL NOT INCLUDE LIABILITIES, ASSETS OR REVE-NUES OTHER THAN LIABILITIES, ASSETS OR REVENUES DERIVED FROM THE AU-THORITY SOLELY FROM THE SPECIAL DISABILITY FUND. <A]

[A> 3. IT IS FOUND AND DECLARED THAT THE SPECIAL DISABILITY FUND NO LONGER SERVES THE PURPOSES FOR WHICH IT WAS CREATED, ADDS TO THE TIME AND EXPENSE OF PROCEEDINGS BEFORE THE WORKERS' COMPENSATION BOARD AND TO EMPLOYERS' COSTS FOR WORKERS' COMPENSATION INSURANCE; THAT THE CREATION AND OPERATION OF A WAIVER AGREEMENT MANAGEMENT OFFICE OF THE WORKERS' COMPENSATION BOARD, TO MANAGE, MAINTAIN AND NEGOTI-ATE WAIVER AGREEMENTS ON BEHALF OF THE SPECIAL DISABILITY FUND CAN REDUCE THE SPECIAL DISABILITY FUND'S UNFUNDED LIABILITY; THAT THE RE-DUCTION OF SUCH LIABILITY AND THE CLOSING OF THE FUND TO NEW CLAIMS WILL OVER THE LONG TERM REDUCE ASSESSMENTS PAID TO THE FUND BY INSUR-ANCE CARRIERS, SELF-INSURERS AND THE STATE INSURANCE FUND, AS WELL AS THE EMPLOYERS TO WHOM THESE COSTS ARE PASSED ON; THAT IN THE ABSENCE OF THIS SECTION THE ANNUAL COST OF SUCH ASSESSMENTS IS EXPECTED TO RISE; THAT THE SETTLEMENT OF CLAIMS AND OTHER ACTIONS UNDERTAKEN BY THE WAIVER AGREEMENT MANAGEMENT OFFICE WILL LOWER THE ADMINISTRATIVE COSTS OF INSURANCE CARRIERS, SELF-INSURERS AND THE STATE INSURANCE FUND; THAT REVENUE OBLIGATIONS ISSUED BY THE AUTHORITY AND SECURED BY A SPECIAL ASSESSMENT ANNUALLY LEVIED, IMPOSED AND COLLECTED ON AND FROM INSURANCE CARRIERS, SELF-INSURERS AND THE STATE INSURANCE FUND FOR THE GOVERNMENTAL PURPOSE OF FUNDING WAIVER AGREEMENTS AMORTIZED OVER A SUBSTANTIAL PERIOD WOULD ALLOW THE STATE TO SETTLE AND OTHERWISE MANAGE CLAIMS AS A MEANS FOR REDUCING THE FUND'S LI-ABILITIES AND THE ASSESSMENTS NEEDED TO PAY THEM, THEREBY FURTHERING THE POLICY OF THE STATE TO REDUCE THE COSTS OF WORKERS' COMPENSATION AND TO IMPROVE THE BUSINESS CLIMATE IN THE STATE WHILE COMPENSATING INJURED WORKERS AND HONORING THE OBLIGATIONS OF THE SPECIAL DISABIL-ITY FUND; THAT ALL COSTS OF THE AUTHORITY IN RELATION TO THIS SECTION SHALL BE PAID FROM ASSESSMENTS SET FORTH IN PARAGRAPH (H) OF SUBDIVI-SION EIGHT OF SECTION FIFTEEN OF THE WORKERS' COMPENSATION LAW; AND THAT, THEREFORE, THE PROVISIONS OF THIS SECTION ARE FOR THE PUBLIC BENE-FIT AND GOOD AND THE AUTHORIZATION AS PROVIDED IN THIS SECTION OF THE ISSUANCE OF REVENUE OBLIGATIONS OF THE AUTHORITY IS DECLARED TO BE FOR A PUBLIC PURPOSE AND THE EXERCISE OF AN ESSENTIAL GOVERNMENTAL FUNC-TION. <A]

[A> 4. (A) THE AUTHORITY, THE COMMISSIONER OF TAXATION AND FINANCE AND THE CHAIR, IN CONSULTATION WITH THE SPECIAL DISABILITY FUND ADVI-SORY COMMITTEE SHALL EXECUTE A FINANCING AGREEMENT PRIOR TO THE IS-SUANCE OF ANY BONDS. SUCH AGREEMENT SHALL CONTAIN SUCH TERMS AND CONDITIONS AS ARE NECESSARY TO CARRY OUT AND EFFECTUATE THE PURPOSES

OF THIS SECTION, INCLUDING COVENANTS WITH RESPECT TO THE ASSESSMENT AND ENFORCEMENT OF THE ASSESSMENTS, THE APPLICATION AND USE OF THE PROCEEDS OF THE SALE OF BONDS TO PRESERVE THE TAX-EXEMPTION ON THE BONDS, THE INTEREST ON WHICH IS INTENDED TO BE EXEMPT FROM TAXATION. THE STATE SHALL NOT BE AUTHORIZED TO MAKE ANY COVENANT, PLEDGE, PROMISE OR AGREEMENT PURPORTING TO BIND THE STATE WITH RESPECT TO PLEDGED REVENUES, EXCEPT AS OTHERWISE SPECIFICALLY AUTHORIZED BY THIS SECTION. <A]

[A> (B) THE NET PROCEEDS OF THE BONDS SHALL BE DEPOSITED IN ACCOR-DANCE WITH THE FINANCING AGREEMENT AND THIS SECTION. THE FINANCING AGREEMENT SHALL PROVIDE FOR THE APPLICATION OF THE NET BOND PROCEEDS, AND SUCH BOND PROCEEDS SHALL BE USED, FOR ANY OF THE FOLLOWING PUR-POSES: (I) FUNDING OF WAIVER AGREEMENTS, (II) PAYMENT OF FINANCING COSTS, (III) FUNDING ANTICIPATED LIABILITIES OF THE SPECIAL DISABILITY FUND, (IV) FUNDING CONTRACT AWARDS PURSUANT TO SUBPARAGRAPH TWO OF PARA-GRAPH (H) OF SECTION THIRTY-TWO OF THE WORKERS' COMPENSATION LAW AND (V) SUCH OTHER PURPOSES AS ARE SET FORTH IN THE FINANCING AGREEMENT. NOT INCONSISTENT WITH THIS SECTION, THE AUTHORITY MAY PROVIDE RESTRIC-TIONS ON THE USE AND INVESTMENT OF NET PROCEEDS OF THE BONDS AND OTHER AMOUNTS IN THE FINANCING AGREEMENT OR OTHERWISE IN A TAX REGU-LATORY AGREEMENT AS NECESSARY OR DESIRABLE TO ASSURE THAT THEY ARE EXEMPT FROM TAXATION. <A]

[A> 5. (A) (I) THE AUTHORITY SHALL HAVE POWER AND IS HEREBY AUTHORIZED TO ISSUE ITS BONDS AT SUCH TIMES AND IN AN AGGREGATE PRINCIPAL AMOUNT NOT TO EXCEED AN AMOUNT TO BE DETERMINED BY THE SUPERINTENDENT OF INSURANCE AS NECESSARY TO ADDRESS ALL OR A PORTION OF THE INCURRED UNFUNDED LIABILITIES OF THE SPECIAL DISABILITY FUND, BUT IN NO CASE EX-CEEDING TWENTY-FIVE PERCENT OF THE UNFUNDED LIABILITY OF THE SPECIAL DISABILITY FUND AS OF A DATE NO LATER THAN JULY FIRST, TWO THOUSAND SEVEN, AS CERTIFIED TO THE AUTHORITY BY A QUALIFIED THIRD PARTY. THE BONDS SHALL BE ISSUED FOR THE FOLLOWING CORPORATE PURPOSES: (A) FUND-ING OF WAIVER AGREEMENTS, (B) PAYMENT OF FINANCING COSTS, (C) FUNDING ANTICIPATED LIABILITIES OF THE SPECIAL DISABILITY FUND, (D) FUNDING CON-TRACT AWARDS PURSUANT TO PARAGRAPH TWO OF SUBDIVISION (H) OF SECTION THIRTY-TWO OF THE WORKERS' COMPENSATION LAW AND (E) SUCH OTHER PUR-POSES AS ARE SET FORTH IN THE FINANCING AGREEMENT. THE FOREGOING LIMI-TATION ON OUTSTANDING AGGREGATE PRINCIPAL SHALL NOT APPLY TO PREVENT THE ISSUANCE OF BONDS TO REFUND BONDS. <A]

[A> (II) EACH ISSUANCE OF BONDS SHALL BE AUTHORIZED BY A RESOLUTION OF THE AUTHORITY, PROVIDED, HOWEVER, THAT ANY SUCH RESOLUTION AU-THORIZING THE ISSUANCE OF BONDS MAY DELEGATE TO AN OFFICER OF THE AU-THORITY THE POWER TO ISSUE SUCH BONDS FROM TIME TO TIME AND TO FIX THE DETAILS OF ANY SUCH ISSUES OF BONDS BY AN APPROPRIATE CERTIFICATE OF SUCH AUTHORIZED OFFICER. EVERY ISSUE OF THE BONDS OF THE AUTHORITY FOR THE SPECIAL DISABILITY FUND SHALL BE SPECIAL REVENUE OBLIGATIONS PAY-

ABLE FROM AND SECURED BY A PLEDGE OF REVENUES AND OTHER ASSETS, IN-
CLUDING THOSE PROCEEDS OF SUCH BONDS DEPOSITED IN A RESERVE FUND FOR
THE BENEFIT OF BONDHOLDERS, EARNINGS ON FUNDS OF THE AUTHORITY AND
SUCH OTHER FUNDS AND ASSETS AS MAY BECOME AVAILABLE, UPON SUCH
TERMS AND CONDITIONS AS SPECIFIED BY THE AUTHORITY IN THE RESOLUTION
UNDER WHICH THE BONDS ARE ISSUED OR IN A RELATED TRUST INDENTURE. <A]

[A> (III) THE AUTHORITY SHALL HAVE THE POWER AND IS HEREBY AUTHOR-
IZED FROM TIME TO TIME TO ISSUE BONDS, IN CONSULTATION WITH THE SPECIAL
DISABILITY FUND ADVISORY COMMITTEE TO REFUND ANY BONDS ISSUED UNDER
THIS SECTION BY THE ISSUANCE OF NEW BONDS, WHETHER THE BONDS TO BE RE-
FUNDED HAVE OR HAVE NOT MATURED, AND TO ISSUE BONDS PARTLY TO REFUND
BONDS THEN OUTSTANDING AND PARTLY FOR ANY OF ITS OTHER CORPORATE
PURPOSES UNDER THIS SECTION. THE REFUNDING BONDS MAY BE EXCHANGED
FOR THE BONDS TO BE REFUNDED OR SOLD AND THE PROCEEDS APPLIED TO THE
PURCHASE, REDEMPTION OR PAYMENT OF SUCH BONDS. <A]

[A> (B) THE BONDS OF THE AUTHORITY OF EACH ISSUE SHALL BE DATED,
SHALL BEAR INTEREST (WHICH, IN THE OPINION OF BOND COUNSEL TO THE AU-
THORITY, MAY BE INCLUDABLE IN OR EXCLUDABLE FROM THE GROSS INCOME OF
THE OWNERS FOR FEDERAL INCOME TAX PURPOSES) AT SUCH FIXED OR VARIABLE
RATES, PAYABLE AT OR PRIOR TO MATURITY, AND SHALL MATURE AT SUCH TIME
OR TIMES, AS MAY BE DETERMINED BY THE AUTHORITY AND MAY BE MADE RE-
DEEMABLE BEFORE MATURITY, AT THE OPTION OF THE AUTHORITY, AT SUCH
PRICE OR PRICES AND UNDER SUCH TERMS AND CONDITIONS AS MAY BE FIXED BY
THE AUTHORITY. THE PRINCIPAL AND INTEREST OF SUCH BONDS MAY BE MADE
PAYABLE IN ANY LAWFUL MEDIUM. THE RESOLUTION OR THE CERTIFICATE OF
THE AUTHORIZED OFFICER SHALL DETERMINE THE FORM OF THE BONDS, EITHER
REGISTERED OR BOOK-ENTRY FORM, AND THE MANNER OF EXECUTION OF THE
BONDS AND SHALL FIX THE DENOMINATION OR DENOMINATIONS OF THE BONDS
AND THE PLACE OR PLACES OF PAYMENT OF PRINCIPAL AND INTEREST THEREOF,
WHICH MAY BE AT ANY BANK OR TRUST COMPANY WITHIN OR OUTSIDE THE
STATE. IF ANY OFFICER WHOSE SIGNATURE OR A FACSIMILE THEREOF APPEARS
ON ANY BONDS SHALL CEASE TO BE SUCH OFFICER BEFORE THE DELIVERY OF
SUCH BONDS, SUCH SIGNATURE OR FACSIMILE SHALL NEVERTHELESS BE VALID
AND SUFFICIENT FOR ALL PURPOSES THE SAME AS IF SUCH OFFICER HAD RE-
MAINED IN OFFICE UNTIL SUCH DELIVERY. THE AUTHORITY MAY ALSO PROVIDE
FOR TEMPORARY BONDS AND FOR THE REPLACEMENT OF ANY BOND THAT SHALL
BECOME MUTILATED OR SHALL BE DESTROYED OR LOST. <A]

[A> (C) THE AUTHORITY MAY SELL SUCH BONDS IN SUCH MANNER, EITHER AT A
PUBLIC OR PRIVATE SALE AND EITHER ON A COMPETITIVE OR NEGOTIATED BASIS,
PROVIDED NO SUCH BONDS MAY BE SOLD BY THE AUTHORITY AT PRIVATE SALE
UNLESS SUCH SALE AND THE TERMS THEREOF HAVE BEEN APPROVED IN WRITING
BY THE COMPTROLLER OF THE STATE OF NEW YORK. THE PROCEEDS OF SUCH
BONDS SHALL BE DISBURSED FOR THE PURPOSES FOR WHICH SUCH BONDS WERE
ISSUED UNDER SUCH RESTRICTIONS AS THE FINANCING AGREEMENT AND THE
RESOLUTION AUTHORIZING THE ISSUANCE OF SUCH BONDS OR THE RELATED

TRUST INDENTURE MAY PROVIDE. SUCH BONDS SHALL BE ISSUED UPON AP-
PROVAL OF THE AUTHORITY AND WITHOUT ANY OTHER APPROVALS, FILINGS,
PROCEEDINGS OR THE HAPPENING OF ANY OTHER CONDITIONS OR THINGS OTHER
THAN THE APPROVALS, FINDINGS, PROCEEDINGS, CONDITIONS, AND THINGS THAT
ARE SPECIFIED AND REQUIRED BY THIS SECTION. PROVIDED, HOWEVER, THAT ANY
ISSUANCE OF BONDS UNDER THE AUTHORITY OF THIS SECTION SHALL BE CONSID-
ERED A PROJECT FOR THE PURPOSES OF SECTION FIFTY-ONE OF THIS CHAPTER,
AND SUBJECT TO APPROVAL UNDER SUCH SECTION. <A]

[A> (D) ANY PLEDGE MADE BY THE AUTHORITY SHALL BE VALID AND BINDING
AT THE TIME THE PLEDGE IS MADE. THE ASSETS, PROPERTY, REVENUES, RESERVES
OR EARNINGS SO PLEDGED SHALL IMMEDIATELY BE SUBJECT TO THE LIEN OF
SUCH PLEDGE WITHOUT ANY PHYSICAL DELIVERY THEREOF OR FURTHER ACT
AND THE LIEN OF ANY SUCH PLEDGE SHALL BE VALID AND BINDING AS AGAINST
ALL PARTIES HAVING CLAIMS OF ANY KIND AGAINST THE AUTHORITY, IRRESPEC-
TIVE OF WHETHER SUCH PARTIES HAVE NOTICE THEREOF. NOTWITHSTANDING
ANY OTHER PROVISION OF LAW TO THE CONTRARY, NEITHER THE BOND RESOLU-
TION NOR ANY INDENTURE OR OTHER INSTRUMENT, INCLUDING THE FINANCING
AGREEMENT, BY WHICH A PLEDGE IS CREATED OR BY WHICH THE AUTHORITY'S
INTEREST IN PLEDGED ASSETS, PROPERTY, REVENUES, RESERVES OR EARNINGS
THEREON IS ASSIGNED NEED BE FILED, PERFECTED OR RECORDED IN ANY PUBLIC
RECORDS IN ORDER TO PROTECT THE PLEDGE THEREOF OR PERFECT THE LIEN
THEREOF AS AGAINST THIRD PARTIES, EXCEPT THAT A COPY THEREOF SHALL BE
FILED IN THE RECORDS OF THE AUTHORITY. <A]

[A> (E) WHETHER OR NOT THE BONDS OF THE AUTHORITY ARE OF SUCH FORM
AND CHARACTER AS TO BE NEGOTIABLE INSTRUMENTS UNDER THE TERMS OF THE
UNIFORM COMMERCIAL CODE, THE BONDS ARE HEREBY MADE NEGOTIABLE IN-
STRUMENTS FOR ALL PURPOSES, SUBJECT ONLY TO THE PROVISIONS OF THE
BONDS FOR REGISTRATION. <A]

[A> (F) AT THE SOLE DISCRETION OF THE AUTHORITY, ANY BONDS ISSUED BY
THE AUTHORITY AND ANY ANCILLARY BOND FACILITY MADE UNDER THE PROVI-
SIONS OF THIS SUBDIVISION MAY BE SECURED BY A RESOLUTION OR TRUST IN-
DENTURE BY AND BETWEEN THE AUTHORITY AND THE TRUST INDENTURE TRUS-
TEE, WHICH MAY BE ANY TRUST COMPANY OR BANK HAVING THE POWERS OF A
TRUST COMPANY, WHETHER LOCATED WITHIN OR OUTSIDE THE STATE, PROVIDED
IT IS CARRIED OUT IN ACCORDANCE WITH SECTION SIXTY-NINE-D OF THE STATE
FINANCE LAW. SUCH TRUST INDENTURE OR RESOLUTION PROVIDING FOR THE IS-
SUANCE OF SUCH BONDS MAY PROVIDE FOR THE CREATION AND MAINTENANCE
OF SUCH RESERVES AS THE AUTHORITY SHALL DETERMINE TO BE PROPER AND
MAY INCLUDE COVENANTS SETTING FORTH THE DUTIES OF THE AUTHORITY IN
RELATION TO THE BONDS, THE INCOME OF THE AUTHORITY, OR THE FINANCING
AGREEMENT. SUCH TRUST INDENTURE OR RESOLUTION MAY CONTAIN PROVI-
SIONS: (I) RESPECTING THE CUSTODY, SAFEGUARDING AND APPLICATION OF ALL
MONEYS AND SECURITIES; (II) PROTECTING AND ENFORCING THE RIGHTS AND
REMEDIES (PURSUANT TO THE TRUST INDENTURE AND THE FINANCING AGREE-
MENT) OF THE OWNERS OF THE BONDS AND ANY OTHER BENEFITED PARTY AS

