**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **LIBERTY MUTUAL INSURANCE COMPANY,** *et al.,* | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Civil Action No.**  08 CV 7192 (DC) (DFE) |
| **ROBERT H. HURLBUT,** *et al.,* | ) ) | |
| **Defendants.** | ) ) ) | |

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**</u>

Michael C. Miller
Evan Glassman
STEPTOE & JOHNSON LLP
750 Seventh Avenue, Suite 1900
New York, New York  10019
Tel: (212) 506-3900
Fax: (212) 506-3950

Mark F. Horning (*pro hac vice* pending)
Jeffrey M. Theodore (*pro hac vice* pending)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC  20036
Tel:  (202) 429-3000
Fax:  (202) 429-3902

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

STATEMENT OF FACTS ...............................................................................................2

    New York's Workers' Compensation Law..................................................................2

    Workers' Compensation Insurance.............................................................................3

    Solvency Regulation ...................................................................................................4

    Aggregate Trust Fund .................................................................................................4

    2007 Amendments ......................................................................................................5

ARGUMENT.....................................................................................................................7

I.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF
    A PRELIMINARY INJUNCTION............................................................................7

    A.    Liberty Mutual's Injuries are Irreparable Because New York State Denies
        a Remedy For Money Damages........................................................................7

    B.    Deprivation of a Constitutional Right Constitutes Irreparable Injury ....................8

    C.    The 2007 Amendments Will Irreparably Harm Plaintiffs by Causing Them
        to Lose Customers and Goodwill......................................................................9

        1.    Loss of Customers and Goodwill Is a Well-Recognized Form of
            Irreparable Harm.....................................................................................9

        2.    The 2007 Amendments Will Cause Plaintiffs to Lose Customers
            and Goodwill.........................................................................................10

    D.    The 2007 Amendments Impose Direct Costs on Liberty Mutual That Are
        Irreparable by Money Damages Because They Are Impossible to
        Calculate ..........................................................................................................11

    E.    The 2007 Amendments Will Cause Collateral Damage to Other Lines of
        Business That Is Irreparable..............................................................................12

    F.    A Preliminary Injunction Will Not Harm the ATF or Injured Workers ...............13

II.    PLAINTIFFS HAVE A SUBSTANTIAL PROBABILITY OF SUCCESS ON
    THE MERITS ............................................................................................................13

    A.    The 2007 Amendments Violate the Contract Clause.............................................13

        1.    The 2007 Amendments Substantially Impair Plaintiffs' Contractual
            Rights ....................................................................................................14

        2.    There Is No Legitimate Public Purpose Justifying the Retroactive
            Legislation.............................................................................................17

        3.    The Means Used by the State Were Not "Reasonable and
            Necessary" ............................................................................................18

4.     Regulation of Workers' Compensation Insurers Is No Excuse for Retroactive Legislation ............................................................................................19

B.    The Amended Settlement Provisions Violate Due Process ...................................20

1.     Plaintiffs Have Constitutionally-Protected Property Interests...................20

2.     The Denial of a Hearing Violates Due Process .........................................21

C.    The 2007 Amendments to Section 27 Violate the Equal Protection Clause .........22

1.     The Amendments Do Not Serve a Legitimate Public Purpose But Only the Commercial Interests of the NYSIF............................................22

2.     There Is No Rational Basis for Burdening Insurers More Than Self-Insured Employers .........................................................................24

CONCLUSION...................................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*414 Theater Corp. v. Murphy,*
499 F.2d 1155 (2d Cir. 1974)...............................................................................................10

*Alden v. Maine,*
527 U.S. 706 (1999)................................................................................................................7

*Allegheny Pittsburgh Coal Co. v. County Comm'n,*
488 U.S. 336 (1989)..............................................................................................................24

*Alleyne v. New York State Educ. Dep't,*
516 F.3d 96 (2d Cir. 2008).....................................................................................................7

*Allied Structural Steel Co. v. Spannaus,*
438 U.S. 234 (1978).......................................................................................13, 15, 16, 17

*Alston v. State,*
97 N.Y.2d 159 (N.Y. 2001) ....................................................................................................8

*Ass'n of Surrogates & Supreme Court Reporters v. New York,*
940 F.2d 766 (2d Cir. 1991)..................................................................................................23

*Atascadero State Hosp. v. Scanlon,*
473 U.S. 234 (1985)................................................................................................................8

*Board of Regents v. Roth,*
408 U.S. 564 (1972)..............................................................................................................20

*Brenntag Int'l Chems., Inc. v. Bank of India,*
175 F.3d 245 (2d Cir. 1999)...................................................................................................9

*Brewer v. W. Irondequoit Cent. School Dist.,*
212 F.3d 738 (2d Cir. 2000)...................................................................................................8

*Buffalo Teachers Fed'n v. Tobe,*
464 F.3d 362 (2d Cir. 2006).................................................................................................17

*Covino v. Patrissi,*
967 F.2d 73 (2d Cir. 1992).....................................................................................................8

*Diesel Props S.R.L. v. Greystone Bus. Credit II LLC,*
No. 07 Civ. 9580(HB), 2008 WL 594773 (S.D.N.Y. Mar. 5, 2008) .........................................9

*Dodge v. County of Orange,*
282 F. Supp. 2d 41 (S.D.N.Y. 2003).......................................................................................8

*Edelman v. Jordan,*
    415 U.S. 651 (1974).................................................................................................7

*Energy Reserves Group v. Kansas Power & Light Co.,*
    459 U.S. 400 (1983)..............................................................................................13

*General Electric Co. v. New York State Dep't of Labor,*
    936 F.2d 1448 (2d Cir. 1991)...............................................................................20

*General Motors Corp. v. Romein,*
    503 U.S. 181 (1992)..............................................................................................14

*Gibson v. Berryhill,*
    411 U.S. 564 (1973)..............................................................................................22

*Holiday Inns Franchising, Inc. v. Branstad,*
    29 F.3d 383 (8th Cir. 1994)..................................................................................20

*Home Bldg. & Loan Ass'n v. Blaisdell,*
    290 U.S. 398 (1934)..............................................................................................17

*In re Workers' Compensation Refund,*
    46 F.3d 813 (8th Cir. 1995) ...............................................................15, 16, 19, 20

*Interphoto Corp. v. Minolta Corp.,*
    417 F.2d 621 (2d Cir. 1969).................................................................................11

*Jolly v. Coughlin,*
    76 F.3d 468 (2d Cir. 1996).....................................................................................8

*Los Angeles Dep't of Water & Power v. Manhart,*
    435 U.S. 702 (1978)..............................................................................................15

*Lugar v. Edmondson Oil Co.,*
    457 U.S. 922 (1982)..............................................................................................21

*Lyles v. New York,*
    2 A.D.3d 694 (N.Y. App. Div. 2003), *aff'd,* 3 N.Y.3d 396 (N.Y. 2004)...................................8

*Mastercard Int'l, Inc. v. Fed'n Internationale de Football Ass'n,*
    464 F. Supp. 2d 246 (S.D.N.Y. 2006)..................................................................10

*Mastrovincenzo v. City of New York,*
    435 F.3d 78 (2d Cir. 2006).....................................................................................7

*Mathews v. Eldridge,*
    424 U.S. 319 (1976)..............................................................................................21

