UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

LIBERTY MUTUAL INSURANCE :
COMPANY, et al.,

                         :      08-CV-7192 (DC)

              Plaintiffs,

                         :      Electronically Filed

     - against -

                         :

ROBERT H. HURLBUT, et al., 

                         :

             Defendants.

                         :

-------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF THEIR MOTION TO DISMISS AND IN OPPOSITION
## TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

ANDREW M. CUOMO
Attorney General of the
 State of New York
Attorney for Defendants
120 Broadway
New York, New York 10271
(212) 416-8560

BARBARA K. HATHAWAY
MARK D. ROSENZWEIG
Assistant Attorneys General
 Of Counsel

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

The Workers' Compensation System . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    Background and Purpose of Workers' Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    Procedural Framework Governing Workers' Compensation Claims . . . . . . . . . . . . . . . . 3

    Workers' Compensation Reform Act of 2007 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Plaintiffs' Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Standards Governing These Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Preliminary Injunction Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Facial Challenges To Statutes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    Motions To Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

POINT I     ABSTENTION IS REQUIRED UNDER YOUNGER v. HARRIS . . . . . . . . . . 9

POINT II    THE AMENDMENTS REQUIRING DEPOSITS INTO THE
          AGGREGATE TRUST FUND AND GIVING ATF SETTLEMENT
          AUTHORITY DO NOT VIOLATE THE CONTRACT CLAUSE . . . . . . . . . . 10

POINT III   THE STATUTORY AMENDMENTS DO NOT CONSTITUTE
          A TAKING OF PROPERTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

POINT IV   THE STATUTORY AMENDMENTS DO NOT VIOLATE THE
          SUBSTANTIVE DUE PROCESS CLAUSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

POINT V     THE DEPOSIT REQUIREMENT DOES NOT VIOLATE EQUAL
            PROTECTION BECAUSE THERE IS A RATIONAL BASIS TO
            TREAT SIF AND SELF-INSURED EMPLOYERS DIFFERENTLY . . . . . . . . 22

POINT VI    THE AMENDMENTS GIVING ATF SETTLEMENT AUTHORITY
            DO NOT DEPRIVE PLAINTIFFS OF DUE PROCESS . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

**Cases**                                                               **Page**

Albright v. Oliver,
510 U.S. 266 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Allied Structural Steel Co. v. Spannaus,
438 U.S. 234 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Board of Regents v. Roth,
408 U.S. 564 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Bell Atlantic Corp. v. Twombly,
127 S. Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Buffalo Teachers Fed'n v. Tobe,
464 F.3d 362 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

City of New Orleans v. Dukes,
427 U.S. 297 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Connolly v. Pension Benefit Guar. Corp.,
475 U.S. 211 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Diamond "D" Constr. Corp. v. McGowan,
282 F.3d 191 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Energy Reserves Group, Inc. v. Kansas Power & Light Co.,
459 U.S. 400 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Federal Home Loan Mortgage Corp. v. New York State Div. of Hous. and Cmty.
Renewal,
83 F.3d 45 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Forest City Daly Hous., Inc. v. Town of N. Hempstead,
175 F.3d 144 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Garelick v. Sullivan,
987 F.2d 913 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

General Motors Corp. v. Romein,
503 U.S. 181 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

Graham v. Connor,
490 U.S. 386 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Greenberg v. New York City Transit Auth.,
 7 N.Y.3d 139 (2006) ........................................................ 3

Gronne v. Abrams,
 793 F.2d 74 (2d Cir. 1986) ................................................... 8

Harrison and Burrowes Bridge Constructors, Inc. v. Cuomo,
 743 F. Supp. 977 (N.D.N.Y. 1990) ............................................ 7

Hip-Hop Summit Action Network v. New York Temp. State Comm'n on Lobbying,
 2003 U.S. Dist. LEXIS 21229 (S.D.N.Y. Nov. 25, 2003) ......................... 9

Hudson Water Co. v. McCarter,
 209 U.S. 349 (1908) ....................................................... 11

JSG Trading Corp. v. Tray-Wrap, Inc.,
 917 F.2d 75 (2d Cir. 1990) ................................................... 6

Jensen v. S. Pac. Co.,
 215 N.Y. 514 (1915), rev'd on other grounds, 244 U.S. 205 (1917) ................ 3

Johannesen v. New York City Dep't of Hous. Pres. and Dev.,
 84 N.Y.2d 129 (1994) ....................................................... 3

Keystone Bituminous Coal Ass'n v. DeBenedictis,
 480 U.S. 470 (1987) ............................................... 13, 16, 19

Liberty Mut. Ins. Co. v. Whitehouse,
 868 F. Supp. 425 (D.R.I. 1994) .......................................... 12, 14

Little v. Streater,
 452 U.S. 1 (1981) ......................................................... 24

Livant v. Clifton,
 334 F. Supp. 2d 321 (E.D.N.Y. 2004), aff'd, 272 Fed. Appx. 113, 2008 U.S.
 App. LEXIS 7377 (2d Cir. 2008) ............................................ 18

Mathews v. Eldridge,
 424 U.S. 319 (1976) ....................................................... 24

Matter of Petrie,
 215 N.Y. 335 (1915) ........................................................ 3

Meriden Trust & Safe Deposit Co. v. FDIC,
 62 F.3d 449 (2d Cir. 1995) ................................................. 19

Methodist Hosp. of Brooklyn v. State Ins. Fund,
  64 N.Y.2d 365 (1985) .................................................. 22

Moore v. Consolidated Edison Co. of N.Y. Inc.,
  409 F.3d 506 (2d Cir. 2005) ............................................. 6

Murphy v. New Milford Zoning Comm'n,
  402 F.3d 342 (2d Cir. 2005) ............................................. 18

New York State Trawlers Ass'n v. Jorling,
  16 F.3d 1303 (2d Cir. 1994) ............................................. 22

Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.,
  477 U.S. 619 (1986) .................................................... 9

Patane v. Clark,
  508 F.3d 106 (2d Cir. 2007) ............................................. 8

Plaza Health Laboratoriess, Inc. v. Perales,
  878 F.2d 577 (2d Cir. 1989) ............................................. 7

Post v. Burger & Gohlke,
  216 N.Y. 544 (1916) .................................................... 3

