UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------X
LIBERTY MUTUAL INSURANCE COMPANY,
LIBERTY MUTUAL FIRE INSURANCE COMPANY,
LIBERTY INSURANCE CORPORATION, LM INSURANCE
COMPANY, EMPLOYERS INSURANCE COMPANY OF
WAUSAU, WAUSAU BUSINESS INSURANCE COMPANY,
WAUSAU GENERAL INSURANCE COMPANY, WAUSAU
UNDERWRITERS INSURANCE COMPANY, PEERLESS
INSURANCE COMPANY, PEERLESS INDEMNITY
INSURANCE COMPANY, THE NETHERLANDS INSURANCE
COMPANY, EXCELSIOR INSURANCE COMPANY, THE
AMERICAN FIRE AND CASUALTY COMPANY, and
THE OHIO CASUALTY INSURANCE COMPANY,

|  |  |
|---|---|
| Plaintiffs, | **DECLARATION OF ZACHARY S. WEISS** |
| v. | 08 CV 7192 |

ROBERT H. HURLBUT, DONALD T. DECARLO,
C. SCOTT BOWEN, JOHN E. CARPENTER,
DENIS M. HUGHES, CHARLES L. LOIODICE,
WILLIAM A. O'LOUGHLIN, JR., KENNETH R.
THEOBALDS and PATRICIA SMITH, in their
official capacities as the Commissioners
of the New York State Insurance Fund; and
ZACHARY S. WEISS, DONNA FERRARA, MONA A.
BARGNESI, RICHARD A. BELL, GERALDINE
CHAPEY, CANDACE K. FINNEGAN, SCOTT C.
FIRESTONE, AGATHA EDEL GROSKI, KARL A.
HENRY, MARK D. HIGGINS, FRANCES M. LIBOUS,
and ELLEN O. PAPROCKI, in their official
capacities as members of the New York State
Workers' Compensation Board,

Defendants.
-------------------------------------------X

STATE OF NEW YORK     )

COUNTY OF ALBANY      )

**ZACHARY S. WEISS**, pursuant to 28 U.S.C. § 1746, declares and

states the following:

1.   I am the Chairman of the New York State Workers'

Compensation Board (Board).  Pursuant to Workers' Compensation

1

Law (WCL) § 141, I am the administrative head of the Board.  As such, I am required to perform all of the administrative functions of the Board set forth in the WCL and enforce all of the provisions of the WCL, including WCL § 27 and WCL § 32.

2.    This affidavit is submitted in opposition to plaintiffs' order to show cause seeking injunctive relief in connection with the Board's application and enforcement of the 2007 amendments to WCL § 27 and WCL § 32.

3.    Plaintiffs have commenced a facial constitutional challenge to the 2007 amendments to WCL § 27 and WCL § 32.  As Chair, I have a statutory and constitutional duty to implement and enforce statutes duly enacted by the State Legislature.  Moreover, all statutes enacted by the Legislature are presumed constitutional.

4.    As a threshold matter, it is relevant to note that plaintiffs are simply incorrect when they state "the 2007 amendments have not yet been enforced against Liberty Mutual" (Plaintiffs' Memorandum In Support Of Motion For Preliminary Injunction, p. 7).  As will be discussed in more detail below, the 2007 amendments took effect last July and have been fully implemented and enforced by the Board against all insurance carriers including plaintiffs.  Contrary to Mr. Dwortz's declaration, I did not recently meet with Workers' Compensation Law Judges to begin the processing of permanent partial disability claims covered by the 2007 amendments (see, Dwortz Declaration, paragraph 22).

## THE 2007 WORKERS' COMPENSATION REFORM LEGISLATION

5.    Chapter 6 of the Laws of 2007 enacted comprehensive workers' compensation reform in New York State.  This landmark legislation contained 82 sections and was 76 pages long.  The legislation was a product of years of negotiations by the Governor's Office, the Legislature, the Board, and representatives of business and labor.  A copy of the bill is attached as Exhibit 1 to Evan Glassman's declaration.

