# EXHIBIT A



esday, August 26, 2008

# Bill Summary - A06163

Back | New York State Bill Search | Assembly Home

See Bill Text

## A06163 Summary:

| | |
|---|---|
| BILL NO | A06163 |
| SAME AS | Same as Uni. S 3322 |
| SPONSOR | Silver |
| COSPNSR | John, Farrell, Canestrari, Morelle, Destito, Schimminger, Stirpe, DelMonte, Gordon T, Magnarelli, Aubertine, Gabryszak, Koon, Eddington Bradley, Reilly, Fields, Bing, Lupardo, Cahill, Hoyt |
| MLTSPNSR | Alfano, Arroyo, Aubry, Bacalles, Ball, Barclay, Barra, Benedetto, Benjamin, Boyland, Boyle, Brodsky, Brook-Krasny, Burling, Butler, Calhoun, Camara, Carrozza, Christensen, Clark, Cole, Conte, Cook, Crouch, Cusick, Cymbrowitz, Diaz L, Diaz R, Dinowitz, Duprey, Englebright, Errigo, Finch, Galef, Gianaris, Giglio, Gordon D, Gottfried, Grannis, Greene, Gunther, Hawley, Hayes, Heastie, Hikind, Hooper, Hyer-Spencer, Jaffee, Kavanagh, Kolb, Lafayette, Lavine, Lifton, Lopez P, Lopez V, Magee, Maisel, Markey, Mayersohn, McDonald, McDonough, McEneny, McKevitt, Miller, Millman, Molinaro, Nolan, Oaks, O`Mara, Ortiz, Paulin, Peoples, Peralta, Pheffer, Powell, Pretlow, Quinn, Rabbitt, Raia, Ramos, Reilich, Rivera J, Rivera N, Rivera P, Robinson, Saladino, Sayward, Scarborough, Schroeder, Scozzafava, Seminerio, Spano, Sweeney, Tedisco, Thiele, Titus, Tonko, Townsend, Walker, Weinstein, Weisenberg, Weprin, Wright, Young, Zebrowski |

Amd Work Comp L, generally; amd SS406, 107, 308, 2304, 2305, 2339, 2313 & 2316, Ins L; amd S697, Tax L; amd S537, Lab L; amd SS3 & 60, Vol Amd Wkr Ben L; amd SS3 & 60, Vol Ffs Ben L; add S1680-l, Pub Auth L; amd S17 Pub Off L

Relates to workers` compensation reform; relates to the administration of the special disability fund and authorizes the closing of the special disability fund to new claims and the establishment of the special disability fund advisory committee.

## A06163 Actions:

```
BILL NO    A06163

03/03/2007  referred to labor
03/05/2007  reported referred to codes
03/06/2007  reported referred to ways and means
03/06/2007  reported referred to rules
03/06/2007  reported
03/06/2007  rules report cal.15
03/06/2007  ordered to third reading rules cal.15
03/06/2007  passed assembly
03/06/2007  delivered to senate
03/06/2007  REFERRED TO RULES
03/06/2007  SUBSTITUTED FOR S3322
03/06/2007  3RD READING CAL.252
03/06/2007  PASSED SENATE
03/06/2007  RETURNED TO ASSEMBLY
03/08/2007  delivered to governor
03/13/2007  signed chap.6
```

## A06163 Votes:

```
BILL: A06163   DATE: 03/06/2007   MOTION:                                                          YEA/NAY: 145/000

Abbate   Y   Calhoun  Y   Espaill  Y   Hooper   Y   Maisel   Y   Powell   Y   Sweeney  Y
Alessi   Y   Camara   Y   Farrell  Y   Hoyt     Y   Markey   Y   Pretlow  Y   Tedisco  Y
Alfano   Y   Canestr  Y   Fields   Y   Hyer-Sp  Y   Mayerso  Y   Quinn    Y   Thiele   Y
Arroyo   Y   Carrozz  Y   Finch    Y   Jacobs   Y   McDonal  Y   Rabbitt  Y   Titus    Y
Auberti  Y   Christe  Y   Fitzpat  Y   Jaffee   Y   McDonou  Y   Raia     Y   Tonko    Y
Aubry    Y   Clark    Y   Gabrysz  Y   Jeffrie  Y   McEneny  Y   Ramos    Y   Towns    Y
Bacalle  Y   Cole     Y   Galef    Y   John     Y   McKevit  Y   Reilich  Y   Townsen  Y
Ball     Y   Colton   Y   Gantt    Y   Kavanag  Y   Miller   Y   Reilly   Y   Walker   Y
Barclay  Y   Conte    Y   Gianari  Y   Kirwan   Y   Millman  Y   Rive J   Y   Weinste  Y
Barra    Y   Cook     Y   Giglio   Y   Kolb     Y   Molinar  Y   Rive N   Y   Weisenb  Y
Benedet  Y   Crouch   Y   Glick    Y   Koon     Y   Morelle  Y   Rive PM  Y   Weprin   Y
Benjami  Y   Cusick   Y   Gord D   Y   Lafayet  Y   Nolan    Y   Robinso  Y   Wright   Y
Bing     Y   Cymbrow  Y   Gord TP  Y   Lancman  Y   Oaks     Y   Rosenth  Y   Young    Y
Boyland  Y   DelMont  Y   Gottfri  Y   Latimer  Y   O`Donne  Y   Saladin  Y   Zebrows  ER
Boyle    Y   Destito  Y   Grannis  Y   Lavine   Y   O`Mara   Y   Sayward  Y   Mr Spkr  Y
Bradley  Y   Diaz LM  Y   Greene   Y   Lentol   Y   Ortiz    Y   Scarbor  Y
Brennan  Y   Diaz R   Y   Gunther  Y   Lifton   Y   Parment  Y   Schimmi  Y
Brodsky  Y   Dinowit  Y   Hawley   Y   Lope PD  Y   Paulin   Y   Schroed  Y
Brook-K  Y   Duprey   Y   Hayes    Y   Lope VJ  ER  Peoples  Y   Scozzaf  Y
Burling  Y   Eddingt  Y   Heastie  Y   Lupardo  Y   Peralta  Y   Seminer  Y
Butler   Y   Englebr  Y   Hevesi   Y   Magee    Y   Perry    Y   Spano    Y
Cahill   Y   Errigo   Y   Hikind   Y   Magnare  Y   Pheffer  Y   Stirpe   Y
```

