IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **LIBERTY MUTUAL INSURANCE COMPANY**, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 08-CV-7192 (DC) |
| **ROBERT H. HURLBUT**, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

# REPLY MEMORANDUM IN SUPPORT OF MOTION
# FOR PRELIMINARY INJUNCTION

Michael C. Miller
Evan Glassman
STEPTOE & JOHNSON LLP
750 Seventh Avenue, Suite 1900
New York, NY 10019
Tel: (212) 506-3900
Fax: (212) 506-3950

Mark F. Horning (*pro hac vice*)
Jeffrey M. Theodore (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Tel: (202) 429-3000
Fax: (202) 429-3902

*Attorneys for Plaintiffs*

- i -

**TABLE OF CONTENTS**

I. PLAINTIFFS NEED ESTABLISH ONLY THAT THEY ARE MORE LIKELY THAN NOT TO SUCCEED ..................................................................................................1

II. *YOUNGER* ABSTENTION IS INAPPLICABLE TO THIS ACTION ...............................1

III. PLAINTIFFS HAVE A LIKELIHOOD OF SUCCESS ON THEIR CONTRACT CLAUSE CLAIM ........................................................................................................5

IV. PLAINTIFFS HAVE A LIKELIHOOD OF SUCCESS ON THEIR DUE PROCESS CLAIM .................................................................................................10

V. PLAINTIFFS HAVE A LIKELIHOOD OF SUCCESS ON THEIR EQUAL PROTECTION CLAIM ..........................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abdul Wali v. Coughlin*,
   754 F.2d 1015 (2d Cir. 1985), *overruled on other grounds by O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987)..................................................................................................1

*Alleyne v. New York State Educ. Dep't*,
   516 F.3d 96 (2d Cir. 2008)..................................................................................................1

*Allied Structural Steel Co. v. Spannaus*,
   438 U.S. 234 (1978)....................................................................................................6, 8, 9

*Buffalo Teachers Fed'n v. Tobe*,
   464 F.3d 362 (2d Cir. 2006)................................................................................................9

*Diamond "D" Constr. Corp. v. McGowan*,
   282 F.3d 191 (2d Cir. 2002)................................................................................................2

*Energy Reserves Group, Inc. v. Kansas Power & Light Co.*,
   459 U.S. 400 (1983)............................................................................................................8

*Field Day, LLC v. County of Suffolk*,
   463 F.3d 167 (2d Cir. 2006)................................................................................................1

*Gerstein v. Pugh*,
   420 U.S. 103 (1975)............................................................................................................3

*Hartford Courant Co. v. Pellegrino*,
   380 F.3d 83 (2d Cir. 2004)..................................................................................................3

*Health Ins. Ass'n of Am. v. Harnett*,
   44 N.Y.2d 302 (N.Y. 1978).................................................................................................6

*Holiday Inns Franchising v. Branstad*,
   29 F.3d 383 (8th Cir. 1994).................................................................................................7

*Huffman v. Pursue, Ltd.*,
   420 U.S. 592 (1975).......................................................................................................2, 4

*In re Workers' Comp. Refund*,
   46 F.3d 813 (8th Cir. 1995).............................................................................................6, 8

*Int'l Dairy Foods Ass'n v. Amestoy*,
   92 F.3d 67 (2d Cir. 1996)....................................................................................................1

*Juidice v. Vail*,
    430 U.S. 327 (1977)..................................................................................................2, 4

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994).......................................................................................................5

*McNeese v. Bd. of Educ.*,
    373 U.S. 668 (1963).......................................................................................................5

*Mercado-Boneta v. Administracion del Fondo de Compensacion al Paciente*,
    125 F.3d 9 (1st Cir. 1997).............................................................................................6

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*,
    457 U.S. 423 (1982).......................................................................................................2

*Moore v. Sims*,
    442 U.S. 415 (1979)..................................................................................................2, 3

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
    491 U.S. 350 (1989) ("*NOPSI*").......................................................................1, 2, 3, 4

*Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*,
    477 U.S. 619 (1986).......................................................................................................2

*Patsy v. Florida Bd. of Regents*,
    457 U.S. 496 (1982).......................................................................................................5