2007 N.Y. ALS 6, *; 2007 N.Y. LAWS 6;
2007 N.Y. A.N. 6163

MAY BE REASONABLE AND PROPER AND NOT IN VIOLATION OF LAW; (III) CON-
CERNING THE RIGHTS, POWERS AND DUTIES OF THE TRUSTEE APPOINTED BY
BONDHOLDERS PURSUANT TO PARAGRAPH (G) OF THIS SUBDIVISION; OR (IV) LIM-
ITING OR ABROGATING THE RIGHT OF THE BONDHOLDERS TO APPOINT A TRUSTEE.
IT SHALL BE LAWFUL FOR ANY BANK OR TRUST COMPANY WHICH MAY ACT AS
DEPOSITORY OF THE PROCEEDS OF BONDS OR OF ANY OTHER FUNDS OR OBLIGA-
TIONS RECEIVED ON BEHALF OF THE AUTHORITY TO FURNISH SUCH INDEMNIFY-
ING BONDS OR TO PLEDGE SUCH SECURITIES AS MAY BE REQUIRED BY THE AU-
THORITY. ANY SUCH TRUST INDENTURE OR RESOLUTION MAY CONTAIN SUCH
OTHER PROVISIONS AS THE AUTHORITY MAY DEEM REASONABLE AND PROPER
FOR PRIORITIES AND SUBORDINATION AMONG THE OWNERS OF THE BONDS AND
OTHER BENEFICIARIES. FOR PURPOSES OF THIS SECTION, A "RESOLUTION" OF THE
AUTHORITY SHALL INCLUDE ANY TRUST INDENTURE AUTHORIZED THEREBY. <A]

[A> (G) THE AUTHORITY MAY ENTER INTO, AMEND OR TERMINATE, AS IT DE-
TERMINES TO BE NECESSARY OR APPROPRIATE, ANY ANCILLARY BOND FACILITY
IN CONSULTATION WITH THE SPECIAL DISABILITY FUND ADVISORY COMMITTEE (I)
TO FACILITATE THE ISSUANCE, SALE, RESALE, PURCHASE, REPURCHASE OR PAY-
MENT OF BONDS, INTEREST RATE SAVINGS OR MARKET DIVERSIFICATION OR THE
MAKING OR PERFORMANCE OF INTEREST RATE EXCHANGE OR SIMILAR AGREE-
MENTS, INCLUDING WITHOUT LIMITATION BOND INSURANCE, LETTERS OF CREDIT
AND LIQUIDITY FACILITIES, (II) TO ATTEMPT TO MANAGE OR HEDGE RISK OR
ACHIEVE A DESIRABLE EFFECTIVE INTEREST RATE OR CASH FLOW, OR (III) TO
PLACE THE OBLIGATIONS OR INVESTMENTS OF THE AUTHORITY, AS REPRESENTED
BY THE BONDS OR THE INVESTMENT OF RESERVED BOND PROCEEDS OR OTHER
PLEDGED REVENUES OR OTHER ASSETS, IN WHOLE OR IN PART, ON THE INTEREST
RATE, CASH FLOW OR OTHER BASIS DECIDED IN CONSULTATION WITH THE SPE-
CIAL DISABILITY FUND ADVISORY COMMITTEE, WHICH FACILITY MAY INCLUDE
WITHOUT LIMITATION CONTRACTS COMMONLY KNOWN AS INTEREST RATE EX-
CHANGE OR SIMILAR AGREEMENTS, FORWARD PURCHASE CONTRACTS OR GUAR-
ANTEED INVESTMENT CONTRACTS AND FUTURES OR CONTRACTS PROVIDING FOR
PAYMENTS BASED ON LEVELS OF, OR CHANGES IN, INTEREST RATES. THESE CON-
TRACTS OR ARRANGEMENTS MAY BE ENTERED INTO BY THE AUTHORITY IN CON-
NECTION WITH, OR INCIDENTAL TO, ENTERING INTO, OR MAINTAINING ANY (I)
AGREEMENT WHICH SECURES BONDS OF THE AUTHORITY OR (II) INVESTMENT, OR
CONTRACT PROVIDING FOR INVESTMENT OF RESERVES OR SIMILAR FACILITY
GUARANTEEING AN INVESTMENT RATE FOR A PERIOD OF YEARS NOT TO EXCEED
THE UNDERLYING TERM OF THE BONDS. THE DETERMINATION BY THE AUTHORITY
THAT AN ANCILLARY BOND FACILITY OR THE AMENDMENT OR TERMINATION
THEREOF IS NECESSARY OR APPROPRIATE AS AFORESAID SHALL BE CONCLUSIVE.
ANY ANCILLARY BOND FACILITY MAY CONTAIN SUCH PAYMENT, SECURITY, DE-
FAULT, REMEDY, AND TERMINATION PROVISIONS AND PAYMENTS AND OTHER
TERMS AND CONDITIONS AS DETERMINED BY THE AUTHORITY, AFTER GIVING DUE
CONSIDERATION TO THE CREDITWORTHINESS OF THE COUNTERPARTY OR OTHER
OBLIGATED PARTY, INCLUDING ANY RATING BY ANY NATIONALLY RECOGNIZED
RATING AGENCY, AND ANY OTHER CRITERIA AS MAY BE APPROPRIATE. <A]

[A> (H) THE AUTHORITY, SUBJECT TO SUCH AGREEMENTS WITH BONDHOLDERS AS MAY THEN EXIST (INCLUDING PROVISIONS WHICH RESTRICT THE POWER OF THE AUTHORITY TO PURCHASE BONDS), OR WITH THE PROVIDERS OF ANY APPLI-CABLE ANCILLARY BOND FACILITY, SHALL HAVE THE POWER OUT OF ANY FUNDS AVAILABLE THEREFOR TO PURCHASE BONDS OF THE AUTHORITY, WHICH MAY OR MAY NOT THEREUPON BE CANCELLED, AT A PRICE NOT SUBSTANTIALLY EXCEED-ING: <A]

[A> (I) IF THE BONDS ARE THEN REDEEMABLE, THE REDEMPTION PRICE THEN APPLICABLE, INCLUDING ANY ACCRUED INTEREST; OR <A]

[A> (II) IF THE BONDS ARE NOT THEN REDEEMABLE, THE REDEMPTION PRICE AND ACCRUED INTEREST APPLICABLE ON THE FIRST DATE AFTER SUCH PURCHASE UPON WHICH THE BONDS BECOME SUBJECT TO REDEMPTION. <A]

[A> (I) NEITHER THE MEMBERS OF THE AUTHORITY NOR ANY OTHER PERSON EXECUTING THE BONDS OR AN ANCILLARY BOND FACILITY OF THE AUTHORITY SHALL BE SUBJECT TO ANY PERSONAL LIABILITY BY REASON OF THE ISSUANCE OR EXECUTION AND DELIVERY THEREOF. <A]

[A> (J) THE MATURITIES OF THE BONDS SHALL NOT EXCEED THIRTY YEARS FROM THEIR RESPECTIVE ISSUANCE DATES. <A]

[A> 6. NEITHER ANY BOND ISSUED PURSUANT TO THIS SECTION NOR ANY AN-CILLARY BOND FACILITY OF THE AUTHORITY SHALL CONSTITUTE A DEBT OR MORAL OBLIGATION OF THE STATE OR A STATE SUPPORTED OBLIGATION WITHIN THE MEANING OF ANY CONSTITUTIONAL OR STATUTORY PROVISION OR A PLEDGE OF THE FAITH AND CREDIT OF THE STATE OR OF THE TAXING POWER OF THE STATE, AND THE STATE SHALL NOT BE LIABLE TO MAKE ANY PAYMENTS THEREON NOR SHALL ANY BOND OR ANY ANCILLARY BOND FACILITY BE PAYABLE OUT OF ANY FUNDS OR ASSETS OTHER THAN PLEDGED REVENUES AND OTHER ASSETS OF THE AUTHORITY AND OTHER FUNDS AND ASSETS OF OR AVAILABLE TO THE AU-THORITY PLEDGED THEREFOR, AND THE BONDS AND ANY ANCILLARY BOND FA-CILITY OF THE AUTHORITY SHALL CONTAIN ON THE FACE THEREOF OR OTHER PROMINENT PLACE THEREON A STATEMENT TO THE FOREGOING EFFECT. <A]

[A> 7. (A) SUBJECT TO THE PROVISIONS OF SUBDIVISION FIVE OF THIS SECTION IN THE EVENT THAT THE AUTHORITY SHALL DEFAULT IN THE PAYMENT OF PRIN-CIPAL OF, OR INTEREST ON, OR SINKING FUND PAYMENT ON, ANY ISSUE OF BONDS AFTER THE SAME SHALL BECOME DUE, WHETHER AT MATURITY OR UPON CALL FOR REDEMPTION, OR IN THE EVENT THAT THE AUTHORITY OR THE STATE SHALL FAIL TO COMPLY WITH ANY AGREEMENT MADE WITH THE HOLDERS OF ANY ISSUE OF BONDS, THE HOLDERS OF TWENTY-FIVE PERCENT IN AGGREGATE PRINCIPAL AMOUNT OF THE BONDS OF SUCH ISSUE THEN OUTSTANDING, BY INSTRUMENT OR INSTRUMENTS FILED IN THE OFFICE OF THE CLERK OF THE COUNTY OF ALBANY AND PROVED OR ACKNOWLEDGED IN THE SAME MANNER AS A DEED TO BE RE-CORDED, MAY APPOINT A TRUSTEE TO REPRESENT THE HOLDERS OF SUCH BONDS FOR THE PURPOSES HEREIN PROVIDED. <A]

[A> (B) SUCH TRUSTEE, MAY, AND UPON WRITTEN REQUEST OF THE HOLDERS OF TWENTY-FIVE PERCENT IN PRINCIPAL AMOUNT OF SUCH BONDS THEN OUT-STANDING SHALL, IN HIS OR ITS OWN NAME: <A]

[A> (I) BY SUIT, ACTION OR PROCEEDING IN ACCORDANCE WITH THE CIVIL PRACTICE LAW AND RULES, ENFORCE ALL RIGHTS OF THE BONDHOLDERS, IN-CLUDING THE RIGHT TO REQUIRE THE AUTHORITY TO CARRY OUT ANY AGREE-MENT WITH SUCH HOLDERS AND TO PERFORM ITS DUTIES UNDER THIS SECTION; <A]

[A> (II) BRING SUIT UPON SUCH BONDS; <A]

[A> (III) BY ACTION OR SUIT, REQUIRE THE AUTHORITY TO ACCOUNT AS IF IT WERE THE TRUSTEE OF AN EXPRESS TRUST FOR THE HOLDERS OF SUCH BONDS; <A]

[A> (IV) BY ACTION OR SUIT, ENJOIN ANY ACTS OR THINGS WHICH MAY BE UNLAWFUL OR IN VIOLATION OF THE RIGHTS OF THE HOLDERS OF SUCH BONDS; AND <A]

[A> (V) DECLARE ALL SUCH BONDS DUE AND PAYABLE, AND IF ALL DEFAULTS SHALL BE MADE GOOD, THEN, WITH THE CONSENT OF THE HOLDERS OF TWENTY-FIVE PERCENT OF THE PRINCIPAL AMOUNT OF SUCH BONDS THEN OUTSTANDING, ANNUL SUCH DECLARATION AND ITS CONSEQUENCES, PROVIDED, HOWEVER, THAT NOTHING IN THIS SUBDIVISION SHALL PRECLUDE THE AUTHORITY FROM AGREEING THAT CONSENT OF THE PROVIDER OF AN ANCILLARY BOND FACILITY IS REQUIRED FOR AN ACCELERATION OF RELATED BONDS IN THE EVENT OF A DE-FAULT OTHER THAN A FAILURE TO PAY PRINCIPAL OF OR INTEREST ON THE BONDS WHEN DUE. <A]

[A> (C) THE SUPREME COURT SHALL HAVE JURISDICTION OF ANY SUIT, ACTION OR PROCEEDING BY THE TRUSTEE ON BEHALF OF SUCH BONDHOLDERS. THE VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING SHALL BE LAID IN THE COUNTY OF ALBANY. <A]

[A> (D) BEFORE DECLARING THE PRINCIPAL OF BONDS DUE AND PAYABLE, THE TRUSTEE SHALL FIRST GIVE THIRTY DAYS NOTICE IN WRITING TO THE AUTHOR-ITY. <A]

[A> 8. ALL MONIES OF THE AUTHORITY FROM WHATEVER SOURCE DERIVED SHALL BE PAID TO THE TREASURER OF THE AUTHORITY AND SHALL BE DEPOSITED FORTHWITH IN A BANK OR BANKS DESIGNATED BY THE AUTHORITY. THE MONIES IN SUCH ACCOUNTS SHALL BE PAID OUT OR WITHDRAWN ON THE ORDER OF SUCH PERSON OR PERSONS AS THE AUTHORITY MAY AUTHORIZE TO MAKE SUCH REQUI-SITIONS. ALL DEPOSITS OF SUCH MONIES SHALL EITHER BE SECURED BY OBLIGA-TIONS OF THE UNITED STATES OR OF THE STATE OR OF ANY MUNICIPALITY OF A MARKET VALUE EQUAL AT ALL TIMES TO THE AMOUNT ON DEPOSIT, OR MONIES OF THE AUTHORITY MAY BE DEPOSITED IN MONEY MARKET FUNDS RATED IN THE HIGHEST SHORT-TERM OR LONG-TERM RATING CATEGORY BY AT LEAST ONE NA-TIONALLY RECOGNIZED RATING AGENCY. TO THE EXTENT PRACTICABLE, AND

CONSISTENT WITH THE REQUIREMENTS OF THE AUTHORITY, ALL SUCH MONIES SHALL BE DEPOSITED IN INTEREST BEARING ACCOUNTS. THE AUTHORITY SHALL HAVE POWER, NOTWITHSTANDING THE PROVISIONS OF THIS SECTION, TO CON-TRACT WITH THE HOLDERS OF ANY BONDS AS TO THE CUSTODY, COLLECTION, SE-CURITY, INVESTMENT AND PAYMENT OF ANY MONIES OF THE AUTHORITY OR ANY MONIES HELD IN TRUST OR OTHERWISE FOR THE PAYMENT OF BONDS OR ANY WAY TO SECURE BONDS, AND CARRY OUT ANY SUCH CONTRACT NOTWITHSTAND-ING THAT SUCH CONTRACT MAY BE INCONSISTENT WITH THE PROVISIONS OF THIS SECTION. MONIES HELD IN TRUST OR OTHERWISE FOR THE PAYMENT OF BONDS OR IN ANY WAY TO SECURE BONDS AND DEPOSITS OF SUCH MONEYS MAY BE SE-CURED IN THE SAME MANNER AS MONIES OF THE AUTHORITY AND ALL BANKS AND TRUST COMPANIES ARE AUTHORIZED TO GIVE SUCH SECURITY FOR SUCH DE-POSITS. ANY MONIES OF THE AUTHORITY NOT REQUIRED FOR IMMEDIATE USE OR DISBURSEMENT MAY, AT THE DISCRETION OF THE AUTHORITY, BE INVESTED IN ACCORDANCE WITH LAW AND SUCH GUIDELINES AS ARE APPROVED BY THE AU-THORITY. <A]

[A> 9. (A) IT IS HEREBY DETERMINED THAT THE CARRYING OUT BY THE AU-THORITY OF ITS CORPORATE PURPOSES UNDER THIS SECTION ARE IN ALL RE-SPECTS FOR THE BENEFIT OF THE PEOPLE OF THE STATE OF NEW YORK AND ARE PUBLIC PURPOSES. ACCORDINGLY, THE AUTHORITY SHALL BE REGARDED AS PER-FORMING AN ESSENTIAL GOVERNMENTAL FUNCTION IN THE EXERCISE OF THE POWERS CONFERRED UPON IT BY THIS SECTION. THE PROPERTY OF THE AUTHOR-ITY, ITS INCOME AND ITS OPERATIONS SHALL BE EXEMPT FROM TAXATION, AS-SESSMENTS, SPECIAL ASSESSMENTS AND AD VALOREM LEVIES. THE AUTHORITY SHALL NOT BE REQUIRED TO PAY ANY FEES, TAXES, SPECIAL AD VALOREM LEVIES OR ASSESSMENTS OF ANY KIND, WHETHER STATE OR LOCAL, INCLUDING, BUT NOT LIMITED TO, REAL PROPERTY TAXES, FRANCHISE TAXES, SALES TAXES OR OTHER TAXES, UPON OR WITH RESPECT TO ANY PROPERTY OWNED BY IT OR UNDER ITS JURISDICTION, CONTROL OR SUPERVISION, OR UPON THE USES THEREOF, OR UPON OR WITH RESPECT TO ITS ACTIVITIES OR OPERATIONS IN FURTHERANCE OF THE POWERS CONFERRED UPON IT BY THIS SECTION, OR UPON OR WITH RESPECT TO ANY ASSESSMENTS, RATES, CHARGES, FEES, REVENUES OR OTHER INCOME RE-CEIVED BY THE AUTHORITY. <A]

[A> (B) ANY BONDS ISSUED PURSUANT TO THIS SECTION, THEIR TRANSFER AND THE INCOME THEREFROM SHALL, AT ALL TIMES, BE EXEMPT FROM TAXATION EX-CEPT FOR ESTATE OR GIFT TAXES AND TAXES ON TRANSFERS. <A]

[A> (C) THE STATE HEREBY COVENANTS WITH THE PURCHASERS AND WITH ALL SUBSEQUENT HOLDERS AND TRANSFEREES OF BONDS ISSUED BY THE AUTHORITY PURSUANT TO THIS SECTION, IN CONSIDERATION OF THE ACCEPTANCE OF AND PAYMENT FOR THE BONDS, THAT THE BONDS OF THE AUTHORITY ISSUED PURSU-ANT TO THIS SECTION AND THE INCOME THEREFROM AND ALL ASSESSMENTS, REVENUES, MONEYS, AND OTHER PROPERTY RECEIVED BY THE AUTHORITY AND PLEDGED TO PAY OR TO SECURE THE PAYMENT OF SUCH BONDS SHALL AT ALL TIMES BE EXEMPT FROM TAXATION. <A]

2007 N.Y. ALS 6, *; 2007 N.Y. LAWS 6;
2007 N.Y. A.N. 6163

[A> (D) IN THE CASE OF ANY BONDS OF THE AUTHORITY, INTEREST ON WHICH IS INTENDED TO BE EXEMPT FROM FEDERAL INCOME TAX, THE AUTHORITY SHALL PRESCRIBE RESTRICTIONS ON THE USE OF THE PROCEEDS THEREOF AND RELATED MATTERS ONLY AS ARE NECESSARY OR DESIRABLE TO ASSURE SUCH EXEMPTION, AND THE RECIPIENTS OF SUCH PROCEEDS SHALL BE BOUND THEREBY TO THE EX-TENT SUCH RESTRICTIONS SHALL BE MADE APPLICABLE TO THEM. ANY SUCH RE-CIPIENT, INCLUDING, BUT NOT LIMITED TO, THE STATE, THE STATE INSURANCE FUND, A PUBLIC BENEFIT CORPORATION, AND A SCHOOL DISTRICT OR MUNICIPAL-ITY IS AUTHORIZED TO EXECUTE A TAX REGULATORY AGREEMENT WITH THE AU-THORITY OR THE STATE, AS THE CASE MAY BE, AND THE EXECUTION OF SUCH AN AGREEMENT MAY BE TREATED BY THE AUTHORITY OR THE STATE AS A CONDI-TION TO RECEIVING ANY SUCH PROCEEDS. <A]