*Metropolitan Life Insurance Co. v. Ward*,
    470 U.S. 869 (1985)...............................................................................................23

*Mitchell v. Cuomo*,
    748 F.2d 804 (2d Cir. 1984).....................................................................................8

*Morell v. Balasubramanian*,
    70 N.Y.2d 297 (N.Y. 1987) ......................................................................................8

*Nieves v. Hess Oil Virgin Islands Corp.*,
    819 F.2d 1237 (3d Cir. 1987)............................................................................18, 20

*Nordlinger v. Hahn*,
    505 U.S. 1 (1992)....................................................................................................24

*Phillips v. Washington Legal Found.*,
    524 U.S. 156 (1998)................................................................................................21

*Pinsky v. Duncan*,
    898 F.2d 852 (2d Cir. 1990), *amended*, 907 F.2d 17 (2d Cir. 1990), *aff'd sub nom.*
    *Connecticut v. Doehr*, 501 U.S. 1 (1991) ..............................................................21

*Plaza Health Labs., Inc. v. Perales*,
    878 F.2d 577 (2d Cir. 1989).....................................................................................7

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004)................................................................................9, 11

*Reuters, Ltd. v. United Press Int'l, Inc.*,
    903 F.2d 904 (2d Cir. 1990)................................................................................9, 11

*Rister v. City Univ. of New York*,
    20 Misc. 3d 195, 858 N.Y.S.2d 528 (N.Y. Ct. Cl. 2008)..........................................8

*Samuel Adler, Inc., v. Noyes*,
    285 N.Y. 34 (N.Y. 1941) ..........................................................................................8

*Scarborough v. Travelers Ins. Co.*,
    718 F.2d 702 (5th Cir. 1983) ..................................................................................14

*Seminole Tribe v. Florida*,
    517 U.S. 44 (1996)....................................................................................................7

*Ticor Title Ins. Co. v. Cohen*,
    173 F.3d 63 (2d Cir. 1999)..................................................................................9, 11

*Tom Doherty Assocs. v. Saban*,
    60 F.3d 27 (2d Cir. 1995)..........................................................................11, 12, 13

*United States Fidelity & Guaranty Co. v. McKeithen*,
226 F.3d 412 (5th Cir. 2000) ..........................................................16, 17, 18, 19

*United States Trust Co. of New York v. New Jersey*,
431 U.S. 1 (1977).........................................................................14, 18, 23

*Vesta Fire Ins. Corp. v. Florida*,
141 F.3d 1427 (11th Cir. 1998) .........................................................17

*Webb's Fabulous Pharmacies, Inc. v. Beckwith*,
449 U.S. 155 (1980)...............................................................................21

## CONSTITUTIONS

Contract Clause, U.S. Const. art. I, § 10, cl. 1 ........................................ passim

Equal Protection Clause, U.S. Const. amend. XIV, § 1........................................ passim

Due Process Clause, U.S. Const. amend. XIV, § 1............................................ passim

## STATUTES

2007 N.Y. Laws 6 ........................................................................ passim

N.Y. Ct. Claims Act §§ 8, 9..............................................................8

N.Y. Ins. Law §§ 307-308 ..............................................................4

N.Y. Ins. Law § 309 ....................................................................4

N.Y. Ins. Law § 1303 ..................................................................4

N.Y. Ins. Law §§ 1310-1311 ..........................................................4

N.Y. Ins. Law §§ 1401-1414 ..........................................................4

N.Y. Ins. Law § 2303 ................................................................4, 16

WCL § 2..............................................................................2

WCL § 3..............................................................................2

WCL § 11.............................................................................2

WCL § 13.............................................................................2

WCL § 14..................................................................................................2

WCL § 15...............................................................................................3, 6

WCL § 16..................................................................................................2

WCL § 20..................................................................................................3

WCL § 23...............................................................................................3, 22

WCL § 27.......................................................................................... passim

WCL § 32.......................................................................................... passim

WCL § 50..................................................................................................3

WCL § 76..................................................................................................5

WCL § 106.................................................................................................4

WCL § 108.................................................................................................4

WCL § 118.................................................................................................3

## LEGISLATIVE MATERIALS

S. 8718, 231st Leg. (N.Y. 2008)..........................................................................7

## BOOKS AND ARTICLES

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
    *Federal Practice and Procedure* § 2948.1 (1995)....................................................8

Edward I. Pitts & Robert E. Weiss,
    *New York Workers' Compensation Handbook* (2007).................................................. passim

## INTRODUCTION

Plaintiffs (or "Liberty Mutual") are insurers that write workers' compensation insurance in New York State. This action challenges the constitutionality of certain provisions of the Workers' Compensation Reform Act of 2007 (the "2007 Amendments"). Those provisions amended New York's Workers' Compensation Law ("WCL") to require insurers to deposit the present value of a claim for certain types of permanent partial disabilities into an "Aggregate Trust Fund" ("ATF"). Once a deposit is made, the 2007 Amendments abrogate the insurer's contractual right to administer and settle claims, give the ATF exclusive settlement authority, bar refunds to insurers of deposited amounts in excess of settlements, and deny the insurer an opportunity to be heard on approval of the settlement. These changes will subject Plaintiffs to significant financial losses. Settlement is an insurer's most important tool to minimize claims costs, the deposit requirement will deprive Plaintiffs of the higher investment returns they could earn on the money, and Plaintiffs can handle claims more cheaply than the fee charged by the ATF.

Plaintiffs have no remedy at law for these injuries. New York has not waived its sovereign immunity for violations of federal constitutional provisions. And Liberty Mutual will suffer irreparable injury from lost customers and harm to goodwill. Insurers must raise rates to account for increased costs. That will cause customers to self-insure or insure with the New York State Insurance Fund ("NYSIF"), neither of which is subject to the 2007 Amendments.

The 2007 Amendments violate the Contract Clause of the United States Constitution. They apply to injuries covered by policies entered into before the date of enactment. The changes therefore upset Liberty Mutual's contractual expectations by imposing large costs unforeseen at the time of contracting. The 2007 Amendments violate the Due Process Clause by denying Plaintiffs an opportunity to be heard on settlement of claims asserted against policies

they have issued. Finally, the Amendments violate the Equal Protection Clause. Imposition of the new requirements on insurers but not on the NYSIF or self-insured employers is irrational. It serves no legitimate public purpose, but only the self-interest of the State in its commercial capacity. Further, the measure irrationally subjects insurers – whose solvency is tightly regulated – to requirements completely unnecessary to protect claims in the event of insolvency, while not protecting them from the far more likely possibility of employer bankruptcy.

The state agency responsible for enforcing the amendments, the Workers' Compensation Board, refrained from triggering the new requirements until now because the New York legislature was considering repeal of the 2007 legislation. However, the legislature recently adjourned without enacting the repeal bill and enforcement of the amendments is expected to commence imminently. Plaintiffs therefore respectfully submit this memorandum in support of their motion for a preliminary injunction against enforcement of the amendments.