R.E. Sheehan Co. v. Shuler,
  265 U.S. 371 (1924) .................................................... 3

Spargo v. N.Y. State Comm'n on Judicial Conduct,
  351 F.3d 65 (2d Cir. 2003) ............................................. 9, 10

Story v. Green,
  978 F.2d 60 (2d Cir. 1992) ............................................. 22

Time Warner Cable v. Bloomberg L.P.,
  118 F.3d 917 (2d Cir. 1997) ............................................. 7

Tinnerello & Sons, Inc. v. Town of Stonington,
  141 F.3d 46 (2d Cir. 1998) ............................................. 12, 13

United States v. Salerno,
  481 U.S. 739 (1987) .................................................... 8

Usery v. Turner Elkhorn Mining Co.,
  428 U.S. 1 (1976) ..................................................... 21

Vandor, Inc. v. Militello,
301 F.3d 37 (2d Cir. 2002) .............................................. 18

Ward v. New York,
291 F. Supp. 2d 188 (W.D.N.Y. 2003) ................................... 7

Washington State Grange v. Washington State Republican Party,
128 S. Ct. 1184 (2008) ................................................. 8

Williamson County Reg'l Planning Comm'n v. Hamilton Bank,
473 U.S. 172 (1985) .................................................. 18

Younger v. Harris,
401 U.S. 37 (1971) .................................................... 9

**Federal Rules**

Fed.R.Civ. P. 12(b)(1) ..................................................... 18

N.Y. Workers' Comp. Law § 20(1) ..........................................3, 5
N.Y. Workers' Comp. Law § 27(2) .............................................5
N.Y. Workers' Comp. Law § 27(6) ............................................ 12

**Other Authorities**

Erwin Chemerinsky, Constitutional Law Principles and Policies,
at 614 (2d ed. 2002) ................................................... 17

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

### Preliminary Statement

Defendants, the Commissioners of the New York State Insurance Fund ("SIF") and members of the Workers' Compensation Board (the "Board"), respectfully submit this memorandum of law in support of their motion to dismiss the complaint and in opposition to the plaintiffs' motion for a preliminary injunction. This action is a facial constitutional challenge to two aspects of the comprehensive 2007 Workers' Compensation Reform Act. Liberty Mutual Insurance Company and its affiliates ("Liberty Mutual") claim that the requirement that they deposit the present day value of certain workers' compensation claims into a state administered fund, the Aggregate Trust Fund ("ATF") - deposits which were always within the Board's discretion to order - constitutes an impairment of contract and a taking of property without due process and violates their right to equal protection.

First, this Court must abstain because plaintiffs have administrative remedies and judicial review available in which they can raise their claims. Second, plaintiffs have no likelihood of success and fail to state a claim because plaintiffs, operating in the highly regulated insurance industry, had no reasonable expectation that they would not be subject to such a requirement, and because the statute serves the important public purpose of ensuring the financial stability of the ATF and promoting efficiency and lower costs in the workers' compensation system, to the benefit of injured workers. The provision requiring deposits into the ATF does not violate the plaintiffs' equal protection rights because there is a rational basis not to make such deposits mandatory for SIF and self-insured employers. SIF, a State agency, has the backing of the State, and self-insured employers are subject to other and different extensive regulation.

Plaintiffs' additional claim that the statutory amendment permitting the ATF to settle

claims with the deposits made to the ATF deprives them of procedural due process is similarly
without merit. The insurance companies not only have ample avenues to challenge any order
requiring such a deposit, through administrative appeals and judicial review, but they also have
ample time in which they are free to enter into a settlement before any deposit is made; indeed,
they are statutorily mandated to make an offer to the claimants during this period. Moreover, they
receive notice from SIF of any proposed settlements. Insurers therefore have an opportunity to be
heard on whether and for how much a claim is settled before the deposit is made. This provision
serves the important public purpose of encouraging early settlements. Plaintiffs fall woefully short
of meeting their heavy burden of pleading a claim that a statute regulating economic and social
matters is unconstitutional on its face, especially in the heavily-regulated area of workers'
compensation insurance.

In short, while the challenged provisions may alter the timing of insurance companies'
obligation to pay claims and engage in settlement negotiations, in order to promote legitimate
public policies, they do not substantially alter plaintiffs' rights under their insurance contracts.

## STATEMENT OF FACTS

### The Workers' Compensation System

#### Background and Purpose of Workers' Compensation

As is widely recognized, workers' compensation systems are intended to protect both
employees and employers, as well as society generally, by providing compensation for workers
who are injured in the course of their employment. Workers' compensation replaces the common
law tort system, in which a worker is required to prove the employer's negligence or fault in order
to receive compensation for a work-related injury, with a system of strict liability - but one which
limits the employer's liability. As the New York State Court of Appeals explained soon after

2

workers' compensation legislation was enacted in New York, the law "protects both employer and employee, the former from wasteful suits and extravagant verdicts, the latter from the expense, uncertainties and delays of litigation in all cases and from the certainty of defeat if unable to establish a case of actionable negligence." Jensen v. S. Pac. Co., 215 N.Y. 514, 524 (1915), rev'd on other grounds, 244 U.S. 205 (1917). Workers' compensation systems are enacted "as a means of protecting workingmen and their dependents from want in case of injury...." Post v. Burger & Gohlke, 216 N.Y. 544, 553 (1916), quoted in Johannesen v. New York City Dep't of Hous. Pres. and Dev., 84 N.Y.2d 129, 134 (1994). See also Matter of Petrie, 215 N.Y. 335, 338 (1915) ("The underlying thought was that such a system of compensation would be in the interest of the general welfare by preventing a workman from being deprived of means of support as the result of an injury received in the course of his employment"). Insurance systems, including workers' compensation, have long been subject to extensive regulation. See, e.g. Greenberg v. New York City Transit Auth., 7 N.Y.3d 139, 145-46 (2006) (Read, J., dissenting)(describing history of the statute); R.E. Sheehan Co. v. Shuler, 265 U.S. 371 (1924).