6.    According to the sponsor's memo, the bill establishes numerous reforms by: (1) increasing maximum and minimum benefits for injured workers and indexing the maximum to New York's average weekly wage; (2) dramatically reducing costs in the workers' compensation system, making hundreds of millions of dollars available annually to be translated into premium reductions; (3) establishing enhanced measures to combat workers' compensation fraud; (4) replacing the Special Disability Fund with enhanced protections for injured veterans; (5) preventing insurance carriers from transferring costs to New York employers by closing the Special Disability Fund to new claims; and (6) creating a financing mechanism to allow for settlement of the Fund's existing liabilities.  A copy of the sponsor's memo is attached as Exhibit A.

7.    The reform bill was comprehensive legislation that increased benefits for injured workers and simultaneously eliminated hundreds of millions of dollars of system costs, which were passed through to employers in the form of premium

reductions.  Prior to 2007, the workers' compensation system was viewed as inefficient, costly and an impediment to economic growth and job creation due to the high costs of workers' compensation insurance.  The 2007 bill was designed, through a series of trade-offs, to benefit both labor and business and improve the overall system of workers' compensation in New York State, including encouraging WCL § 32 settlements.  The Workers' Compensation Reform Bill was signed into law by Governor Spitzer on March 13, 2007.

8.    Plaintiffs are challenging two isolated aspects of the 2007 reform legislation; expansion of deposits into the ATF for non-scheduled permanent partial disabilities pursuant to WCL § 27(2), and the modification of the process for waiver agreements pursuant to WCL § 32.  Their challenge should be viewed in light of the total workers' compensation reform package adopted by the State Legislature in 2007.

## ATF DEPOSITS UNDER WCL § 27

9.    The Board's authority to require a carrier to deposit the present value of future unpaid benefits into a fund administered by the State Insurance Fund is found in the original Workers' Compensation Law of 1913.  In the original law, the Board had discretion to order the deposit when, "the nature of the injury makes it possible to compute the present value of all future payments with due regard for life contingencies…"  Between 1913 and 1920, three attempts were made to organize a fund for this purpose.  The current fund, which is the ATF, was

4

established in 1920 and was placed by name into WCL § 27 as part
of 1922 amendments.

10.   The purpose of the ATF is to assure and oversee the
regular payment of benefits of designated types of long-term
indemnity awards, which now encompass injuries resulting in
death, permanent total disability, and awards of permanent
partial disability pursuant to WCL § 15(3)(w) made on or after
July 11, 2007.[1] The ATF derives its funding from insurance
carriers who, since 1935, have been required by WCL § 27 to
deposit into the ATF the present value of the actuarially
estimated lifetime payout of long-term indemnity awards.  The
ATF, in accordance with the awards of the Board, pays the bi-
weekly installments of compensation benefits to claimants and/or
their spouses and dependent children.  Benefit payments to
dependent children continue until they reach age 18, or age 23,
if they attend college as a full time student in an accredited
educational institution; payments to spouses continue until
remarriage or death.

### MANDATORY AND DISCRETIONARY ATF DEPOSITS

11.   WCL § 27(2) provides for both mandatory and
discretionary deposits into the ATF.

12.   Mandatory deposits were created by the Legislature and
codified into statute in 1935.  Until 2007, WCL § 27(2) required
a mandatory deposit into the ATF for the following types of

---

[1] The effective date of this aspect of the 2007 amendments was 120 days after the Governor
signed the bill (March 13, 2007) and applies to any such award made after July 1, 2007.

cases:

      *i)*    permanent total disability resulting from loss of both hands, arms, feet, legs, eyes, or any two thereof;

      *ii)*   permanent partial disability resulting from a 100% loss of one hand, arm, foot, leg, eye; and

      *iii)* death benefits involving a stock corporation or mutual association.

The 2007 amendments expanded this list to include permanent partial disabilities PPDs) under WCL § 15(3)(w).

13. The Board may also direct deposits into the ATF, in its discretion for the following types of cases:

      *i)*    death cases not involving a stock corporation or mutual association;

      *ii)*   total permanent disabilities; and

      *iii)* permanent partial disabilities for a period of 104 weeks or more. WCL § 27(2).