## A06163 Memo:

BILL NUMBER: A6163                REVISED 3/13/07

TITLE OF BILL : An act to amend the workers` compensation law, the labor law, the insurance law, the tax law, the volunteer ambulance workers` benefit law, the volunteer firefighters` benefit law, and the public officers law, in relation to increasing benefits, setting maximum benefit weeks for receiving payments on certain claims, providing enhanced return to work services and expedited medical services for claimants, increasing penalties and enforcement against fraud, implementing cost-savings, providing for premium discounts, authorizing the closing of the special disability fund to new claims; and to amend the public authorities law, in relation to the issuance by the dormitory authority of revenue bonds secured by debt service assessments in connection therewith

PURPOSE :

This bill establishes comprehensive reforms to New York`s workers` compensation law by: (1) increasing maximum and minimum benefits for injured workers and indexing the maximum to New York`s average weekly wage; (2) dramatically reducing costs in the workers` compensation system, making hundreds of millions of dollars available annually to be translated into premium reductions; (3) establishing enhanced measures to combat workers` compensation fraud; (4) replacing the Special Disability Fund with enhanced protections for injured veterans; (5) preventing insurance carriers from transferring costs to New York employers by closing the Special Disability Fund to new claims; and (6) creating a financing mechanism to allow for settlement of the Fund`s existing liabilities.

SUMMARY OF PROVISIONS :

Provisions relating to benefits

Section 1 of the bill adds new subdivisions 16 through 23 to section 2 of the Workers` Compensation Law to define certain terms.

Section 2 of the bill amends section 15(6)(a) of the Workers` Compensation Law to increase the maximum weekly benefits for permanent or temporary partial disability and permanent or temporary total disability from $400 to: (1) $500 for an accident or disablement that occurs on or after July 1, 2007; (2) $550 for an accident or disablement that occurs on or after July 1, 2008; (3) $600 for an accident or disablement that occurs on or after July 1, 2009; and (4) two-thirds the New York state average weekly wage each year thereafter. This section of the bill also raises the minimum benefits

for permanent or temporary partial disability and permanent or temporary total disability from $40 per week to $100 per week.

Section 3 of the bill amends section 16(5) of the Workers' Compensation Law to increase the maximum amount of weekly compensation to be taken into account in calculating the death benefits from $600 to: (1) $750 for an accident or disablement that occurs on or after July 1, 2007; (2) $825 for an accident or disablement that occurs on or after July 1, 2008; (3) $900 for an accident or disablement that occurs on or after July 1, 2009; and (4) the New York state average weekly wage, each year thereafter.

Section 4 of the bill amends section 15(3)(w) of the Workers' Compensation Law to create a maximum number of weeks that a permanent partial disability recipient may receive indemnity payments. There is no maximum for medical services. The maximum benefit weeks range from 225 weeks where the loss of wage-earning capacity is 15 percent or less, to 525 weeks where loss of wage-earning capacity is greater than 95 percent. This section of the bill also seeks to protect claimants after their indemnity payments expire by creating a presumption that medical services will continue, and placing the burden on the carrier in any application to discontinue or suspend such services.

Section 5 of the bill adds a new section 35 to the Workers' Compensation Law to establish a safety net for permanent partial disability claimants who surpass their number of maximum benefit weeks. Section 35 requires the Commissioner of Labor to survey and recommend best practices for return-to-work programs. In addition, this section incorporates existing case law on total industrial disability. For those with loss of wage earning capacity of 80 percent or greater, the bill additionally allows claimants to seek an exemption on extreme hardship grounds. This provision provides an exemption for extreme financial hardship, while allowing judges to take into account factors in addition to claimants' income and other available resources. Finally, the Commissioner of Labor is directed to track those who are classified as permanently partially disabled over time.