*Pennzoil Co. v. Texaco, Inc.*,
    481 U.S. 1 (1987)...........................................................................................................4

*Phillip Morris, Inc. v. Blumenthal*,
    123 F.3d 103 (2d Cir. 1997)......................................................................................2, 4

*Plaza Health Labs., Inc. v. Perales*,
    878 F.2d 577 (2d Cir. 1989)..........................................................................................1

*Spargo v. New York State Comm'n on Judicial Conduct*,
    351 F. 3d 65 (2d Cir. 2003)......................................................................................2, 4

*Steffel v. Thompson*,
    415 U.S. 452 (1974).......................................................................................................5

*Toledo Area AFL-CIO Council v. Pizza*,
    154 F.3d 307 (6th Cir. 1998) ........................................................................................9

*Trainor v. Hernandez*,
    431 U.S. 434 (1977)..................................................................................................2, 4

- iii -

*U.S. Fid. & Guar. Co. v. McKeithen*,
 226 F.3d 412 (5th Cir. 2000) ..............................................................................5, 7, 8

*Williams v. Lambert*,
 46 F.3d 1275 (2d Cir. 1995)............................................................................................3

*Younger v. Harris*,
 401 U.S. 37 (1971)..........................................................................................................2

**STATUTES**

WCL § 27....................................................................................................................................2

WCL § 32..................................................................................................................................10

WCL § 32(a) ..............................................................................................................................9

I. **PLAINTIFFS NEED ESTABLISH ONLY THAT THEY ARE MORE LIKELY THAN NOT TO SUCCEED**

When seeking a preliminary injunction against governmental action, plaintiffs must demonstrate a likelihood of success on the merits, not that they are "considerably" more likely to succeed than fail as defendants contend.[1] *Alleyne v. New York State Educ. Dep't*, 516 F.3d 96, 101 (2d Cir. 2008); *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir. 1989). That plaintiffs challenge the constitutionality of a statute does not change the standard. *See Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 181-82 (2d Cir. 2006); *Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 70 (2d Cir. 1996). The "considerably more likely to succeed than fail" standard cited by the Attorney General, Defs.' Mem. at 7, applies not to challenges to governmental action but to mandatory injunctions that would alter the status quo, which plaintiffs do not seek here. *See Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025-26 (2d Cir. 1985), *overruled on other grounds by O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 n.2 (1987).

II. *YOUNGER* **ABSTENTION IS INAPPLICABLE TO THIS ACTION**

The Supreme Court has repeatedly stated that its rulings "do not remotely suggest that every pending proceeding between a State and a federal plaintiff justifies abstention unless one of the exceptions to *Younger* applies." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 368 (1989) ("*NOPSI*") (citations and quotation marks omitted). Rather, abstention is appropriate only in "exceptional circumstances," *id.* – and this case is not one.

*Younger* is inapplicable for four reasons: (1) the proceedings before the Workers' Compensation Board ("WCB") are not the sort of enforcement action that implicates *Younger* abstention; (2) those proceedings would not be enjoined by this litigation; (3) they lack a close

---

[1] Defendants concede that "plaintiffs have shown irreparable injury for purposes of this motion." Defendants' Memorandum of Law ("Defs.' Mem.") at 25 n.3. Thus, this reply addresses only probability of success.

- 1 -

relationship to this suit; and (4) they do not involve the sort of substantial state interest that implicates *Younger*.

*Younger* abstention originated as a limitation on the ability of federal courts to enjoin state criminal proceedings. *See Younger v. Harris*, 401 U.S. 37 (1971). The Supreme Court has expanded the doctrine only to civil cases involving state enforcement proceedings or proceedings essential to a state court's ability to enforce its judgments.[2] Thus, in *NOPSI*, the Court rejected *Younger* abstention because the underlying state proceedings involved enforcement of neither a state law nor a state court judgment. *See* 491 U.S. at 368; *see also Phillip Morris, Inc. v. Blumenthal*, 123 F.3d 103, 105, 106 (2d Cir. 1997) (rejecting *Younger* abstention because the state action "cannot be characterized accurately as a 'sovereign enforcement proceeding'").