[A> 10. (A) THE STATE, SOLELY WITH RESPECT TO THE RESOURCES OF THE SPE-CIAL DISABILITY FUND AND AS SET FORTH IN THE SPECIAL DISABILITY FUND FI-NANCING AGREEMENT, COVENANTS WITH THE PURCHASERS AND ALL SUBSE-QUENT OWNERS AND TRANSFEREES OF BONDS ISSUED BY THE AUTHORITY PUR-SUANT TO THIS SECTION IN CONSIDERATION OF THE ACCEPTANCE OF THE PAY-MENT OF THE BONDS, UNTIL THE BONDS, TOGETHER WITH THE INTEREST THEREON, WITH INTEREST ON ANY UNPAID INSTALLMENT OF INTEREST AND ALL COSTS AND EXPENSES IN CONNECTION WITH ANY ACTION OR PROCEEDING ON BEHALF OF THE OWNERS, ARE FULLY MET AND DISCHARGED OR UNLESS EX-PRESSLY PERMITTED OR OTHERWISE AUTHORIZED BY THE TERMS OF EACH SPE-CIAL DISABILITY FUND FINANCING AGREEMENT AND ANY CONTRACT MADE OR ENTERED INTO BY THE AUTHORITY WITH OR FOR THE BENEFIT OF SUCH OWNERS, (I) THAT IN THE EVENT BONDS OF THE AUTHORITY ARE SOLD AS FEDERALLY TAX-EXEMPT BONDS, THE STATE SHALL NOT TAKE ANY ACTION OR FAIL TO TAKE AC-TION THAT WOULD RESULT IN THE LOSS OF SUCH FEDERAL TAX EXEMPTION ON SAID BONDS, (II) THAT THE STATE WILL CAUSE THE WORKERS' COMPENSATION BOARD TO IMPOSE, CHARGE, RAISE, LEVY, COLLECT AND APPLY THE PLEDGED AS-SESSMENTS AND OTHER REVENUES, RECEIPTS, FUNDS OR MONEYS PLEDGED FOR THE PAYMENT OF DEBT SERVICE REQUIREMENTS IN EACH YEAR IN WHICH BONDS ARE OUTSTANDING, AND (III) FURTHER, THAT THE STATE (A) WILL NOT MATERI-ALLY LIMIT OR ALTER THE DUTIES IMPOSED ON THE WORKERS' COMPENSATION BOARD, THE AUTHORITY AND OTHER OFFICERS OF THE STATE BY THE SPECIAL DISABILITY FUND FINANCING AGREEMENT AND THE BOND PROCEEDINGS AU-THORIZING THE ISSUANCE OF BONDS WITH RESPECT TO APPLICATION OF PLEDGED ASSESSMENTS OR OTHER REVENUES, RECEIPTS, FUNDS OR MONEYS PLEDGED FOR THE PAYMENT OF DEBT SERVICE REQUIREMENTS, (B) WILL NOT ISSUE ANY BONDS, NOTES OR OTHER EVIDENCES OF INDEBTEDNESS, OTHER THAN THE BONDS, HAV-ING ANY RIGHTS ARISING OUT OF PARAGRAPH (H) OF SUBDIVISION EIGHT OF SEC-TION FIFTEEN OF THE WORKERS' COMPENSATION LAW OR THIS SECTION OR SE-CURED BY ANY PLEDGE OF OR OTHER LIEN OR CHARGE ON THE PLEDGED REVE-NUES OR OTHER RECEIPTS, FUNDS OR MONEYS PLEDGED FOR THE PAYMENT OF DEBT SERVICE REQUIREMENTS, (C) WILL NOT CREATE OR CAUSE TO BE CREATED ANY LIEN OR CHARGE ON THE PLEDGED REVENUES, OTHER THAN A LIEN OR PLEDGE CREATED THEREON PURSUANT TO SAID SECTIONS, (D) WILL CARRY OUT

AND PERFORM, OR CAUSE TO BE CARRIED OUT AND PERFORMED, EACH AND
EVERY PROMISE, COVENANT, AGREEMENT OR CONTRACT MADE OR ENTERED INTO
BY THE SPECIAL DISABILITY FUND FINANCING AGREEMENT, BY THE AUTHORITY
OR ON ITS BEHALF WITH THE BOND OWNERS OF ANY BONDS, (E) WILL NOT IN ANY
WAY IMPAIR THE RIGHTS, EXEMPTIONS OR REMEDIES OF THE BOND OWNERS, AND
(F) WILL NOT LIMIT, MODIFY, RESCIND, REPEAL OR OTHERWISE ALTER THE RIGHTS
OR OBLIGATIONS OF THE APPROPRIATE OFFICERS OF THE STATE TO IMPOSE,
MAINTAIN, CHARGE OR COLLECT THE ASSESSMENTS AND OTHER REVENUES OR
RECEIPTS CONSTITUTING THE PLEDGED REVENUES AS MAY BE NECESSARY TO
PRODUCE SUFFICIENT REVENUES TO FULFILL THE TERMS OF THE PROCEEDINGS
AUTHORIZING THE ISSUANCE OF THE BONDS, INCLUDING PLEDGED REVENUE
COVERAGE REQUIREMENTS, PROVIDED, HOWEVER, (I) THE REMEDIES AVAILABLE
TO THE AUTHORITY AND THE BONDHOLDERS FOR ANY BREACH OF THE PLEDGES
AND AGREEMENTS OF THE STATE SET FORTH IN THIS SUBCLAUSE SHALL BE LIM-
ITED TO INJUNCTIVE RELIEF, (II) NOTHING IN THIS SUBDIVISION SHALL PREVENT
THE AUTHORITY FROM ISSUING EVIDENCES OF INDEBTEDNESS (A) WHICH ARE SE-
CURED BY A PLEDGE OR LIEN WHICH IS, AND SHALL ON THE FACE THEREOF, BE
EXPRESSLY SUBORDINATE AND JUNIOR IN ALL RESPECTS TO EVERY LIEN AND
PLEDGE CREATED BY OR PURSUANT TO SAID SECTIONS, OR (B) WHICH ARE SE-
CURED BY A PLEDGE OF OR LIEN ON MONEYS OR FUNDS DERIVED ON OR AFTER
THE DATE EVERY PLEDGE OR LIEN THEREON CREATED BY OR PURSUANT TO SAID
SECTIONS SHALL BE DISCHARGED AND SATISFIED, AND (III) NOTHING IN THIS
SUBDIVISION SHALL PRECLUDE THE STATE FROM EXERCISING ITS POWER,
THROUGH A CHANGE IN LAW, TO LIMIT, MODIFY, RESCIND, REPEAL OR OTHERWISE
ALTER THE CHARACTER OF THE PLEDGED ASSESSMENTS OR REVENUES OR TO
SUBSTITUTE LIKE OR DIFFERENT SOURCES OF ASSESSMENTS, TAXES, FEES,
CHARGES OR OTHER RECEIPTS AS PLEDGED REVENUES IF AND WHEN ADEQUATE
PROVISION SHALL BE MADE BY LAW FOR THE PROTECTION OF THE HOLDERS OF
OUTSTANDING BONDS PURSUANT TO THE PROCEEDINGS UNDER WHICH THE
BONDS ARE ISSUED, INCLUDING CHANGING OR ALTERING THE METHOD OF ESTAB-
LISHING THE SPECIAL ASSESSMENTS. <A]

[A> THE AUTHORITY IS AUTHORIZED TO INCLUDE THIS COVENANT OF THE
STATE, AS A CONTRACT OF THE STATE, IN ANY AGREEMENT WITH THE OWNER OF
ANY BONDS ISSUED PURSUANT TO THIS SECTION AND IN ANY CREDIT FACILITY OR
REIMBURSEMENT AGREEMENT WITH RESPECT TO SUCH BONDS. NOTWITHSTAND-
ING THESE PLEDGES AND AGREEMENTS BY THE STATE, THE ATTORNEY GENERAL
MAY IN HIS OR HER DISCRETION ENFORCE ANY AND ALL PROVISIONS RELATED TO
THE SPECIAL DISABILITY FUND, WITHOUT LIMITATION. <A]

[A> (B) PRIOR TO THE DATE WHICH IS ONE YEAR AND ONE DAY AFTER THE AU-
THORITY NO LONGER HAS ANY BONDS ISSUED PURSUANT TO THIS SECTION OUT-
STANDING, THE AUTHORITY SHALL HAVE NO AUTHORITY TO FILE A VOLUNTARY
PETITION UNDER CHAPTER NINE OF THE FEDERAL BANKRUPTCY CODE OR SUCH
CORRESPONDING CHAPTER OR SECTIONS AS MAY, FROM TIME TO TIME, BE IN EF-
FECT, AND NEITHER ANY PUBLIC OFFICER NOR ANY ORGANIZATION, ENTITY OR
OTHER PERSON SHALL AUTHORIZE THE AUTHORITY TO BE OR BECOME A DEBTOR

UNDER CHAPTER NINE OR ANY SUCCESSOR OR CORRESPONDING CHAPTER OR
SECTIONS DURING SUCH PERIOD. THE STATE HEREBY COVENANTS WITH THE
OWNERS OF THE BONDS OF THE AUTHORITY THAT THE STATE WILL NOT LIMIT OR
ALTER THE DENIAL OF AUTHORITY UNDER THIS SUBDIVISION DURING THE PERIOD
REFERRED TO IN THE PRECEDING SENTENCE. THE AUTHORITY IS AUTHORIZED TO
INCLUDE THIS COVENANT OF THE STATE, AS A CONTRACT OF THE STATE, IN ANY
AGREEMENT WITH THE OWNER OF ANY BONDS ISSUED PURSUANT TO THIS SEC-
TION. <A]

[A> (C) TO THE EXTENT DEEMED APPROPRIATE BY THE AUTHORITY ANY
PLEDGE AND AGREEMENT OF THE STATE WITH RESPECT TO THE BONDS AS PRO-
VIDED IN THIS SECTION MAY BE EXTENDED TO, AND INCLUDED IN, ANY ANCIL-
LARY BOND FACILITY AS A PLEDGE AND AGREEMENT OF THE STATE WITH THE
AUTHORITY AND THE BENEFITED PARTY. <A]

[A> 11. THE BONDS OF THE AUTHORITY ARE HEREBY MADE SECURITIES IN
WHICH ALL PUBLIC OFFICERS AND BODIES OF THIS STATE AND ALL MUNICIPALI-
TIES AND POLITICAL SUBDIVISIONS, ALL INSURANCE COMPANIES AND ASSOCIA-
TIONS AND OTHER PERSONS CARRYING ON AN INSURANCE BUSINESS, ALL BANKS,
BANKERS, TRUST COMPANIES, SAVINGS BANKS AND SAVINGS ASSOCIATIONS, IN-
CLUDING SAVINGS AND LOAN ASSOCIATIONS, BUILDING AND LOAN ASSOCIA-
TIONS, INVESTMENT COMPANIES AND OTHER PERSONS CARRYING ON A BANKING
BUSINESS, ALL ADMINISTRATORS, GUARDIANS, EXECUTORS, TRUSTEES AND
OTHER FIDUCIARIES, AND ALL OTHER PERSONS WHATSOEVER WHO ARE NOW OR
MAY HEREAFTER BE AUTHORIZED TO INVEST IN BONDS OR IN OTHER OBLIGA-
TIONS OF THE STATE, MAY PROPERLY AND LEGALLY INVEST FUNDS, INCLUDING
CAPITAL, IN THEIR CONTROL OR BELONGING TO THEM. THE BONDS ARE ALSO
HEREBY MADE SECURITIES WHICH MAY BE DEPOSITED WITH AND MAY BE RE-
CEIVED BY ALL PUBLIC OFFICERS AND BODIES OF THE STATE AND ALL MUNICI-
PALITIES, POLITICAL SUBDIVISIONS AND PUBLIC CORPORATIONS FOR ANY PUR-
POSE FOR WHICH THE DEPOSIT OF BONDS OR OTHER OBLIGATIONS OF THE STATE
IS NOW OR MAY HEREAFTER BE AUTHORIZED. <A]

[A> 12. (A) AN ACTION AGAINST THE AUTHORITY FOR DEATH, PERSONAL IN-
JURY OR PROPERTY DAMAGE OR FOUNDED ON TORT SHALL NOT BE COMMENCED
MORE THAN ONE YEAR AND NINETY DAYS AFTER THE CAUSE OF ACTION THEREOF
SHALL HAVE ACCRUED NOR UNLESS A NOTICE OF CLAIM SHALL HAVE BEEN
SERVED ON A MEMBER OF THE AUTHORITY OR OFFICER OR EMPLOYEE THEREOF
DESIGNATED BY THE AUTHORITY FOR SUCH PURPOSE, WITHIN THE TIME LIMITED
BY, AND IN COMPLIANCE WITH THE REQUIREMENTS OF SECTION FIFTY-E OF THE
GENERAL MUNICIPAL LAW. <A]

[A> (B) THE VENUE OF EVERY ACTION, SUIT OR SPECIAL PROCEEDING BROUGHT
AGAINST THE AUTHORITY OR CONCERNING THE VALIDITY OF THIS SECTION
SHALL BE LAID IN THE COUNTY OF ALBANY. <A]

[A> (C) THE BONDS, AND ANY OBLIGATION OF THE AUTHORITY UNDER ANY
ANCILLARY BOND FACILITY, MAY CONTAIN A RECITAL THAT THEY ARE ISSUED OR
EXECUTED, RESPECTIVELY, PURSUANT TO THIS SECTION, WHICH RECITAL SHALL

BE CONCLUSIVE EVIDENCE OF THE VALIDITY OF THE BONDS AND ANY SUCH OB-
LIGATION, RESPECTIVELY, AND THE REGULARITY OF THE PROCEEDINGS OF THE
AUTHORITY RELATING THERETO. <A]

[A> 13. ANY ACTION OR PROCEEDING TO WHICH THE AUTHORITY OR THE PEO-
PLE OF THE STATE MAY BE PARTIES, IN WHICH ANY QUESTION ARISES AS TO THE
VALIDITY OF THIS SECTION, SHALL BE PREFERRED OVER ALL OTHER CIVIL CAUSES
OF ACTION OR CASES, EXCEPT ELECTION CAUSES OF ACTION OR CASES, IN ALL
COURTS OF THE STATE AND SHALL BE HEARD AND DETERMINED IN PREFERENCE
TO ALL OTHER CIVIL BUSINESS PENDING THEREIN, EXCEPT ELECTION CAUSES, IR-
RESPECTIVE OF POSITION ON THE CALENDAR. THE SAME PREFERENCE SHALL BE
GRANTED UPON APPLICATION OF THE AUTHORITY OR ITS COUNSEL IN ANY AC-
TION OR PROCEEDING QUESTIONING THE VALIDITY OF THIS SECTION IN WHICH
THE AUTHORITY MAY BE ALLOWED TO INTERVENE. <A]

[*79] Section 79. Subdivision 1 of section 17 of the public officers law is amended by adding a
new paragraph (t) to read as follows:

[A> (T) FOR THE PURPOSES OF THIS SECTION, THE TERM "EMPLOYEE" SHALL IN-
CLUDE THE MEMBERS OF THE BOARD, OFFICERS AND EMPLOYEES OF THE DORMI-
TORY AUTHORITY FOR PURPOSES OF SECTION SIXTEEN HUNDRED EIGHTY-L OF
THE PUBLIC AUTHORITIES LAW. <A]

[*80] Section 80. The superintendent of insurance, in consultation with the chair of the work-
ers' compensation board, may promulgate regulations relating to the standards to be followed in the
approval of forms and in the procedural requirements needed to implement the provisions of this
act, and the chair of the workers' compensation board, in consultation with the superintendent of
insurance, may promulgate regulations relating to the procedural requirements needed to implement
the provisions of this act.

[*81] Section 81. Severability. If any clause, sentence, paragraph, section or part of this act
shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not af-
fect, impair or invalidate the remainder thereof, but shall be confined in its operation to the clause,
sentence, paragraph, section or part thereof directly involved in the controversy in which said judg-
ment shall have been rendered.

[*82] Section 82. This act shall take effect immediately; provided that:

a. section four of this act shall apply to accidents and dates of disablement which occur on and
after such effective date; b. sections six and eight of this act shall take effect on the one hundred
eightieth day after this act shall have become a law; c. sections seven, nine, thirteen, fifteen and
seventy of this act shall take effect on the thirtieth day after this act shall have become a law, and
shall apply to offenses committed on and after such date; d. sections ten, thirty-five, forty and forty-
one of this act shall apply to claims or appeals filed after the effective date of this act; e. sections
eleven, twelve, twenty-five, twenty-six, twenty-seven, twenty-eight, thirty-three, forty-three, forty-
six, and sixty-six of this act shall take effect on the one hundred twentieth day after this act shall
have become a law; f. section thirty-four of this act shall apply to appeals filed after the effective
date of this act; g. sections fifty-six and sixty-five of this act shall take effect January 1, 2008; and
h. section sixty-eight of this act shall take effect February 1, 2008; provided, however that the
amendments made to section 2316 of the insurance law made by such section shall not effect the

expiration of such section pursuant to section 2342 of the insurance law and shall be deemed expired therewith.

**HISTORY:**
Enacted March 13, 2007

**SPONSOR:** Introduced by Sens. BRUNO, MAZIARZ, ALESI, BONACIC, DeFRAN- CISCO, FARLEY, FLANAGAN, FUSCHILLO, GOLDEN, GRIFFO, HANNON, O. JOHN- SON, LANZA, LARKIN, LAVALLE, LEIBELL, LIBOUS, LITTLE, MALTESE, MARCELLINO, MORAHAN, NOZZOLIO, PADAVAN, RATH, ROBACH, SALAND, SEWARD, SKELOS, TRUNZO, VOLKER, WINNER, WRIGHT, YOUNG -- (at request of the Governor) -- read twice and ordered printed, and when printed to be committed to the Committee on Labor

Introduced by M. of A. SILVER, JOHN, FARRELL, CANESTRARI, MORELLE, DESTITO, SCHIMMINGER, STIRPE, DelMONTE, T. GORDON, MAGNARELLI, AUBERTINE, GABRYSZAK, KOON, EDDINGTON, BRADLEY, REILLY, FIELDS, BING, LUPARDO, CA- HILL, HOYT -- Multi-Sponsored by -- M. of A. ALFANO, ARROYO, AUBRY, BACALLES, BALL, BARCLAY, BARRA, BENEDETTO, BENJAMIN, BOYLAND, BOYLE, BRODSKY, BROOK-KRASNY, BURLING, BUTLER, CALHOUN, CAMARA, CARROZZA, CHRISTEN- SEN, CLARK, COLE, CONTE, COOK, CROUCH, CUSICK, CYMBROWITZ, L. DIAZ, R. DIAZ, DINOWITZ, DUPREY, ENGLEBRIGHT, ERRIGO, FINCH, FITZPATRICK, GALEF, GIANARIS, GIGLIO, D. GORDON, GOTTFRIED, GRANNIS, GREENE, GUNTHER, HAW- LEY, HAYES, HEASTIE, HIKIND, HOOPER, HYER-SPENCER, JAFFEE, KAVANAGH, KOLB, LAFAYETTE, LAVINE, LIFTON, P. LOPEZ, V. LOPEZ, MAGEE, MAISEL, MARKEY, MAYERSOHN, McDONALD, McDO- NOUGH, McENENY, McKEVITT, MILLER, MILL- MAN, MOLINARO, NOLAN, OAKS, O'MARA, ORTIZ, PAULIN, PEOPLES, PERALTA, PHEFFER, POWELL, PRETLOW, QUINN, RABBITT, RAIA, RAMOS, REILICH, J. RIVERA, N. RIVERA, P. RIVERA, ROBINSON, SALADINO, SAYWARD, SCARBOROUGH, SCHROEDER, SCOZZAFAVA, SEMINERIO, SPANO, SWEENEY, TEDISCO, THIELE, TI- TUS, TONKO, TOWNSEND, WALKER, WEINSTEIN, WEISENBERG, WEPRIN, WRIGHT, YOUNG, ZEBROWSKI -- (at request of the Governor) -- read once and referred to the Committee on Labor

# EXHIBIT 2

▷                              **Effective: July 11, 2007**

Mckinney's Consolidated Laws of New York Annotated <u>Currentness</u>
   Workers' Compensation Law <u>(Refs & Annos)</u>
      Chapter 67. Of the Consolidated Laws
         ▧  Article 2. Compensation <u>(Refs & Annos)</u>
         →  **§ 27. <u>Depositing future payments in the aggregate trust fund</u>**

1. All payments made into the fund pursuant to the provisions of this section shall constitute an indivisible and aggregate trust fund except as hereinafter provided.