**STATEMENT OF FACTS**

**New York's Workers' Compensation Law**

The WCL governs compensation to employees who suffer a personal injury during their employment or an occupational disease. WCL §§ 2(7), 3(2). The WCL replaced tort law, under which an injured employee had to prove the employer's negligence, with a regime of strict liability. Declaration of James Hall ("Hall Decl.") ¶ 3. Employers must pay indemnity benefits for lost wages, medical benefits for the costs of medical treatment and rehabilitation, and death benefits when the worker has died. WCL §§ 13, 14, 16 These benefits are the exclusive remedy against the employer for the injured employee and his or her family. WCL § 11.

This litigation concerns one category of indemnity benefits – those for permanent partial disability ("PPD"). Benefits PPDs fall into two subcategories: (1) so-called "schedule awards" where, for various specified types of injury, statutory schedules set forth the number of weeks

-2-

during which compensation must be paid; and (2) "non-schedule" or "classified" awards where the injury is not one of those specified in the statutory schedules and where the level of benefits depends on the "classification" of the injury. WCL § 15. The Workers' Compensation Board ("WCB") determines whether a PPD claim is a "schedule" or "classified" claim and, if the latter, into which classification the injury falls. Hall Decl. ¶ 8.

The WCB is a state agency that adjudicates disputed WCL claims. The claim is heard by a Workers' Compensation Law Judge. Appeal is to a three-member panel of the WCB and thereafter to the Appellate Division of the Supreme Court, Third Department. WCL §§ 23, 118. If the claimant is eligible for benefits, the Law Judge or the WCB makes an "award" of compensation. WCL § 20.

**Workers' Compensation Insurance**

Employers must secure the payment of workers' compensation by either purchasing insurance or qualifying as a self-insurer. WCL § 50. A workers' compensation insurance policy is a contract between the insurer and the employer. In return for payment of a premium, the insurer assumes the employer's risk of liability for compensation under the WCL. Hall Decl. ¶¶ 11-12. "Coverage under the policy relates to an insurance company's contractual duty to assume its insured employer's legal duty to provide the benefits required by law." Edward I. Pitts & Robert E. Weiss, *New York Workers' Compensation Handbook* ("*Handbook*") § 2.01[1][a] (2007).

The insurer has other contractual rights and obligations. It has the exclusive authority to investigate a claim to determine whether it is covered by the policy, subject to resolution of disputes by the WCB. Hall Decl. ¶ 16. The policy "also grants the carrier the exclusive right to negotiate settlements." *Handbook* § 2.01[2][b]; *see also* Hall Decl. ¶ 16.

- 3 -

**Solvency Regulation**

New York heavily regulates workers' compensation insurers to protect policyholders and

claimants against insurer insolvency.

- The Department of Insurance requires insurers to have sufficient capital and surplus to meet their policy obligations. N.Y. Ins. Law § 1303. The Department also controls the types of assets in which insurers may invest. N.Y. Ins. Law §§ 1401-1414.

- Insurers must submit annual and other periodic reports on their financial condition. N.Y. Ins. Law §§ 307-308. The Department has broad power to conduct examinations of an insurer's financial condition. N.Y. Ins. Law § 309. The Department need not wait until an insurer is actually insolvent before taking remedial action. N.Y. Ins. Law §§ 1310-1311.

- The Department regulates insurance rates to ensure that they are adequate to pay claims. N.Y. Ins. Law § 2303; Hall Decl. ¶ 18.

These regulations do not apply to employer self-insurance. Hall Decl. ¶ 17.

Injured workers are also protected by the Workers' Compensation Security Fund

("Security Fund"), which pays awards of compensation in the event of default by an insolvent

carrier. WCL § 106. The Security Fund is financed by assessments on workers' compensation

insurers, all of which must participate in the Fund. WCL § 108. There is a regular annual

assessment designed to amass reserves sufficient to pay claims in the event of an insolvency, but

if there is a shortfall, the Fund can levy additional assessments. Hall Decl. ¶¶ 19-20.

**Aggregate Trust Fund**

When the WCL was enacted in 1914, there was no Security Fund to protect claimants.

The original legislation thus gave the predecessor of the WCB discretion to require insurers and

employers to deposit into an the ATF the present value of certain death and disability benefits.

Hall Decl. ¶ 21. During the Great Depression, many insurers went bankrupt. In response, the

legislature required insurers to make lump sum deposits for death, permanent total disability, and

permanent partial disability benefits involving a loss of limbs or eyes. Hall Decl. ¶ 22.

The ATF is administered by the NYSIF, a state agency that sells workers' compensation insurance. WCL § 76. The NYSIF thus competes with private insurers. Hall Decl. ¶ 23.

Prior to the 2007 legislation, § 32 of the WCL authorized insurers to enter into settlement or "waiver" agreements with claimants for claims requiring a deposit to the ATF. The insurer was entitled to a refund of any deposit amounts in excess of the settlement agreement. WCL § 27(4); Hall Decl. ¶ 25. The WCB reviewed waiver agreements to ensure they were not "unfair, unconscionable, or improper." WCL § 32(b) (2006); *see also* Hall Decl. ¶ 24. Insurers had the right to be heard by the WCB in support of the settlement and to judicial review if the settlement was disapproved. WCL § 32(c) (2006). The ATF had no role in the settlement process.

**2007 Amendments**

The 2007 Amendments revised the ATF-related provisions of the WCL in three major respects. 2007 N.Y. Laws 6 (the "2007 Amendments").

- One change applied the lump-sum deposit requirement to a significantly expanded category of claims. 2007 N.Y. Laws 6, § 46, *amending* WCL § 27(2). The ATF deposit requirement now includes all non-schedule or "classified" PPD claims. Hall Decl. ¶ 26. This was a significant expansion of the insurer's obligation. "Cases where the claimant has been classified with a permanent partial disability are reported to account for a large part of overall workers' compensation liability in New York." *Handbook* § 2.21. This is because "classified" PPD claims tend to involve more serious injuries than "schedule" claims. Hall Decl. ¶ 27. Prior to July 1, 2007, classified PPD benefits had to be paid over the entire remaining life of the claimant. Under the new deposit requirement, instead of paying these benefits out on a biweekly basis over many years, the insurer must make an up-front deposit of their present value. The new requirement applies to insurers but not to the NYSIF or self-insured employers. 2007 N.Y. Laws 6, § 46.

- Additionally, drastic changes were made to the provision governing settlement agreements. Insurers lose the authority to enter into settlement agreements with claimants once a deposit is made to the ATF. The ATF then has exclusive authority to settle claims. 2007 N.Y. Laws 6, § 73, *amending* WCL § 32(a). This change governs all types of claims, not just the new category of PPD claims covered by the amendment to § 27. If the ATF settles a claim for less than the full amount of the deposit, the insurer cannot obtain a refund of

the difference.  2007 N.Y. Laws 6, § 57-b, *adding* WCL § 27(8); Hall Decl. ¶ 34.

- The 2007 Amendments also eliminate insurers' procedural rights.  The amended law denies insurers an opportunity to be heard: "no consultation or approval of any . . . insurance carrier . . . shall be required before the [ATF] may enter into any waiver agreement, or before the [WCB] may approve such waiver agreement." 2007 N.Y. Laws 6, § 74, *adding* WCL § 32(e).  Once the WCB approves a settlement, the insurer is denied judicial review. *Id*. § 32(c).

All three changes are retroactive.  The effective date of the legislation was March 13, 2007 and the new requirements applies to all PPD *awards* made after July 1, 2007.  2007 N.Y. Laws 6, §§ 46, 82.  As a result, the new requirement will apply to *injuries* occurring before enactment date and covered under insurance policies issued prior to that date.