### Procedural Framework Governing Workers' Compensation Claims

Workers' compensation claims are subject to extensive procedures, including quasi-judicial hearings before Workers' Compensation Law Judges, administrative review, and appeals to state court. After a claim for compensation is made, either party may request a hearing, at which they may present evidence and be represented by counsel. N.Y. Workers' Comp. Law § 20 (1). Once a decision is made on the claim, either party may, within 30 days, file an application with the Board for review of the decision. N.Y. Workers' Comp. Law § 23. After a panel of the Board renders a decision, the parties have the right to seek full Board review and appeal to the Appellate Division of the New York State Supreme Court, Third Department. Id. However, if

3

there is a dissent from the decision by the Board panel, the parties may seek review by the full

Board. Id. In cases involving an ATF deposit, an initial decision is issued stating that a deposit is

to be made, with the calculation of the present value to follow. After the calculation, a

supplemental decision is made, specifying the precise amount to be deposited. An insurer may

appeal the order requiring the deposit after the initial decision, and may appeal the amount of the

award after the supplemental decision. Declaration of Reuben Epstein, ¶¶ 9-11.

### Workers' Compensation Reform Act of 2007

In March, 2007, the Governor signed legislation enacting comprehensive reforms to the

workers' compensation system. The workers' compensation system had been widely regarded as

unduly inefficient and costly, impeding economic growth and job creation due to the high costs of

workers' compensation insurance. Accordingly, the Workers' Compensation Reform Act (the

"Act") included numerous provisions designed to achieve greater efficiencies or cost savings, and

to ensure that more of the monies going into the system were directed to injured workers in the

form of adequate benefits. The Act increased maximum and minimum benefits for injured

workers, while capping the length of time workers classified as non-scheduled permanently

partially disabled receive benefits; dramatically reduced costs in the workers' compensation

system by, for example, authorizing carriers to contract with a network of medical providers and

facilities; and provided enhanced measures to combat fraud. One overall purpose of the reforms

was to lower insurance premiums by reducing costs and combating fraud. Declaration of Zachary

S. Weiss, Ex. A, 2 - 3. As explained in the statement in support of the bill, this "landmark

legislation reforms the state's workers compensation system by significantly increasing benefits

for injured workers and eliminating hundreds of millions of dollars of system costs, monies that

will be passed through to employers in the form of premium reductions overseen by the

4

Superintendent of Insurance. For too long, despite the high costs paid by New York employers, injured workers have failed to receive sufficient benefits." Weiss Decl., Ex. A, p. 12 - 13.

In the context of this comprehensive, extensive legislation, plaintiffs challenge two specific provisions. Prior to the Act, the Board had the discretion to order discretionary deposits, including of the present value of all permanent partial disability ("PPD") awards into the ATF, and has issued discretionary orders on a number of occasions. Weiss Decl. ¶ 28. The 2007 Act requires the deposit of the present value of all PPD awards, in order to improve the financial condition of the ATF. N.Y. Workers' Comp. Law § 27(2). Insurers retain all of their rights to be heard on an order requiring a deposit at an administrative hearing and through administrative review. Insurers may then seek judicial review. SIF is not subject to this mandatory deposit, as it has the backing of the State to ensure it can meet its obligations. Self-insured employers also are not subject to this deposit. They are heavily regulated in other ways. Weiss Decl. ¶¶ 32 - 41.

The Reform Act also gave the ATF the authority to settle claims from the deposited funds. N.Y. Workers' Comp. Law § 32(a). While the ATF is not required to consult with insurers on such settlements and approved settlements are not subject to review, insurers retain the opportunity to negotiate settlements before making the deposit, which is generally at least a two-year period. Indeed, insurers are now statutorily mandated to make an offer of settlement. The amended statute provides that "Every insurance carrier ... shall offer each claimant the opportunity to enter into an agreement settling upon and determining the compensation and other benefits due, in the case of disability, within two years after the date the claim was indexed by the board or six months after the claimant is classified with a permanent disability, whichever is later..." N.Y. Workers' Comp. Law § 32 (a). While insurers will not receive a refund after a settlement if all of the funds are not used, a refund is available if the award is modified. Weiss Decl. ¶ 49.

**Plaintiffs' Claims**

In this action, plaintiffs claim that retroactive application of the ATF deposit provision

violates the contract clause, constitutes a taking without just compensation, and violates the

substantive due process clause. They further claim that because the provision does not apply to

SIF and self-insured employers, it violates the equal protection clause. They claim that the

provision giving the ATF authority to settle claims deprives them of procedural due process.

Plaintiffs allege that these provisions have an adverse impact upon them in a number of ways. For

example, they claim that the Act deprives them of the opportunity to settle for less than the amount

of the deposit, despite the lengthy period of time in which they can settle claims before a deposit is

ordered. They claim that they will lose investment income because the discount rate used to

calculate the present value is less than what they could earn, although the rate used is the industry

standard interest rate. Epstein Aff., ¶ 5-6.

**ARGUMENT**

**Standards Governing These Motions**

  **Preliminary Injunction Standard**

Plaintiffs have failed to make the high showing necessary to enjoin a statute enacted by the

duly elected legislature of the State of New York: a statute designed to protect injured workers by

making the workers' compensation system more efficient and financially stable. A preliminary

injunction is an "extraordinary and drastic remedy, one that should not be granted unless the

movant, by a clear showing, carries the burden of persuasion." Moore v. Consol. Edison Co. of

N.Y. Inc., 409 F.3d 506, 510 (2d Cir. 2005) (citations omitted). See also JSG Trading Corp. v.

Tray-Wrap, Inc., 917 F.2d 75, 80 (2d Cir. 1990). In order to obtain a preliminary injunction a

party must show 1) a threat of irreparable injury and 2) either a probability of success on the merits

6

or sufficiently serious questions going to the merits to make them a fair ground for litigation, and a
balance of hardships tipping decidedly in favor of the moving party. Time Warner Cable v.
Bloomberg L.P., 118 F.3d 917, 923 (2d Cir. 1997).