Prior to the 2007 amendments, the Board had the discretion to order a deposit for awards of permanent partial disabilities under WCL § 15(3)(w) that are now mandatory under the 2007 amendments. Additionally, where the employer or carrier has been found entitled to relief under WCL § 15(8), the deposit is not mandatory, but may be ordered upon the Board's discretion [WCL § 27(4)].

14. As noted above, discretionary deposits apply to all "insurance carriers or employers" [WCL 27(2)]. By statutory definition, insurance carriers include the state insurance fund, stock corporations, mutual corporations, reciprocal insurers and all self insurers, individual, group and municipal [WCL § 2(12)].

6

The only entity not subject to deposits into the ATF is the Uninsured Employers Fund [WCL § 26-a(1)(b)].

15.  If the claimant has commenced litigation against a third-party pursuant to WCL § 29, the Board holds in abeyance any direction for the payment into ATF until the third-party action is resolved.  If the claimant or his or her attorney has not commenced legal action within six months after the award, or within one year of the date of the accident, the deposit must be made [WCL § 27(4)].

16.  In both mandatory and discretionary cases, the liable entity is directed to make a deposit into ATF representing the present value of indemnity payments which would be paid to a disabled worker, or dependents, in the future.

### WAIVER AGREEMENTS UNDER WCL § 32

17.  Prior to 1996, the WCL did not permit an insurance carrier and a claimant to enter into a waiver agreement to settle a workers' compensation claim.

18.  In 1996, WCL § 32 was amended to permit a claimant, or the deceased claimant's dependents, and the employer, its carrier, to enter into an agreement settling upon and determining the compensation and other benefits due to the claimant or his or her dependents.  Such settlements must be approved by the Board [WCL § 32(b)].

### THE BOARD'S ROLE

19.  If a Workers' Compensation Law Judge (WCLJ) decides a mandatory or discretionary deposit into the ATF is appropriate,

7

the insurance carrier is directed to deposit an amount (the
specific amount to be determined) equal to the present value of
all future indemnity benefits together with such additional sum
as is necessary for the administration of the ATF.  The decision
also indicates that a supplemental decision will follow, which
will detail the amount of the deposit.

20.  A claims examiner then completes part A of form C-40
(Request for Actuarial Computation, attached as Exhibit B) and
sends the form along with a copy of the WCLJ decision to ATF, and
adds ATF as a party of interest.  The claims examiner holds the
case in abeyance and awaits the return of the completed form
C-40, a copy of which is attached as Exhibit C.

21.  During this time period, carriers make biweekly
payments directly to the claimant so that payments can continue
until form C-40 processing is complete.

22.  When form C-40 is completed by the ATF's actuary and
returned to the Board, the Board issues a supplemental decision
which directs the carrier to deposit a specific monetary amount
into the ATF.

23.  The supplemental decision specifies the amount of money
required for the deposit and the date the deposit should be made.
It does not reiterate the findings/awards from the original WCLJ
decision, and is not considered an amended decision.

24.  This administrative process applies to all ATF cases
involving death with dependents, permanent total disabilities, as
defined in WCL § 27(2), and permanent partial disabilities as

8

defined in WCL § 15(3)(w).  This process applies to both
discretionary and mandatory deposit cases, and remains unchanged
by the 2007 amendments.

**PLAINTIFFS' FACTUAL ASSERTIONS**

25.  Plaintiffs complain the amended legislation has caused
them economic hardship, which they assert is unconstitutional.
They make three arguments.  First, the obligation to make
mandatory lump sum deposits for additional types of permanent
partial disability benefits violates the contracts clause.
Second, they assert the new deposit obligation applies
retroactively to claims arising under policies issued prior to
the 2007 amendments.  Third, they argue that insurance carriers
have lost their settlement power under WCL § 32.

26.  Additionally, they assert that the amendments change
the methodology of managing permanent partial disability cases.
They assert they lack authority to reach a settlement, are not
entitled to a refund, and are prohibited from post-deposit
settlements.