Provisions relating to fraud prevention, detection, or punishment

Section 6 of the bill amends section 50(2) of the Workers' Compensation Law to require employers to secure compensation for employees through a policy issued under the law of New York.

Sections 7 and 8 of the bill amend sections 52 and 131 of the Workers' Compensation Law to impose stricter criminal and civil penalties for employers that fail to secure coverage for their employees. These sections of the law are drawn from, among other sources, analogous Florida statutes. Under section 7, failure to secure coverage for five or more employees during a twelve-month period is a Class E felony,

and a second or subsequent conviction is a Class D felony. The section also creates an affirmative defense to personal liability for corporate officers who take reasonable steps to insure that their corporation secured compensation. It also defines failure to secure compensation to include intentional misrepresentation or concealment of payroll or information relevant to premium calculation. Section 8 specifies the records that employers must keep, and creates civil penalties and enhanced criminal penalties for failing to keep such records. Extremely important in the enforcement scheme are provisions creating additional liability for corporate officers, who are made liable if their corporation fails to keep accurate records. This is intended to solve the frequent problem in white collar law enforcement that high ranking officers - who have the most to gain - escape liability, while middle managers or lower level employees do not.

Section 9 of the bill amends section 114(4) of the Workers` Compensation Law to allow prosecutors to charge a person pursuant to the provisions of sections 52 and 131 of the Workers` Compensation Law, and in the same accusatory instrument also with a violation of other laws. This section of the bill also provides that those convicted of second or subsequent offenses within a ten year time frame or those who knowingly violate any provisions of this section with respect to two or more claimants are guilty of a class D felony.

Section 10 of the bill adds a new subdivision 3 to section 114-a of the Workers` Compensation Law to provide for the assessment of costs against parties, and attorneys fees against attorneys or licensed workers compensation representatives, who institute or maintain actions without reasonable ground.

Section 11 of the bill amends section 141 of the Workers` Compensation Law to allow the Chair of the Workers` Compensation Board to issue stop-work orders as provided for in section 141-a of the Workers` Compensation Law. This provision is a keystone to the civil enforcement provisions in the bill, and has proved particularly effective in Florida, on which the provision was modeled.
Section 12 of the bill adds a new section 141-a to the Workers` Compensation Law to grant the Chair of the Workers` Compensation Board certain investigative and enforcement powers, including the power to: 1) issue subpoenas outside New York State and enforce such subpoenas in court; (2) issue stop-work orders against employers who do not maintain coverage or pay penalties, and enforce those orders (and obtain other injunctive relief) via a court action; and (3) recover attorneys` fees and costs in a successful action brought under this section. This section of the bill also allows a judgment obtained by the chair to serve as a lien against the employer`s property.

Section 13 of the bill adds a new section 141-b to the Workers` Compensation Law to bar those who were subject to final assessments of civil fines or penalties or a stop-work order, or those convicted of a

misdemeanor under sections 26, 52 or 131 of the Workers' Compensation Law, and any substantially owned affiliated entity of such person from bidding on public work contracts or subcontracts with the state, any municipal corporation or any public body for one year from the date of conviction. Those with felony convictions, or who violate the discrimination provisions of sections 125 or 125-a of the Workers' Compensation Law, will be barred for a period of five years.

Section 14 of the bill adds a new section 141-c to the Workers' Compensation Law to facilitate greater coordination and communication between the Workers' Compensation Board, the Department of Labor, the Department of Taxation and Finance, the Department of Motor Vehicles and the Department of Insurance, in order to gather information helpful in identifying fraud.

Section 15 of the bill adds a new section 114-c to the Workers' Compensation Law to impose additional penalties for second or subsequent offenses where the prior offense was committed by a substantially owned affiliated entity of the party subject to the penalty.

Section 16 of the bill amends section 136(5) of the Workers' Compensation Law to allow for sharing of information between agencies investigating insurance fraud.

Section 17 of the bill amends section 406 of the Insurance Law to extend civil immunity to any person who, in the absence of bad faith, shares information related to suspected fraudulent insurance transactions with a state agency, including its employees and agents, investigating fraud or misconduct relating to workers' compensation insurance law.

Sections 18 and 19 of the bill amend section 697 of the Tax Law to allow for enhanced sharing of information between the Department of Taxation and Finance and the Department of Labor, and redisclosure of information by the Department of Labor.