Here, the administrative proceedings before the WCB are not enforcement proceedings. They are brought by private claimants, not the state, and resolve disputes between injured workers and insurers regarding entitlement to and amount of compensation. *Younger* abstention might be appropriate if, after the WCB affirmed an award on appeal, Liberty Mutual refused to make a deposit into the ATF and the State brought a civil enforcement proceeding to compel compliance with WCL § 27. But that has not occurred.

---

[2] *See Moore v. Sims*, 442 U.S. 415, 423 (1979) (taking custody over abused children); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 425 (1982) (attorney disciplinary proceedings); *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 624 (1986) (administrative proceedings to enforce discrimination law); *Trainor v. Hernandez*, 431 U.S. 434, 443-44 (1977) (attachment proceeding constituted "ongoing civil enforcement action . . . brought by the State in its sovereign capacity"); *Juidice v. Vail*, 430 U.S. 327, 329-30, 335 (1977) (civil contempt order); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 598, 604 (1975) (proceeding "in aid of and closely related to criminal statutes" to enforce nuisance law). The same is true of the two Second Circuit decisions cited by Defendants. *See Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 193, 196 (2d Cir. 2002) (administrative proceedings to enforce wage laws); *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F. 3d 65, 75 (2d Cir. 2003) (judicial disciplinary proceedings).

Moreover, the state and federal actions here lack the close relationship that justifies *Younger* abstention. The adjudications before the WCB and this litigation are separate actions involving different issues and different parties. *See Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 101 (2d Cir. 2004) (rejecting *Younger* abstention because the claims in the two actions are "quite different"). Injured workers are parties to the WCB proceedings but not the federal action, while the WCB and NYSIF are parties to the federal action but not the WCB proceedings. And the federal action raises only federal constitutional claims, while the WCB proceedings concern state law questions regarding awards of benefits. (The Attorney General's claim that plaintiffs raised constitutional challenges in the case attached as Exhibit J to the Declaration of Zachary Weiss ("Weiss Decl.") is simply false. *See* Rebuttal Declaration of James Hall ¶ 6.)[3]

*Younger* abstention also requires that the federal suit seek to enjoin state proceedings. *See Moore*, 442 U.S. at 431; *Gerstein v. Pugh*, 420 U.S. 103, 108 n.9 (1975). Here, Plaintiffs attempt to do no such thing. Even if this suit succeeds, the WCB adjudication process will continue to produce awards. Those awards will simply not result in an unconstitutional deposit into the ATF. *See Williams v. Lambert*, 46 F.3d 1275, 1282 (2d Cir. 1995) (no *Younger* abstention where constitutional decision in federal court would not enjoin state proceeding involving state law issues but only moot a counterclaim). The Defendants' view – that *Younger* abstention applies to every suit challenging the constitutionality of state laws by which agencies make decisions – would swallow up constitutional litigation in federal courts entirely.

---

[3] Even if the WCB adjudications did involve interpreting or adjudging the constitutionality of the WCL, *Younger* squarely does not apply. *See NOPSI*, 491 U.S. at 368 ("[I]t has never been suggested that *Younger* requires abstention in deference to a state judicial proceeding reviewing legislative or executive action. Such a broad abstention requirement would make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States.").

Finally, Defendants have failed to meet their burden to establish that maintenance of this litigation threatens an important state interest. *See Phillip Morris*, 123 F.3d at 106 (burden is on the state to establish an important interest). Defendants make only a cursory reference to the state's interest in a well-functioning workers' compensation system. Defs.' Mem. at 10. But that is not the sort of interest that satisfies the requirements of *Younger* abstention. *Younger* protects a state's interest in the regular operation of its judicial system – in its ability to enforce judgments – not its substantive law. *See Trainor*, 431 U.S. at 441 ("basic concerns of federalism . . . counsel against interference . . . with the operation of state courts"). What is at issue is "the legitimacy of the State's interest in its proceedings . . . ." *NOPSI*, 491 U.S. at 365. "[W]hen we inquire into the substantiality of the State's interest in its proceedings, we do not look narrowly to its interest in the *outcome* of the particular case . . . [but to] the importance of the generic proceedings to the State." *Id.*, *quoted in Phillip Morris*, 123 F.3d at 106 (italics in original); *see also Juidice*, 430 U.S. at 335 ("State's interest in the contempt process, [which] vindicates the regular operation of its judicial system . . . is surely an important interest"); *Huffman*, 420 U.S. at 604 (interest in quasi-criminal nuisance proceedings); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12-13 (1987) ("States have important interests in administering certain aspects of their judicial systems."); *Spargo*, 351 F.3d at 75 ("state's interest in regulating its own judicial system").