2. If an award under this chapter requires payment of death benefits or other compensation by an insurance carrier or employer in periodical payments, the board may, in its discretion, at any time, any provision of this chapter to the contrary notwithstanding, compute and permit or require to be paid into the aggregate trust fund an amount equal to the present value of all unpaid death benefits or other compensation in cases in which awards are made for total permanent or permanent partial disability for a period of one hundred and four weeks or more, for which liability exists, together with such additional sum as the board may deem necessary for a proportionate payment of expenses of administering the fund so created, including the cost of the actuarial computation by or on behalf of the board of the present value of the award, and for the purposes of this section such cases shall be known as discretionary type cases. If any such award made on or after July first, nineteen hundred thirty-five, requires payment for total permanent disability resulting from the loss of both hands, or both arms, or both feet, or both legs, or both eyes, or of any two thereof, or for permanent partial disability resulting from loss of an arm, leg, hand, foot or eye, or of death benefits by an insurance carrier which is a stock corporation or mutual association, or if any such award made on or after July first, two thousand seven requires payment for permanent partial disability under <u>paragraph w of subdivision three of section fifteen</u> of this article by an insurance carrier which is a stock corporation or mutual association, which for the purposes of this section shall be known as mandatory type cases, the board shall immediately compute the present value thereof and require payment of such amount into the aggregate trust fund, together with such additional sum as the board may deem necessary for a proportionate payment of expenses of administering such trust fund including the cost of the actuarial computation by or on behalf of the board of the present value of the award provided, however, that where an employer or his insurance carrier is found to be entitled to reimbursement from the special disability fund of <u>subdivision eight of section fifteen</u>, the computation of the present value of the award and the requirement for payment of such amount into the said trust fund shall not be mandatory and such cases shall be deemed to be discretionary type cases; further provided that where an employee entitled to compensation under this chapter

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

be injured or killed by the negligence or wrong of another not in the same employ, the computation of the present value and the requirement for payment of such amount into the said trust fund shall be held in abeyance until (1) six months have elapsed from the award of compensation, or in any event not more than one year after the date of the accident, if the injured employee, or in case of death, his personal representatives, spouse, parents, dependents or next of kin, or anyone otherwise entitled to recover damages at common law or otherwise, on account of such injury or death, have failed to commence such action, (2) the termination of any such action brought by the injured employee, or in case of death, his personal representatives, spouse, parents, dependents or next of kin, or anyone otherwise entitled to recover damages, at common law or otherwise, on account of such injury or death, under the provisions of section twenty-nine of this article.

3. Upon payment by an employer or insurance carrier into the aggregate trust fund of an amount equal to the present value of all unpaid death benefits or other compensation under any such award together with such additional sum as the board may deem necessary for a proportionate payment of expenses of administering such trust fund including the cost of the actuarial computation by or on behalf of the board of the present value of the award, such employer or insurance carrier shall be discharged from any further liability for payment of such death benefits or other compensation, and payment of the same as provided by this chapter shall be assumed by the fund so created.

4. In the event of a review or appeal of any such award the value of which has not been paid into the aggregate trust fund, if the amount of award is modified or changed, the employer or insurance carrier shall pay directly to the claimant compensation due to the date as of which the present value of future benefits is payable into such fund, and to the said fund the present value of future benefits, but if the original award is affirmed, the employer or insurance carrier shall pay to such fund the present value of the award computed as of the effective date of the original award and simple interest on such amount at the industry standard rate, as determined by the superintendent of insurance by regulation, computed from the date of the original award to the date that payment is made into such fund, plus simple interest at the rate provided in section five thousand four of the civil practice law and rules, on past due payments of compensation to the date of the affirmance of such award, which past due payment and interest shall be made directly to the claimant. The foregoing provision shall apply in the event of such review or appeal regardless of whether the widow or widower or other parties in interest have died or the widow or widower remarried subsequent to the date as of which the present value of the original award was computed. If any award, the present value of which has been paid into the aggregate trust fund, is subsequently modified or changed by the board for any reason other than because of subsequent death or remarriage, the amount equal to the present value of the unpaid death benefits or other compensation at the effective date of such modification or change shall be computed on the basis both of the original award and of the modified or changed award. If such amount is greater on the basis of the original award, the difference shall be paid by said trust fund to the employer or insurance carrier minus the cost, if any, of the actuarial computation made by or on behalf of the board. If such amount is greater on the basis of the modified or

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

changed award, the difference shall be paid to said trust fund by such employer or insurance carrier in addition to the cost, if any, of the actuarial computation made by or on behalf of the board. In the case of an accident, occurring on or subsequent to July first, nineteen hundred thirty-nine, where the present value of an award for permanent total or permanent partial disability other than award for a definite number of weeks has been paid into the aggregate trust fund, if an award is made for death resulting from the injury causing the said disability, the employer or insurance carrier which paid the present value of said disability award into such fund shall be entitled to the difference between the amount paid into such fund and the sum disbursed from such fund to the injured employee prior to his or her death, plus simple interest on such difference at the industry standard rate. In the case of an accident occurring on or subsequent to July first, nineteen hundred thirty-nine, where the present value of an award for permanent partial disability for a definite number of weeks has been paid into the aggregate trust fund, if the injured employee dies prior to the end of such definite number of weeks, the employer or insurance carrier which made the said payment into such fund shall be entitled to the present value of the unexpended disability benefits not payable to beneficiaries computed on the basis of annuities certain with interest at the industry standard rate, minus however the cost, if any, of the actuarial computation made by or on behalf of the board. In the case of a claim for the death of an employee resulting from an accident occurring on or subsequent to January first, two thousand one, the present value of an award paid into the aggregate trust fund shall be calculated based on the assumption that any child while under the age of twenty-three years will be enrolled and attending as a full time student in an accredited educational institution and would thereby be entitled to benefits for all periods while under the age of twenty-three years. After all such children reach the age of twenty-three, the aggregate trust fund shall refund to the carrier which paid such present value into such fund the portion of such present value representing benefits for which such children were not actually entitled because they were not enrolled and attending as a full time student in an accredited educational institution plus simple interest on such difference at the industry standard rate.

5. All computations made by the board shall be upon the basis of the survivorship annuitants table of mortality, the remarriage tables of the Dutch Royal Insurance Institution and interest at three and one-half per centum per annum on claims based on accidents occurring up to and including June thirtieth, nineteen hundred thirty-nine, at three per centum per annum on claims based on accidents occurring from July first, nineteen hundred thirty-nine up to and including August thirty-first, nineteen hundred eighty-three, at six per centum per annum on claims based on accidents occurring from September first, nineteen hundred eighty-three up to and including December thirty-first, two thousand and at the industry standard rate on claims based on accidents occurring thereafter, except (a) that computations of present values of death benefits required to be paid into the aggregate trust fund by an insurance carrier which is a stock corporation or a mutual association shall be based, in the case of a dependent parent, grandparent, blind or physically disabled child or spouse, upon said table of mortality disregarding possible change in or termination of dependency, with interest at three and one-half per centum per annum on claims based on accidents occurring up to and including June thirtieth, nineteen hundred thirty-nine, at three per centum per annum on claims based on accidents

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

occurring from July first, nineteen hundred thirty-nine up to and including August thirty-first, nineteen hundred eighty-three, at six per centum per annum on claims based on accidents occurring from September first, nineteen hundred eighty-three up to and including December thirty-first, two thousand and at the industry standard rate on claims based on accidents occurring thereafter and (b) that computations of present values of permanent partial disability benefits awarded for a definite number of weeks shall be on the basis of annuities certain with interest at three and one-half per centum per annum on claims based on accidents occurring up to and including June thirtieth, nineteen hundred thirty-nine, at three per centum per annum on claims based on accidents occurring from July first, nineteen hundred thirty-nine up to and including August thirty-first, nineteen hundred eighty-three, at six per centum per annum on claims based on accidents occurring from September first, nineteen hundred eighty-three up to and including December thirty-first, two thousand and at the industry standard rate on claims based on accidents occurring thereafter.

6. Such aggregate trust fund shall be kept separate and apart from all other moneys of the state insurance fund, and shall not be liable for any losses or expenses of administration of the state insurance fund other than the expenses involved in the administration of such trust fund including the cost, if any, of the actuarial computations made on behalf of the board, nor shall the state insurance fund be charged with the losses or expenses of the aggregate trust fund beyond the amount of such trust fund. Any portion of such aggregate trust fund may, by order of the commissioners of the state insurance fund, approved by the superintendent of insurance, be invested in or loaned on the pledge of the same securities as provided in section eighty-seven of this chapter for the investment of the state insurance fund, and the commissioners may, upon like approval of the superintendent of insurance, also sell any such securities. Any securities belonging to the aggregate trust fund may be loaned by the commissioners of the state insurance fund, with the approval of the superintendent of insurance, under a security loan agreement as provided by section eighty-seven of this chapter for securities belonging to the state insurance fund.

7. For the purpose of securing the solvency of the aggregate trust fund, there shall be required, in addition to the payments hereinbefore provided for, a payment on each award, as follows:

(a) In the mandatory type cases based on an accident occurring on or subsequent to July first, nineteen hundred forty-one up to and including June thirtieth, nineteen hundred forty-three an amount equal to six per centum of the present value of each such case paid into such fund;

(b) In the mandatory type cases based on an accident occurring on or subsequent to July first, nineteen hundred forty-three an amount equal to ten per centum of the present value of each such case paid into such fund;

(c) In the discretionary type cases based on an accident occurring up to and including June thirtieth, nineteen hundred thirty-nine an amount equal to sixteen per centum of the present value of each such case paid into such fund;

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

(d) In the discretionary type cases based on an accident occurring on or subsequent to July first, nineteen hundred thirty-nine an amount equal to ten per centum of the present value of each such case paid into such fund.

Such additional payments shall be required until the surplus of the fund equals or exceeds one per centum of the total outstanding loss reserves as shown by three successive annual reports of the fund to the superintendent of insurance and such additional payment shall be required as a payment upon each award based on an accident occurring prior to July first next succeeding the third such annual report, but not as a payment upon any award based on an accident occurring on or after said July first; provided, however, that if and when the surplus of the fund as shown by any annual report thereafter shall be less than one per centum of the total outstanding loss reserves, then the additional payments as provided in paragraphs (a), (b), (c) and (d) of this subdivision shall be resumed and shall be payable upon any award based on an accident occurring on or after July first next succeeding the close of the year for which such annual report is made. Thereafter, the suspension or resumption of additional payments as required by this subdivision shall be governed by the foregoing provisions. Such loss reserves shall be computed based upon the tables specified in subdivision five of this section and interest at a standard to be determined by the superintendent of insurance by regulation.

8. In the case of a claim concerning which the aggregate trust fund enters a waiver agreement pursuant to section thirty-two of this article, the insurance carrier, as defined in subdivision twelve of section two of this chapter, which paid the present value of the award for such claim, shall not be entitled to a refund of any portion of the present value of such award.

CREDIT(S)

(L.1922, c. 615; amended L.1935, c. 255, § 1; L.1938, c. 585, § 18; L.1939, c. 937, § 1; L.1941, c. 325; L.1943, cc. 488, 511; L.1947, c. 112; L.1949, c. 192; L.1950, c. 126, § 1; L.1950, c. 146; L.1961, c. 92, §§ 1-4; L.1976, c. 68, § 2; L.1978, c. 550, § 60; L.1979, c. 168, §§ 13, 14; L.1983, c. 415, § 15; L.1985, c. 425, § 2; L.1989, c. 62, § 96; L.1996, c. 635, § 55; L.2007, c. 6, §§ 46, 66, eff. July 11, 2007; L.2007, c. 6, §§ 57-a, 57-b, 71, eff. March 13, 2007.)

HISTORICAL AND STATUTORY NOTES

2008 Electronic Update

L.2007, c. 6 legislation

Subd. 2. L.2007, c. 6, § 46, inserted "or if any such award made on or after July first, two thousand seven requires payment for permanent partial disability under paragraph w of subdivision three of section fifteen of this article by an insurance carrier which is a stock corporation or mutual association," in the second sentence.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Subd. 4. L.2007, c. 6, § 57-a, rewrote subd. 4, which had read:

"In the event of a review or appeal of any such award the value of which has not been paid into the aggregate trust fund, if the amount of award is modified or changed, the employer or insurance carrier shall pay directly to the claimant compensation due to the date as of which the present value of future benefits is payable into such fund, and to the said fund the present value of future benefits, but if the original award is affirmed, the employer or insurance carrier shall pay to such fund the present value of the award computed as of the effective date of the original award and simple interest on such amount at three per centum per annum computed from the date of the original award to the date that payment is made into such fund, plus simple interest at the rate provided in section five thousand four of the civil practice law and rules, on past due payments of compensation to the date of the affirmance of such award, which past due payment and interest shall be made directly to the claimant. The foregoing provision shall apply in the event of such review or appeal regardless of whether the widow or widower or other parties in interest have died or the widow or widower remarried subsequent to the date as of which the present value of the original award was computed. If any award, the present value of which has been paid into the aggregate trust fund, is subsequently modified or changed by the board for any reason other than because of subsequent death or remarriage, the amount equal to the present value of the unpaid death benefits or other compensation at the effective date of such modification or change shall be computed on the basis both of the original award and of the modified or changed award. If such amount is greater on the basis of the original award, the difference shall be paid by said trust fund to the employer or insurance carrier minus the cost, if any, of the actuarial computation made by or on behalf of the board. If such amount is greater on the basis of the modified or changed award, the difference shall be paid to said trust fund by such employer or insurance carrier in addition to the cost, if any, of the actuarial computation made by or on behalf of the board. In the case of an accident, occurring on or subsequent to July first, nineteen hundred thirty-nine, where the present value of an award for permanent total or permanent partial disability other than award for a definite number of weeks has been paid into the aggregate trust fund, if an award is made for death resulting from the injury causing the said disability, the employer or insurance carrier which paid the present value of said disability award into such fund shall be entitled to the difference between the amount paid into such fund and the sum disbursed from such fund to the injured employee prior to his or her death, plus simple interest on such difference at three per centum per annum. In the case of an accident occurring on or subsequent to July first, nineteen hundred thirty-nine, where the present value of an award for permanent partial disability for a definite number of weeks has been paid into the aggregate trust fund, if the injured employee dies prior to the end of such definite number of weeks, the employer or insurance carrier which made the said payment into such fund shall be entitled to the present value of the unexpended disability benefits not payable to beneficiaries computed on the basis of annuities certain with interest at the rate of three per centum per annum, minus however the cost, if any, of the actuarial computation made by or on behalf of the board."

Subd. 5. L.2007, c. 6, § 71, rewrote subd. 5, which had read:

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

"All computations made by the board shall be upon the basis of the survivorship annuitants table of mortality, the remarriage tables of the Dutch Royal Insurance Institution and interest at three and one-half per centum per annum on claims based on accidents occurring up to and including June thirtieth, nineteen hundred thirty-nine, at three per centum per annum on claims based on accidents occurring from July first, nineteen hundred thirty-nine up to and including August thirty-first, nineteen hundred eighty-three, and at six per centum per annum on claims based on accidents occurring thereafter, except (a) that computations of present values of death benefits required to be paid into the aggregate trust fund by an insurance carrier which is a stock corporation or a mutual association shall be based, in the case of a dependent parent, grandparent, blind or physically disabled child or spouse, upon said table of mortality disregarding possible change in or termination of dependency, with interest at three and one-half per centum per annum on claims based on accidents occurring up to and including June thirtieth, nineteen hundred thirty-nine, at three per centum per annum on claims based on accidents occurring from July first, nineteen hundred thirty-nine up to and including August thirty-first, nineteen hundred eighty-three, and at six per centum per annum on claims based on accidents occurring thereafter and (b) that computations of present values of permanent partial disability benefits awarded for a definite number of weeks shall be on the basis of annuities certain with interest at three and one-half per centum per annum on claims based on accidents occurring up to and including June thirtieth, nineteen hundred thirty-nine, at three per centum per annum on claims based on accidents occurring from July first, nineteen hundred thirty-nine up to and including August thirty-first, nineteen hundred eighty-three and at six per centum per annum on claims based on accidents occurring thereafter."

Subd. 7, closing par. L.2007, c. 6, § 66, substituted "this section and interest at a standard to be determined by the superintendent of insurance by regulation" for "section twenty-seven of this law and interest at six per centum per annum" in the last sentence.

Subd. 8. L.2007, c. 6, § 57-b, added subd. 8.

2005 Main Volume

L.1996, c. 635 legislation

Subd. 6. L.1996, c. 635, § 55, substituted references to the "state insurance fund" for references to the "state fund" and allowed the investment in or loan upon pledge of securities listed in Workers' Compensation Law § 87.

L.1996, c. 635, § 90, provides:

"This act [L.1996, c. 635, which in addition to the provisions listed below, added General Obligations Law Art. 18-A, Insurance Law §§ 407-a, 409, Penal Law § 176.35, and Workers' Compensation Law §§ 21-a, 114, 114-a, 114-b, 136; amended CPLR 1401, 1601, 1602, 1603,

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Insurance Law §§ 304, 402, 405, 406, 2313, Labor Law § 591, Penal Law §§ 176.00, 176.05, and Workers' Compensation Law §§ 11, 13, 13-a, 13-d, 13-k, 13-l, 13-m, 23, 27, 29, 76, 77, 87, 93, 94, 96, 125, 132, 402; repealed Insurance Law § 408, and Workers' Compensation Law §§ 43, 86-b, 89-a, 92-a, 95-a, 101, 102, 103, 104, 105-a, 114; enacted provisions set out as notes under Workers' Compensation Law § 20, Insurance Law § 2313, and Workers' Compensation Law §§ 3, 77, 88, 134; amended provisions set out as notes under Executive Law § 835 and Workers' Compensation Law § 126; and repealed provisions set out as a note under Penal Law § 176.00] shall take effect immediately [Sept. 10, 1996]; sections ten and eleven of this act [adding Workers' Compensation Law §§ 134, 135] shall take effect 120 days after it shall have become a law [became law Sept. 10, 1996; eff. Jan. 8, 1997]; section twenty-five of this act [amending Workers' Compensation Law § 134] shall take effect on the sixtieth day after it shall have become a law [became law Sept. 10, 1996; eff. Nov. 9, 1996]; that the amendments to section 126 of the workers' compensation law made by this act [L.1996, c. 635, §§ 30 to 34] shall be repealed on the same date as provided for in chapter 729 of the laws of 1993, as amended [Dec. 31, 2000]; section thirty-six of this act [adding Workers' Compensation Law Art. 10-a] shall take effect January 1, 1997, provided, however, that any rules and regulations necessary for the timely implementation of these provisions shall be promulgated before such date; section thirty-nine of this act [amending Workers' Compensation Law § 15] shall take effect immediately [Sept. 10, 1996] except that the provision relating to paragraph (h) of subdivision 8 of section 15 of the workers' compensation law shall take effect January 1, 1997; sections forty-nine through fifty-one of this act [amending Workers' Compensation Law §§ 82, 88 and State Finance Law § 4, respectively] shall take effect immediately [Sept. 10, 1996] and shall be deemed to have been in full force and effect on and after April 1, 1996, but shall not apply to any and all appropriations or expenditures enacted for the fiscal year ending March 31, 1995; moreover, any appropriations made for the fiscal year commencing April 1, 1996 shall immediately cease to have force and effect; section fifty-seven of this act [amending this section] shall take effect 180 days after it shall have become a law [became law Sept. 10, 1996; eff. Mar. 10, 1997] and shall apply to all claims pending on or after such date; section fifty-eight of this act [amending Workers' Compensation Law § 110] shall take effect 90 days after it shall have become a law [became law Sept. 10, 1996; eff. Dec. 9, 1996]; section sixty of this act [amending Workers' Compensation Law § 25] shall apply to discrimination claims filed on or after the date on which it shall have become a law [Sept. 10, 1996]; section seventy of this act [amending Workers' Compensation Law § 25] shall take effect 120 days after it shall have become a law [became law Sept. 10, 1996; eff. Jan. 8, 1997]; section seventy-one of this act [amending Workers' Compensation Law § 25] shall take effect January 1, 1997 and shall apply to all new claims filed after such date; section seventy-two of this act [amending Workers' Compensation Law § 25] shall take effect 60 days after it shall have become a law [became law Sept. 10, 1996; eff. Nov. 9, 1996] section seventy-three of this act [amending Workers' Compensation Law § 32] shall take effect 90 days after it shall have become a law [became law Sept. 10, 1996; eff. Dec. 9, 1996]; section seventy-nine of this act [amending Workers' Compensation Law § 142] shall take effect September 1, 1997 and shall apply to all claims filed on or after such date; provided, however, that nothing contained herein shall be deemed to affect the application, qualification, expiration, reversion or repeal of any provision of law amended by any section of this act and the provisions of this act

shall be applied or qualified or shall expire or revert or be deemed repealed in the same manner, to the same extent and on the same date as the case may be as otherwise provided by law."