> [A] classification made on or after 7/1/07 on any case, regardless of date of accident or disablement . . . requires the carrier to pay the present value of the benefits to ATF immediately after classification.  This requirement may lead to some very large payments into ATF on cases with dates of injury before 3/13/07.

*Handbook* § 2.21.[1]

The period of retroactivity will be a long one:  awards often are made years after the date of injury and thus long after issuance of the applicable insurance policy.  Hall Decl. ¶¶ 28-29.  No award can be made until the injury is "classified."  Classification happens the later of two years after the injury or one year after the worker's final surgery – which may not occur for long time in the most serious cases.  *Id*. ¶ 30.  Latent injuries and extended periods during which a claim is disputed also delay awards until many years after a policy is issued.  *Id*. ¶ 31.

---

[1] Indeed, retroactive application of the 2007 Amendments requires even larger deposits than its prospective application.  The 2007 legislation limited the duration of payment of classified permanent partial disability benefits to periods ranging from 225 to 525 weeks (approximately 4 to 10 years).  2007 Amendments § 4, *amending* WCL § 15(3)(w).  But this new statutory cap was not made retroactive.  Hall Decl. ¶ 33.  The result is a "double whammy" for insurers:  a deposit requirement they did not expect at the time of contracting and one that is not limited by the statutory cap because, unlike the deposit requirement, the cap was not applied retroactively.

Subsequent to the 2007 Amendments, the Governor supported legislation that would have repealed them. S. 8718, 231st Leg. (N.Y. 2008). During the pendency of those efforts, the three-member WCB appeals panels refrained from deciding appeals by insurers on classified PPD claims that might have triggered the new deposit requirements and settlement procedures. Declaration of David Dwortz ("Dwortz Decl.") ¶ 21. Plaintiffs therefore were not required to make any new deposits and refrained from filing this action in the hope that the repeal bill would pass. *Id.* However, the legislature recently adjourned without enacting the repeal legislation. Liberty Mutual expects that the WCB will soon begin deciding the classified PPD appeals, at which point Plaintiffs must comply with the new deposit and other requirements. *Id.* ¶ 22.

## ARGUMENT

Plaintiffs' motion seeks a preliminary injunction against enforcement of a regulatory law. The injunction is prohibitory: it would preserve the status quo because the 2007 Amendments have not yet been enforced against Liberty Mutual. In this circumstance, a district court may grant a preliminary injunction "if the moving party establishes (1) irreparable harm and (2) . . . a likelihood of success on the merits. . . ." *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir. 1989); *see also Mastrovincenzo v. City of New York*, 435 F.3d 78, 88 (2d Cir. 2006); *Alleyne v. New York State Educ. Dep't*, 516 F.3d 96, 99 (2d Cir. 2008).

## I.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF A PRELIMINARY INJUNCTION

### A.    Liberty Mutual's Injuries are Irreparable Because New York State Denies a Remedy For Money Damages

The United States Constitution immunizes states against actions for damages. *See Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996); *Alden v. Maine*, 527 U.S. 706, 715-27 (1999); *Edelman v. Jordan*, 415 U.S. 651, 655 (1974). This immunity can only be waived by a statement

that is sufficiently clear as to be unequivocal. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 239-41 (1985).

New York has waived its immunity from certain suits for money damages. N.Y. Ct. Claims Act §§ 8, 9. The statute establishes the Court of Claims as the exclusive avenue for damages against the State. *Alston v. State*, 97 N.Y.2d 159, 163 (N.Y. 2001); *Morell v. Balasubramanian*, 70 N.Y.2d 297, 300 (N.Y. 1987); *Samuel Adler, Inc., v. Noyes*, 285 N.Y. 34, 35 (N.Y. 1941). However, the waiver of immunity does not extend to claims brought under the United States Constitution, and the Court of Claims thus lacks subject matter jurisdiction to hear them. *See* N.Y. Ct. Claims Act § 9; *Lyles v. New York*, 2 A.D.3d 694, 696 (N.Y. App. Div. 2003), *aff'd*, 3 N.Y.3d 396 (N.Y. 2004); *Rister v. City Univ. of New York*, 20 Misc. 3d 195, 201, 858 N.Y.S.2d 528, 533 (N.Y. Ct. Cl. 2008) ("With respect to the claimant's allegation that his Federal Constitutional rights were violated, it is settled that no action may be maintained against the state for alleged federal constitutional violations."). Thus, Liberty Mutual has no avenue to obtain money damages subsequent to a ruling from this court on the merits.

### B.    Deprivation of a Constitutional Right Constitutes Irreparable Injury

Plaintiffs sue under the Contract Clause and Fifth and Fourteenth Amendments to the United States Constitution. In the Second Circuit, constitutional violations constitute irreparable injury. *See, e.g., Brewer v. W. Irondequoit Cent. School Dist.*, 212 F.3d 738, 744-45 (2d Cir. 2000); *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992); *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984); *Dodge v. County of Orange*, 282 F. Supp. 2d 41, 72 (S.D.N.Y. 2003).

Thus, a movant need merely allege a constitutional violation to support a finding of irreparable harm: "[I]t is the *alleged* violation of a constitutional right that triggers a finding of irreparable harm." *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) (emphasis in original); *see also* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and*

*Procedure* § 2948.1 (1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.").

C.    **The 2007 Amendments Will Irreparably Harm Plaintiffs by Causing Them to Lose Customers and Goodwill**

1.    **Loss of Customers and Goodwill Is a Well-Recognized Form of Irreparable Harm**

A threatened injury is irreparable when it would be difficult to calculate the money damages required to successfully redress it. *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68-69 (2d Cir. 1999). The loss of a client relationship is just such an injury because it is impossible to assign a dollar value to "an indeterminate amount of business in years to come." *Id*. at 69. In *Ticor*, the plaintiff sought to enforce a non-compete agreement with a former employee. *Id*. at 66-67. The Second Circuit held that the possibility that the defendant would induce the plaintiff's customers to take their business elsewhere constituted irreparable harm. *Id*. at 69.

Put differently, irreparable harm is "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). Because it is impossible for a court to restore a lost customer relationship or lost goodwill, these injuries constitute irreparable harm. *See Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, No. 07 Civ. 9580(HB), 2008 WL 594773, at *2-3 (S.D.N.Y. Mar. 5, 2008) (irreparable harm where "[p]laintiffs argue that if the shoes are sold to discount retailers, as they will be without an injunction, their high-end customers will cease doing business with them"). A host of other cases agree that damage to a plaintiff's ability to compete for customers or to its customer goodwill constitutes irreparable injury. *See, e.g., Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004); *Reuters, Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 908-09 (2d

- 9 -

Cir. 1990); *Mastercard Int'l, Inc. v. Fed'n Internationale de Football Ass'n*, 464 F. Supp. 2d

246, 301 (S.D.N.Y. 2006).

      2.     **The 2007 Amendments Will Cause Plaintiffs to Lose Customers and Goodwill**

     The 2007 Amendments will increase losses by denying Plaintiffs the ability to settle

below the full value of the claim. Declaration of Nancy R. Moore ("Moore Decl.") ¶¶ 4, 8-17.