However, where the movant seeks to enjoin government action taken in the public interest
pursuant to a statutory scheme, it must satisfy the higher "likelihood of success on the merits"
standard. Forest City Daly Hous., Inc. v. Town of N. Hempstead, 175 F.3d 144, 149 (2d Cir.
1999); Plaza Health Labs., Inc. v. Perales, 878 F.2d 577, 580 (2d Cir. 1989); Ward v. New York,
291 F. Supp. 2d 188, 196 (W.D.N.Y. 2003). Because legislation developed through a
presumptively reasoned democratic process is entitled to a higher degree of deference and should
not be enjoined lightly, a party seeking to enjoin implementation of a statute enacted by the State's
duly elected legislature carries an especially high burden - it must show a substantial likelihood of
success on the merits, such that it is considerably more likely to succeed than fail. Ward, 291 F.
Supp. 2d at 196; Harrison and Burrowes Bridge Constructors, Inc. v. Cuomo, 743 F. Supp. 977,
995 (N.D.N.Y. 1990).

The Court should also consider whether plaintiffs unduly delayed moving for extraordinary
preliminary injunctive relief. Here, plaintiffs admit that, although the amendments were passed in
March, 2007, and were effective in July, 2007, more than one year ago, they delayed moving for a
preliminary injunction simply because they hoped that a bill to repeal some of the statutory
amendments would be enacted. Compl. ¶ 39. Not only does this show that the proper forum for
this challenge is in the legislature, but this is an insufficient reason to have delayed seeking relief
for nearly a year and a half.

**Facial Challenges To Statutes**

Plaintiffs bear an especially heavy burden here because they attack the constitutionality of

7

the statute on its face. A plaintiff can succeed on a facial challenge only by showing that no set of circumstances exists under which the statute would be valid; in other words, that the statute is unconstitutional in all of its applications. United States v. Salerno, 481 U.S. 739 (1987). A facial challenge must fail where the statute has a "plainly legitimate sweep." Washington State Grange v. Washington State Republican Party, 128 S. Ct. 1184, 1190 (2008). In Washington State Grange, the Court explained that facial challenges are disfavored for a number of reasons. They often rest on speculation, they run counter to fundamental principles of judicial restraint counseling that Courts should not rule on constitutional questions in broader terms than required by the facts of the case before it, and they "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." Id. at 1191. Moreover, in "the area of economic or social welfare, legislation not involving suspect classifications or touching on fundamental interests is presumed constitutional ..." Gronne v. Abrams, 793 F.2d 74, 77 (2d Cir. 1986).

### Motions To Dismiss

Plaintiffs also fail to state a claim upon which relief can be granted. Abandoning the previous standard, the Supreme Court recently held that, in order to withstand a motion to dismiss, a complaint must meet a standard of plausibility. The complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face," and may not rely on mere labels or "formulaic recitation[s] of the elements of a cause of action ..." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65, 1974 (2007). See also Patane v. Clark, 508 F.3d 106 (2d Cir. 2007). Especially given the high standards plaintiffs must meet on a facial challenge, and the highly deferential standards applied to economic and social regulation, plaintiffs' complaint fails as a matter of law.

8

## POINT I

### ABSTENTION IS REQUIRED UNDER YOUNGER v. HARRIS

This Court must abstain from hearing this action under the principles announced in

Younger v. Harris, 401 U.S. 37 (1971), because there are administrative proceedings pending,

through which plaintiffs may challenge the constitutionality of the Workers' Compensation

Reform Act. "Younger generally requires federal courts to abstain from taking jurisdiction over

federal constitutional claims that involve or call into question ongoing state proceedings."

Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002).

Younger abstention is required where 1) there is an ongoing state proceeding, 2) an

important state interest is implicated in that proceeding, and 3) plaintiff has an adequate

opportunity for judicial review of the federal constitutional claims in that proceeding. Diamond

"D" v. McGowan, 282 F.3d at 198; Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d

65 (2d Cir. 2003); Hip-Hop Summit Action Network v. New York Temp. State Comm'n on

Lobbying, 2003 U.S. Dist. LEXIS 21229 (S.D.N.Y. Nov. 25, 2003). Younger abstention is based

upon the respect due to the proceedings of co-equal sovereigns under our system of federalism,

and the notion that "in the ordinary course, 'a state proceeding provides an adequate forum for the

vindication of federal constitutional rights.'" Diamond "D" v. McGowan, 282 F.3d at 198

(citations omitted). Younger fully applies to administrative proceedings. Ohio Civil Rights

Comm'n v. Dayton Christian Schs., Inc., 477 U.S. 619 (1986). Finally, where Younger abstention

applies, it is mandatory, and dismissal is required. Hip-Hop, 2003 U.S. Dist. LEXIS 21229, at *

18.

Here, all the requirements for abstention are met. There is an ongoing State proceeding, as

plaintiffs have filed over 20 administrative appeals from orders requiring an ATF deposit. See

9

Weiss Decl. ¶ 63. Moreover, plaintiffs may file appeals from such orders in State court.

Nor can there be any doubt that important State interests are involved. The interest in seeing that injured workers are compensated through an efficient and adequately-funded workers' compensation system, that operates at as low cost as possible, inures to the benefit of workers, employers, and to the entire State economy.

Plaintiffs also have an adequate opportunity to raise their claims in the State forum. Indeed, in at least one case the Workers' Compensation Board addressed constitutional challenges to the Reform Act. See Weiss Decl. ¶ 66. Moreover, plaintiffs could assert their claims in an appeal to the Appellate Division, following administrative review. Federal courts should abstain unless state law clearly bars raising federal constitutional claims, and plaintiffs must show that the State's laws and procedures are inadequate. Moreover, the ability to raise constitutional claims in subsequent judicial review of an administrative proceeding is in itself sufficient to invoke Younger abstention. Spargo, 351 F.3d at 78 - 79.

Because all of the requirements for Younger abstention are present, plaintiffs have no likelihood of success; their motion for a preliminary injunction must be denied and the complaint must be dismissed.

## POINT II

## THE AMENDMENTS REQUIRING DEPOSITS INTO THE AGGREGATE TRUST FUND AND GIVING ATF SETTLEMENT AUTHORITY DO NOT VIOLATE THE CONTRACT CLAUSE

The contract clause leaves the States wide authority to regulate for valid public purposes, and federal courts should defer to State legislative judgments as to the necessity and reasonableness of such regulation. The Supreme Court has explained that "it is to be accepted as a commonplace that the *Contract Clause* does not operate to obliterate the police power of the

10

States. ... '[It] does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected.'" Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 241 (1978) (citations omitted). As Justice Holmes explained, "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them." Hudson Water Co. v. McCarter, 209 U.S. 349, 357 (1908), quoted in Allied Steel, 438 U.S. at 241- 42.