**MANDATORY DEPOSITS OF PPDs INTO ATF**

27.  Contrary to James Hall's declaration (Hall, paragraph
26) that prior to the 2007 amendments ATF deposits only applied
to a narrow category of disabilities, the Board actually had
broad authority to order insurance carriers and employers to make
deposits into ATF for discretionary cases [WCL § 27(2)].  The
Board's historical statutory discretion to direct deposits in
permanent partial disabilities has not been altered by the

9

current amendments.  The only change has been to consider such deposits mandatory, rather than discretionary.  The amendment to WCL § 27(2) represents a change in scope, not in authority.

28.  Attached as Exhibit D are copies of decisions in which the Board has ordered a discretionary deposit in pre-amendment accidents, see, e.g., <u>Matter of Walmart</u> 2005 NY Wrk Comp 69504297 (self insured ordered to make discretionary deposit where the claimant was found permanently totally disabled in a claim established for back, right arm, neck, and consequential depression); <u>Matter of Greenpoint Senior Living, Inc</u>, 2007 NY Wrk Comp 69804691 (Wausau Insurance ordered to make discretionary deposit where claimant classified permanently totally disabled for injuries to the back, neck, and consequential depression. Wausau argued there, as here, that the carrier was prejudiced because they could no longer negotiate a § 32 agreement with the claimant.  The Board Panel found the discretionary deposit to be proper under the statute); <u>Matter of Seneca Beverage Corp</u>., 2007 NY Wrk Comp 90305063 (a self-insured employer directed to make a discretionary deposit into the ATF).

29.  In discussing the particular impact of the amendments to policyholders who retain large deductibles, the declaration of David Dwortz states that unlike the environment prior to the 2007 amendments, "(n)ow, however, claims that fall within the deductible will require immediate, lump-sum deposits to the ATF that will require large payments into the escrow account.  This will adversely affect the anticipated cash flows of large

10

deductible policyholders." Dwortz, Paragraph 15.

30.  Upon the direction of the Board, insurance carriers have always had to be ready to make large payments in a variety of circumstances, e.g.:

- a large schedule loss of use award [WCL § 15(3)];

- a serious facial disfigurement award up to $20,000.00 [WCL § 15(3)(t)];

- large periods of causally related disability, be it temporary or permanent [WCL § 15(5-a)];

- a non-schedule adjustment [WCL § 15 (5-b)];

- a pre-amendment mandatory deposit to ATF [WCL § 27(2)];

- a discretionary deposit into ATF [WCL § 27(2)];

- a death award to dependents or beneficiaries (WCL § 16);

- death award with no dependents (WCL § 16);

- penalties, fines, and assessments [e.g., WCL § § 25, 114(a)(3)]; and

- a waiver agreement (WCL § 32).

The amount of money that a high deductible policyholder, or an insurer, is directed to pay depends on all the facts and circumstances of the claim.  Mandatory deposits are not the only large-payout awards directed by the Board.

31.  Significant financial impacts also arise in other contexts.  It is worth noting that not all awards against a policyholder are made in its role as an employer.  For example,

an insured can face liability for all wages including those earned from a concurrent employer [WCL § 14(6)]. Also, an insured can be held liable as a general contractor, where an employee of an uninsured sub-contractor is injured (WCL § 56). There are also unexpected instances of liability that may arise long after a file is closed, or in claims that arise against another insurer. For example, where a claimant with an established claim leaves employment with the policyholder, and is subsequently injured, the carrier in the later file may seek to apportion liability to the "earlier" file [WCL § 15(7)]. Another example involves occupational disease claims, where the claim is filed and established against a subsequent employer, and that employer seeks to apportion liability to previous employers in whose employ the disease may have been contracted (WCL § 44). Finally, the same type of financial impact can arise from a discretionary ATF deposit, which plaintiffs do not challenge.

### SELF INSURANCE

32. An employer may self insure in one of two ways, either as an individual, pursuant to WCL § 50(3), or as a member of a group self insurance trust (GSIT), pursuant to WCL § 50(3-a).

33. All private employers, whether individuals or as members of a GSIT, who wish to self-insure for workers' compensation benefits, must apply to and be duly authorized by the Board's Office of Self-Insurance.