Sections 20, 21, 22, 23 and 24 of the bill amend various subdivisions of section 537 of the Labor Law to: (1) prohibit the disclosure of information gathered from employers or employees pursuant to the Labor Law or the use of such information in any court unless the action or proceeding involves information provided pursuant to section 537(3)(g); (2) provide that if a person discloses information in violation of the confidentiality provisions of section 537, then, upon conviction, such person will be guilty of a misdemeanor; (3) provide that the Commissioner of Labor shall make certain information available, upon request, to any federal, state or local agency entitled to such information under the Social Security Act, any other federal law, or its implementing regulations; (4) provide for a mechanism for the disclosure of information between the Department of

Labor and the Department of Taxation and Finance and certain federal, state and local agencies, including the Workers' Compensation Board, and set forth certain procedures that must be followed and conditions that must be met for such disclosure to take place; and (5) provide for use by the Department of Labor of wage reporting information obtained from the Department of Taxation and Finance pursuant to section 171-a(4) of the Labor Law.

Provisions to achieve greater efficiencies or costs savings in the Workers' Compensation system

Section 25 of the bill amends section 13(a) of the Workers' Compensation Law to add dental care and prosthetic devices to the list of covered treatments and covered devices and apparatus, respectively, which employers must provide to injured employees. This section of the bill would further expand the schedule of fees and services to be established by the Chair to include all medical, dental, surgical, optometric or other attendance or treatment, nurse and hospital service, medicine, optometric services, crutches, eyeglasses, false teeth, artificial eyes, orthotics, prosthetic devices, functional assistive and adaptive devices and apparatus.

Section 26 of the bill adds a new subdivision (i) to section 13 of the Workers' Compensation Law to: (1) require employers and/or carriers to pay, within 45 days, the scheduled fee for prescription drugs in all cases, unless the liability of the employer for the claim is not established, or the prescribed medicine is not for a causally related condition; and (2) where the liability of the employer for the claim is not established, or the prescribed medicine is not for a causally related condition, require the carrier to pay any undisputed portion of the claim and also notify the claimant within 45 days that the claim is not being paid and the reasons for such decision, or the employer or carrier may request additional information reasonably needed to determine the employer or carrier's liability. The section would require payment plus interest for claims not paid by the employer in violation of this section. This section also authorizes carriers, self-insureds and the State Insurance Fund to contract with a pharmacy to supply prescription medicine to claimants and require claimants to use such pharmacies if within a reasonable distance, except in the case of a medical emergency. Carriers and employers that require the use of the pharmacy with which it contracts would be required to notify claimants.

Section 27 of the bill adds a new section 13-o to the Workers' Compensation Law directing the Chair of the Workers' Compensation Board to adopt a pharmaceutical fee schedule establishing maximum pharmaceutical fees. This section would also allow mail order supply, and provide for use of generic drugs where appropriate. Under this section, the schedule may be modified annually on April 1.

Section 28 of the bill amends subdivision (5) of section 13-a of the Workers' Compensation Law to raise from $500 to $1,000 the maximum cost of specialist treatments for which an employer is automatically liable without prior authorization from the carrier, the State Insurance Fund or an employer. In addition, the Board, with the approval of the Superintendent of Insurance, shall issue and maintain a list of preauthorized procedures. The purpose of both provisions is to remove impediments to prompt diagnostic and treatment measures and to better reflect current medical service costs. The provision permitting the creation of a pre-authorized list allows the Board appropriate regulatory flexibility to add or remove procedures depending on best practices, increases or decreases in costs, or opportunities presented by managed care approaches. The provision requiring the approval of the Superintendent focuses consideration on the effect that pre-authorizing any specific procedure may have on premiums.


Section 29 of the bill adds a new subdivision (7) to section 13-a of the Workers' Compensation Law authorizing carriers, self-insureds and the State Insurance Fund to contract with a network or networks to perform diagnostic tests, x-ray examinations, magnetic resonance imaging, or other radiological examinations or tests of claimants and require claimants to use a provider or facility within the network with which it contracts and which is within a reasonable distance of the claimant, except in the case of emergency. Carriers, self-insured employers and the State Insurance Fund that require the use of such network affiliated providers or facilities would be required to notify claimants and their providers, at specified times, that they require the use of a provider or facility within the network with which they contract. Results of the special diagnostic test, x-ray examination, magnetic resonance imaging or other radiological test or exam would be required to be provided to the physician who requested the test or exam immediately upon completion of the report.

Section 30 of the bill amends section 21-a of the Workers' Compensation Law to authorize employers to initiate temporary payments for prescribed medicine for injured employees in contested cases without such payment being viewed as an admission of liability. This provision is intended to expedite treatment for injured workers, thus helping speed return to good health and gainful employment.

Section 31 of the bill amends section 54-b of the Workers' Compensation Law to allow claimants and medical providers to file a judgment for unpaid awards of compensation and awards for medical care issued pursuant to section 13-g of the Workers' Compensation Law against carriers and self-insured employers. This is designed to solve the serious problem of carriers frequently failing to pay medical bills and indemnity even after being ordered to do so by the Board.

Section 32 of the bill amends subdivision 1 of section 354 of the Workers' Compensation Law to require preferred provider organizations to provide at least two providers in every medical specialty from which the employee may choose and at least two hospitals from which the employee may choose in the event that hospitalization is necessary while allowing the Commissioner of Health to waive the requirement if the geographical area does not allow the requirement to be met.