Defendants do not assert an interest in the WCB adjudication process as opposed to the substantive provisions of the WCL. The present suit does not affect the operations of the WCB, but only the law that it will apply. This action therefore does not implicate New York's interest in the proper functioning of the WCB.

A state always has an interest in upholding its laws. The Attorney General's view – that asserting New York's interest in the Workers' Compensation Law ("WCL") satisfies *Younger* –

would therefore empty the "important interest" requirement of its meaning. A state could assert an interest whenever the constitutionality of one of its statutes was challenged in federal court.

In any event, New York has no cognizable interest in having constitutional challenges to its laws decided in the WCB rather than the federal courts. *See Steffel v. Thompson*, 415 U.S. 452, 473 (1974) (noting "paramount role Congress has assigned to the federal courts to protect constitutional rights"); *Patsy v. Florida Bd. of Regents*, 457 U.S. 496 (1982) (constitutional plaintiffs need not exhaust state administrative remedies); *McNeese v. Bd. of Educ.*, 373 U.S. 668, 672 (1963) (refusing to hold "that assertion of a federal claim in a federal court must await an attempt to vindicate the same claim in a state court").

### III. PLAINTIFFS HAVE A LIKELIHOOD OF SUCCESS ON THEIR CONTRACT CLAUSE CLAIM

A statute is retroactive if "the new provision attaches new legal consequences to events completed before its enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994). Here, the WCB will make awards of compensation pursuant to insurance contracts issued to the worker's employer years before the 2007 legislation. Accordingly, "[i]n changing the [regulations applicable to insurance] contracts written before its effective date, [the statute] attaches new legal consequences to past acts. This is the very definition of retroactivity." *U.S. Fid. & Guar. Co. v. McKeithen*, 226 F.3d 412, 418 n.10 (5th Cir. 2000).

Defendants' assertion that the challenged statutes do not "[i]interfere with any specific contractual provision," Defs.' Mem. at 14, is also misguided. Even if the 2007 legislation interfered with no specific contractual provision, it would still upset the balance of contractual burdens (liabilities) and benefits (premiums) essential to an insurance policy. That violates the Contract Clause. *See* Mem. Supp. Mot. Prelim. Inj. ("Pls.' Mem.") at 14-15. In any event, the elimination of the insurers' settlement authority nullifies the insurer's specific contractual "right

- 5 -

to investigate and settle . . . claims, proceedings or suits." *See* Hall Decl. Exh. 1, at 2. The ATF's imposition of a claims-handling fee on the insurer also directly affects the insurer's contractual obligation to pay "expenses we incur" by increasing that obligation. *Id.* And, the ATF deposit requirement directly impacts "plaintiffs' right to receive their bargained-for premiums," Defs.' Mem. at 14, and their obligation to "pay promptly **when due** the benefits required of [the employer]." Hall Decl. Exh. 1, at 2 (emphasis added). Premiums are the means by which insurers fund their anticipated losses and costs. Thus, any state law retroactively increasing the losses and costs funded by premiums "chang[es] the company's obligations in an area where the element of reliance was vital . . . ." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 246 (1978).

Defendants make a number of conclusory assertions that the 2007 legislation did not result in substantial impairment of Plaintiffs' contracts and merely affects the timing of claims payments and settlements. Defs.' Mem. at 11. But Defendants have not come forward with any evidence to contradict plaintiffs' evidence of the substantial additional losses and costs that will result from retroactive application of the 2007 provisions.

The courts regularly have rejected Defendants' argument that the mere fact of "heavy regulation," Defs.' Mem. at 11, nullifies the Contract Clause. *See, e.g., In re Workers' Comp. Refund*, 46 F.3d 813, 820 (8th Cir. 1995) ("Courts have found substantial impairment of contracts in heavily regulated areas of commerce."); *Mercado-Boneta v. Administracion del Fondo de Compensacion al Paciente*, 125 F.3d 9, 14 n.7 (1st Cir. 1997) ("Contract Clause analysis would be enervated if the mere fact of regulation meant that there was always foreseeability of more regulation and thus no substantial impairment."); *Health Ins. Ass'n of Am. v. Harnett*, 44 N.Y.2d 302, 312 (N.Y. 1978); *see also* Pls.' Mem. at 19-20.