Derivation

L.1913, c. 816, § 27; amended L.1914, c. 41; L.1916, c. 622; L.1917, c. 705.

SUPPLEMENTARY PRACTICE COMMENTARIES

2008 Electronic Update

by Martin Minkowitz

After July 1, 2007, an award for a permanent partial disability under § 15-3(w) WCL to be paid by a stock or mutual insurance company will be paid to the aggregate trust fund.

The ATF can enter into settlement (waiver) agreements on these awards with claimants (*see* § 32(a) WCL). After the stock or mutual insurance company has paid the present value of an award into the ATF, it cannot retrieve it. If the employer or its carrier later settles that claim pursuant to § 32 WCL, or even if the ATF makes such a settlement, it cannot request or receive a refund of any portion that was paid.

Upon the death of a parent, a child will be presumed to be continuing in an accredited educational institution and so would retain eligibility for benefits from age 18 to age 23. This is a rebuttable presumption, which assumes that the child of the deceased parent was already enrolled in such a school at the time of death.

Deposits into the ATF are credited at the industry standard rate of interest, as are the loss reserves which rate is established by the Superintendent of Insurance by Regulation. (See subs. 5 & 7.)

PRACTICE COMMENTARIES

2005 Main Volume

by Martin Minkowitz

After an award of compensation for a permanent disability (partial or total), or death benefits requiring periodic payments for at least 2 years has been awarded, the Board may require or permit the employer or its carrier to pay the present value of all future payments of the award into the Aggregate Trust Fund created by this section. These are discretionary cases as opposed to mandatory type.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

A mandatory case is where there is a loss of two hands; arms; feet; legs or eyes, or a combination of any two of these body parts, resulting in a permanent total disability or a loss of one of these body parts, resulting in a permanent partial disability, or death benefits covered by a stock or mutual insurance company. These must be paid at present value into the Aggregate Trust Fund, together with necessary administration costs. However, if the employer or carrier is entitled to a reimbursement from the Second Injury Fund (§ 15(8) WCL) the case becomes discretionary with the Board. The Aggregate Trust Fund does not pay any assessments to the Special Disability Fund created by § 15(8)(h) WCL, sometimes referred to as the Second Injury Fund or Second Injury Law. (See commentary to § 15 WCL.) The statute provided that "[n]o assessments shall be payable from the aggregate trust fund ... but such fund shall continue to be liable for all compensation that shall be payable under any award or order of the board, the commuted value of which has been paid into such fund." (See § 15(8)(h) WCL.) The Uninsured Employers Fund is exempt from being required to make payments into the Aggregate Trust Fund (see 26-a WCL).

Another exception to the mandatory case rule is where there is a potential third party action, the case will be held in abeyance until one year from the award or the disposition of the action if it is brought.

Payment into this Fund discharges, or relieves, the employer or carrier for the payment of the award. That liability thereafter is assumed by the Fund, unless the award is subsequently modified. The release from liability is only as to the amount paid in to cover the original award of compensation and not to any change of the award.

If payments are made to the Fund pursuant to a schedule award for a fixed number of weeks, and the injured employee dies before all payments are due and paid, the employer or carrier is entitled to a reimbursement for the unpaid portion, or to any overpayment resulting from a modified award.

The State Insurance Fund administers the Aggregate Trust Fund but must keep these monies separate from its own monies, although it can make investments as it does with its own money.

Legislation was enacted in 1976 and again in 1982 authorizing investments in obligations of designated public benefit corporations (§ 27-a WCL) and authorizing a transfer of funds to the general fund of the State (§ 27-c WCL).

PRACTICE COMMENTARIES CITED

2005 Main Volume

Klein v. Hurd Sales Company, Inc., 1988, 140 A.D.2d 745, 527 N.Y.S.2d 626.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

CROSS REFERENCES

Aggregate trust fund, applicability to volunteer firefighters, see Volunteer Firefighters' Benefit Law § 54.
Claims, determination, see Workers' Compensation Law § 20.
Costs and fees, see Workers' Compensation Law § 24.
Disability case, schedule, see Workers' Compensation Law § 15.
Judgments, rate of interest, see CPLR § 5004.
Non-residents, awards, see Workers' Compensation Law § 25-b.
Payment options, see Workers' Compensation Law § 25.
Payment procedures and limitations, see Workers' Compensation Law § 25-a.
Security for compensation, see Workers' Compensation Law § 50.
State insurance fund, see Workers' Compensation Law § 76 et seq.

NEW YORK CODES, RULES AND REGULATIONS

2005 Main Volume

Aggregate trust funds, see 12 NYCRR 393.1 et seq, set out in the Workers' Compensation Law Appendix [WORK COMP App 393.1 et seq.].
Computation of interest on awards, see 12 NYCRR 392.1 et seq., set out in the Workers' Compensation Law Appendix [WORK COMP App 392.1 et seq.].
Lump sum payments, see 12 NYCRR 390.1 et seq, set out in the Workers' Compensation Law Appendix [WORK COMP App 390.1 et seq.].
Third-party recovery, actuarial procedure, see 12 NYCRR 391.1 et seq., set out in the Workers' Compensation Law Appendix [WORK COMP App 391.1 et seq.].
Withdrawal of securities or cash; termination of surety bond, see 12 NYCRR 315.5, set out in the Workers' Compensation Law Appendix [WORK COMP App 315.5].

LIBRARY REFERENCES

2005 Main Volume

Workers' Compensation ☞ 1030.1, 1048 to 1057.5.
Westlaw Topic No. 413.
C.J.S. Workers' Compensation §§ 646 to 662, 1461, 1465, 1469 to 1473.

RESEARCH REFERENCES

2008 Electronic Update

ALR Library

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

25 ALR 2nd 1464, Remarriage Tables.

65 ALR 160, Construction and Effect of Provision of Workmen's Compensation Act as to "Waiver" or "Compromise" of Claims.

Encyclopedias

NY Jur. 2d, Workers' Compensation § 45, Requiring Payment Into Aggregate Trust Fund.

NY Jur. 2d, Workers' Compensation § 855, Payment by Employer.

NY Jur. 2d, Workers' Compensation § 939, Generally; Discretionary and Mandatory-Type Cases.

NY Jur. 2d, Workers' Compensation § 940, Generally; Discretionary and Mandatory-Type Cases--What Constitutes Mandatory-Type Cases.

NY Jur. 2d, Workers' Compensation § 941, Present Value in Third-Party Actions.

NY Jur. 2d, Workers' Compensation § 942, Effect of Payment Into Aggregate Trust Fund.

NY Jur. 2d, Workers' Compensation § 943, Computation of Present Value of Future Payments.

NY Jur. 2d, Workers' Compensation § 944, Effect of Delay Due to Appeal or Review.

NY Jur. 2d, Workers' Compensation § 945, Effect of Board's Change or Modification of Award.

NY Jur. 2d, Workers' Compensation § 946, Effect of Death from Injury Causing Permanent Disability.

NY Jur. 2d, Workers' Compensation § 960, Awards to Nonresidents; Nonresident Compensation Fund.

NY Jur. 2d, Workers' Compensation § 1053, Aggregate Trust Fund.

NY Jur. 2d, Workers' Compensation § 1084, Composition of Fund.

Treatises and Practice Aids

New York Practice Workers' Compensation § 6:3, Board Powers and Duties.

New York Practice Workers' Compensation § 9:8, Uninsured Employers Fund.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

New York Practice Workers' Compensation § 9:9, Aggregate Trust Fund.

New York Practice Workers' Compensation § 3:20, Advance Payment of Compensation.

New York Practice Workers' Compensation § 3:25, Nonresident Compensation Fund.

New York Practice Workers' Compensation § 9:11, Amortization of Gains or Losses.

New York Practice Workers' Compensation App 3-1, Rules.

New York Practice Workers' Compensation App 9-1, Rules.

New York Practice Workers' Compensation App 17-1, Rules.

NOTES OF DECISIONS

Additional awards or benefits 21
Awards held in abeyance 8
Awards to widows, computation of award 11
Carrier's lien, third-party recovery 19
Classification of disability 6
Commutation of awards to dependents 16
Computation of award 10-15
    Computation of award - In general 10
    Computation of award - Awards to widows 11
    Computation of award - Interest 12
    Computation of award - Medical expenses 13
    Computation of award - Present value 15
    Computation of award - Third-party actions 14
Construction and application 2
Date of award 7
Discretion of Board 5
Interest, computation of award 12
Life expectancy, computation of award 15
Medical expenses, computation of award 13
Notice 20
Present value, computation of award 15
Purpose of fund 4
Refund of payments 23
Remarriage of widow 17
Retroactive application 3
Security for payment 9

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Set-off <u>22</u>
Third-party recovery <u>18, 19</u>
   Third-party recovery - In general <u>18</u>
   Third-party recovery - Carrier's lien <u>19</u>
Third-party actions, computation of award <u>14</u>
Validity <u>1</u>

<u>1</u>. Validity

This section is constitutional when properly applied. <u>Pocoroba v. State Ins. Fund (3 Dept. 1938)</u> <u>253 A.D. 407, 3 N.Y.S.2d 83</u>.

This section is constitutional. <u>Brophy v. Prudential Ins. Co. of America (3 Dept. 1934) 241 A.D.</u> <u>306, 271 N.Y.S. 819</u>.

<u>2</u>. Construction and application

Under this section, death benefits for minors illegally employed for which employer alone is liable are not included. <u>Stachowiak v. O'Rourke Bakery Co., 1939, 280 N.Y. 338, 20 N.E.2d</u> <u>779</u>.

<u>3</u>. Retroactive application

Provisions of this section, requiring that future periodical death benefits be commuted and present value paid into aggregate trust fund was applicable where accident and death of employee forming basis of award occurred before enactment thereof. <u>Goerl v. Charles H.</u> <u>Darmstadt, Inc. (3 Dept. 1939) 257 A.D. 872, 11 N.Y.S.2d 1022</u>. Workers' Compensation ⌖ 64

An insurance carrier was improperly directed to pay certain sum into Aggregate Trust Fund under this section as amended by L.1935, c. 255, where each of sixteen decisions and notices of award having dates prior to July 1, 1935, indicated total permanent disability and employer and carrier conceded permanent total disability in 1934. <u>Crowley v. Arrowhead Mills (3 Dept. 1937)</u> <u>252 A.D. 299, 299 N.Y.S. 311</u>.

This section as amended by L.1922, c. 615, is applicable although the injury occurred prior thereto. <u>Pettinelli v. Degnon Contracting Co. (3 Dept. 1926) 218 A.D. 7, 217 N.Y.S. 679</u>.

<u>4</u>. Purpose of fund

Payment into the Aggregate Trust Fund discharges the employer or workers' compensation carrier from further liability to the claimant for the original award, unless it is subsequently modified, and the Fund assumes liability for payment to the claimant. <u>Mace v. Owl Wire &</u>

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Cable Co. (3 Dept. 2001) 284 A.D.2d 672, 727 N.Y.S.2d 487. Workers' Compensation ☞ 1048

The Aggregate Trust Fund was created to secure the obligations of workers' compensation insurers to policyholders and beneficiaries in case of insolvency. Mace v. Owl Wire & Cable Co. (3 Dept. 2001) 284 A.D.2d 672, 727 N.Y.S.2d 487. Workers' Compensation ☞ 1048

The Property and Liability Insurance Security Fund, the Aggregate Trust Fund, and the Stock Workmen's Compensation Security Fund were intended to secure the obligations of insurers to policyholders and beneficiaries in case of insolvency. American Ins. Ass'n v. Bouchard (1 Dept. 1984) 102 A.D.2d 775, 479 N.Y.S.2d 23, affirmed as modified on other grounds 64 N.Y.2d 379, 487 N.Y.S.2d 311, 476 N.E.2d 637, appeal dismissed, certiorari denied 106 S.Ct. 36, 474 U.S. 803, 88 L.Ed.2d 29. Insurance ☞ 1470

  5. Discretion of Board

Generally, effective date of change of compensation award, which has been paid into aggregate trust fund, is within discretion of the Board. Von Borstel v. Central Hudson Gas & Elec. Co. (3 Dept. 1955) 286 A.D. 175, 142 N.Y.S.2d 105, appeal and reargument denied 286 A.D. 977, 144 N.Y.S.2d 721. Workers' Compensation ☞ 1030.1(1)

  6. Classification of disability

As respects applicability of this section, it is not necessary that earlier awards in terms should have classified claimant's disability as permanent total, but it is enough if facts clearly disclose that awards were made upon that assumption. Crowley v. Arrowhead Mills (3 Dept. 1937) 252 A.D. 299, 299 N.Y.S. 311.

  7. Date of award

Where dependency award arising from death of employee was made in favor of his mother in 1940, and its value as of June 13, 1940 was computed at $4,907.54, and such amount was paid by insurance carrier into aggregate trust fund, and on August 21, 1951 carrier made application to reopen the claim to show absence of dependency, and the mother died on April 19, 1952, after receiving $5,353.63, and on May 1, 1952, a referee ruled that effective date of modification in respect of dependency was August 21, 1951, Board was justified in holding that effective date of modification was May 1, 1952, the date of the referee's decision, though on May 1, 1952 the value of award was zero. Von Borstel v. Central Hudson Gas & Elec. Co. (3 Dept. 1955) 286 A.D. 175, 142 N.Y.S.2d 105, appeal and reargument denied 286 A.D. 977, 144 N.Y.S.2d 721. Workers' Compensation ☞ 1030.1(1)

Where award in death case was made to widow by referee on December 22, 1949 with directions for payment to her in stated periodical amounts, and decision and award were filed with Board and notice was given on January 16, 1950, and the case was a mandatory type case and Board

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

was required to compute value of award and direct payment into aggregate trust fund, and on January 30, 1950 the Board directed such payment, the "date of award" was January 16, and hence widow's remarriage on March 3, 1950 did not occur within six weeks of "date of award" within rule relieving carrier of requirement to pay into aggregate trust fund if widow remarries between "date of award" and six weeks thereafter. Mallette v. Hubbs & Hastings Paper Co. (3 Dept. 1952) 279 A.D. 811, 109 N.Y.S.2d 336. Workers' Compensation ☞ 496; Workers' Compensation ☞ 1056

8. Awards held in abeyance

Under subdivision 2 of this section and § 29 permitting the payment of death benefits to be held in abeyance pending determination of a third-party action by or on behalf of an employee injured by negligence of another, alleged negligence of former attorneys for administratrix of deceased employee, who fell on city sidewalk, to file timely claim against city did not constitute an "injury" within subdivision 7 of § 2 so as to justify suspension of payment of commuted value of award into aggregate trust fund until termination of a pending action against the attorneys. Cresci v. Mike Krasilousky Trucking Co. (3 Dept. 1958) 5 A.D.2d 569, 172 N.Y.S.2d 322, appeal denied 4 N.Y.2d 677, 176 N.Y.S.2d 1025, 152 N.E.2d 255. Workers' Compensation ☞ 1048

9. Security for payment

In some cases an employer should be compelled, after a compensation loss had arisen, to segregate from his other assets sufficient money and permanently remove it from the risk of his business to carry the loss to maturity, but where an employer who had failed to take out insurance, offered a surety company bond to secure the payment of compensation in biweekly amounts, such a method of payment would be permitted by the board on the approval of the bond by its actuary and attorney. Op. State Industrial Commission, 1919, 20 St.Dept. 463.

10. Computation of award--In general

An "award" within meaning of subd. 4 of this section governing recomputation of payments into Aggregate Trust Fund on modification or change of original award involves fixing of liability, not the setting of amount of compensation. Monroe v. Town of Bolton Fire Dist. (3 Dept. 1971) 37 A.D.2d 880, 325 N.Y.S.2d 155, appeal denied 30 N.Y.2d 483, 330 N.Y.S.2d 1028, 281 N.E.2d 852. Workers' Compensation ☞ 1048

An employer and insurance carrier who assert error in computation of commuted award have burden of establishing affirmative of the issue. Voelker v. Jos. Rosenberg's Sons (3 Dept. 1937) 251 A.D. 50, 296 N.Y.S. 380, affirmed 275 N.Y. 565, 11 N.E.2d 755. Workers' Compensation ☞ 1028

The power of the Board to commute periodical payments to one or more lump sum payments was only intended to be exercised in particular and exceptional instances where justice would be

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

promoted by a departure from the general rule, hence, the Board had no power to pass a rule applicable to all cases by which mutual compensation insurance companies and all self-insurers were required to pay into the state fund the present value of future installments under awards in death cases. Adams v. New York O. & W. Ry. Co. (3 Dept. 1916) 175 A.D. 714, 161 N.Y.S. 919, affirmed 220 N.Y. 579, 114 N.E. 1046.

11. ---- Awards to widows, computation of award

Board, upon rescinding death benefits award to purported widow and minor child, could properly direct aggregate trust fund to refund deposit to employer and carrier and direct employer and carrier to make certain payments to decedent's rightful dependents pending outcome of third-party action, rather than permitting them to pay present value of new awards, on premise that present value could not be established pending third-party action. Johnson v. O. C. Buck Expositions (3 Dept. 1964) 22 A.D.2d 993, 254 N.Y.S.2d 885. Workers' Compensation ☞ 1013; Workers' Compensation ☞ 1044

Although section as amended in 1917 provided a method for the estimation of the present value of awards of future payments to widows, and the state industrial commission became empowered to require the commutation of such awards, this section could not affect a prior agreement of the employer with the commission under which the employer was permitted to carry its own risk of paying compensation under § 50. State Indus. Com'n v. Yonkers R. Co. (3 Dept. 1919) 186 A.D. 192, 173 N.Y.S. 858.