They will increase claims handling costs by requiring Liberty Mutual to pay the high fee charged

by the ATF once it assumes responsibility for a claim. Moore Decl. ¶¶ 5, 18-21. And they will

reduce investment earnings by imposing a below-market yield rate on insurer reserves deposited

with the ATF. Moore Decl. ¶¶ 6, 22-25. An expert actuary at Liberty Mutual calculates that the

future costs of the 2007 Amendment are roughly $3 million annually, or, in the aggregate at net

present value, $122.5 million. Moore Decl. ¶ 27. These increased losses and costs will compel

Liberty Mutual to raise its rates above the levels that would have obtained absent the 2007

Amendments. Dwortz Decl. ¶ 12.

     The Amendments do not apply to the NYSIF or self-insurance and thus will have no

similar impact on Liberty Mutual's main competitors. Dwortz Decl. ¶¶ 6, 13. Because the

market for workers' compensation insurance is extremely price sensitive, an increase in relative

price is very likely to cause a significant number of customers to leave Liberty Mutual for the

NSYIF or self-insurance. *Id.* ¶ 14; *see also 414 Theater Corp. v. Murphy*, 499 F.2d 1155, 1160

(2d Cir. 1974) (increased costs cause irreparable economic injury).

     Customer loss will be aggravated by the lump-sum deposit requirement, which creates an

incentive for Liberty Mutual's large deductible policyholders to go elsewhere. Dwortz Decl.

¶ 15. Large deductible policies allow an employer to save money on premiums by setting the

deductible at a high enough level that it pays most claims. Hall Decl. ¶ 15. Because only the

largest companies can absorb so much risk, high-deductible policyholders tend to be Liberty

Mutual's largest clients. Dwortz Decl. ¶ 17.

     The 2007 Amendments will adversely affect these large clients on a cash-flow basis. All

insureds must secure their deductibles by maintaining loss funds in an escrow account and

replenishing them as they are depleted. But high-deductible policyholders have much more

money at stake. Previously, they paid out benefits on a biweekly basis over many years, slowing

the pace at which the escrow accounts needed to be replenished. Now, however, claims that fall

within the deductible will require an immediate, lump-sum deposit to the ATF and require the

employer to make an equally large payment to replenish the escrow account. The same claims

will not require a lump-sum deposit if the employer self-insures or insures with the NYSIF,

which will likely cause customers to turn to those alternatives. Dwortz Decl. ¶ 15.

     Transferring control over claims handling to the ATF will cost Liberty Mutual customers

even apart from its effect on rates. The Amendments thereby eliminate Liberty Mutual's ability

to offer the unique claims handling service that sets it apart from its competitors – especially the

state-owned NYSIF – and allows it to attract and retain customers. Indeed, Liberty Mutual's

claims handling constitutes almost all of the value that it provides to its high deductible

customers, because those customers are funding most payments and thus retaining most of the

risk. Dwortz Decl. ¶¶ 16-19. The loss of a unique product or offering that sets a company apart

in the marketplace is a paradigmatic example of irreparable injury. *See Reuters*, 903 F.2d at 907-

08; *Tom Doherty Assocs. v. Saban*, 60 F.3d 27, 37-38 (2d Cir. 1995); *Ticor*, 173 F.3d at 70-71.

    **D.**    **The 2007 Amendments Impose Direct Costs on Liberty Mutual That Are Irreparable by Money Damages Because They Are Impossible to Calculate**

     The Second Circuit has held that "irreparable harm may be found where damages are

difficult to establish and measure." *Register.com*, 356 F.3d at 404; *see also Interphoto Corp. v.*

*Minolta Corp.*, 417 F.2d 621, 622 (2d Cir. 1969). "This rule is necessary to avoid the unfairness of denying an injunction to a plaintiff on the ground that money damages are available, only to confront the plaintiff at a trial on the merits with the rule that damages must be based on more than speculation." *Tom Doherty Assocs.*, 60 F.3d at 38. Here, the 2007 Amendments will impose several direct costs on Liberty Mutual beyond loss of customers that are not amenable to precise calculation and thus constitute irreparable harm:

- Responding to the ATF's requests for claims information, which the insurer is statutorily obligated to do (WCL § 32(i)(4)), and coordinating claims handling with the ATF will impose administrative costs on Liberty Mutual that cannot be calculated precisely. Moore Decl. ¶ 29.

- The 2007 Amendments apply only to indemnity, not medical, benefits. Thus the ATF will have sole authority to settle indemnity claims and Liberty Mutual sole authority to settle medical claims. Liberty Mutual's inability to enter into package settlements of medical and indemnity claims will increase its losses by causing claimants to become less willing to settle their medical claims on a standalone basis. Coordinating with the ATF on settlement of the two different types of claims will impose additional costs. The size of these effects is impossible to calculate. *Id.* ¶¶ 30-31.

- Liberty Mutual will incur increased litigation costs. Because it can no longer settle PPD claims once a deposit has been made, Liberty Mutual is more likely to litigate disputed claims. The precise increase is unquantifiable. *Id.* ¶ 32.

### E.    The 2007 Amendments Will Cause Collateral Damage to Other Lines of Business That Is Irreparable

When an injury causes damage to a separate line of business, the Second Circuit has recognized that the injury is irreparable. *See Tom Doherty Assocs.*, 60 F.3d at 38 ("Where the loss of a product will cause . . . indeterminate losses in other business, the availability of money damages may be a hollow promise and a preliminary injunction appropriate."). Liberty Mutual offers a wide array of commercial insurance coverages beyond workers' compensation and affords better pricing to customers who purchase packages of coverage. Customers that drop Liberty Mutual's workers' compensation insurance in favor of NYSIF coverage or self-insurance

may face higher rates on the remaining coverages and, in reaction, switch to a competing carrier. Dwortz Decl. ¶ 20. As in *Tom Doherty*, "injunctive relief is appropriate" where the injury affects "business of the plaintiff beyond sales of that product [at issue]." 60 F.3d at 38.

### F.    A Preliminary Injunction Will Not Harm the ATF or Injured Workers

In contrast, a stay would not harm claimants. Liberty Mutual would remain obligated under its policies and the WCL to decide whether to pay or dispute claims, to make payment where undisputed, and to adjudicate disputed cases before the WCB. If anything, a preliminary injunction preserving Liberty Mutual's ability to settle claims after the classification award would expedite their handling, not retard it. And a preliminary injunction would not jeopardize Liberty Mutual's ability to pay claims. Liberty Mutual has the highest claims and financial ratings of any insurer. Claimants would continue to be protected by New York's insurer solvency regulation and the Security Fund. *See* Statement of Facts at 4.

## II.    PLAINTIFFS HAVE A SUBSTANTIAL PROBABILITY OF SUCCESS ON THE MERITS

### A.    The 2007 Amendments Violate the Contract Clause

The Contract Clause of Article I of the Constitution provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." U.S. Const. art. I, § 10, cl. 1. A three-part inquiry determines whether a state law unconstitutionally impairs contracts. "[T]he first inquiry must be whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978). Second, "[i]f the state regulation constitutes a substantial impairment, the State, in justification, must have a significant and legitimate public purpose behind the regulation." *Energy Reserves Group v. Kansas Power & Light Co.*, 459 U.S. 400, 411 (1983). Finally, if there is a legitimate

public purpose, the impairment must be "reasonable and necessary" to be to the attainment of that purpose. *United States Trust Co. of New York v. New Jersey*, 431 U.S. 1, 25 (1977).