Here, plaintiff insurance companies were plainly on notice that, as part of operating in a heavily-regulated industry, they could be required to deposit the present value of PPD awards into the ATF; indeed, discretionary deposits have been ordered in a variety of cases in the past. Weiss Decl. ¶ 28. Because such deposits serve the irrefutably valid purpose of lowering the costs of the workers' compensation system and ensuring that injured workers are adequately compensated, the statutory amendment requiring deposits into the ATF does not unconstitutionally impair plaintiffs' contractual rights. Similarly, where insurance companies have ample opportunity to enter into settlements before an ATF deposit is made, and the provision granting ATF the authority to enter into settlements furthers the valid purpose of encouraging prompt settlements and lowering administrative costs, the amendment regarding settlements does not substantially impair any contractual expectations. In the end, these two statutory reforms do no more than, at the most, require that insurers do what they already do, pay claims and negotiate settlements, at an earlier time than they might otherwise have.

Where a state statute is alleged to violate the contract clause in its impact on private contracts, the following test applies: 1) is there a substantial impairment of a contractual relationship, 2) if so, does the provision at issue serve a significant and legitimate public purpose,

11

and 3) are the means used reasonably related to furthering that public purpose.[1] See generally Tinnerello & Sons, Inc. v. Town of Stonington, 141 F.3d 46 (2d Cir. 1998). Only once in the modern era, after 1934, has the Supreme Court struck down a State law as an impairment of private contract, and that was in an area that had been subject to *no* previous State regulation. See Allied Steel. In a heavily regulated industry such as insurance, contract clause claims have met with little success.

First, the contract clause "is not implicated unless there is a 'contractual agreement regarding the specific ... terms' allegedly impacted by the statute in question." Liberty Mut. Ins. Co. v. Whitehouse, 868 F. Supp. 425, 430 (D.R.I. 1994), citing General Motors Corp. v. Romein, 503 U.S. 181 (1992).

Where a contractual term is affected, to determine whether the law *substantially* impairs a contractual relationship, the Court has employed a sliding scale, whereby "the severity of the impairment is said to increase the level of scrutiny to which the legislation will be subjected." In determining the extent of the impairment, courts must consider "whether the industry the complaining party has entered has been regulated in the past." Energy Reserves Group, Inc. v. Kansas Power & Light Co., 459 U.S. 400, 411 (1983). See also Allied Steel, 438 U.S. at 245.

Only if the state law constitutes a substantial impairment does the Court need to consider whether there is a significant and legitimate public purpose, such as remedying a broad and general social or economic problem. Contrary to plaintiffs' arguments, the Court has repeatedly made clear that the law need not be enacted to respond to an emergency. Energy Reserves, 459 U.S. at

---

[1] A more rigorous standard applies when the government seeks to alter its own obligations under contracts to which it is a party. Here, the State is not "welching" on its own contract or acting in its self-interest. Cf. Buffalo Teachers Fed'n v. Tobe, 464 F.3d 362 (2d Cir. 2006). It is noteworthy that the ATF must be kept separate from other SIF funds. N.Y. Workers' Comp. Law § 27(6).

12

412; Allied Steel, 438 U.S. at 250 n. 24.

Finally, the Court examines the means used - whether the "adjustment of 'the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying'" the legislation. As is generally true in reviewing economic and social legislation, the Court defers to the legislative judgment "as to the necessity and reasonableness of a particular measure." Energy Reserves, 459 U.S. at 412 - 13. Contrary to plaintiffs' contention, it is irrelevant that there may be "less restrictive means." Compl. ¶ 69. As the Second Circuit has stated, "it is not the province of this Court to substitute its judgement for that of ... a legislative body ... by determining that there might have been a more appropriate method by which to ..." further the interests underlying the law. Tinnerello, 141 F.3d at 54 - 55.

Thus, in Energy Reserves, the Court upheld a State law imposing price controls on contracts between natural gas companies and the Kansas Power & Light Company, a public utility. The Court found that the plaintiff knew its contract was subject to alteration by state price regulation, and that its reasonable expectations were not impaired. Because the law was designed to protect consumers from the hardships caused by higher gas prices, the Court found that there was "little doubt about the legitimate public purpose behind the Act." 459 U.S. at 417. See also Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 502 - 06 (1987) (upholding law that prohibited coal mine operators from enforcing contracts with surface land owners waiving liability for damage to the surface, due to the State's strong interest in preventing environmental harm).

In a case bearing striking similarities to this action, the Court found that a State law requiring insurers to increase workers' compensation benefits pursuant to a cost of living increase, applicable to workers injured before the statute was passed, did not violate the contract clause. In

13

Liberty Mutual, 868 F. Supp. 425, the Court found that Liberty Mutual had not shown a substantial impairment of contract because the law did not affect any specific contractual provision, any impairment was not substantial and, in any event, the law served the significant and legitimate public purpose of ensuring that workers' benefits were not eroded by inflation.

Here, plaintiffs' contract clause claim fails because they cannot show a substantial impairment of contractual rights. First, contrary to plaintiffs' argument, the ATF deposit provision does not operate retroactively at all. It applies to awards made only after July 1, 2007. Because no insurer can know the amount of an award until it is made, and a myriad of factors could influence the award, it is irrelevant that the contracts may have been entered into or the injuries occurred before the enactment of the Workers' Compensation Reform Act. Thus, there is no impairment of any contract. See Liberty Mutual, 868 F. Supp. at 435 (where statute required that insurers pay a cost of living increase to workers injured prior to the statute's effective date, court found that "characterizing it as retroactive legislation is an overstatement").