34. An individual employer that demonstrates satisfactory proof of a financial ability to pay workers' compensation for its

employees itself may apply to the Board to act as a self-insurer pursuant to WCL § 50(3).  The Board has promulgated regulations concerning the operation of individual self-insured employers at 12 NYCRR 315 *et seq*.

35.  Individual self insurers are highly regulated by the Board.  They must:

> (a)  Execute and file an agreement with the Board to pay all claims, permit the Chair to examine their financial operations, and allow the Chair to use their security deposit to pay compensation obligations (12 NYCRR 315.2);
>
> (b)  Post a security deposit (12 NYCRR 315.3); and
>
> (c)  Provide periodic reports concerning their financial status (12 NYCRR 315.4).

36.  In the event that an employer is unable to demonstrate the financial wherewithal to self-insure individually, it may join with other employers in related industries and form a GSIT pursuant to WCL § 50(3-a).

37.  Pursuant to WCL § 50(3-a)(2), a condition of any such plan is that the group of employers provide proof to the Board of the GSIT's financial ability to pay all compensation for which the employers may be liable under the WCL.

38.  The Board has promulgated additional regulations to establish application procedures, qualifications, and responsibilities for GSITs at 12 NYCRR 317 *et seq*.

39.  These regulations require GSITs, made up of private employers, to comply with the following requirements as conditions precedent to GSIT self-insurance:

(a) Minimum required net worth and payroll, and the provision of security deposits and excess insurance (12 NYCRR 317.3);

(b) The submission of a trust agreement and participation agreement for approval by the Board (12 NYCRR 317.4[a][6]);

(c) Demonstrate a relatedness of business activities, provide actuarial reports and/or contribution rate analysis that demonstrate the appropriateness of the amounts charged by the GSIT to each member of the group for coverage (12 NYCRR 317.4[b]);

(d) Post a security deposit (12 NYCRR 317.4[b]);

(e) Provide evidence of adequate capitalization and maintain assets in excess of liabilities (12 NYCRR 317.6);

(f) Comply with the integrity of trust assets (12 NYCRR 317.8);

(g) Comply with the remedial provisions applicable to under-funded GSITs (12 NYCRR 317.9);

(h) Provide excess insurance (12 NYCRR 317.10); and

(i) Submit annual audited financial statements evidencing the financial status of the GSIT (12 NYCRR 317.19).

40. Both individual self-insurers and GSITs are subject to WCL § 27 and can be required to make deposits into the ATF [see, WCL § 50(3-a)(2); 12 NYCRR 315.2(f); 12 NYCRR 317.4(a)(7)(iii)].

41. Moreover, both individual self-insurers and GSITs are subject to assessments if the Chair shall determine that the compensation and benefits provided by the WCL may be unpaid by reason of the default of an insolvent private self-insured employer [WCL § 50(5)(g)]. Hence, there is a rational basis for why the Legislature only subjected self-insureds to discretionary ATF deposits.

42.  Since municipalities have taxing authority, the Board
does not require individual municipal self-insurers, or GSITs
consisting exclusively of public employers to adhere to the above
requirements.

## RETROACTIVE APPLICATION

43.  The plaintiffs contend that the application of the 2007
amendments to classifications made under WCL § 15(3)(w) is
retroactive.

44.  The statute is not retroactive.  The mandatory deposit
applies to awards made in the enumerated list of cases in WCL §
27(2) on or after July 11, 2007, including but not limited to
classifications of permanent partial disability.   By its clear
language, the statute does not permit retroactive application to
any cases for which a permanent partial disability classification
was made prior to July 11, 2007.

45.  The important triggering date for the application of
the amendment is the date of classification, not the date of
injury.   The Legislature simply adopted a public policy wherein
certain prospective permanent partial classifications are subject
to mandatory ATF deposits.