Section 33 of the bill amends section 134 of the Workers' Compensation Law to require the Commissioner of Labor to promulgate rules and regulations for the implementation of safety, drug and alcohol prevention, and "return to work" incentive programs. Employers who implement these programs will receive premium credits in an amount set by the Superintendent of Insurance.

Section 34 of the bill amends section 23 of the Workers' Compensation Law to allow for a party to take an appeal within 30 days after notice of the redetermination review decision by the chair pursuant to section 131 and 141-a, in addition to section 52(5) of the workers' compensation law. This section of the bill also provides that an appeal shall not operate as a stay of the payment of the cost of medical, dental, surgical, optometric or other attendance, treatment, devices, apparatus or other necessary items the employer is required to provide pursuant to section 13 of the Workers' Compensation Law. This section of the bill also doubles the penalty for an employer or carrier who serves a notice of appeal for the purpose of delay or on frivolous grounds from $250 to $500. This provision is designed to eliminate carriers' financial incentive to appeal solely in order to stay payment of benefits and the provision of medical care. The Workers' Compensation Board has concluded that the current structure has led to a high number of frivolous and/or unsuccessful appeals by carriers. This will lead to finality in more cases sooner.

Section 35 of the bill would amend section 26-a(2)(b) of the Workers' Compensation Law to increase the assessment imposed upon employers who have been found liable for a workers' compensation claim but failed to secure compensation for their employees from $250 to $1000 for each ten-day period of non-compliance, or two times the cost of compensation for its payroll for the period of such failure.

Section 36 of the bill adds a new subdivision 3 to section 13-n of the Workers' Compensation Law to allow the Chair of the Worker' Compensation Board, upon finding that an entity that derives income from independent medical examinations has materially altered an independent medical examination report, or caused a report to be materially altered, to revoke the registration of such entity, impose a penalty of up to $10,000 and refer the matter to the Attorney General for prosecution.

Section 37 of the bill would add a new subdivision 4 to section 10 of the Workers` Compensation Law to deem ineligible for all benefits under the Workers` Compensation Law those persons incarcerated upon conviction of a felony. After release from custody, these individuals may apply to the board for reinstatement of their benefits. This provision codifies existing case law.

Sections 38 and 39 of the bill amend section 13-d of the Workers` Compensation Law to allow the chair to remove from the list of physicians authorized to render medical care those physicians who have been found guilty of professional or other misconduct or incompetence in rendering medical services under the law or whenever the Department of Health shall conduct an investigation with respect to charges of professional or other misconduct by a physician which results in a report, determination or consent order that includes a finding of professional or other misconduct or incompetency.

Sections 40 and 41 of the bill amend section 25 of the Workers` Compensation Law to reduce the time in which the board must schedule a pre-hearing conference in a controverted case from 60 days to 45 days after receipt of a notice of controversy and a medical report referencing an injury. The bill also provides that if issues in a case have not been resolved within one year after such issues have been raised before the board, or if a notice of controversy is filed, the chair may order that the case be transferred to a special part for expedited hearings.

Section 42 of the bill amends subdivisions 1 and 2 of section 54 of the Workers` Compensation Law to allow for an insurance policy providing coverage for workers` compensation claims to be issued by more than one insurance company authorized to transact workers` compensation insurance in the state. In the case of a policy with more than one insurer, the insurers shall share one hundred percent of the liability and one of the insurers shall serve as the lead insurer for notice and cancellation purposes.

Section 43 of the bill amends section 77 of the Workers` Compensation Law to increase from 8 to 10 the number of commissioners who would administer the State Insurance Fund. One of the two additional commissioners will be appointed by the Governor upon recommendation from the New York State American Federation of Labor-Congress of Industrial Organizations and one upon recommendation of the Business Council of New York State. As with other commissioners of the Fund, these appointees would be policyholders insured in the State Insurance Fund.

Section 44 of the bill amends section 87 of the Workers` Compensation Law to allow the State Insurance Fund to invest up to ten percent of its surplus and reserve funds in certain securities.

Section 45 of the bill would amend section 351 of the Workers' Compensation Law to authorize the State Insurance Fund to contract with a preferred provider organization for the delivery of workers' compensation benefits.

Section 46 of the bill amends section 27(2) of the Workers' Compensation Law to mandate that carriers deposit awards pursuant to WCL S 15(3)(w) into the aggregate trust fund.

Provisions relating to the compensation insurance rating board ("CIRB")

Sections 47 through 53, 55 through 62, 67 and 68 of the bill amend various sections of the Insurance Law, Volunteer Ambulance Workers' Benefit Law, Volunteer Firefighters' Benefit Law, and Workers' Compensation Law to end New York State's exclusive reliance on the Compensation Insurance Rating Board ("CIRB"), and to remove from CIRB certain statutory obligations and powers, effective as of February 1, 2008. Section 57 directs the Superintendent of Insurance to report to the Governor and Legislature by September 1, 2007 on how CIRB has performed tasks currently designated to it by statute or regulation; whether any of those tasks would more appropriately be performed by any other entity, including any government agency; and on the ratemaking process for workers' compensation insurance. Sections 67 and 68 bar rate service organizations for workers' compensation insurance from filing rates or sharing statistical information, as of February 1, 2008.