The critical question is whether prior regulation of the industry reasonably put companies on notice that they should expect future *retroactive* changes in the regulatory scheme. *See, e.g., McKeithen*, 226 F.3d at 418 (although states had enacted prospective changes, "insurers could hardly have foreseen the retroactive imposition" of such changes); *Holiday Inns Franchising v. Branstad*, 29 F.3d 383, 385 (8th Cir. 1994) (prior regulation did not put contracting parties on notice of future retroactive changes because "almost none of those statutes purports to be retrospective"). Here, Defendants do not even contend that there was a prior history of retroactive changes to the ATF deposit requirements.

That the WCB previously had discretionary authority to impose deposit requirements for classified PPDs, Defs.' Mem. at 11, is irrelevant. This authority was *never* exercised: Plaintiffs have been unable to locate a single ATF deposit for the classified PPD claims covered by the 2007 legislation. *See* Hall Rebuttal Decl. ¶ 9. Defendants have located only one instance in which Plaintiffs were required to make a discretionary deposit into the ATF, and that involved a permanent total disability claim, not a classified PPD claim. *See id.* ¶ 8. That the WCB had the power to order deposits in rare, individual cases – but did not do so – did not put insurers on notice that they would be subjected to a universal, mandatory deposit regime for all classified PPD's.

Defendants also are mistaken in arguing that the Contract Clause is rendered inapplicable by a provision in plaintiffs' policies that incorporates changes to the WCL. That provision applies only to "any amendments to that law which *are in effect during the policy period*." *See* Hall Decl. Exh. 1, at 1 (emphasis added). Thus, the contract does not incorporate legislative changes made after the policy period has expired, as it has here.

Defendants' heavy reliance on *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400 (1983), is misplaced. Defs.' Mem. at 12-13. The Court found no impairment because it interpreted a contract clause that incorporated future government rate approvals as not intended to apply to unanticipated price deregulation. *Energy Reserves*, 459 U. S. at 415. This narrow interpretation of a clause to exclude unanticipated future regulatory changes actually supports a similarly narrow interpretation in this case.

Even if this clause did apply to WCL amendments made after the expiration of the policy, it would not incorporate *retroactive* changes. "Contractual clauses purporting to waive constitutional rights must be clear and unambiguous." *In re Workers' Comp. Refund*, 46 F.3d at 819. Otherwise, "[a]n expansive interpretation of the automatic amendment clause to permit complete retroactive amendment essentially deems all rights or obligations in those contracts illusory, because these rights could always be changed or obliterated." *Id.* The provision in Plaintiffs' policies does not "unambiguously divest all future rights for Contract Clause protection." *Id.* Thus, it should not be construed to waive Plaintiffs' right under the Contract Clause to challenge retroactive legislation.

Defendants assert several state interests that they contend are advanced by retroactive application of the ATF provisions. Defs.' Mem. at 11, 15-16. However, most of these justifications are not mentioned in the statute or its legislative history. There is no reference whatsoever to protecting the solvency of the ATF. *See McKeithen*, 226 F.3d at 419 ("There are no indications in the law itself [or] in the legislative history . . . that the [state insurance fund] was financially insecure"). A court cannot consider *post hoc* rationalizations upon which the legislature never relied. *See, e.g., Allied Structural Steel*, 438 U.S. at 248 n.19 (overturning state

court decision that "engaged in mere speculation as to the state legislature's purpose"); *Toledo Area AFL-CIO Council v. Pizza*, 154 F.3d 307, 325 & n. 12 (6th Cir. 1998).