12. ---- Interest, computation of award

Employer and carrier were not entitled to interest from aggregate trust fund, there being no statutory provision, where fund was directed to refund deposit of present value of award. Johnson v. O. C. Buck Expositions (3 Dept. 1964) 22 A.D.2d 993, 254 N.Y.S.2d 885. Workers' Compensation ☞ 1044

Where commuted amount of compensation award of death benefits is ordered to be immediately paid into special fund and installments of compensation are not due until future date, amount of interest which would accrue between date of payment and due date of compensation installments should be deducted in computing computed amount. Voelker v. Jos. Rosenberg's Sons (3 Dept. 1937) 251 A.D. 50, 296 N.Y.S. 380, affirmed 275 N.Y. 565, 11 N.E.2d 755. Workers' Compensation ☞ 1014

13. ---- Medical expenses, computation of award

Medical and surgical expenses are not included in computing amounts payable into aggregate trust fund as result of awards for total permanent disability resulting from loss of both hands, both arms, both feet, both legs, or both eyes. Friedman v. Simon (3 Dept. 1943) 267 A.D. 17, 45 N.Y.S.2d 89, affirmed 293 N.Y. 720, 56 N.E.2d 732. Workers' Compensation ☞ 961

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

14. ---- Third-party actions, computation of award

Requirement of subd. 2 of this section that where an employee is injured or killed by negligence or wrong of another not in the same employ the computation of present value of payments into Aggregate Trust Fund shall be held in abeyance until termination of action against a third party does not require that such computations await commencement of such an action. Monroe v. Town of Bolton Fire Dist. (3 Dept. 1971) 37 A.D.2d 880, 325 N.Y.S.2d 155, appeal denied 30 N.Y.2d 483, 330 N.Y.S.2d 1028, 281 N.E.2d 852. Workers' Compensation ☞ 1048

15. ---- Present value, computation of award

Present value of an award to be paid into the Aggregate Trust Fund was to be calculated based upon the assumed interest rate in effect on the date of the original injury or accident, not at higher assumed interest rate in effect at the time of decedent's subsequent causally-related death. Mace v. Owl Wire & Cable Co. (3 Dept. 2001) 284 A.D.2d 672, 727 N.Y.S.2d 487. Workers' Compensation ☞ 1048

Employer and its insurer were not entitled to hearing to develop record concerning present value of claimant's workers' compensation award to be deposited in Aggregate Trust Fund. Murtaugh v. P & D GMC Sales Inc. (3 Dept. 1996) 231 A.D.2d 762, 646 N.Y.S.2d 914. Workers' Compensation ☞ 1048

Where Board directed payment by insurance carrier of "present value" of deficiency compensation of aggregate trust fund, Board's determination was one which settled in present events for future and did not depend on how those events occurred, and liability of insurance carrier which was fixed by computation and matured on direction to pay was not affected by subsequent death or remarriage before third-party settlement credit was used up. Marconi v. Marshall (3 Dept. 1954) 284 A.D. 728, 134 N.Y.S.2d 486. Workers' Compensation ☞ 1030.1(1)

Where double compensation was awarded under this section, inclusion of doubled award in the ascertainment of the present value of the balance of the unpaid awards and direction as to payment of such doubled compensation into the aggregate trust fund was unauthorized. Haab v. Bauman (3 Dept. 1951) 278 A.D. 990, 105 N.Y.S.2d 749, affirmed 304 N.Y. 633, 107 N.E.2d 162. Workers' Compensation ☞ 1056

This section provides that the Board shall compute the present value of awards for total permanent disability resulting from loss of both hands, both arms, both feet, both legs, or both eyes, which is to be paid into the aggregate trust fund. Friedman v. Simon (3 Dept. 1943) 267 A.D. 17, 45 N.Y.S.2d 89, affirmed 293 N.Y. 720, 56 N.E.2d 732. Workers' Compensation ☞ 961

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Where a claimant is insane and confined to an asylum it is error to determine the amount to be paid into the state funds on the basis of life expectancy of a normal person, but his insanity should be taken into consideration. Pettinelli v. Degnon Contracting Co. (3 Dept. 1926) 218 A.D. 7, 217 N.Y.S. 679.

16. Commutation of awards to dependents

Until this chapter is amended by applying some appropriate table of averages to the ascertainment of probable dependency, there can be no commutation of future payments for the support of dependent parents, whether non-resident or resident, hence, commutation of an award made to the alien dependent father of a workman, killed in the course of his employment, determined upon the basis of his probable survivorship, was unwarranted; compensation to a parent is confined by §§ 16 and 17 to the term of his dependency, and, where there has been no attempt to determine its probable period, a gross award must fail for lack of data to sustain it. Wagner v. Wilson & Co., 1929, 251 N.Y. 67, 167 N.E. 174.

The Board has power to order that value of compensation awarded deceased employee's dependent parents be paid them in lump sum by State Insurance Fund from aggregate trust fund, into which it was paid by insurance carrier, irrespective of objection to such procedure by insurance fund. Pocoroba v. State Ins. Fund (3 Dept. 1938) 253 A.D. 407, 3 N.Y.S.2d 83. Workers' Compensation ⚼ 1009

There can be no commutation of future payments for the support of dependent parents under this section, and therefore the Board had no authority to require the deposit of a lump sum for future payments to be made to the mother of a deceased employee, as periodical awards can only be made to her during period of actual dependency, and where the mother was not dependent during the period when she was using moneys received by the father under the settlement of a third party action, awards covering such period were prejudicial to both the insurance carrier and the employer. Russell v. 231 Lexington Ave. Corp. (3 Dept. 1932) 236 A.D. 177, 258 N.Y.S. 392.

It was error for the Board to direct payment to the State Insurance Fund under this section of the net present value of future instalments of compensation awarded to a dependent mother, as the commutation provided for in this section was intended to permit the commutation of an award payable to a widow during widowhood, and to fix a basis therefor, and did not apply to award during dependency, and subdivision 4 of § 16 provided that an award to a dependent mother should be payable only during her dependency. Bailey v. Columbian Rope Co. (3 Dept. 1918) 184 A.D. 718, 172 N.Y.S. 566.

17. Remarriage of widow

Under this section governing actuarial procedure in aggregate trust fund cases and § 77 of the rules of the board providing that the carrier shall not be required to pay the commuted amount if the widow remarries within six weeks of the award, remarriage of widow on April 8 was not

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

within six weeks of the award of February 14 which carried the direction for the payment of the commuted amount, and therefore the obligation of the carrier to pay that amount was not affected by the marriage. Hughes v. Thos. Roulston, Inc. (3 Dept. 1952) 280 A.D. 361, 113 N.Y.S.2d 404. Workers' Compensation ☞ 1056

Where order commuting award to widow and minor child was made on July 20, 1938, to be effective as of August 29, 1938, and payment pursuant thereto was not made until September 17, 1938, widow's remarriage on September 7, 1938, without knowledge of Board or employer, would not be considered as a factor in determining amount to be paid into aggregate trust fund, since status of parties was fixed as of July 20, 1938, or at least as of August 29, 1938. Goldstein v. Lackawanna Steel Const. Corp. (3 Dept. 1941) 261 A.D. 856, 24 N.Y.S.2d 806, appeal denied 261 A.D. 1010, 26 N.Y.S.2d 511. Workers' Compensation ☞ 496

Where a compensation award was granted to deceased employee's widow, the fact that after the award was made, the widow remarried, did not affect the status of the award, which became fixed at the time the award was made. Gibson v. Policastro (3 Dept. 1938) 255 A.D. 731, 6 N.Y.S.2d 818, appeal denied 279 N.Y. 811, 18 N.E.2d 699. Workers' Compensation ☞ 496

The Board properly refused to rescind a commuted award of benefits for the death of employee who left a widow and two children, where the award was correct at the time it was made, notwithstanding that widow remarried pending an appeal in another case which it was stipulated by the attorneys should be determinative of the issues involved in the instant case. Thorgensen v. Movietonews (3 Dept. 1938) 255 A.D. 728, 6 N.Y.S.2d 753, appeal and reargument denied 255 A.D. 901, 7 N.Y.S.2d 1013, appeal denied 279 N.Y. 812, 18 N.E.2d 700. Workers' Compensation ☞ 1027

18. Third-party recovery--In general

Where employer failed to make payments into state aggregate trust fund as directed by compensation award, and was convicted for failing to carry compensation insurance, and hearing was had in third party action before referee in compensation, and employer was unable to deposit amount of award with state fund or to secure its payment and refused to consent to settlement, and Surrogate's Court entered order providing for settlement, and settlement was made without consent of employer, decision of Board reversing referee and rescinding award to claimant would be affirmed. Frey v. Reinike (3 Dept. 1941) 263 A.D. 769, 30 N.Y.S.2d 915. Workers' Compensation ☞ 1944

Where widow of employee elected to sue third party and recovered by virtue of settlement with consent of employer and self-insurer, if Board directed payment by employer into aggregate trust fund of present value of deficiency compensation payable to widow, in absence of statutory authority to include in any commutation of present value an amount to provide for payments into special funds by the aggregate trust fund, the Board was without authority to direct the aggregate trust fund to include such factor in their computation. Kennedy v. Neo Gravure Printing Co. (3

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Dept. 1941) 262 A.D. 616, 30 N.Y.S.2d 785. Workers' Compensation ☞ 1056

Where widow, claiming compensation for her husband's death, instituted third party action, against railroad company for damages, this section required immediate commutation of weekly death benefits awarded into lump sum and payment thereof into aggregate trust fund. Ferris v. Fraternal Sales Co. (3 Dept. 1939) 257 A.D. 1086, 14 N.Y.S.2d 625, appeal and reargument denied 258 A.D. 819, 15 N.Y.S.2d 816. Workers' Compensation ☞ 1056

Where compensation claimant, widow of employee, settled claim against person other than employer for only part of amount of compensation to which she was entitled, Board had authority to commute award for remainder of such amount and to order payment to award into special fund. Voelker v. Jos. Rosenberg's Sons (3 Dept. 1937) 251 A.D. 50, 296 N.Y.S. 380, affirmed 275 N.Y. 565, 11 N.E.2d 755. Workers' Compensation ☞ 1009

19. ---- Carrier's lien, third-party recovery

Where widow of deceased employee accepted compensation and instituted a third-party action against the tort-feasors and obtained a substantial judgment which was thereafter settled, compensation carrier had no lien against the proceeds of the settlement for the amount to cover possible future payments to her. In re Campanelli's Estate, 1960, 8 N.Y.2d 173, 203 N.Y.S.2d 80, 168 N.E.2d 525. Workers' Compensation ☞ 2252

20. Notice

Under this section requiring that if an award of death benefits is affirmed on appeal, actuarial computation of present amount payable to Aggregate Trust Fund shall be made as of the effective date of the original award, the phrase "effective date of the original award" was the date of the notice of the decision, which established insurer's liability to pay death benefits to claimant, not the date of notice to insurer of the duty to pay present value plus interest. Saur v. M & M Transp. (3 Dept. 1980) 77 A.D.2d 753, 431 N.Y.S.2d 183. Workers' Compensation ☞ 1056

A non-insured employer is entitled to notice of contemplated computation of the present value of an award and payment thereof into the aggregate trust fund created and held under this section. Brophy v. Prudential Ins. Co. of America (3 Dept. 1934) 241 A.D. 306, 271 N.Y.S. 819.

21. Additional awards or benefits

Aggregate Trust Fund, and not employer's workers' compensation insurer, was responsible for the payment of the additional benefits to claimant's children beyond the age of 18, where total weekly award of $340 was to be apportioned among the widow and two dependent children, such that deposit to be paid into Fund was the same regardless of whether the children were to attend college beyond age 18. Ladley v. Akzo Salt Inc. (3 Dept. 2000) 270 A.D.2d 592, 704

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

N.Y.S.2d 342. Workers' Compensation ☞ 1048

Employer's and compensation carrier's liability for payment of continuing death benefits to handicapped dependent child was not discharged by original award deposited into Aggregate Trust Fund where original award was modified by subsequent determination that additional compensation was due. Beaty v. Charron (3 Dept. 1990) 160 A.D.2d 1209, 555 N.Y.S.2d 469. Workers' Compensation ☞ 1048

Employer's and compensation carrier's liability for payment of continuing death benefits to handicapped child was not discharged by original award and deposit into Aggregate Trust Fund, where actuarial computation for original award did not account for child's disability. Klein v. Hurd Sales Co., Inc. (3 Dept. 1988) 140 A.D.2d 745, 527 N.Y.S.2d 626. Workers' Compensation ☞ 422

Where additional awards of compensation were made on the basis that, after the case was closed, claimant sustained further disability and required additional eye surgery, the additional awards were not covered by the original award, and the Board properly found that liability for the additional claim rested with the insurance carrier, since the carrier's prior payment into the Aggregate Trust Fund released it from liability only as to that amount paid in. Carpenter v. Jim's Delicatessen, Inc. (3 Dept. 1979) 72 A.D.2d 643, 421 N.Y.S.2d 135, appeal denied 48 N.Y.2d 611, 425 N.Y.S.2d 1027, 401 N.E.2d 919. Workers' Compensation ☞ 1030.1(1)

Release of liability, as provided in provision of this section stating that the employer or carrier, upon payment into the Aggregate Trust Fund of an amount equal to the present value of all unpaid compensation, "shall be discharged from any further liability for payment of such * * * compensation, and payment of the same * * * shall be assumed by the fund," extends only to liability covered by the original award and the matters therein concluded; and if a new claim is made concerning a condition not covered by original award, any new award is properly made against the carrier. Carpenter v. Jim's Delicatessen, Inc. (3 Dept. 1979) 72 A.D.2d 643, 421 N.Y.S.2d 135, appeal denied 48 N.Y.2d 611, 425 N.Y.S.2d 1027, 401 N.E.2d 919. Workers' Compensation ☞ 1138

Where, following birth of posthumous child and remarriage of widow, child was awarded maximum death benefits, widow was granted remarriage award and schedule of weekly payments to other children was adjusted, employer and its compensation carrier were not entitled to a computation de novo, since additional award to posthumous child was merely an award to another claimant and was not a modification envisioned within meaning of subd. 4 of this section governing recomputation and effect of other awards was not to change or modify rights of beneficiaries of prior award, insofar as their rights to receive death benefits were concerned, since it merely resulted in a change of amounts payable. Monroe v. Town of Bolton Fire Dist. (3 Dept. 1971) 37 A.D.2d 880, 325 N.Y.S.2d 155, appeal denied 30 N.Y.2d 483, 330 N.Y.S.2d 1028, 281 N.E.2d 852. Workers' Compensation ☞ 1048

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

22. Set-off

Claims against insurer under workmen's compensation policies for payments made by insured from date of insurer's liquidation to trial, pursuant to original award of Board which antedated insurer's liquidation, and pursuant to subsequent lump-sum award, could be offset against insurer's claim for premiums due, though lump-sum award was not entered until after insurer's liquidation. Pink v. Isle Theatrical Corporation, 1936, 271 N.Y. 390, 3 N.E.2d 521, motion denied 272 N.Y. 500, 4 N.E.2d 251. Insurance ☞ 1373

Where a portion of proceeds of employee's settlement, without insurance carrier's consent, of third-party cause of action predicated upon a prior accident was used to repay workmen's compensation received, and another portion was traceable to possession of employee's widow and child subsequent to a second accident which was consequential to the first, employer and insurance carrier were not entitled to have award of death benefits credited with unexpended proceeds of the settlement. Cresci v. Mike Krasilousky Trucking Co. (3 Dept. 1958) 5 A.D.2d 569, 172 N.Y.S.2d 322, appeal denied 4 N.Y.2d 677, 176 N.Y.S.2d 1025, 152 N.E.2d 255. Workers' Compensation ☞ 1108

23. Refund of payments

Where dependency award arising from death of employee was made in favor of his mother in 1940, and its value as of June 13, 1940 was computed at $4,907.54, and such amount was paid by insurance carrier into aggregate trust fund, and on August 21, 1951 carrier made application to reopen the claim to show absence of dependency, fact that $5,353.63 had been paid to the mother up to time of her death on April 19, 1952 would not defeat right of carrier to refund. Von Borstel v. Central Hudson Gas & Elec. Co. (3 Dept. 1955) 286 A.D. 175, 142 N.Y.S.2d 105, appeal and reargument denied 286 A.D. 977, 144 N.Y.S.2d 721. Workers' Compensation ☞ 1030.1(1)

Where insurer paid "present value" of deficiency compensation into aggregate trust fund to be used after third-party settlement credit was exhausted, insurer was discharged from any further risk and liability for payment and was not entitled to refund where widow remarried prior to time trust fund became liable for deficiency compensation. Marconi v. Marshall (3 Dept. 1954) 284 A.D. 728, 134 N.Y.S.2d 486. Workers' Compensation ☞ 1030.1(1)

Where modification of original award of compensation to claimant for partial dependency resulted from claimant's remarriage, and not from termination of dependency, insurance carrier was not entitled to refund from aggregate trust fund. Duncan v. Odora Co. (3 Dept. 1951) 278 A.D. 992, 105 N.Y.S.2d 849, affirmed 303 N.Y. 959, 106 N.E.2d 53. Workers' Compensation ☞ 1057

Where lump-sum award to deceased workman's mother was paid into aggregate trust fund, but Board subsequently found that mother had ceased to be dependent because of increase in earning

power and payments were suspended, employer and insurance carrier could recover difference between amounts due under original award and under modified award, under this section applicable in event of change of award for any reason other than subsequent death or remarriage. Szuba v. George Laub's Sons (3 Dept. 1946) 271 A.D. 396, 66 N.Y.S.2d 486, affirmed 297 N.Y. 571, 74 N.E.2d 551. Workers' Compensation ⟷ 1057

McKinney's Workers' Compensation Law § 27, NY WORK COMP § 27

Current through L.2008, chapters 1 to 288.

Copr (c) 2008 Thomson Reuters/West

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 3

▷                                    **Effective: March 13, 2007**

Mckinney's Consolidated Laws of New York Annotated <u>Currentness</u>
  Workers' Compensation Law <u>(Refs & Annos)</u>
    Chapter 67. Of the Consolidated Laws
      ▾  Article 2. Compensation <u>(Refs & Annos)</u>
        →  **§ 32. Waiver agreements**

No agreement or release except as otherwise provided in this chapter by an employee to waive his right to compensation under this chapter shall be valid.

(a) Whenever a claim has been filed, the claimant or the deceased claimant's dependents and the employer, its carrier, the special disability fund as set forth in subdivision (e) of this section, or the aggregate trust fund, if the board has directed that the present value of any unpaid compensation be paid into such fund pursuant to <u>section twenty-seven</u> of this article, may enter into an agreement settling upon and determining the compensation and other benefits due to the claimant or his or her dependents. The agreement shall not bind the parties to it, unless it is approved by the board. Such agreements, when so approved, notwithstanding any other provisions, shall be final and conclusive upon the claimant, the claimant's dependents, the employer, its insurance carrier, the aggregate trust fund and the special disability fund. Every insurance carrier as defined in <u>subdivision twelve of section two</u> of this chapter shall offer each claimant the opportunity to enter into an agreement settling upon and determining the compensation and other benefits due, in the case of disability, within two years after the date the claim was indexed by the board or six months after the claimant is classified with a permanent disability, whichever is later, and in the case of death, within six months after entitlement to benefits is established for all beneficiaries. The offer made by the insurance carrier shall clearly state what portion of the offer is (i) for compensation as defined in <u>subdivision six of section two</u> of this chapter, if any; (ii) for medical benefits, including prescription medicine, if any; and (iii) for the fee of the attorney or licensed representative, if any. If a claimant is represented by an attorney or licensed representative, the insurance carrier shall present such offer to such legal representative. If a claimant is not represented by an attorney or a licensed representative, the insurance carrier shall, in addition to the offer to enter into a settlement agreement, provide the claimant with a statement of his or her rights, obligations and potential liability if the offer is accepted.

(b) The agreement shall be approved by the board in a decision duly filed and served unless:

(1) the board finds the proposed agreement unfair, unconscionable, or improper as a matter of

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

law;

(2) the board finds that the proposed agreement is the result of an intentional misrepresentation of material fact; or,

(3) within ten days of submitting the agreement one of the interested parties requests that the board disapprove the agreement.

(c) A decision duly filed and served approving an agreement submitted to the board shall not be subject to review pursuant to <u>section twenty-three</u> of this article. However, a decision duly filed and served disapproving an agreement submitted to the board is subject to review pursuant to <u>section twenty-three</u> of this article. If the board disapproves of an agreement it shall duly file and serve a notice of decision setting aside the proposed agreement.

(d) An agreement for compensation and other benefits covered by this chapter may be modified at anytime  [FN1] by agreement of all interested parties provided it is approved by the board.