### 1.  The 2007 Amendments Substantially Impair Plaintiffs' Contractual Rights

The inquiry to determine whether a state law substantially impairs contracts "has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *General Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992). Here, the answer to all three questions is yes.

Workers' compensation insurance policies, like other kinds of insurance, are contracts. Indeed, Plaintiffs' policies say exactly that: The policy "is a contract of insurance between you (the employer . . .) and us (the insurer . . . )." Exh. 1 to Hall Decl. In return for the employer's payment of a premium and other obligations, the insurer contractually assumes the risk that the employer must pay compensation to injured employees. *See* Statement of Facts at 3.

The 2007 Amendments operate retroactively to impair these contracts. The new requirements broadly apply to all *awards* made after July 1, 2007, not just to *policies* issued after that date. The length of time before awards are made on many PPD claims means that many post-July 1, 2007 awards will be for injuries that occurred under policies issued many years before. The 2007 law thus applies retroactively to insurance policies "executed before the effective date thereof . . . ." *Scarborough v. Travelers Ins. Co.*, 718 F.2d 702, 713 (5th Cir. 1983).

The 2007 Amendments impair some of the insurer's most important contractual rights – the right to an adequate premium and the right to investigate and settle claims covered by the contract. Insurers calculate premiums based on their expectations of future losses and expenses. Retroactive laws that upset those expectations impair the insurance contract:

- 14 -

These [pension] plans, like other forms of insurance, depend on the accumulation of large sums to cover contingencies. The amounts set aside are determined by a painstaking assessment of the insurer's likely liability. Risks that the insurer foresees will be included in the calculation of liability, and the rates or contributions charged will reflect that calculation. The occurrence of major unforeseen contingencies, however, jeopardizes the insurer's solvency and, ultimately, the insureds' benefits. Drastic changes in the legal rules governing pension and insurance funds, like other unforeseen events, can have this effect.

*Allied Structural Steel*, 438 U.S. at 246-47 (quoting *Los Angeles Dep't of Water & Power v.*

*Manhart*, 435 U.S. 702, 721 (1978)) (alteration in original, quotation marks omitted). Thus,

"impos[ing] a completely unexpected liability" operates to "nullif[y] express terms of the

company's contractual obligations." *Id.* at 247.

Here, a completely unexpected liability impairs the pricing provisions of Plaintiffs'

contracts in precisely the manner described by the Supreme Court. The 2007 Amendments are a

"major unforeseen contingency" that takes away the insurer's contractual right to settle claims at

reduced amounts after a deposit has been made to the ATF. The retroactive nullification of that

authority therefore increases – by $13.75 million – the losses the insurer expected at the time it

entered into the contractual agreement. Moore Decl. ¶ 17. Retroactive application of the 2007

Amendments also will add unexpected claims administration costs of $6.73 million and reduce

Plaintiffs' expected investment earnings by $12.87 million. Moore Decl. ¶¶ 21, 24.

In *In re Workers' Compensation Refund*, 46 F.3d 813 (8th Cir. 1995), the Eighth Circuit

struck down a Minnesota law that took away insurers' contractual right to retain premiums in

excess of losses and expenses. *Id.* at 818. The impact of retroactive application of the New

York amendments is virtually the same. Plaintiffs are denied their ability to retain premiums in

excess of the losses and expenses they anticipated at the time of contracting.

This impairment of contract is substantial, both qualitatively and quantitatively. The

2007 Amendments do not operate as a law of general applicability that burdens contracts only

- 15 -

incidentally. Rather, they are *specifically targeted* at insurers' contractual rights. *See Allied Structural Steel*, 438 U.S. at 248.

A measure of the substantiality of impairment is "the extent to which the insurance companies' reasonable contract expectations have been disrupted." *In re Workers' Comp. Refund*, 46 F.3d at 819. The 2007 legislation impairs Plaintiffs' most important contractual expectation – the losses they foresaw at the time they entered into their contracts. Just like the employer's pension plan contributions in *Allied Structural Steel*, Plaintiffs' premiums "were adequate when" calculated but "were not adequate when computed under" the retroactive statute. 438 U.S. at 246.

Another measure of substantial impairment is the magnitude of economic harm. Plaintiffs estimate that the aggregate impact of retroactive application of the 2007 Amendments is in excess of $33 million. Moore Decl. ¶ 26. On an individual insurer basis, that is greater than the economic impact of the retroactive legislation struck down in *In re Workers' Comp. Refund*, 46 F.3d at 817 (approximately $400 million spread over more than 30 insurers and their subsidiaries) and in *United States Fidelity & Guaranty Co. v. McKeithen*, 226 F.3d 412, 417 (5th Cir. 2000) ($45 million spread over 20 insurers and their subsidiaries).

Moreover, Plaintiffs have no means by which to recoup these unexpected losses and expenses. Insurance ratemaking is prospective. Rates are calculated solely to cover anticipated losses and expenses during the time period when the policy is in effect. Hall Decl. ¶¶ 12, 40. Because rates are regulated by the Superintendent of Insurance, N.Y. Ins. Law § 2303, attempts to recoup the additional losses through prospective rate increases will be disapproved.

Another measure of the substantiality of impairment is the length of time during which the new law is applied retroactively. Here, the period of retroactivity is extremely long. Awards

of compensation can be given to injured workers years and decades after issuance of the policy

that covers them. *See* Statement of Facts at 6. The prolonged period of retroactivity in this case

is at least as long as the 10 years in *Allied Structural Steel*, 438 U.S. at 234. *See* Moore Decl.

tbls. 3-5 (identifying affected claims from as far back as 1993).

Finally, the New York legislature made no effort to limit the impact of retroactivity. The

statute provides no means by which Plaintiffs can mitigate their additional liability, such as by

recouping losses through rate increases. *United States Fid. & Guar. Co.*, 226 F.3d at 417 (law

affords "no means to recoup the charge"). Nor did the legislature limit the time period of

retroactivity or provide for a "gradual phase-in period." *Id.*; *see also Allied Structural Steel*, 438

U.S. at 247 ("There is not even any provision for gradual applicability or grace periods.").

### 2. There Is No Legitimate Public Purpose Justifying the Retroactive Legislation

The "significant and legitimate public purpose" necessary to justify a law that

substantially impairs contractual rights means something more than a purpose sufficient to justify

***prospective*** regulation. Because the Contract Clause imposes a special limitation on ***retroactive***

regulation, the State's purpose must be compelling enough to warrant retroactivity. The general

rule is that the legislation must address a genuine economic or other emergency. *Allied*

*Structural Steel*, 438 U.S. at 242-43, 249; *see also Home Bldg. & Loan Ass'n v. Blaisdell*, 290

U.S. 398 (1934) (moratorium on mortgage foreclosures justified by the Great Depression); *Vesta*

*Fire Ins. Corp. v. Florida*, 141 F.3d 1427, 1433 (11th Cir. 1998) (wholesale insurer withdrawals

after Hurricane Andrew justified impairment of insurance contracts ); *Buffalo Teachers Fed'n v.*

*Tobe*, 464 F.3d 362 (2d Cir. 2006) (freeze on teachers' wages justified by fiscal crisis).