Moreover, plaintiffs have not shown that the mandatory deposit provision interferes with any specific contractual provision. They argue generally that it impairs their insurance policies, including "the right to an adequate premium." Pls.' Mem. at 14. However, they point to no specific contractual provision that is affected. On the contrary, plaintiffs' contracts specifically contemplate legislative changes, in the same language used in the contracts in Liberty Mutual, 868 F. Supp. at 430. See Hall Aff., Ex. 1, p. 9 (Workers Compensation Law "includes any amendments to that law which are in effect during the policy period"). In any event, the deposit requirement does not impact plaintiffs' right to receive their bargained-for premiums in any way. Plaintiffs have not shown that a specific contractual provision is impaired by having to deposit the discounted present value of a claim that the insurer is obligated to pay anyway, or that their

14

contracts specifically relied upon the timing of the payment of awards. Plaintiffs' insurance policies remain enforceable contracts. Moreover, given the extensive regulation in this area, any impairment cannot be deemed substantial. See General Motors, 503 U.S. 181 (holding that a state law requiring employers to reimburse employees for workers' compensation benefits withheld in reliance on a prior statute did not impair any contract rights, where the contracts made no express mention of workers' compensation benefits). The Court in General Motors reasoned that any other result would "severely limit the ability of state legislatures to amend their regulatory legislation." Id. at 190.

In any event, given the strong public purpose involved and the minimal nature of any effect on plaintiffs' contractual expectations, any impairment is far from substantial. When viewed against the goal of protecting the financial health of the ATF, the ability of injured workers to be compensated, and of employers to obtain insurance at a reasonable cost, the requirement that insurance companies pay the discounted, present value of the same award that they previously would have owed is a minimal alteration of their reasonable expectations. Even assuming for purposes of a motion to dismiss that the provision increases plaintiffs' administrative costs and reduces their potential investment earnings, this impact is not substantial. The two provisions at issue here cannot be viewed in isolation. Rather, the Act must be viewed as a whole, under which all parties gained and lost some benefits. For example, insurance companies and their insureds gained the benefit of a future cap on PPD awards, which previously could have been lifetime awards.

The court need not reach the State's interest because there is no substantial impairment of contract; nonetheless, the State has a significant and legitimate public purpose for requiring the deposits to the ATF. Securing the fiscal integrity of the ATF and making the workers'

15

compensation system more efficient and less expensive is a valid public purpose, benefitting not only workers and employers, but the entire State by ensuring that employers will not be dissuaded from doing business in New York by the cost of workers' compensation insurance.

The means used here are also reasonable. The deposits reduce administrative costs and allow earlier settlements. Contrary to plaintiffs' arguments, the Court may not consider whether there are alternative means by which New York could have furthered these goals. There is no requirement that the State use the least burdensome means. Rather, federal courts must defer to State legislative judgments. As the Court said in Keystone Coal, "We refuse to second-guess the Commonwealth's determinations that these are the most appropriate ways of dealing with the problem." 480 U.S. at 506.

For similar reasons, giving the ATF authority to enter settlements does not substantially impair any contractual obligations. Plaintiffs have failed to show that their insurance policies were based upon an ability to reach settlements during any specific period or included any provision regarding the timing of settlements, and thus they have failed to show any impairment of contract, much less a substantial one. Plaintiffs argue strenuously that the ability to reach settlements of workers' compensation claims is important to insurance companies and their insureds. Under the amended statute, they have ample opportunity to settle before a deposit is ordered. Indeed, they are *mandated* to make a settlement offer to claimants. Their complaint is simply that they are now under an incentive to reach a settlement more promptly than before. This cannot constitute a *substantial* impairment of contractual rights, even assuming it impaired any rights. Furthermore, this provision undoubtedly serves the legitimate public purpose of reducing administrative costs and encouraging early settlements. Sammons Aff. ¶ 25. It also does so by a reasonable means, since insurers have the chance to reach such a settlement on their own should they desire to do so.

16

Finally, plaintiffs' reliance upon Allied Steel, the only modern case in which the Court has found an impairment of a contract between private parties, is misplaced. In Allied Steel, the Court found that a State law imposing a pension funding charge violated the contract clause largely because, prior to the enactment of this law, the State had never before regulated pensions. Thus, when employers entered into contracts with employees regarding pensions, they had no reason to expect *any* State regulation. The Court emphasized that the State had entered "a field it had never before sought to regulate" and the law "did not operate in an area already subject to state regulation at the time the company's contractual obligations were originally undertaken, but invaded an area never before subject to regulation by the State." 438 U.S. at 250 - 51. This alone renders Allied Steel completely inapposite. Nonetheless, the other major factors considered by the Court further distinguish Allied Steel. The Court noted that the law was "not even purportedly enacted to deal with a broad, generalized economic or social problem." Id. The same is not true of the Workers' Compensation Reform law, which was meant to increase the efficiency and lower the costs of the workers' compensation system, to enhance protections for injured workers, and to spur economic growth in the State economy.[2]

Accordingly, plaintiffs not only have no likelihood of success on the merits of their contract clause claim, dictating denial of the motion for a preliminary injunction, but even taking the allegations of the complaint as true, they fail to state a plausible claim.

---

[2] Moreover, a prominent commentator has remarked that the "Court's decision in Allied Structural Steel can be questioned on many levels." Erwin Chemerinsky, Constitutional Law Principles and Policies, at 614 (2d ed. 2002). Professor Chemerinsky concludes that "because Allied Structural Steel has not been followed by the Supreme Court in the last two decades, it is difficult to know whether it is an anomaly or whether it is a precedent that might someday be used to revitalize the contract clause." Id.

17

## POINT III

## THE STATUTORY AMENDMENTS
## DO NOT CONSTITUTE A TAKING OF PROPERTY

Plaintiffs' facial challenge to the Workers' Compensation Reform Act under the takings

clause fails as a matter of law on numerous grounds. First, the claim is not ripe because plaintiffs

have failed to avail themselves of state avenues of redress. Second, plaintiffs are voluntarily

operating in a highly regulated industry, precluding any takings claim. Finally, even if the Court

were to consider the claim, the ATF deposit provisions and the ATF settlement authority do not

deprive plaintiffs of all economically viable use of their property.