## SECTION 32 OFFERS AFTER THE 2007 AMENDMENTS

46.  Prior to the 2007 amendment to WCL § 32, only insurance
carriers had discretion on whether to, or when to, make a
settlement offer to the claimant.  After the amendment, the
authority to make a settlement offer was extended to the newly
created Waiver Agreement Management Office on behalf of Special

Funds where liability has been established under WCL § 15(8) [WCL § 32(e)], and to the ATF [WCL § 32(a)]. Further, the amendment established timeframes to make settlement offers:  "*in the case of disability, within two years after the date the claim was indexed by the board or six months after the claimant is classified with a permanent disability, whichever is later…*" In the case of death, "*within six months after entitlement to benefits is established for all beneficiaries*" [WCL § 32(a)]. Accordingly, after the amendment, all carriers have two years in which to make a settlement offer or six months after classification in which to negotiate a settlement.  To date, the Board has permitted post-classification settlement negotiations to move forward and held in abeyance deposits into the ATF for a reasonable time period, pending substantial negotiations between the claimant and insurance carrier.  A copy of the Board Panel Decision in WCB # 40310041 is attached as Exhibit E.

47.  Contrary to David Dwortz's declaration, insurance carriers are given notice of a potential settlement by the ATF. It is the ATF's policy, pursuant to a 2007 Bulletin, to provide the funding carrier a minimum of 60 days advance notice prior to entering into a settlement agreement.  A copy of the ATF Bulletin is attached as Exhibit F.

48.  The ATF has authority to settle the indemnity portion of the claim, and the carrier remains liable for medical treatment.  12 NYCRR 393.8.  Therefore, the settlement authority of ATF, post-deposit, is not exclusive, as it only has authority

to settle indemnity.

## REFUNDS UNDER WCL § 27(4)

49. If an award is changed or modified, the Board may order an additional deposit, or may have an amount returned to the employer or carrier, minus actuarial costs [WCL § 27(4)]. For example, if a claimant's medical report demonstrates a change in condition subsequent to a PPD finding and an ATF deposit, the Board may direct a refund to the insurance carrier. The 2007 amendments did not alter this refund methodology. In pertinent part, WCL § 27(4) provides:

> *If any award, the present value of which has been paid into the aggregate trust fund, is subsequently modified or changed by the board for any reason other than because of subsequent death or remarriage, the amount equal to the present value of the unpaid death benefits or other compensation at the effective date of such modification or change shall be computed on the basis both of the original award and of the modified or changed award. If such amount is greater on the basis of the original award, the difference shall be paid by said trust fund to the employer or insurance carrier minus the cost, if any, of the actuarial computation made by or on behalf of the board. If such amount is greater on the basis of the modified or changed award, the difference shall be paid to said trust fund by such employer or insurance carrier in addition to the cost, if any, of the actuarial computation made by or on behalf of the board. (WCL § 27[4])*

50. In accordance with WCL § 27(5), all computations by the Board, with respect to awards, shall be on the basis of the Survivorship Annuitants' Table of Mortality and the Remarriage Tables of the Dutch Royal Insurance Institution.

51. Under the amended WCL § 27(4), in a death claim, the payment into ATF shall assume that any child under the age of 23

will attend a full-time educational institution until age 23.  If the child or children does not/do not so attend, the ATF is required to make the reimbursement, without the necessity of Board action.

52.  The actuarial calculation will designate the present value of future payments as of a certain date, assuming that the carrier will make payments directly to the claimant until that date (see Exhibits B and C, C-40 Request for Actuarial Computation and Actuary's Reply). The C-40 in the space provided for the "Actuary's Reply" states in part: "*If the claimant's benefits are reduced at any time in the future, then upon our receipt of the award and request for recalculation by the Workers' Compensation Board, we will refund any calculated difference caused by the reduction from the original deposit.*" This statement does not preclude any type of requests for a reduction and refund from the original deposit.

### REFUNDS UNDER WCL § 27(8)

53.  Under the newly enacted WCL § 27(8), where the ATF deposit has been paid, there is no refund from ATF in the event of a WCL § 32 agreement.

54.  The deposits into, and payments made by, the ATF do not include medical services (12 NYCRR 393.8).

55.  WCL § 27(3) provides that an insurance carrier shall be discharged from any further liability for payment upon a deposit into the ATF.  Therefore, since the ATF is assuming all responsibility for future payments, it is reasonable and rational

18

that the ATF settle these cases.