Further provisions relating to efficiencies and cost savings

Section 50 of the bill amends section 25-a(3) of the Workers' Compensation Law to make technical corrections to the section in connection with the fund for reopened cases.

Section 54 is intentionally omitted.

Section 56 of the bill amends section 151(2) of the Workers' Compensation Law to modify the method by which administrative expenses are assessed upon group self-insurers.

Section 57-a of the bill amends section 27(4) of the Workers' Compensation Law to change the rate of interest paid by an employer or insurance carrier into the Aggregate Trust Fund in the event of a review or appeal from three percent to the "industry standard rate" as determined through regulation issued by the Superintendent of Insurance. This section of the bill also requires that payments into the Aggregate Trust Fund on claims for death benefits be based on the assumption that any child between the age of 18 and 23 years will continue to be enrolled as a full-time student in an accredited educational institution and thereby retain eligibility for benefits,

to provide for any appropriate refund of such payment after all such children have reached 23 years of age, and to make various interest provisions consistent with the "industry standard rate" provided by this bill.

Section 57-b of the bill adds a new subdivision 8 to section 27 of the Workers` Compensation Law to provide that in the case of a claim concerning which the Aggregate Trust Fund enters a waiver agreement pursuant to section 32, the insurance carrier that paid the present value of the award of such claim is not entitled to a refund of any portion of the award.

Section 63 of the bill amends section 143(1) of the Workers` Compensation Law to allow the Workers` Compensation Board to use electronic means to record and maintain public records.

Section 64 of the bill amends section 50(3) of the Workers` Compensation Law to require the Board to report to the Governor and the Legislature, on or before December 1, 2007, on the possibility of implementing a statewide self-insured employer bond program and an improved individual employer bond program.

Section 65 of the bill amends section 50(5)(c) of the Workers` Compensation Law to provide for the apportionment of the assessment against self-insurers and defines the term "pure premium calculation."

Section 66 of the bill amends section 27(7) of the Workers` Compensation Law to provide for the computation of the loss reserves for the Aggregate Trust Fund and provides for a standard interest rate to be determined by the Superintendent of Insurance by regulation.

Sections 69 and 70 amend section 125 of the Workers` Compensation Law and add a new section 125-a to the Workers` Compensation Law, to provide that any employer or insurance carrier that discriminates against an injured veteran shall be guilty of a Class A misdemeanor.

Section 71 of the bill amends section 27(5) of the Workers` Compensation Law to provide that deposits in the Aggregate Trust Fund are credited with interest at the industry standard rate.

Section 72 of the bill amends section 13-j(1) of the Workers` Compensation Law to remove the prohibition on insurance carriers directing medical treatment with respect to pharmacy and diagnostic networks.

Provisions relating to the Special Disability Fund

Section 73 of the bill amends section 32(a) of the Workers` Compensation Law to make clear that the Aggregate Trust Fund and the Special Disability Fund may enter into waiver agreements, and

establishes procedures by which the Special Disability Fund can enter into waiver agreements funded by bond proceeds. This section also includes protections for claimants entering into such agreements, since such settlements are final and conclusive once approved by the Workers' Compensation Board.

Section 74 of the bill adds new subdivisions (e), (f), (g), (h) and i) to section 32 of the Workers' Compensation Law to provide for settlement of claims for which liability of the Special Disability Fund has been established by: (1) establishing a Waiver Agreement Management Office under the supervision of the Chair of the Workers' Compensation Board; (2) making clear that any waiver agreement entered into by the fund shall be conclusive on other potentially interested parties (such as carriers and employers); (3) providing for notice of interested parties; and (4) allowing for joint entry into waiver agreements by the Special Disability Fund and other parties.

In an effort to limit the outstanding liability of the Special Disability Fund efficiently and effectively, this section allows the Waiver Agreement Management Office to contract with a third party to manage and settle claims. It authorizes the Chair to conduct a procurement, subject to provisions of State Finance Law, that might result in transfer of liability and responsibility for management, administration and settlement of all or a portion of claims in the Special Disability Fund to private entities with demonstrated financial strength. Finally, this section provides for the Director of the Budget to notify the Chairs of the Senate Finance Committee and the Assembly Ways and Means Committee of policies, procedures and plans to be employed in addressing the outstanding liability of the Special Disability Fund, including those involving management of claims, and financing.

Section 75 of the bill amends section 15(8)(ee) and (f) of the Workers' Compensation Law to subject applications for reimbursement from the Special Disability Fund for dust disease claims to the time limits on seeking reimbursement set forth in subdivision (h) of that section.