Defendants rely only upon one of the *actual* purposes of the legislation as described by the legislature itself: "[D]ramatically reducing costs in the workers' compensation system . . . ." Weiss Decl. Exh. A, at 4. But this is not the sort of purpose that justifies retroactive legislation. *See* Pls.' Mem. at 17-18.[4] And defendants cannot explain how *retroactive* application of the ATF deposit requirement can possibly advance that goal. Premiums on existing policies have already been determined and cannot be changed. Hall Decl. ¶¶ 12, 40. Moreover, one of the principal cost savings in the legislation was a reduction in the time period during which classified PPD benefits must be paid. But that provision, unlike the ATF deposit requirement, was *not* made retroactive. Thus, reducing employer costs cannot possibly be a rationale for retroactive application of the deposit requirement.

Finally, even if facilitating settlements were one of the state interests pursued by the 2007 legislation, the amendments challenged in this case cannot possibly advance that objective. Defendants misleadingly emphasize a separate provision in the 2007 legislation that Plaintiffs do not challenge. *See* WCL § 32(a) (requiring insurers to make a settlement offer to claimants "within two years after the date the claim was indexed by the board or six months after the claimant is classified with a permanent disability, whichever is later"). The provision which plaintiffs do challenge – the abrogation of their settlement authority – obviously undercuts this provision encouraging settlements and thus cannot support retroactive application.

---

[4] Although defendants contend that justification for retroactive application is not limited to public emergencies, Defs.' Mem. at 12, both the Supreme Court and the Second Circuit have placed great weight on that factor in finding that impairment was warranted. *See Allied Structural Steel*, 438 U.S. at 242-44 (distinguishing between prior decisions based on that factor); *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 373 (2d Cir. 2006) (same). Defendants assert no such exigent circumstances.

## IV. PLAINTIFFS HAVE A LIKELIHOOD OF SUCCESS ON THEIR DUE PROCESS CLAIM

Plaintiffs have a protected property interest in the premiums they have received. *See* Pls.' Mem. at 20-21. Defendants' argument that there is no deprivation of that interest because "the amendment's actual effect is merely to require that insurance companies pay the present value of claims that they are obligated to pay in any event," Defs.' Mem. at 23, is nothing more than an untrue and unsupported assertion. Plaintiffs' evidence establishes that the cost of the deposits is substantially greater than the payments they would have to make otherwise. Defendants have introduced no evidence to the contrary.

The assertions in Defendants' declarations that Plaintiffs have the right to be heard on ATF settlements is explicitly and squarely foreclosed by the 2007 Amendments. WCL § 32 forbids the ATF and WCB from consulting Plaintiffs on settlements and deprives Plaintiffs of their ability to appeal settlement approval. *See* Pls.' Mem. at 21-22.

## V. PLAINTIFFS HAVE A LIKELIHOOD OF SUCCESS ON THEIR EQUAL PROTECTION CLAIM

Defendants' Equal Protection argument relies on a legitimate purpose to promote insurer solvency. *See* Defs.' Mem. at 22. Their argument that it is rational to distinguish between insurers and self-insured employers because the latter are more likely to be able to meet their obligations is plainly false. *See* Hall Decl. ¶ 44 & Exh. 2; Pls.' Mem. at 4, 24-25. It is thus irrational to subject private insurers but not employers to additional deposit requirements. Moreover, the 2007 Amendments do not improve private insurers' solvency vis-à-vis the NYSIF. Rather, they weaken private insurers by placing them in an inferior competitive position. Thus, the Amendments are not rationally related to a legitimate purpose of promoting insurer solvency but serve only the competitive interests of the NYSIF. *See* Pls.' Mem. at 23-24.

- 11 -

Dated: New York, New York
      September 3, 2008

Respectfully submitted,

Steptoe & Johnson LLP

By:  /s Mark F. Horning
Michael C. Miller
Evan Glassman
750 Seventh Avenue
New York, NY  10019
(212) 506-3900

Mark F. Horning (*pro hac vice*)
Jeffrey M. Theodore (*pro hac vice*)
1330 Connecticut Avenue, NW
Washington, DC  20036
Tel:  (202) 429-3000

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served upon the parties listed below by hand delivery and electronic mail on September 3, 2008, a true and correct copy of the annexed **Plaintiff's Reply Memorandum in Support of Motion for Preliminary Injunction**.

/s Kimberlyn Brzozowski

Barbara K. Hathaway, Esq.
New York State Office of the Attorney General
120 Broadway
New York, NY 10271
barbara.hathaway@oag.state.ny.us