(e) The chair shall establish an office under his or her supervision to be known as the "waiver agreement management office," to negotiate and seek board approval for waiver agreements on behalf of the special disability fund. The office shall operate in accordance with guidelines or directives that the chair may issue, as approved by the special disability fund advisory committee, or in the absence of such guidelines or directives, using such discounting factors as the office determines are in the financial interest of the special disability fund. The waiver agreement management office on behalf of the special disability fund may enter into a waiver agreement with a claimant only when the special disability fund has been found liable by the board to reimburse the claimant's employer, insurance carrier or the state insurance fund. Notwithstanding any other provisions of law, no consultation or approval of any employer, insurance carrier, self-insurer, the state insurance fund, or the special funds conservation committee shall be required before such office may enter into any waiver agreement, or before the board may approve such waiver agreement. The chair may, in his or her discretion, and as approved by the special disability fund advisory committee, terminate the operation of the waiver agreement management office, if he or she believes it no longer serves the interest of the special disability fund.

(f) A claimant's executed waiver agreement with the waiver agreement management office shall be final and conclusive upon the claimant, the claimant's dependents, and any employer, self-insurer, insurance carrier, the state insurance fund and the special disability fund as to all claims by the claimant, and as to any claim or request for reimbursement from the special disability fund for payments not yet made. The waiver agreement management office shall give written notice to any employer, insurance carrier or the state insurance fund entitled to receive reimbursement from the special disability fund in regard to any claimant, of any waiver agreement signed by the office with such claimant within fourteen days of submitting the waiver agreement to the board for approval.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

(g) Nothing in this section shall prohibit any insurance carrier, employer, the state insurance fund, or the waiver agreement management office on behalf of the special disability fund from jointly entering into a waiver agreement with a claimant, by which the joint signatories may apportion responsibility for making any payments required under the agreement. The agreement shall set forth the obligations of the signatories to make such payments, and shall identify, as to each obligation thereunder: (1) the signatory that has the legal obligation to carry out that provision, or (2) that all signatories are jointly and severally liable under the provision.

(h) Neither the establishment of the waiver agreement management office, nor any action taken by that office, shall serve as grounds for the board's disapproval of any waiver agreement to which the office is not a party, or otherwise permit any party to withdraw from such a waiver agreement.

(i)(1) The waiver agreement management office may contract with any third party to manage, administer, or settle claims on its behalf, so long as (A) such contract is approved by the special disability fund advisory committee and (B) such third party shall agree to be subject to any guidelines or directives as the chair may issue.

(2) The chair, with approval of the special disability fund advisory committee and on such terms as the committee deems appropriate, shall have discretion to procure one or more private entities to assume the liability for and management, administration or settlement of all or a portion of the claims in the special disability fund. Any such procurement shall be conducted in accordance with state finance law, except as otherwise set forth below. The chair shall not award any contract that has not been approved by the special disability fund advisory committee. Notwithstanding the foregoing, the chair of the workers' compensation board may, if approved by the special disability fund advisory committee, and on such terms as the committee deems appropriate:

(A) waive any informality in a bid, and either reject all bids and again advertise for bids, or interview at least two responsible qualified bidders and negotiate and enter into a contract with one or more of such bidders; or

(B) group claims to be assigned, in whole or in part, based on the insurance carrier, self-insured employer or state insurance fund that is receiving or will receive reimbursement on those claims from the second disability fund. Such grouping shall be permissible notwithstanding that any insurance carrier may have greater access to information, or may be able to provide better terms, in regard to claims so grouped.

(3) Any such contract shall expressly provide that the special disability fund is no longer liable for the claims covered by the contract, and require security of either cash, an indemnity policy, or such security as is otherwise sufficient to cover any losses incurred as a result of the failure or default of the entity or entities awarded any such contract, including as a result of the insolvency

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

of any such entity. The chair may waive all or part of such security, and may impose other reasonable methods of insuring payment, upon approval of the special disability fund advisory committee.

(4) Notwithstanding any other provision of this article, the waiver agreement management office may request in writing any information relevant to its entry into or management of waiver agreements from (A) any insurance carrier, employer, or the state insurance fund, if that entity has submitted a claim for reimbursement from the special disability fund as to the claimant to whom the information relates; or (B) the special funds conservation committee. The party to whom the request is made shall provide the requested information within fourteen days of the request, unless before that date it files an objection with the board to any information which is subject to a recognized privilege or whose production is otherwise barred by law. The objecting party shall provide the requested information within five business days of the board's rejection of its objection.

(5) No carrier, self-insured employer or the state insurance fund shall assume the liability for, or management, administration or settlement of any claims under this section on which it holds reserves, beyond such reserves as are permitted by regulation of the superintendent of insurance for purposes of this provision. No carrier may assume liability for any claims in the special disability fund under this paragraph unless the carrier maintains, on a stand alone basis, separate from its parent or any affiliated entities, an interactive financial strength rating from a nationally recognized statistical rating organization that is considered secure or deemed acceptable by the special disability fund advisory committee.

(6) The director of the budget shall notify in writing the chairs of the senate finance committee and the assembly ways and means committee of any plans to transfer all or a portion of the portfolio of claims determined to be eligible for reimbursement from the special disability fund or to contract with any party to take responsibility in whole or in part for the administration of a material portion of the claims, including the procurement process to be used to select parties involved in such transfer or contract, not less than forty-five days prior to the commencement of such process. At any time borrowing is anticipated to settle claims, the chief executive officer of the dormitory authority of the state of New York and the director of the budget shall provide a report to the chairs of the senate finance committee and the assembly ways and means committee on a planned bond sale of the authority and such report shall include, but not be limited to: (A) the maximum amount of bonds expected to be sold by the authority in connection with a sale agreement; (B) the expected maximum interest rate and maturity date of such bonds; (C) the expected amount of the bonds that will be fixed and/or variable interest rate; (D) the estimated costs of issuance; (E) the estimated level or levels of reserve fund or funds, if any; (F) the estimated cost of bond issuance, if any; (G) the anticipated use or uses of the proceeds; (H) the maximum expected net proceeds that will be paid to the state as a result of the issuance of such bonds; and (I) the process to be used to select parties to the transaction. Any such expectations and estimates in the report shall not be deemed a substantive limitation on the authority of the dormitory authority of the state of New York.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

CREDIT(S)

(L.1922, c. 615; amended L.1996, c. 635, § 73; L.2007, c. 6, §§ 73, 74, eff. March 13, 2007.)

[FN1] So in original. Probably should be "any time".

HISTORICAL AND STATUTORY NOTES

2008 Electronic Update

L.2007, c. 6 legislation

Subd. (a). L.2007, c. 6, § 73, rewrote subd. (a), which had read:

"Whenever a claim has been filed, the claimant or the deceased claimant's dependents and the employer or his carrier may enter into an agreement settling upon and determining the compensation and other benefits due to the claimant or their dependents. The agreement shall not bind the parties to it, unless it is approved by the board. Such agreements, when so approved, notwithstanding any other provisions, shall be final and conclusive upon the claimant, the claimants dependents, the employer and the insurance carrier."

Subd. (e). L.2007, c. 6, § 74, added subd. (e).

Subd. (f). L.2007, c. 6, § 74, added subd. (f).

Subd. (g). L.2007, c. 6, § 74, added subd. (g).

Subd. (h). L.2007, c. 6, § 74, added subd. (h).

Subd. (i). L.2007, c. 6, § 74, added subd. (i).

2005 Main Volume

L.1996, c. 635 legislation

Section head. L.1996, c. 635, § 73, substituted "Waiver agreements" for "Waiver agreements void".

Opening par. L.1996, c. 635, § 73, included reference to a release.

Subd. (a). L.1996, c. 635, § 73, added subd. (a).

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Subd. (b). L.1996, c. 635, § 73, added subd. (b).

Subd. (c). L.1996, c. 635, § 73, added subd. (c).

Subd. (d). L.1996, c. 635, § 73, added subd. (d).

L.1996, c. 635, § 90, provides:

"This act [L.1996, c. 635, which in addition to the provisions listed below, added General Obligations Law Art. 18-A, Insurance Law §§ 407-a, 409, Penal Law § 176.35, and Workers' Compensation Law §§ 21-a, 114, 114-a, 114-b, 136; amended CPLR 1401, 1601, 1602, 1603, Insurance Law §§ 304, 402, 405, 406, 2313, Labor Law § 591, Penal Law §§ 176.00, 176.05, and Workers' Compensation Law §§ 11, 13, 13-a, 13-d, 13-k, 13-l, 13-m, 23, 27, 29, 76, 77, 87, 93, 94, 96, 125, 132, 402; repealed Insurance Law § 408, and Workers' Compensation Law §§ 43, 86-b, 89-a, 92-a, 95-a, 101, 102, 103, 104, 105-a, 114; enacted provisions set out as notes under Workers' Compensation Law § 20, Insurance Law § 2313, and Workers' Compensation Law §§ 3, 77, 88, 134; amended provisions set out as notes under Executive Law § 835 and Workers' Compensation Law § 126; and repealed provisions set out as a note under Penal Law § 176.00] shall take effect immediately [Sept. 10, 1996]; sections ten and eleven of this act [adding Workers' Compensation Law §§ 134, 135] shall take effect 120 days after it shall have become a law [became law Sept. 10, 1996; eff. Jan. 8, 1997]; section twenty-five of this act [amending Workers' Compensation Law § 134] shall take effect on the sixtieth day after it shall have become a law [became law Sept. 10, 1996; eff. Nov. 9, 1996]; that the amendments to section 126 of the workers' compensation law made by this act [L.1996, c. 635, §§ 30 to 34] shall be repealed on the same date as provided for in chapter 729 of the laws of 1993, as amended [Dec. 31, 2000]; section thirty-six of this act [adding Workers' Compensation Law Art. 10-a] shall take effect January 1, 1997, provided, however, that any rules and regulations necessary for the timely implementation of these provisions shall be promulgated before such date; section thirty-nine of this act [amending Workers' Compensation Law § 15] shall take effect immediately [Sept. 10, 1996] except that the provision relating to paragraph (h) of subdivision 8 of section 15 of the workers' compensation law shall take effect January 1, 1997; sections forty-nine through fifty-one of this act [amending Workers' Compensation Law §§ 82, 88 and State Finance Law § 4, respectively] shall take effect immediately [Sept. 10, 1996] and shall be deemed to have been in full force and effect on and after April 1, 1996, but shall not apply to any and all appropriations or expenditures enacted for the fiscal year ending March 31, 1995; moreover, any appropriations made for the fiscal year commencing April 1, 1996 shall immediately cease to have force and effect; section fifty-seven of this act [amending this section] shall take effect 180 days after it shall have become a law [became law Sept. 10, 1996; eff. Mar. 10, 1997] and shall apply to all claims pending on or after such date; section fifty-eight of this act [amending Workers' Compensation Law § 110] shall take effect 90 days after it shall have become a law [became law Sept. 10, 1996; eff. Dec. 9, 1996]; section sixty of this act [amending Workers' Compensation Law § 25] shall apply to discrimination claims filed on or after the date on which it shall have become a law [Sept. 10, 1996]; section seventy of this act [amending Workers' Compensation

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Law § 25] shall take effect 120 days after it shall have become a law [became law Sept. 10, 1996; eff. Jan. 8, 1997]; section seventy-one of this act [amending Workers' Compensation Law § 25] shall take effect January 1, 1997 and shall apply to all new claims filed after such date; section seventy-two of this act [amending Workers' Compensation Law § 25] shall take effect 60 days after it shall have become a law [became law Sept. 10, 1996; eff. Nov. 9, 1996] section seventy-three of this act [amending Workers' Compensation Law § 32] shall take effect 90 days after it shall have become a law [became law Sept. 10, 1996; eff. Dec. 9, 1996]; section seventy-nine of this act [amending Workers' Compensation Law § 142] shall take effect September 1, 1997 and shall apply to all claims filed on or after such date; provided, however, that nothing contained herein shall be deemed to affect the application, qualification, expiration, reversion or repeal of any provision of law amended by any section of this act and the provisions of this act shall be applied or qualified or shall expire or revert or be deemed repealed in the same manner, to the same extent and on the same date as the case may be as otherwise provided by law."

Derivation

Section derived from L.1913, c. 816, § 32, amended L.1914, c. 41.

PRACTICE COMMENTARIES

2005 Main Volume

by Martin Minkowitz

An employee may not waive his or her right to Workers' Compensation benefits. However, there are two instances where the statute permits a settlement by the parties. The theory for preventing an injured employee from waiving his or her right to compensation benefits is that such employee should be protected against his or her own improvidence or folly. (See *Surace v. Danna*, 1928, 248 N.Y. 18, 161 N.E. 315.) It may also be to protect employees from employers who might seek to intimidate or coerce their employees into foregoing their right to benefits under threat of losing their job.

If the right to compensation has been established and other qualifications are met pursuant to § 15 subd. 5-b WCL, the employer and claimant may request the Board to approve a lump sum settlement of the claim which will close the file subject to being reopened only in special circumstances. (See Practice Commentary to § 15.)

The statute also permits, and perhaps encourages, the claimant and the employer to join in an agreement, to settle the claim for workers' compensation benefits. The parties can settle all of the issues relating to the claim. A claimant who wishes to enter into a waiver agreement with his or her employer, or its carrier on its behalf, to make a settlement of all workers' compensation benefits must seek Board approval. Any agreement reached between the parties must be submitted to the Workers' Compensation Board for approval

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

either on the prescribed form, or at least in a document which contains all the requested information prescribed by the Chair. It is submitted at the time of the hearing by the Board on the appropriateness of the settlement. It may also provide for a reasonable fee for the claimant's counsel. The Board then takes at least 10 days to review the matter before rendering a decision. During this review time, from the hearing to the date of the decision, there is a stay on all related proceedings in the case before the Board.

If an attorney or licensed representative is representing the claimant or a deceased worker's dependents, he or she should advise their client of the rights and liabilities resulting from the agreement but cannot be a party to the agreement. The Board must agree that the proposed agreement is fair, not unconscionable and is proper as a matter of law. If an attorney or licensed representative signs the agreement, the courts have held that it would be improper as a matter of law and therefore permit the Board to reject the agreement. Even without the signature of the attorney, the agreement can provide for a reasonable counsel fee commensurate with the services rendered. (12 NYCRR 300.36 (h)). However, this would preclude an attorney or licensed representative from agreeing to an attorney fee in advance and attempt to eliminate the Board's discretion in making such an award as authorized by Section 24 WCL. (See *Abel v. Wolff and Dungey, Inc.,* 287 A.D.2d 914, 732 N.Y.S.2d 118 (2001).)

Since the fee is inchoate until it is awarded by the Board, claimant's attorney or licensed representative has a financial interest in the agreement.

If the agreement is not unfair, unconscionable or improper as a matter of law, has no intentional misrepresentation of a material fact and no party has written the Board to request a disapproval, the settlement will be approved. The settlement, once approved by the Board appears to have the same binding effect as an award in arbitration, it is conclusive and not subject to review by the Board or the courts pursuant to Section 23 WCL. However, it is not yet clear whether a party in interest could challenge the settlement after it is approved, if it is later discovered that there was an intentional misrepresentation of a material fact that was not revealed at the time of the approval. Since that would be the basis for a disapproval at the time of the review by the Board, it should also be the basis for setting aside the settlement. The Board has continuing jurisdiction to correct errors and mistakes, as when the hearing officer did not approve the settlement and it was noticed as approved in error. *Lutz v. Lakeside Biekirk Nursing Home,* 301 A.D.2d 688 (2003). However, if it is sought to be set aside by the employer, and the claimant has already been paid, it might not be possible to recover the payment of the award from the claimant.

The award should be paid by the carrier within 10 days after the decision approving the settlement is filed with the Board or risk being subject to the penalty for late payment of an award pursuant to § 25 WCL. The agreement can be amended after approval by agreement of the parties.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

When a claim for Workers' Compensation benefits is disputed by the employer, the Disability Benefits policy can be called upon by the injured employee to pay benefits as if there was no valid workers' compensation benefits payable. After an award by the Board granting workers' compensation benefits to the claimant, the disability benefits carrier can seek reimbursement from the workers' compensation carrier for the payments made by it during the course of the dispute before the Board. However, if the case is settled by agreement between the employer and the injured worker without a determination by the Board that the injury arose out of and in the course of employment and was compensable, the disability benefits carrier cannot recover the payments it made to the claimant. Since the disability benefits carrier is not a party to the Workers' Compensation proceeding, it has no standing to object and appeal a decision of the Board settling the case without awarding reimbursement out of the settlement which would be authorized by the Disability Benefits Law. See: _Drummond v. The Desmond et al. and First Rehabilitation Life Insurance Company of America_, 295 A.D.2d 711, 744 N.Y.S.2d 224 (2002).

In such a situation, the lien authorized by Section 206 WCL will not be available against the Section 32 settlement as it would have been against an award of compensation. An Article 78 proceeding might offer relief against the Board to enable the disability benefits carrier to obtain reimbursement to its payments, but since it was not a party to the workers' compensation proceeding, it also has no standing under Section 23 WCL to appeal the Board decision to the Appellate Division, Third Department.

Either party can request the Board to disapprove a proposed settlement within the 10 days of its submission to the Board for approval. Regulation 12 NYCRR 300.36(b) provides that it is deemed to have been submitted when it is received by the Board at the time of the hearing at which the parties are questioned about it. However, if such a hearing is not held, it will not be deemed submitted. Therefore, no penalty for late payment can be imposed if the Board purports to approve such a settlement without first holding a hearing. (See _Hart v. Pageprint /DeKalb_, 6 A.D.3d 947, 775 N.Y.S.2d 195 (2004).) If the payment pursuant to the settlement has been made by the employer, the Board has discretion to hold a hearing on the agreement without requiring the claimant to pay back the settlement first. In this way, the Board can administratively correct its procedural error. (See _Anderson v. Central New York Developmental Disabilities Service Office_, 2 A.D.3d 1011, 769 N.Y.S.2d 623 (2003) and _Johnson v. Shelmar Corp._, 2 A.D.3d 1010, 768 N.Y.S.2d 407 (2003).)

Failure to timely pay a workers' compensation award can subject the employer to a penalty (see § 25(3)(f) WCL). However, unlike lump-sum settlements (§ 15 (5-b) WCL), the payment under a Section 32 settlement is not necessarily defined as "compensation" (§ 2(b) WCL). While it has been noted by the court that the Board Rule 300.36(g) makes the penalty applicable to a Section 32 waiver agreement payment, (see _Anderson v._

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

*Central New York Developmental Disabilities Service Office*, 2 A.D.3d 1011, 769 N.Y.S.2d 623 (2003)), a Rule should not be capable of expanding the existing law, but only facilitating it.

Where an injured employee, or his or her representative, brings a third party tort action against the employer denying an employer-employee relationship, and a final decision is made in such an action, the employee or its representative may be barred from bringing a claim for workers' compensation. *Martin v. C.A. Productions Co.*, 1960, 8 N.Y.2d 226, 203 N.Y.S.2d 845, 168 N.E.2d 666 and *Russell v. 231 Lexington Ave. Corporation*, 1935, 266 N.Y. 391, 195 N.E. 23. While such a result is the same as a waiver of rights by an act of the employee, the courts have justified it on the equitable theory that the claimant should not have the benefit of both remedies. A party should not be able to experiment with an action at law for the purpose of ascertaining what can be gained in such a proceeding and then, if dissatisfied, repudiate the recovery and pursue a workers' compensation claim. However, where a settlement is not from a judicial proceeding or other statutory remedy but is the result of settlement without such proceedings, it may not be a bar to a subsequent filing of a claim for workers' compensation benefits. *Sackolwitz v. Charles Hamburg & Co.*, 1946, 295 N.Y. 264, 67 N.E.2d 152.

This section can be used to settle only a part of the case, as mutually agreed and consented to by the Board. The settled portions can relate to indemnity or medical benefits, or both. The right to benefits as to the portions of the claim, which was not settled, will continue.