There is no such emergency here. Far from it, there is no problem at all. One purported

purpose of the 2007 Amendments was to protect injured workers from insurer insolvency. But

- 17 -

the New York legislature made no finding of an imminent threat of insurer bankruptcies and

there is no evidence that any such threat existed. Absent such findings or evidence, the State

cannot assert a significant and legitimate purpose. *See United States Fid. & Guar. Co.*, 226 F.3d

at 419 ("There are no indications in the law itself, in the legislative history, or in the record of

this case that the [workers' compensation reinsurance fund] was financially insecure . . . .");

*Nieves v. Hess Oil Virgin Islands Corp.*, 819 F.2d 1237, 1252 (3d Cir. 1987) ("While the need to

keep the workmen's compensation fund on a sound financial basis may justify prospective

legislation designed for that purpose, it cannot justify this type of retrospective legislation.").

Indeed, injured workers already are more than adequately protected against insurer insolvency by

the Security Fund and by the Superintendent of Insurance's rate-approving authority. And

insurers are far stronger financially than other providers of workers' compensation that were not

subjected to the 2007 Amendments. Hall Decl. ¶¶ 43-44.

Another supposed purpose of the 2007 Amendments "is to encourage private carriers to

settle cases that are destined for permanent partial disability classification." *Handbook* § 2.21.

But that objective surely does not rise to the level of an emergency that can justify retroactive

application. The legislature made no finding – and there are no facts – indicating a crisis

warranting retroactivity, such as a catastrophic failure in the system for adjudicating claims.

  **3. The Means Used by the State Were Not "Reasonable and Necessary"**

Even if the State had a legitimate public purpose, it did not pursue that objective by

reasonable and necessary means. "[A] State is not free to impose a drastic impairment when an

evident and more moderate course would serve its purposes equally well." *United States Trust*

*Co.*, 431 U.S. at 31.

The State, in fact, had several means of protecting the rights of injured workers that

would not have had the drastic impact of retroactive legislation. The deposit requirement could

have been applied only where the insurer was in a troubled financial condition that might jeopardize future payments. Or the legislature could have toughened New York's already stringent solvency regulation of insurers. Alternatively, the State could have imposed the new requirements retroactively only on those insurers that the Superintendent determined were in financial difficulty or had a low financial or claims rating by a rating agency.

Retroactive application of the 2007 Amendments is actually counterproductive to the goal of fostering settlements. As the leading treatise notes, the new deposit requirement "seems likely to produce many unintended consequences and substantial occasion for ancillary litigation." *Handbook* § 2.21. One such "unintended consequence" is an ***increased*** incentive for both the insurer and claimant to litigate rather than settle. If the insurer disputes the claim:

> the claimant has no entitlement to on-going indemnity benefits [and] then no payment would be due the ATF. Conversely, due to the new durational limits on PPD awards the claimant will likely engage in litigation designed to show total disability or at least maximize the [WCB's] finding on degree of permanent partial disability. The net result will likely be a considerable increase in litigation at the time of classification.

*Id.*; *see also* Hall Decl. ¶¶ 46-50. In any event, the State has ample means to encourage settlements without retroactive impairment of contracts. For example, the State could have strengthened the "conciliation" or mediation procedures before the WCB. Hall Decl. ¶ 51.

### 4.    Regulation of Workers' Compensation Insurers Is No Excuse for Retroactive Legislation

Defendants may argue that the extensive regulation of workers' compensation insurers should cause them to expect future changes in regulation and thus that the new law did not upset their contractual expectations. *See, e.g., United States Fid. & Guar. Co.*, 226 F.3d at 418. But "the mantra that insurance is a regulated industry will not cover all sins of retroactivity." *Id.*; *see also In re Workers' Comp. Refund*, 46 F.3d at 820 ("Courts have found substantial impairment of contracts in heavily regulated areas of commerce."). Retroactive legislation is so unusual and so

- 19 -

harsh that regulated companies are not deemed to be on notice of future changes absent a past

history of retroactive alterations in the same area of regulation. *See, e.g., In re Workers' Comp.*

*Refund*, 46 F.3d at 818-19; *Holiday Inns Franchising, Inc. v. Branstad*, 29 F.3d 383, 384-85 (8th

Cir. 1994); *Nieves v. Hess Oil Virgin Islands Corp.*, 819 F.2d at 1248. A rule allowing

retroactive application merely because insurers are regulated would "essentially deem[] all rights

or obligations in [insurer] contracts illusory, because these rights could always be changed or

obliterated." *In re Workers' Comp. Refund*, 46 F.3d at 819. Plaintiffs might have expected

prospective changes in the ATF provisions of the WCL, but there has been no prior history of

retroactive changes that could have put them on notice to expect the same.

## B.    The Amended Settlement Provisions Violate Due Process

### 1.    Plaintiffs Have Constitutionally-Protected Property Interests

The Due Process Clause applies to constitutionally-protected property interests. *See, e.g.,*

*Board of Regents v. Roth*, 408 U.S. 564, 578 (1972). Enforceable contract provisions are such

interests. They satisfy the Supreme Court's requirement that, "[t]o have a property interest . . . ,

a person clearly must have . . . more than a unilateral expectation of it. He must, instead, have a

legitimate claim of entitlement to it." *Id.* at 577.

In this case, Plaintiffs' insurance policies contain several provisions that rise to the level

of a constitutionally-protected property interest. One is the right to the premiums earned under

the policy out of which deposits are paid to the ATF. Premiums are the consideration paid by the

employer and thus are at the heart of the contractual bargain. *See, e.g., General Electric Co. v.*

*New York State Dep't of Labor*, 936 F.2d 1448, 1453 (2d Cir. 1991) ("[A] contractor has a right

to timely payment for work it performs under a contract with a state agency, and that . . . right is

a property interest protected by the due process clause.").

Plaintiffs also have a protected property interest in the reserves they set aside to pay claims and which must be deposited with the ATF. Money from a segregated fund is a well-recognized type of property. *See, e.g., Phillips v. Washington Legal Found.*, 524 U.S. 156 (1998); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980).

### 2.    The Denial of a Hearing Violates Due Process

When an insurer makes a deposit into the ATF, it deposits its own money, not the ATF's. Moreover, the insurer has a contractual right to settle claims against it. Thus, when the ATF settles a claim under the 2007 Amendments, the WCB approves the settlement, and the settlement amount is paid to the claimant, the ATF and WCB have taken actions that adversely affect the insurer's property interests. This kind of state action requires the government to afford the insurer due process. *See, e.g., Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

Due process guarantees that a property owner threatened with deprivation of his interest be afforded an opportunity to be heard. "This Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *see also Pinsky v. Duncan*, 898 F.2d 852, 854 (2d Cir. 1990) ("A 'root requirement' of due process is the right to a hearing before being deprived of a significant property interest"), *amended*, 907 F.2d 17 (2d Cir. 1990), *aff'd sub nom. Connecticut v. Doehr*, 501 U.S. 1, 9 (1991). Whether that hearing must be a formal adjudication or something less is determined by the balancing test in *Mathews*. But *some* type of hearing must be afforded.