First, this Court lacks jurisdiction over the takings claim because it is not ripe. It is well

settled that a takings claim is not ripe until a plaintiff seeks compensation through any procedures

provided by the State for doing so. Williamson County Reg'l Planning Comm'n v. Hamilton

Bank, 473 U.S. 172, 194 (1985). As the Court explained in Williamson County, "if a State

provides an adequate procedure for seeking just compensation, the property owner cannot claim a

violation of the Just Compensation clause until it has used the procedure and been denied just

compensation." Id. at 195. See also Murphy v. New Milford Zoning Comm'n, 402 F.3d 342 (2d

Cir. 2005); Vandor, Inc. v. Militello, 301 F.3d 37 (2d Cir. 2002); Livant v. Clifton, 334 F.Supp. 2d

321 (E.D.N.Y. 2004), aff'd, 272 Fed. Appx. 113, 2008 U.S. App. LEXIS 7377 (2d Cir. 2008).

Thus, because plaintiffs have not availed themselves of various State procedures, including

administrative review and appeals of an order requiring an ATF deposit, their claim is not ripe and

must be dismissed under Fed.R.Civ. P. 12(b)(1).

Plaintiffs' takings claim also fails as a matter of law because participation in the workers'

compensation insurance industry is voluntary. Where the plaintiffs are not compelled to

participate in a regulated industry, there can be no taking. See Garelick v. Sullivan, 987 F.2d 913

18

(2d Cir. 1993) (rejecting challenge to law controlling Medicare costs because medical providers voluntarily participated in the Medicare program). Because plaintiffs are not required to write workers' compensation policies in the State of New York, they have no takings claim.

In any event, plaintiffs' claim is without merit. While the Supreme Court has not established a set formula for evaluating regulatory takings claims, the following factors are relevant: 1) the character of the government action, 2) the economic impact, and 3) the extent to which the regulation interferes with investment-backed expectations. See generally Connolly v. Pension Benefit Guar. Corp., 475 U.S. 211, 225 (1986); Meriden Trust & Safe Deposit Co. v. FDIC, 62 F.3d 449, 454 (2d Cir. 1995). In a facial challenge to a statute, the plaintiff must show that the regulation of the use of its property "denies an owner economically viable use of" the property. Keystone Coal, 480 U.S. at 495. See also Chemerinsky, supra, at 623 ("government regulation is a taking if it leaves no reasonable economically viable use of property; government regulation is not a taking simply because it decreases the value of a person's property so long as it leaves reasonable economically viable uses"). The Supreme Court has repeatedly cautioned that "those who do business in [a] regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end." Connolly, 475 U.S. at 227 (quotation omitted), quoted in Meriden Trust, 62 F.3d at 455.

Here, as discussed in Point II, the government action serves the important purpose of ensuring the financial integrity of the workers' compensation system by lowering costs and encouraging settlements - to the end that injured workers receive adequate benefits. These amendments merely require plaintiffs to pay the present value of a claim that they owe in any event, and asks them to pursue settlement in a specific period, after which the ATF may reach a settlement. Where a regulation "adjusts the benefits and burdens of economic life to promote the

19

common good," the takings clause is not violated. Connolly, 475 U.S. at 225.

It is also self evident that plaintiffs are not deprived of the economically viable use of their property, to the extent that they have any property interest in the funds after they are deposited into the ATF. At the most, plaintiffs complain that their administrative costs may go up and they may not be able to receive the same rate of return as they could by investing their reserves themselves. This is, by definition, the kind of adjustment of economic burdens that is permissible under the takings clause. Plaintiffs have completely failed to meet their heavy burden of showing that it is no longer economically viable to write workers' compensation insurance in New York. See, e.g. Federal Home Loan Mortgage Corp. v. New York State Div. of Hous. and Cmty. Renewal, 83 F.3d 45, 48 (2d Cir. 1996) (rent stabilization law upheld where law "does not deprive FHLMC of economically viable use of the property. Although [it] will not profit as much as it would under a market-based system, it may still rent apartments and collect the regulated rents").

Similarly, plaintiffs are not deprived of economically viable use of their property by the ATF being given settlement authority. At most, that provision may result in the loss of some amount of money which is not used for settlement - but plaintiff insurance companies could have attempted to reach a settlement before making the deposit, thereby controlling the amount of any settlement. Plaintiffs' takings claim has no likelihood of success and, indeed, the complaint on its face fails to state a claim.

## POINT IV

### THE STATUTORY AMENDMENTS DO NOT
### VIOLATE THE SUBSTANTIVE DUE PROCESS CLAUSE

Plaintiffs' substantive due process claim is frivolous. First, because other specific constitutional provisions are applicable to this claim, the due process clause is unavailable. In any event, economic or social legislation will be upheld as long as it is rationally related to a legitimate

20

government purpose. Here, as already shown, the Act serves such valid purposes.

Where the "Constitution provides an explicit textual source of constitutional protection ...,
that Amendment, not the more generalized notion of 'substantive due process,' must be the guide
for analyzing these claims." Graham v. Connor, 490 U.S. 386, 395 (1989). See also Albright v.
Oliver, 510 U.S. 266 (1994). Here, where plaintiffs rely on the contract clause and the takings
clause, they may not raise a substantive due process claim.

Notwithstanding this bar to their claim, the claim is without merit. "Since 1937, not one
state or federal economic regulation has been found unconstitutional as infringing liberty of
contract as protected by the due process clauses of the Fifth and Fourteenth Amendments. The
Court has made it clear that economic regulations ... will be upheld ... so long as they are rationally
related to serve a legitimate government purpose. ... The reality is that virtually any law can meet
this very deferential requirement." Chemerinsky, supra, at 601. In Usery v. Turner Elkhorn
Mining Co., 428 U.S. 1 (1976), the Court upheld a law requiring the payment of benefits for black
lung disease to miners who left employment before the law was passed. Again, the Court
reiterated that in the area of economic regulation, "legislative Acts adjusting the burdens and
benefits of economic life come to the Court with a presumption of constitutionality." Id. at 15.

There can be little question that the Workers' Compensation Reform Act passes this test.
For the same reasons discussed in Points II and III, the amendments are designed to protect the
financial security of the workers' compensation system and ensure that injured workers receive
adequate benefits. The provisions requiring deposits into the ATF and permitting ATF to enter
into settlement agreements further these goals by lowering costs and ensuring the financial
integrity of the ATF, and encouraging early settlements. Thus, plaintiffs have no likelihood of
success and, even accepting the complaint's allegations, have failed to state a claim.