56.   The statute sets forth the timelines for carriers to make settlement offers, i.e. within two years of Board indexing of the claim, or within 6 months after the finding the claimant is classified as permanently partially disabled, whichever is later.   These timeframes provide an incentive for carriers to make good-faith settlement offers.

57.   Under the 2007 amendments, in the event of a WCL § 32 agreement, the carrier is not entitled to a refund [WCL § 27(8)]. However, it is inaccurate to say that prior to the 2007 amendments the insurer was entitled to a refund, as it was only in the 2007 amendments that ATF was granted the specific authority to enter waiver agreements.

58.   Both the Dwortz and Hall declarations maintain that WCL § 32(e) denies the carrier an opportunity to be consulted before the ATF may enter into a waiver agreement.

59.   The cited section, WCL § 32(e), does not pertain to the ATF.   Rather, it speaks to the creation of the Waiver Management Agreement Office, which has settlement authority for claims involving the Special Disability Fund.   Plaintiffs' argument is totally irrelevant to the ATF.

60.   In fact, the carrier remains responsible for medical benefits, and as such would always be on notice of any WCL § 32 agreement between ATF and the claimant for indemnity. Furthermore, as discussed above, the ATF gives 60 days advance notice to the funding carrier prior to entering into a settlement

agreement (see Exhibit F).

### POST REFORM BOARD DECISIONS CONCERNING ATF DEPOSITS

61.  Between the dates of July 11, 2007, and August 22, 2008, the Board issued Notices of Decision in 312 claim files (involving 270 claimants) in which there was a direction using standard Board language to deposit into ATF the present value of an award.  A copy of a Board report directing ATF deposits is attached as Exhibit G.  Liberty Mutual Insurance Company and its affiliates were named as the carrier on 37 claim files (involving 32 claimants).  Additionally, a search for Board Notices of Decision using non-standard Board language for the deposit direction found 6 additional cases.

62.  I have been advised by Board staff that a review of the Board's electronic files for those 38 claimants (32 + 6 additional claimants) shows the following:

      (a)  6 directions involved discretionary deposits, and

      (b)  32 directions involved mandatory deposits under the amendment for WCL § 27.

Reports of Board decisions for ATF deposits are attached as Exhibits H and I.

63.  Of the 32 directions for a mandatory deposit, staff's examination of the files showed the following:

      (a)  2 were paid as directed;

      (b)  1 was moot because the parties had reached a settlement under WCL § 32;

      (c)  5 contained no applications for review under WCL § 23 to date;

     (d)  23 contained applications for review under WCL § 23; and

     (e)  1 deposit was held in abeyance pending WCL § 32 settlement negotiations.

64.  Of the 23 electronic files that contained applications for review, the following applied:

     (a)  3 raised only issues of WCL § 15(8) liability;

     (b)  2 sought a delay as the parties were negotiating a WCL § 32 settlement;

     (c)  16 raised arguments concerning the retroactive application of the amendment;

     (d)  1 raised applicability of the amendment to a self-insured; and

     (e)  1 was withdrawn and the ATF deposit paid.

65.  Contrary to the assertion that the "*[p]lantiffs have not yet made any deposits to the ATF required by the 2007 Amendments and deferred filing this action in the hope that the repeal bill would pass*" (Complaint, p. 10), plaintiffs have paid at least three directed deposits and have actively pursued their challenge to the amendment under the administrative review process offered parties under the WCL.

66.  In fact, in response to one of Liberty Mutual's applications for review cited above, on August 5, 2008, a Board Panel of three Commissioners in WCB # 6060 6483 (Case # 173) issued its Memorandum of Decision upholding the application of the amendment to classifications occurring on or after July 11, 2007. A copy of the Memorandum of Decision is attached as Exhibit J. Because there was a dissent in that case, WCL § 23

provides, upon request, it be reviewed by the Full Board. If requested, the Full Board will review and issue a decision before the end of the year.

67.  The instant complaint was filed with this Court just 7 days after the filing of the Board Panel's Memorandum of Decision.


I declare under penalty of perjury that the foregoing is true and correct.


Zachary S. Weiss