Section 76 of the bill amends section 15(8)(h) of the Workers' Compensation Law to close the Special Disability Fund to new claims as follows: (1) no claim may be filed against the Special Disability Fund for any injury or illness where the disablement or accident took place after July 1, 2007; (2) no claim for reimbursement may be made against the Fund after July 1, 2010; and (3) requests for reimbursement from the Fund (where the Fund's liability has already been established), must be filed by the later of one year after the expense was paid or one year after this provision's effective date.  To discourage attempts to transfer unfounded liability for claims to the Special Disability Fund before these deadlines, this section imposes a filing fee of $250, $200 of which would be refundable upon ruling that the

claim is eligible for reimbursement from the Special Disability Fund.

To offset the costs of settling claims, and to manage the associated costs for insurers and employers, this section of the bill allows for a financing agreement among the Workers' Compensation Board Chair, the Commissioner of Taxation and Finance, and the Dormitory Authority of the State of New York. This section provides protection to ensure that funds associated with the Special Disability Fund are used solely for their intended purposes. The amendments to section 15(8)(h)(7) allow the financing agreement to limit the Fund's investments, and allow the Commissioner of Taxation and Finance, who will continue to hold proceeds from the assessment in a sole custody account, to set up such accounts as are necessary to manage the fund.

Further, this section provides for the Chair of the Workers' Compensation Board to report annually to the Legislature the revenues and expenses, financing plan, assets and liabilities, status of claims and the amount of the remaining unfunded liability of the Special Disability Fund.

Section 77 of the bill amends section 14(6) of the Workers' Compensation Law to apply time limits on applications for reimbursement from the Special Disability Fund by an employer who must pay additional compensation as a result of its employee's concurrent employment, under section 14(6) of the Workers' Compensation Law.

Section 78 of the bill adds a new section 1680-l to the Public Authorities Law to provide for the Special Disability Fund financing through the issuance of bonds by the Dormitory Authority. This section of the bill: (1) provides definitions of terms used in the new section 1680-l; (2) clearly segregates the assets and liabilities associated with the Special Disability Fund financing from all other assets and liabilities of the Dormitory Authority; and (3) sets forth the public benefit of the closing of the Special Disability Fund and the issuance of bonds to pay for waiver agreements and other liabilities and expenses of the fund.

Under this section of the bill, the Dormitory Authority, the Commissioner of Taxation and Finance, and the Chair of the Workers' Compensation Board would be authorized to enter into a financing agreement. The agreement would include terms intended to preserve the bonds' tax exempt status. This section of the bill also sets forth the purposes for which bond proceeds may be used, authorizes the Dormitory Authority to issue bonds, and provides the Dormitory Authority with certain powers regarding the issuance of the bonds, to support the closing of the Special Disability Fund.

New section 1680-l of the Public Authorities Law further provides that neither any bond issued pursuant to this section, nor any ancillary

bond facility of the Dormitory Authority shall constitute a debt or moral obligation of the state or a state-supported obligation. The bonds and associated costs will be funded entirely by an assessment on insurance carriers and self-insurers, on which bondholders are granted a statutory lien. In addition, it establishes certain remedies for bondholders in case of default of principal and interest payments by the authority. This section also sets forth requirements for depositing the bond proceeds.

New section 1680-l of the Public Authorities Law further provides that the Dormitory Authority is acting for a public purpose and that the bonds issued to fund its operations will be exempt from federal tax. This section of the bill also sets forth the State's other covenants to the bondholders. This section also provides that the bonds of the authority are made securities.

Section 79 of the bill amends section 17(1) of the Public Officers Law to include in the definition of "employee," members of the board, officers and employees of the authority for purposes of carrying out section 1680-l.

Section 80 of the bill provides that the Superintendent of Insurance and the Chair of the Workers' Compensation Board may each, in consultation with each other, promulgate regulations to implement provisions of this act.

Section 81 of the bill contains a severability clause.

Section 82 of the bill contains the effective date provisions of the bill.

 EXISTING LAW :

Section 15(6) of the Workers' Compensation Law establishes the maximum weekly benefits for workers' compensation at $400 per week and the minimum benefits at $40 per week. In addition, section 16(5) of the Workers' Compensation Law provides that weekly wages in excess of $600 are not to be considered in calculating death benefits.

Section 15 of the Workers' Compensation Law provides for a schedule of benefits for certain injuries classified as "permanent partial disabilities" but not for other injuries in the same classification, resulting in a set duration of benefits for some claimants and lifelong benefits for others. Furthermore, the Workers' Compensation Law currently provides only limited support for vocational rehabilitation for injured workers to enable them to return to work as soon as possible.

Section 50 of the Workers' Compensation Law requires employers to secure compensation coverage for their employees. Sections 52, 114,

114-a and 131 of the Workers` Compensation Law currently govern fraud and failure to secure compensation, and provide for criminal and civil penalties. Failure to secure compensation for employees, for example, constitutes a misdemeanor under section 52 of the Workers` Compensation Law and is punishable by a fine between $500 and $2000, and may subject the violator to certain civil penalties.