CROSS REFERENCES

Volunteer ambulance workers, waiver agreements, see Volunteer Ambulance Workers' Benefit Law § 24.
Volunteer firefighters, waiver agreements, see Volunteer Firefighters' Benefit Law § 24.

LIBRARY REFERENCES

2005 Main Volume

Workers' Compensation ☞ 1100, 1115 to 1126, 1130 to 1140.
Westlaw Topic No. 413.
C.J.S. Workers' Compensation §§ 732 to 733, 759 to 769.

RESEARCH REFERENCES

2008 Electronic Update

ALR Library

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

65 ALR 160, Construction and Effect of Provision of Workmen's Compensation Act as to "Waiver" or "Compromise" of Claims.

Encyclopedias

NY Jur. 2d, Workers' Compensation § 78, Covered Employee's Waiver of Right to Compensation.

NY Jur. 2d, Workers' Compensation § 125, Generally; Necessity of Written Approval.

NY Jur. 2d, Workers' Compensation § 127, Time for Obtaining Approval or Compromise Order; Nunc Pro Tunc Orders.

NY Jur. 2d, Workers' Compensation § 130, Waiver or Estoppel as to Requirement of Approval.

NY Jur. 2d, Workers' Compensation § 742, Approval of Settlement Agreement.

Treatises and Practice Aids

Modern Workers' Compensation § 204:5, Waiver of Compensation.

New York Practice Workers' Compensation § 3:8, Schedule Awards.

New York Practice Workers' Compensation § 6:4, Maintenance of Records.

New York Practice Workers' Compensation § 9:6, Reopened Case Special Fund.

New York Practice Workers' Compensation § 11:5, Waiver Agreements.

New York Practice Workers' Compensation § 11:6, Assignments of Compensation Benefits.

New York Practice Workers' Compensation § 13:1, Workers' Compensation Claim Settlement.

New York Practice Workers' Compensation § 14:5, Costs and Fees.

New York Practice Workers' Compensation § 3:11, Lump Sum Award.

New York Practice Workers' Compensation § 3:12, Waiver Agreements.

New York Practice Workers' Compensation § 10:12, Controverted Workers' Compensation Claim.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

New York Practice Workers' Compensation App 11-2, Rules.

New York Practice Workers' Compensation App 14-1, Rules.

New York Practice Workers' Compensation App 15-1, Rules.

NOTES OF DECISIONS

    In general 1
    Approval of Board 8
    Compromise or settlement 4
    Construction and application 2.5
    Employment status 3
    Finality of agreements 9
    Hearing 11
    Liens against proceeds 6
    Parties, generally 5
    Purpose 2
    Submission of agreement 10
    Waivers 7

  1. In general

A civil claim may be asserted with due reservation of compensation rights, and it is plainly contrary to public policy to permit a claimant to waive his rights to compensation, and he cannot waive them. Martin v. C.A. Productions Co., 1959, 9 A.D.2d 550, 189 N.Y.S.2d 528, appeal denied 9 A.D.2d 696, 191 N.Y.S.2d 928, reversed on other grounds 8 N.Y.2d 226, 203 N.Y.S.2d 845, 168 N.E.2d 666. See, also, Bode v. O. and W. Restaurant, 1959, 9 A.D.2d 969, 193 N.Y.S.2d 845. Workers' Compensation ☞ 1103

  2. Purpose

Although this section prohibiting waivers intends to protect the claimant from his own improvidence and folly, it is not intended to permit harassing and inconsistent actions resulting in unnecessary and prolonged litigation and possible multiple recoveries. Martin v. C.A. Productions Co., 1960, 8 N.Y.2d 226, 203 N.Y.S.2d 845, 168 N.E.2d 666. See, also, Surace v. Danna, 1928, 248 N.Y. 18, 161 N.E. 315. Workers' Compensation ☞ 1100; Workers' Compensation ☞ 1115

  2.5. Construction and application

Regulatory amendment which permitted agreements under the Workers' Compensation Law to be administratively approved without a hearing was not applicable where it became effective

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

subsequent to the Workers' Compensation Board's approval of the parties' agreement, and consequently, the 10-day period for the carrier to make payment never commenced and a late-payment penalty was properly reversed. Desic v. Fairfield Properties (3 Dept. 2005) 21 A.D.3d 679, 800 N.Y.S.2d 243, leave to appeal denied 5 N.Y.3d 716, 808 N.Y.S.2d 140, 842 N.E.2d 26. Workers' Compensation ⚖ 1094

3. Employment status

Where employee was only the titular president of employer corporation and owned no stock therein, his relation to the corporation was that of employee, and employee could not waive his rights to compensation. Levy v. Leo Newman's Theatre Ticket Office (3 Dept. 1945) 269 A.D. 916, 57 N.Y.S.2d 624, affirmed 296 N.Y. 523, 68 N.E.2d 602. Workers' Compensation ⚖ 299; Workers' Compensation ⚖ 1100

Where injured salesman had signed election not to be included in coverage of compensation policy issued to corporate employer without knowing contents of election and at superior's request in order to eliminate necessity of salesman's joining union, insurance broker was present and understood reason for the signing, and salesman was not an officer of and owned no stock in employer, salesman was entitled to compensation award as against contention that he was excluded from coverage because he was an executive officer of employer. Goldman v. Ansonia Floor Covering Co. (3 Dept. 1938) 255 A.D. 736, 6 N.Y.S.2d 774. Workers' Compensation ⚖ 1065

4. Compromise or settlement

Settlement agreement, in which employment discrimination employee explicitly waived all discrimination claims arising under federal, state, and local law, barred employee's claims under Title VII, and claims under New York law of retaliation for filing workers' compensation claims and whistleblowing activity. Warden v. E.R. Squibb & Sons, Inc., 1993, 840 F.Supp. 203. Compromise And Settlement ⚖ 16(1)

Where assault on claimant by president of corporation was tantamount to assault by employer, claim which resulted in settlement and release of employer and its president was not third-party cause of action under § 29, and therefore claimant was not required to obtain approval of insurance carrier before compromising or settling his cause of action, and, in view of this section rendering invalid agreement by employee to waive right to compensation, release given by claimant did not bar award by Board. Jackson v. Frederick Richman & Co., 1965, 15 N.Y.2d 877, 258 N.Y.S.2d 414, 206 N.E.2d 350. Workers' Compensation ⚖ 1107; Workers' Compensation ⚖ 1115

Workers' Compensation Board properly relied on provision of Workers' Compensation Law defining date of last payment of compensation for a lump sum settlement in determining if there had been a lapse of three years from date of claimant's last payment, for purposes of determining

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

if workers' compensation carrier's liability should be shifted to Special Fund for Reopened Cases, based on language of statute. Robinson v. Holiday Showcase Restaurants, Inc. (3 Dept. 2007) 46 A.D.3d 1178, 848 N.Y.S.2d 728. Workers' Compensation ☞ 1030.2

Settlement agreement between claimant and employer's workers' compensation carrier, which limited action on case by Workers' Compensation Board to review or reopening to make adjustments to reimbursements for claimant's future home healthcare requirements based upon significant and unanticipated change did not contemplate further proceedings, but instead provided contingency to allow reopening, which could occur only if case was closed, if future developments made provided-for adjustments necessary, and thus did not support Board's conclusion that claimant's case was not truly closed for purposes of carrier's claim that liability for claimant's case should be shifted, pursuant to statute, to special fund for reopened cases. Bates v. Finger Lakes Truck Rental (3 Dept. 2007) 41 A.D.3d 957, 839 N.Y.S.2d 234. Workers' Compensation ☞ 1030.2

Regulation providing that a settlement agreement was deemed "submitted" when received by Workers' Compensation Board at time hearing was conducted to question parties about agreement was not unreasonable, irrational, or arbitrary, and thus regulation would be upheld, since it was entirely logical to construe statute providing that a settlement agreement would not be approved if within 10 days of submitting agreement an interested party requested disapproval in a manner allowing parties time to withdraw their consent to an agreement following a hearing on the issue. Lutz v. Lakeside Beikirk Nursing Home (3 Dept. 2003) 301 A.D.2d 688, 753 N.Y.S.2d 190, leave to appeal dismissed 99 N.Y.2d 651, 760 N.Y.S.2d 104, 790 N.E.2d 278, reargument denied 100 N.Y.2d 577, 764 N.Y.S.2d 386, 796 N.E.2d 478. Workers' Compensation ☞ 1125

There was substantial evidence to support Workers' Compensation Board's disapproval of settlement agreement between worker, her employer, and employer's workers' compensation carrier; worker's death prior to agreement's approval precluded approval, carrier timely withdrew its consent to agreement, and agreement was unfair given that underlying assumption made by parties, i.e., worker was to receive benefits for indefinite period of time, was clearly inapplicable at time agreement was considered for approval. Lutz v. Lakeside Beikirk Nursing Home (3 Dept. 2003) 301 A.D.2d 688, 753 N.Y.S.2d 190, leave to appeal dismissed 99 N.Y.2d 651, 760 N.Y.S.2d 104, 790 N.E.2d 278, reargument denied 100 N.Y.2d 577, 764 N.Y.S.2d 386, 796 N.E.2d 478. Workers' Compensation ☞ 1122.1

Workers' Compensation Board had continuing jurisdiction to correct mistake following hearing officer's notice of approval of settlement agreement between worker, her employer, and employer's workers' compensation carrier, where record established that hearing officer never approved agreement, and notice of approval stating otherwise clearly was issued in error. Lutz v. Lakeside Beikirk Nursing Home (3 Dept. 2003) 301 A.D.2d 688, 753 N.Y.S.2d 190, leave to appeal dismissed 99 N.Y.2d 651, 760 N.Y.S.2d 104, 790 N.E.2d 278, reargument denied 100 N.Y.2d 577, 764 N.Y.S.2d 386, 796 N.E.2d 478. Workers' Compensation ☞ 1149

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

A workmen's compensation claimant can waive his rights to compensation by settlement of a claim against a third party for injuries. Jackson v. Frederick Richman & Co. (3 Dept. 1964) 21 A.D.2d 711, 249 N.Y.S.2d 540, reversed 15 N.Y.2d 877, 258 N.Y.S.2d 414, 206 N.E.2d 350. See, also, Martin v. C.A. Productions Company, 1960, 8 N.Y.2d 226, 203 N.Y.S.2d 845, 168 N.E.2d 666. Workers' Compensation ☞ 1107; Workers' Compensation ☞ 1130

5. Parties, generally

An attorney representing a workers' compensation claimant cannot be listed as a party to an agreement settling claim, although rules promulgated by Workers' Compensation Board provide that an agreement may provide for reasonable fees commensurate with the services rendered by the claimant's attorney or licensed representative. Abel v. Wolff and Dungey Inc. (3 Dept. 2001) 287 A.D.2d 914, 732 N.Y.S.2d 118, leave to appeal dismissed 97 N.Y.2d 700, 739 N.Y.S.2d 99, 765 N.E.2d 302. Workers' Compensation ☞ 1119

6. Liens against proceeds

Workers' compensation benefits pursuant to settlement with Workers' Compensation Board were subject to income execution to satisfy lien for support payment of claimant's former wife. Siciliano v. State (1 Dept. 2002) 294 A.D.2d 238, 742 N.Y.S.2d 282, leave to appeal dismissed 98 N.Y.2d 727, 749 N.Y.S.2d 477, 779 N.E.2d 188.

Subrogation provision of Workers' Compensation Law against settlement proceeds to be paid to injured worker by third parties was of no force and effect in injured worker's suit to recover damages resulting from fall on premises controlled by third parties; settlement made pursuant to written agreement and pursuant to waiver agreement provision of Workers' Compensation Law, was approved by Workers Compensation Board. Williams v. Munna, Inc., 2001, 187 Misc.2d 613, 723 N.Y.S.2d 841. Workers' Compensation ☞ 2189

If a carrier wants to insure its lien will survive a settlement pursuant to the waiver agreement provision, it should make explicit provisions in the agreement, or at least assert its belief in the viability of the lien, when appearing before the Workers' Compensation Board for approval. Williams v. Munna, Inc., 2001, 187 Misc.2d 613, 723 N.Y.S.2d 841. Workers' Compensation ☞ 2252

7. Waivers

Worker's right to receive workers' compensation under New York law cannot be waived. Warden v. E.R. Squibb & Sons, Inc., 1993, 840 F.Supp. 203. Workers' Compensation ☞ 1111

Attorney representing workers' compensation claimant was not authorized by statute to enter into waiver agreement settling claim, and thus, Workers' Compensation Board properly rejected

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

proposed agreement as improper. Abel v. Wolff and Dungey Inc. (3 Dept. 2001) 287 A.D.2d 914, 732 N.Y.S.2d 118, leave to appeal dismissed 97 N.Y.2d 700, 739 N.Y.S.2d 99, 765 N.E.2d 302. Workers' Compensation ☞ 1120; Workers' Compensation ☞ 1122.1

Claim for death benefits could not be waived by claimant's attorney in oral arguments before Board. Fonda v. Fort Plain Enterprises (3 Dept. 1980) 75 A.D.2d 697, 427 N.Y.S.2d 648. Workers' Compensation ☞ 1101

8. Approval of Board

Employer's application to reopen workers' compensation case after Workers' Compensation Board formally approved structured settlement agreement in which claimant waived future benefits in exchange for periodic payments was a request to review the settlement agreement outside the Board's jurisdiction; although employer alleged that claimant had fraudulently failed to disclose income that he was earning prior to the settlement, claimant had disclosed the alleged source of the income before the agreement was made, and timely investigation could have been conducted by the employer. Palmer v. Special Metals Corp. (3 Dept. 2007) 42 A.D.3d 833, 840 N.Y.S.2d 650. Workers' Compensation ☞ 1144

Settlement agreements executed pursuant to Workers' Compensation Law become binding upon the claimant and employer only when they have been submitted to and approved by the Workers' Compensation Board after the elapse of a 10-day period following submission in which requests to withdraw the agreement may be made. Velez v. Modern Linens & Towels (3 Dept. 2005) 21 A.D.3d 1239, 801 N.Y.S.2d 842, leave to appeal denied 6 N.Y.3d 708, 812 N.Y.S.2d 443, 845 N.E.2d 1274, reargument denied 6 N.Y.3d 843, 813 N.Y.S.2d 712, 846 N.E.2d 1222, certiorari denied 127 S.Ct. 50, 166 L.Ed.2d 50, certiorari denied 127 S.Ct. 712, 166 L.Ed.2d 550. Workers' Compensation ☞ 1130

Workers' Compensation Board's suspending a hearing requirement and deeming the parties' agreement properly and finally approved as of the date the Board originally issued its notice of approval was not an abuse of discretion where the parties had fully performed the agreement and had not sought to withdraw from it or otherwise declare it invalid. Desic v. Fairfield Properties (3 Dept. 2005) 21 A.D.3d 679, 800 N.Y.S.2d 243, leave to appeal denied 5 N.Y.3d 716, 808 N.Y.S.2d 140, 842 N.E.2d 26. Workers' Compensation ☞ 1125

Neither Workers' Compensation Board nor court could review waiver agreement once it had been approved by Board, even though Board approved agreement over disability insurance carrier's objection and even though Board denied lien to carrier, who paid disability insurance carrier paid disability benefits to workers compensation claimants while they were pending, and then sought reimbursement for those payments from proceeds of any future award of workers' compensation benefits. Drummond v. Desmond (3 Dept. 2002) 295 A.D.2d 711, 744 N.Y.S.2d 224, leave to appeal denied 98 N.Y.2d 615, 752 N.Y.S.2d 1, 781 N.E.2d 913. Workers' Compensation ☞ 1122.1

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

A workers' compensation claimant, or his or her dependents in the event that the claimant is deceased, may enter into an agreement with the employer or workers' compensation insurance carrier settling upon and determining the compensation and other benefits due to the claimant or his or her dependents, subject to approval of Workers' Compensation Board, and approval must be given unless the Board finds the proposed agreement unfair, unconscionable, or improper as a matter of law. Abel v. Wolff and Dungey Inc. (3 Dept. 2001) 287 A.D.2d 914, 732 N.Y.S.2d 118, leave to appeal dismissed 97 N.Y.2d 700, 739 N.Y.S.2d 99, 765 N.E.2d 302. Workers' Compensation ☞ 1115; Workers' Compensation ☞ 1122.1

9. Finality of agreements

Claimant was not entitled to nullification of workers' compensation settlement agreement, despite his assertion that agreement erroneously excluded compensation for his depression; claimant stipulated to agreement, which stated that causal relationship between his employment and his depression had terminated, and record indicated that benefits which claimant had been receiving and which were subsumed by the lump sum contemplated by the agreement were limited to treatment of claimant's established back injury. Velez v. Modern Linens & Towels (3 Dept. 2005) 21 A.D.3d 1239, 801 N.Y.S.2d 842, leave to appeal denied 6 N.Y.3d 708, 812 N.Y.S.2d 443, 845 N.E.2d 1274, reargument denied 6 N.Y.3d 843, 813 N.Y.S.2d 712, 846 N.E.2d 1222, certiorari denied 127 S.Ct. 50, 166 L.Ed.2d 50, certiorari denied 127 S.Ct. 712, 166 L.Ed.2d 550. Workers' Compensation ☞ 1150

Workers' compensation claimant's major depression condition was included in settlement agreement, where agreement stated claimant could not reopen for any purpose whatsoever, agreement provided that claimant's weekly benefit, which included compensation for his major depression condition, would be permanently discontinued, and claimant acknowledged at hearing that agreement precluded any further litigation. Multari v. Keenan Oil Co. (3 Dept. 2003) 307 A.D.2d 651, 763 N.Y.S.2d 179, leave to appeal dismissed 1 N.Y.3d 622, 777 N.Y.S.2d 21, 808 N.E.2d 1280. Workers' Compensation ☞ 1138

10. Submission of agreement

Workers' compensation settlement agreement for which no hearing was held, in derogation of procedure of Workers' Compensation Board, was not "submitted" and thus could not be deemed to have been approved by Board such that time limits for calculating late penalties were triggered. Velez v. Modern Linens & Towels (3 Dept. 2005) 21 A.D.3d 1239, 801 N.Y.S.2d 842, leave to appeal denied 6 N.Y.3d 708, 812 N.Y.S.2d 443, 845 N.E.2d 1274, reargument denied 6 N.Y.3d 843, 813 N.Y.S.2d 712, 846 N.E.2d 1222, certiorari denied 127 S.Ct. 50, 166 L.Ed.2d 50, certiorari denied 127 S.Ct. 712, 166 L.Ed.2d 550. Workers' Compensation ☞ 1125

11. Hearing

Decision by Workers' Compensation Board to suspend or modify application of its rules by deeming settlement agreement to have been approved, notwithstanding absence of requisite hearing, was proper exercise of discretionary authority; claimant had informed the Board that he had fully consented to agreement's terms, made no timely request for its withdrawal, despite being made aware of his right to do so, and accepted payment called for by agreement. <u>Velez v. Modern Linens & Towels (3 Dept. 2005) 21 A.D.3d 1239, 801 N.Y.S.2d 842</u>, leave to appeal denied <u>6 N.Y.3d 708, 812 N.Y.S.2d 443, 845 N.E.2d 1274</u>, reargument denied <u>6 N.Y.3d 843, 813 N.Y.S.2d 712, 846 N.E.2d 1222</u>, certiorari denied <u>127 S.Ct. 50, 166 L.Ed.2d 50</u>, certiorari denied <u>127 S.Ct. 712, 166 L.Ed.2d 550</u>. <u>Workers' Compensation ⟲ 1124</u>

McKinney's Workers' Compensation Law § 32, NY WORK COMP § 32

Current through L.2008, chapters 1 to 288.

Copr (c) 2008 Thomson Reuters/West

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.