Amended § 32 explicitly violates this fundamental principle of due process. The statute states that "no consultation or approval of any . . . insurance carrier . . . shall be required before [the ATF] may enter into any waiver agreement, or before the [WCB] may approve such waiver agreement." WCL § 32.

This denial of the right to be heard before both the ATF and WCB is compounded by an explicit statutory prohibition on judicial review of the WCB's decision. Section 23 of the WCL permits "any party in interest" to appeal "[a]n award or decision" of the [WCB] "to the appellate division of the supreme court, third department." WCL § 23. But § 32(c) explicitly prohibits an insurer from exercising this right when the WCB approves a settlement agreement: "A decision duly filed and served approving an agreement submitted to the [WCB] shall not be subject to review pursuant to Section twenty-three of this article." WCL § 32(c).

The denial of an opportunity to be heard is especially harmful because the ATF is not the impartial decision-maker to which every person deprived of a property interest is entitled. *See, e.g., Gibson v. Berryhill*, 411 U.S. 564 (1973) (adjudication by Board of Optometrists that might financially benefit from disqualifying competitors violated due process). The ATF is administered by the NYSIF – the largest workers' compensation insurer in the state and the main competitor of Plaintiffs and other private carriers. The ATF thus has an incentive to make decisions that would financially benefit it – keeping amounts in excess of settlements – or its administrator – by disadvantaging competing insurers. The absolute prohibition on a hearing and review by the independent judiciary means that there is no check whatsoever on self-interested decision-making by the ATF.

**C.    The 2007 Amendments to Section 27 Violate the Equal Protection Clause**

      **1.    The Amendments Do Not Serve a Legitimate Public Purpose But Only the Commercial Interests of the NYSIF**

The 2007 Amendments expanding the deposit requirement of § 27 draw a classification distinguishing private insurers from the NYSIF. The State Fund is the only insurer exempt from the new requirements.

State laws that draw classifications for the purpose of imposing different regulatory treatment must serve a legitimate public purpose. For example, in *Metropolitan Life Insurance Co. v. Ward*, 470 U.S. 869 (1985), the Supreme Court determined that a state tax preference for domestic insurers over foreign ones did not serve a legitimate state interest:

> Alabama's aim to promote domestic industry is purely and completely discriminatory, designed only to favor domestic industry within the State, no matter what the cost of foreign corporations also seeking to do business there. Alabama's purpose . . . constitutes the very sort of parochial discrimination that the Equal Protection Clause was intended to prevent.

*Id.* at 878.

The 2007 Amendments constitute similar "parochial discrimination." They serve a competitive and commercial purpose, not a public one. The new law places burdensome new deposit requirements on competing insurers and takes away their right to settle claims but exempts the State Fund from those provisions even though it sells the same insurance. The principal effect of the 2007 Amendments is therefore to impose a severe competitive handicap on the NYSIF's private competitors:

> The requirement that private carriers pay the present value of future indemnity awards into the ATF for all permanent partial disability findings made after 7/1/07 is expected to have a substantial and disproportionate impact on private insurance carriers in New York. Since payment into the ATF is required of private insurance carriers, but not . . . the State Insurance Fund [which administers ATF], private carriers may be put at a substantial competitive disadvantage when compared to . . . the State Insurance Fund.

*Handbook* § 2.21 (alteration in original).

As both the Supreme Court and Second Circuit have emphasized in the related Contract Clause context, less deference is due to state laws that discriminate in favor of the pecuniary or competitive self-interests of the State. *See, e.g., United States Trust Co.*, 431 U.S. at 26 ("[C]omplete deference to a legislative assessment of reasonableness and necessity is not appropriate [where] the State's self-interest is at stake."); *Ass'n of Surrogates & Supreme Court*

*Reporters v. New York*, 940 F.2d 766, 771 (2d Cir. 1991) ("[B]ut courts are not so deferential when the state's legislation is self-serving . . . . In this situation, a more searching analysis . . . is appropriate."). Here, exempting the NYSIF from the expanded deposit requirement serves no purpose other than to confer a substantial competitive advantage on the State Fund and thus promotes only the State's parochial commercial interests.

### 2. There Is No Rational Basis for Burdening Insurers More Than Self-Insured Employers

The 2007 Amendments to § 27 also establish a second classification. Insurers are subject to the new deposit requirement, but self-insured employers are not. This distinction is completely irrational and thus violates the Equal Protection Clause.

A state law enacted in pursuit of a legitimate public purpose will withstand scrutiny if the classifications it makes rationally advance that purpose. *See, e.g., Nordlinger v. Hahn*, 505 U.S. 1, 11-12 (1992). But this "rational basis" test is not a blank check for state legislatures. A law can be struck down where the distinction it makes is completely irrational. *See, e.g., Allegheny Pittsburgh Coal Co. v. County Comm'n*, 488 U.S. 336 (1989) (striking down property tax law because of arbitrary basis for assessments).

Here, there is no rational basis for the distinction between insurers and self-insured employers, even assuming that the 2007 Amendments pursue a legitimate public purpose. If the State's purpose is to secure the payment of benefits to injured workers, it is wholly irrational to impose more onerous requirements on insurers than on self-insured employers. The risk of employer bankruptcy is substantially greater than that of insurer insolvency, and thus the 2007 Amendments got it exactly backwards. New York has multiple layers of protection against insurer solvency – solvency regulation, rate regulation and the Security Fund – but no similarly comprehensive protections against employer bankruptcy. *See* Statement of Facts at 4. Thus,

there is no conceivable rationale for subjecting insurers to a new insolvency protection scheme that is not also imposed on self-insured employers.

This is borne out by recent events. A number of "group self-insured trusts" – a vehicle by which employers can band together to self-insure – have become insolvent, leading to litigation over the WCB's authority to assess solvent trusts. Hall Decl. ¶ 44 & Exh. 2.

Nor do the 2007 Amendments rationally advance the goal of creating an incentive to settle claims. There is no basis upon which the legislature could have concluded that insurers are less prone to settle than are self-insured employers. But even were insurers less likely to settle, the 2007 Amendments cannot be rationally justified because they, in fact, discourage rather than promote settlement. *See supra* at 19; Hall Decl. ¶¶ 45-51.

Moreover, the settlement provisions of the 2007 Amendments are internally contradictory. One provision requires the insurance carrier to make a settlement offer within two years after a claim is received and "indexed" by the WCB or six months after the claimant is classified with a permanent partial disability, whichever is later. WCL § 32(a). But, the requirement that an insurer make a deposit to the ATF divests the insurer of the authority to settle after the deposit is made. Thus, the deposit requirement irrationally undermines those elements of the 2007 Amendments that actually promote settlements.

## CONCLUSION

For the foregoing reasons, defendants and those acting in concert with them should be preliminarily enjoined from enforcing the 2007 Amendments to WCL §§ 27 and 32.

Dated: New York, New York
       August 12, 2008

Respectfully submitted,
STEPTOE & JOHNSON LLP

By: _____
    Michael C. Miller
    Evan Glassman
    750 Seventh Avenue
    New York, N.Y.  10019
    (212) 506-3900

    Mark F. Horning
    (*pro hac vice* application pending)
    Jeffrey M. Theodore
    (*pro hac vice* application pending)
    1330 Connecticut Avenue, NW
    Washington, D.C.  20036
    Tel:  (202) 429-3000

    *Attorneys for Plaintiffs*