21

## POINT V

## THE DEPOSIT REQUIREMENT DOES NOT VIOLATE EQUAL PROTECTION BECAUSE THERE IS A RATIONAL BASIS TO TREAT SIF AND SELF-INSURED EMPLOYERS DIFFERENTLY

Plaintiffs contend that the failure to require mandatory deposits for PPD cases from SIF and self-insured employers violates the equal protection clause. Because the amendments are a reasonable means of promoting a legitimate state interest, the claim is baseless.

A law creating economic classifications is entitled to substantial deference, and will be upheld unless it has no rational basis. City of New Orleans v. Dukes, 427 U.S. 297 (1976); New York State Trawlers Ass'n v. Jorling, 16 F.3d 1303 (2d Cir. 1994); Story v. Green, 978 F.2d 60 (2d Cir. 1992). As the Second Circuit has said, "such legislation is entitled to 'almost the equivalent of a strong presumption of constitutionality.' ... To prevail under the equal protection claim, therefore, [plaintiffs] would be required to show that the Amendments are clearly arbitrary and unreasonable, with no rational relation to a legitimate state interest." Trawlers Ass'n, 16 F.3d at 1309. A statute affecting only economic interests will be sustained if the legislature could have reasonably concluded that the challenged classification would promote a legitimate state purpose; the federal courts will not "sit as a superlegislature to judge the wisdom ... of legislative policy determinations...." Dukes, 427 U.S. at 303.

Here, the Act easily satisfies this standard. The SIF, as a State agency, is backed by the full faith and credit of the State of New York. Methodist Hosp. of Brooklyn v. State Ins. Fund, 64 N.Y.2d 365, 374 (1985). Nothing more need be said to demonstrate a rational basis for not requiring SIF to make mandatory deposits. There is also a rational basis for not requiring such deposits of self-insured employers. They are subject to more extensive regulation than insurance companies, which ensures their ability to meet their obligations. Weiss Decl. ¶¶ 32 - 41.

22

## POINT VI

### THE AMENDMENTS GIVING ATF SETTLEMENT AUTHORITY DO NOT DEPRIVE PLAINTIFFS OF DUE PROCESS

Plaintiffs' procedural due process claim is without merit because, first, the statutory amendment does not deprive them of any property interest and, second, they have adequate opportunity to be heard on whether and for how much workers' compensation claims are settled. A plaintiff claiming a violation of the procedural due process clause must show 1) that it was deprived of a property interest and 2) that the deprivation occurred without the process which is due under the circumstances. Bd. of Regents v. Roth, 408 U.S. 564 (1972). Here, plaintiffs can show neither as a matter of law.

It is axiomatic that to "have a property interest in a benefit, a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577. Here, plaintiffs claim to have a property interest in their insurance contracts and the premiums paid under those contracts. Compl. ¶ 91. However, the amendment giving ATF authority to settle claims does not impact plaintiffs' premiums at all - the insureds are still obligated to pay them. Plaintiffs' real complaint is that they may not make as much profit on those premiums and reserves. However, they were never entitled to any specific profit. Moreover, the amendment's actual effect is merely to require that insurance companies pay the present value of claims that they are obligated to pay in any event, through deposits that the Board could always have ordered, and to require that they reach any settlement within a certain time frame. Because it was always within the Board's discretion to order deposits in PPD cases, plaintiffs have no entitlement to be free of a requirement that they pay the present value of a PPD claim at a certain time. Once the deposit is directed, they have no legitimate expectation that those funds will not be used to pay claims. Thus, the Act does

23

not deprive plaintiffs of any property interest.

In any event, even assuming that plaintiffs have a property interest at stake, they have ample opportunity to be heard as to whether and for how much a PPD claim is settled. Due process is a flexible concept, and the procedural protections provided will vary with the circumstances. Little v. Streater, 452 U.S. 1, 5-6 (1981). To determine what procedures are required, the Court must look at 1) the private interest involved, 2) the risk of an erroneous deprivation, 3) the value, if any, of additional procedural safeguards, and 4) the government's interest, including the function involved and the financial and administrative burdens additional procedures would entail. Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

In this case, it is clear that any property interest is extremely limited, given that plaintiffs could have been ordered to make a deposit even before the amendments, and that the deposit is the present value of a claim that they already owe. Once the deposit is made, any interest is even more curtailed. Additional procedures would defeat the purpose of the Act - to reduce administrative costs for the workers' compensation system. And, plaintiffs do not allege and have made no showing that the settlements would be erroneous. Finally, it is beyond cavil that the State's interest in prompt, efficient settlements is strong - because settlements are in the public interest and in the interest of the claimants.

Most importantly, the procedures that are available are more than adequate. Insurance companies may challenge the orders requiring the deposits and the calculations of the present value in administrative appeals and judicial review. If they are successful, no deposit, or a reduced deposit, will be required. Furthermore, plaintiffs are obligated to make a settlement offer and they have adequate time in which to seek a settlement before the deposit is made. In addition, they are given 60 days notice of any proposed settlement. Sammons Decl., Ex. A. These procedures

24

provide more than adequate opportunity to be heard on whether a PPD claim should be settled and on the amount of any settlement. Accordingly, plaintiffs have no likelihood of success on this claim and, indeed, have failed to state a claim; the procedural due process claim should be dismissed.[3]

## CONCLUSION

**FOR THE FOREGOING REASONS, THE MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED AND THE COMPLAINT SHOULD BE DISMISSED.**

Dated: New York, New York
     August 26, 2008

Respectfully submitted,

ANDREW M. CUOMO
Attorney General of the
  State of New York
Attorney for Defendants

By: _Barbara K. Hathaway_

BARBARA K. HATHAWAY
Assistant Attorney General
120 Broadway
New York, New York 10271
(212) 416-8560

BARBARA K. HATHAWAY
MARK D. ROSENZWEIG
Assistant Attorneys General
  Of Counsel

---

[3] Defendants do not dispute that plaintiffs have shown irreparable injury for purposes of this motion, on the ground that the Eleventh Amendment would bar any order directing return of deposits from the ATF. Defendants do not concede plaintiffs' other arguments, such as that the loss of good will constitutes irreparable injury or that damages would be impossible to calculate.