Section 141 of the Workers` Compensation Law provides the Chair of the Workers` Compensation Board with limited enforcement power. The Chair cannot issue "stop-work orders" to employers who fail to provide coverage for their employees, or issue subpoenas for documents and testimony outside New York State. In addition, confidentiality laws hamper coordination and the sharing of information between state

agencies investigating fraud, thus making it difficult for agencies to coordinate efforts to combat fraud effectively.

The Special Disability Fund, which was created to encourage employers to hire workers who had been previously injured or had an existing disability, including veterans, is currently financed through assessments on insurance companies. These assessments, which are in the hundreds of millions of dollars, are passed on to employers.

 STATEMENT IN SUPPORT :

This landmark legislation reforms the state`s workers` compensation system by significantly increasing benefits for injured workers and eliminating hundreds of millions of dollars of system costs, monies that will be passed through to employers in the form of premium reductions overseen by the Superintendent of Insurance. For too long, despite the high costs paid by New York employers, injured workers have failed to receive sufficient benefits.

Since 1992, weekly benefits for workers` compensation have been capped at a maximum of $400 per week. Minimum benefits remain at one-tenth of that -- a mere $40 per week. These benefits fall far short of what claimants in other comparable states receive. This legislation seeks to increase the benefits of claimants so that they may be adequately compensated for their loss of wage earning capacity, receive the prompt medical services that they deserve, and receive vocational counseling to return to work in an expedited manner.

Under this bill, maximum benefits for injured workers will be increased from the current level of $400 per week to $500 per week for injuries occurring after July 1, 2007. Benefits would continue to increase significantly on an annual basis until July 1, 2010, when the weekly benefit would be indexed to two-thirds the average weekly wage in New York. By indexing wages, claimants are assured that their benefits will not suffer real-dollar benefit reductions due to inflation.

The bill also enacts a number of reforms that will result in hundreds of millions of dollars of additional savings. These reforms include: 1) establishing maximum benefit years on workers' compensation payments for a small group of claimants classified as non-schedule permanently partially disabled," to whom cash benefits would otherwise continue for life; (2) establishing stricter criminal and civil penalties to combat workers' compensation fraud and facilitating greater communication between state agencies investigating fraud; and 3) implementing a variety of efficiency measures, such as requiring fee schedules to manage costs for pharmaceuticals and durable goods.

One critical component of the bill supported strongly by both business and labor is a new emphasis on returning permanent partial disability claimants to work. This requires study of vocational rehabilitation and training programs, so that New York will become a leader in the field. This will benefit both workers and businesses.

In addition, the bill closes the Special Disability Fund to new claims. The Special Disability Fund is an antiquated fund paid for by annual assessments passed through to New York State's employers. Designed more than a half century ago to serve as an antidiscriminatory tool to protect injured veterans, it no longer serves that purpose due to statutory amendments that allow an employer to recover from the fund even when unaware that the individual it is hiring is disabled, and as a result of civil rights laws that make such discrimination illegal in any case. Insurers, with the assistance of private firms, have become successful at identifying claims that may be eligible for reimbursement from the Special Disability Fund. In these cases, after five years of payment by the carrier, the costs of the claims are paid through assessments passed on to employers throughout the State.  Annual liabilities have grown from $45 million in 1980 to $1.3 billion in 2001. Assessments on employers have increased almost 200% since 1995. The bill will limit the long term liability of the Special Disability Fund by closing the Fund to new claims, instituting a process for settling existing claims, and using financial tools to both cover the costs of the settlements and smooth the effect on assessments. This initiative is part of the comprehensive plan to reduce workers' compensation costs for employers.

BUDGET IMPLICATIONS :

This bill is expected to result in savings to the State and local governments as reductions in costs are achieved through the implementation of maximum benefit weeks, anti-fraud measures and various efficiency provisions. The State and many local governments, as self-insured entities, may in the near term experience a modest increase in costs associated with increased benefit amounts. All fiscal impacts of this legislation will depend on the number of State

workers who suffer injuries on the job once the bill takes effect. To offset these anticipated costs, the State will continue to pursue various initiatives to promote safe and healthy workplaces.

EFFECTIVE DATE :
This bill takes effect immediately, except that: (a) section 4 only applies to accidents and dates of disablement occurring on or after such effective date; (b) sections 6 and 8 take effect 180 days after the bill becomes a law; (c) sections 7, 9, 13, 15 and 70 take effect 30 days after the bill becomes a law, and apply to offenses committed on or after such date; (d) sections 10, 35, 40 and 41 apply to claims or appeals filed after the effective date; (e) sections 11, 12, 25, 26, 27, 28, 33, 43, 46 and 66 take effect 120 days after the bill becomes a law; (f) section 34 applies to appeals filed after the effective date; (g) sections 56 and 65 take effect on January 1, 2008; and (h) section 68 takes effect February 1, 2008.

Contact Webmaster

*Page display time = 0.3982 sec*